# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MCCULLOUGH,) | | |
| | ) | |
| **PETITIONER,** | ) | |
| | ) | |
| vs. | ) | **CASE NO.  3:07-CV-26-MEF** |
| | ) | **(WO)** |
| | ) | |
| DANIEL JONES, WARDEN, et al., ) | | |
| | ) | |
| **RESPONDENTS.** | ) | |

## RESPONDENTS' ANSWER TO PETITION FOR
## WRIT OF HABEAS CORPUS

Come now the Respondents, by and through the Attorney General for the

State of Alabama, and, pursuant to this Court's January 16, 2007 and February 5,

2007 orders, hereby respectfully submit this Answer to the petition for writ of

habeas corpus filed by Christopher McCullough challenging his November 7, 2002

Chambers County Circuit Court convictions of first degree burglary and second

degree theft and their corresponding sentences (Chambers County Circuit Court

CC-02-189).

The Respondents deny that McCullough is entitled to any relief whatsoever

under the federal writ of habeas corpus.

## PROCEDURAL BACKGROUND

### A. McCullough's convictions and sentences in Chambers County Circuit Court CC-02-189, and direct appeal

1. On November 7, 2002, McCullough was convicted in Chambers County Circuit Court CC-02-189 of the offenses of first degree burglary and second degree theft, violations of Alabama Code (1975) Sections 13A-7-5 and 13A-8-3 respectively, following a jury trial; the jury acquitted McCullough on a charge of second degree receiving stolen property. Ex. 1A, (C. 42-45, R. 15-152).[1] Chambers County Circuit Court Judge Tom F. Young, Jr. presided over McCullough's trial and sentencing. Ex. 1A, (R. 1, 155). The convictions arose from a burglary spree committed by McCullough in and around Lanett, Alabama, and were just two of several convictions of McCullough arising from that spree.[2]

---

[1] The clerk's record and trial transcript of McCullough's jury trial and resulting convictions and sentences -- i.e., the record on appeal from McCullough's direct appeal from these judgments -- are included as Exhibit 1A to the instant Answer.

[2] Though not directly at issue in this petition, it is noted that, in a separate trial, McCullough was convicted on November 14, 2003 of attempted burglary in Chambers County Circuit Court CC-02-318 arising from the same burglary spree, and he currently challenges that conviction and its resulting sentence through his federal habeas petition in McCullough v. Jones, et al., 3:07-CV-71-WHA, filed simultaneously with the instant petition in this Court on December 28, 2006. As will be discussed below, McCullough appears to have attached a brief supporting his challenge to that November 14, 2003 attempted burglary conviction, rather than the November 7, 2002 burglary and theft convictions, to the instant petition. See Doc. 2, pp. 1-28.

2. On January 7, 2003, the trial court sentenced McCullough pursuant to the Alabama Habitual Felony Offender Act to concurrent terms of fifteen years' imprisonment on the first degree burglary conviction and ten years' imprisonment on the second degree theft conviction. Ex. 1A, (C. 54, 55, R. 155-156).

3. McCullough appealed to the Alabama Court of Criminal Appeals, and, in his Appellant's Brief, submitted the following arguments against his conviction: 1) the trial court erred denying his motion to suppress law enforcement officers' search of a house where certain stolen items were recovered; and, 2) the State failed to corroborate the testimony of a co-conspirator. Ex. 1B (Appellant's Brief 12-19, 20-27). The State submitted an Appellee's Brief arguing for the affirmance of the trial court's judgment. Ex. 1C.

4. The Alabama Court of Criminal Appeals affirmed McCullough's convictions by memorandum opinion in <u>McCullough v. State</u>, CR-02-0943 (Ala. Crim. App. Sep. 19, 2003). Ex. 1D. The Court of Criminal Appeals held that the trial court did not err in denying McCullough's motion to suppress the search of the house because he possessed no standing to object to the search, and further held that McCullough failed to preserve his "uncorroborated testimony" argument for appellate review by failing to first present it to the trial court. Ex. 1D, pp. 1-3. McCullough filed an application for rehearing, which the Court of Criminal Appeals overruled. Exs. 1E, 1F.

5. McCullough then filed a petition for a writ of certiorari in the Alabama Supreme Court, essentially arguing the same claims for relief; McCullough also contended that he had preserved his "uncorroborated testimony" claim. Ex. 1G. The Alabama Supreme Court denied the petition and entered a certificate of judgment on December 12, 2003, and the Court of Criminal Appeals entered a certificate of judgment on the same date. Ex. 1H, 1I. McCullough did not seek certiorari review in the United States Supreme Court.

**B. McCullough's post-conviction proceedings pursuant to Ala.R.Crim.P. Rule 32, and his federal habeas petition dismissed without prejudice by this Court during those proceedings**

6. On March 28, 2004,[3] McCullough filed a petition in Chambers County Circuit Court pursuant to Ala.R.Crim.P. Rule 32 challenging these convictions. Ex. 2A. The petition was erroneously docketed under CC-02-318.60, the case number (with ".60" notation as a Rule 32 petition) for McCullough's November 14, 2003 Chambers County attempted burglary conviction not at issue in the instant habeas petition before this Court, but which, as discussed in Footnote 2 above, McCullough currently challenges in the federal habeas petition in

---

[3] The petition was stamped as filed on March 28, 2004. Ex. 2A. McCullough apparently verified the petition on October 5, 2003, while his direct appeal was still pending; however, it contains no mailing date. As will be shown below, even if the Rule 32 petition were construed as having been filed on October 5, 2003, rather than March 28, 2004, McCullough's instant habeas petition was filed outside of the AEDPA limitation period.

McCullough's then-pending March 28, 2004 Rule 32 petition, this Court, on

August 18, 2004, dismissed the habeas petition without prejudice to allow him to

exhaust his state court remedies.  Exs. 3A, 3B, 3C.

### C. The instant petition for habeas corpus

9.  In the instant December 28, 2006 petition before this Court,

McCullough seeks a federal writ of habeas corpus on the following grounds:

> A)    His conviction stemmed from an unlawful search and seizure of
> his 1998 Mustang car; the search arose because of "false allegations
> stating that the hired help saw the co-defendant looking in a window
> with a gun in his hand[,]" which led to his co-defendant telling the
> police that McCullough "had weapons hid in [his] 1998
> Mustang...which they retrieved this day without acquiring a search
> warrant to search my Mustang";
>
> B)  The State failed to disclose favorable evidence that there was "no
> fingerprints...found anywhere in this residence[,]" which was in
> conflict the "co-defendant's statement...that [McCullough] burglarized
> this residence barehanded";
>
> C) His trial counsel, Steve Morris, Esq., rendered ineffective
> assistance by failing to object to a videotape evidence of the interior
> of McCullough's car on the ground that it was insufficient
> corroborative evidence;
>
> D)  His convictions violated his double jeopardy rights because the
> trial court erred in instructing the jury regarding his burglary, theft,
> and receiving stolen property charges.

Doc. 1, pp. 6-7.

10.  While McCullough has attached a handwritten brief to the instant

habeas petition, in that brief he appears to challenge his attempted burglary

6

potential for delay on the road to finality by restricting the time that a prospective

federal habeas petitioner has in which to seek federal habeas review.'" Drew v.

Department of Corrections, 297 F.3d 1278, 1283 (11th Cir. 2002), citing Duncan

v. Walker, 533 U.S. 167, 179, 121 S. Ct. 2120, 2128 (2001). Title 28 U.S.C. §

2244 (d)(1)(A) provides that the limitation period begins to run on the date that the

time for seeking direct review of the challenged judgment expires. When a

petitioner seeks certiorari review in the Alabama Supreme Court on direct appeal,

but does not seek certiorari review in the United States Supreme Court, the

AEDPA limitation period begins to run ninety days after the Alabama Supreme

Court's entry of its certificate of judgment -- the time within which the petitioner

could have sought certiorari review in the United States Supreme Court, had he

chosen to do so. See Coates v. Byrd, 211 F. 3d 1225 (11th Cir. 2000); Rule 13.1,

Rules of the United States Supreme Court.

    14. The one-year limitation period is subject to statutory tolling under

certain circumstances, such as when a properly filed state court postconviction

petition is pending for review. Goodman v. United States, 151 F. 3d 1335, 1337

(11th Cir. 1998); 28 U.S.C. § 2244 (d)(2). This tolling provision "does not

encompass a period of time in which a state prisoner does not have a 'properly

filed' post-conviction application actually pending in state court." Moore v.

Crosby, 321 F. 3d 1377, 1381 (11th Cir. 2003). "The days when nothing was

pending would count toward the one-year limitation period." <u>Stafford v. Thompson</u>, 328 F. 3d 1302, 1303 (11th Cir. 2003).

15.  The filing of a federal habeas petition that is dismissed without prejudice does not toll the AEDPA limitation period. <u>Duncan v. Walker</u>, 533 U.S. 167, 181, 121 S. Ct. 2120, 2129 (2001) ("Tolling the limitation period for a federal habeas petition that is dismissed without prejudice would...create more opportunities for delay and piecemeal litigation without advancing the goals of comity and federalism that the exhaustion requirement serves.").

16.  Because McCullough appealed from his convictions to the Court of Criminal Appeals, applied for rehearing in that court, and sought certiorari review in the Alabama Supreme Court -- but did not seek certiorari review in the United States Supreme Court -- his convictions became final for the purposes of calculation of the AEDPA limitation period on March 11, 2004, 90 days after the Alabama Supreme Court's December 12, 2003 certificate of judgment. Ex. 1H.

17.  McCullough's <u>Ala.R.Crim.P.</u> Rule 32 petition was stamped as filed in Chambers County Circuit Court on March 28, 2004. Ex. 2A. McCullough's filing of the Rule 32 petition tolled the AEDPA limitation period. <u>Webster v. Moore</u>, 199 F. 3d 1256, 1259 (11th Cir. 2000); 28 U.S.C. § 2244 (d)(2). However, between March 11, 2004 -- the conclusion of his direct appeal proceedings for purposes of the AEDPA limitation period here -- and March 28, 2004, 17 days of

McCullough's one-year limitation period for filing a petition for writ of habeas corpus under the AEDPA had passed.   As noted above, McCullough's Rule 32 petition was apparently verified on October 5, 2003, and contains no mailing date. Ex. 2A.  This verification occurred during the pendency of McCullough's direct appeal.  While a pro se inmate's petition is deemed filed on the date it is delivered to prison officials for mailing, see Houston v. Lack, 487 U.S. 266, 271-272, 108 S. Ct. 2379 (1988); see also Ex parte Allen, 825 So. 2d 271, 272 (Ala. 2002) (noting that "Alabama courts have held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing"), a Rule 32 petition filed during the pendency of a direct appeal is held in abeyance until the certificate of judgment in the direct appeal.  E.g., Rogers v. State  782 So.2d 847, 848 (Ala. Crim. App. 2000);  Barnes v. State, 621 So. 2d 329, 333 (Ala. Crim. App. 1992).

     18.  On September 26, 2005, the trial court denied McCullough's Rule 32 petition.  Ex. 2B.  McCullough did not appeal from this judgment within 42 days as allowed by Ala.R.App.P. Rule 4 (b); thus, the AEDPA limitation period began to run again on November 7, 2005, the 42nd and final day that the Rule 32 proceeding remained pending in state court.  See Cramer v. Secretary, Dept. of Corrections, 461 F. 3d 1380, 1384 (11th Cir. 2006) (AEDPA limitation period

tolled for time during which appeal could have been taken from state court's denial of petition for post-conviction relief, regardless whether appeal was taken). McCullough's June 18, 2004 federal habeas petition filed in this Court in McCullough v. Bullard, et al., case number 3:04-cv-631-A, later dismissed without prejudice, did not toll the limitation period. Duncan v. Walker, 533 U.S. at 181, 121 S. Ct. at 2129.

19. After allowing for statutory tolling, and including the 17 days between the conclusion of McCullough's direct appeal and the March 28, 2004 actual filing of his Rule 32 petition, the one year AEDPA limitation period applicable to McCullough's convictions expired on October 21, 2006. McCullough filed the instant petition in this Court on December 28, 2006. Docs. 2, p. 28, 5-1, p. 1. Accordingly, McCullough's petition was filed 68 days outside the one-year AEDPA limitation period. If McCullough's Rule 32 petition is construed as having been filed on the date of its verification (during the pendency of his direct appeal) -- October 5, 2003 -- and the 17 days were not counted against him, McCullough's habeas petition would still be untimely filed 51 days outside of the limitation period.

20. McCullough has shown no "rare and exceptional" circumstances that would entitle him to equitable tolling, "an extraordinary remedy which is typically applied sparingly[,]" to excuse his failure to file within the statutory period.

Arthur v. Allen, 452 F. 3d 1234, 1253 (11th Cir. 2006); Steed v. Head, 219 F. 3d 1298, 1300 (11ᵗʰ Cir. 2000). It is noted that, in his response to his petition's question regarding why he "did not appeal from the adverse action on any petition, application or motion," McCullough asserts that he did not receive notice of the trial court's September 26, 2005 denial of his Rule 32 petition until December 1, 2006:

> "I just received information from the circuit clerk Charles W. Story on December 1, 2006 that this petition was denied on September 26, 2005 on which time of appeal to the Court of Criminal Appeals and the Alabama Supreme Court had lapsed."

Doc. 1, p. 4. This assertion, without more, cannot suffice to support a claim for the "extraordinary remedy" of equitable tolling. While "[a] lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas petition[,]" Drew v. Department of Corrections, 297 F. 3d at 1288, McCullough has made no such showing of due diligence and prejudicial delay. See also Logreira v. Secretary for the Dept. of Corrections, 161 Fed. Appx. 902 (11ᵗʰ Cir. 2006) (unpublished opinion discussing Drew and the standards for equitable tolling in such circumstances and finding no error in district court's dismissal of untimely habeas petition).

12

21. Accordingly, McCullough's petition is due to be dismissed as untimely, and this Court need look no further for its disposition of the petition.

## B. McCullough's various claims are procedurally defaulted.

22. Even if McCullough had timely filed the habeas petition, its claims are procedurally defaulted by his failure to exhaust them in the state courts.

23. This Court will not review claims made in a petition for habeas corpus that were not first properly presented to the state courts. "Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court." McNair v. Campbell, 416 F. 3d 1291, 1302 (11th Cir. 2005). 28 U.S.C. § 2254 (b)(1)(A) requires the federal habeas petitioner to first exhaust his remedies in the state court system; this exhaustion requirement is "grounded in the principles of comity and federalism[.]" Henderson v. Campbell, 353 F. 3d 880, 897-898 (11th Cir. 2003). "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731, 111 S. Ct. 2546, 2555 (1991). "The exhaustion doctrine...is now codified at 28 U.S.C. § 2254 (b) (1)[.]" O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).

24. For purposes of exhaustion, the habeas claims must have been presented throughout the state appellate court system. "'[S]tate prisoners must

give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary.'" Pruitt v. Jones, 348 F. 3d 1355, 1358-59 (11th Cir. 2003) (citing Boerckel, 526 U.S. at 845, 119 S. Ct. at 1732-1733. The certiorari review procedure of the Alabama Supreme Court falls within the Boerckel rule. Smith v. Jones, 256 F. 3d 1135, 1140 (11th Cir. 2001). "Under Alabama law, 'one complete round' of review... includes: (1) filing a petition for certiorari in state circuit court, see Johnson v. State, 729 So. 2d 897, 898 (Ala. Crim. App. 1997); (2) appealing the denial of that petition to the Alabama Court of Criminal Appeals, see Ala.Code § 12-3-9 (2003); Johnson, 729 So. 2d at 898; (3) petitioning the Alabama Court of Criminal Appeals for rehearing, see Ala.R.App.P. 39(c)(1); and (4) seeking discretionary review in the Alabama Supreme Court, see Ala.R.App.P. 39 (c)." Dill v. Holt, 371 F. 3d 1301, 1303 (11th Cir. 2004).

25.    As noted above, in the instant December 28, 2006 petition before this Court, McCullough argues that he is entitled to federal habeas relief on the following grounds:

A)    His conviction stemmed from an unlawful search and seizure of his 1998 Mustang car; the search arose because of "false allegations stating that the hired help saw the co-defendant looking in a window with a gun in his hand[,]" which led to his co-defendant telling the police that McCullough "had weapons hid in [his] 1998

Mustang...which they retrieved this day without acquiring a search warrant to search my Mustang";

B)  The State failed to disclose favorable evidence that there was "no fingerprints...found anywhere in this residence[,]" which was in conflict the "co-defendant's statement...that [McCullough] burglarized this residence barehanded";

C) His trial counsel, Steve Morris, Esq., rendered ineffective assistance by failing to object to a videotape evidence of the interior of McCullough's car on the ground that it was insufficient corroborative evidence;

D)  His convictions violated his double jeopardy rights because the trial court erred in properly instructing the jury regarding his burglary, theft, and receiving stolen property charges.

Doc. 1, pp. 6-7.

26.  McCullough did not raise these claims during his direct appeal proceedings, and further did not raise these claims in his Rule 32 petition.  See Exs. 1B, 1D, 1E, 1G, 2A.  While McCullough now alleges that he did not receive timely notice of the trial court's denial of his Rule 32 petition, and did not appeal from that judgment for this reason, see Doc. 1, p. 4, any alleged lack of notice would be of no consequence to his exhaustion of his federal habeas claims because he did not raise these claims in the Rule 32 petition; thus, an appeal from that judgment could not have exhausted the habeas claims he now asserts in this Court See Ex. 2A.  "The rule that '[r]eview on appeal is limited to review of any questions properly and timely raised at trial,' is often repeated by the Alabama

courts." <u>Smelcher v. Attorney Gen. of Alabama</u>, 947 F. 2d 1472, 1477 n. 7 (11th Cir. 1991).

27. McCullough's procedurally defaulted habeas claims are not capable of further presentation to the state courts via <u>Ala.R.Crim.P.</u> Rule 32 because they would stem from an untimely, successive petition, and because they could have been raised at trial or on direct appeal. <u>Ala.R.Crim.P.</u> Rules 32.2 (a)(3), (a)(5), (b), (c). Further, McCullough has not shown cause and actual prejudice arising from an alleged violation of federal law, nor has he shown a resulting fundamental miscarriage of justice if this Court does not consider the merits of the claims. <u>E.g.</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 320, 115 S. Ct. 851, 864, 130 L. Ed. 2d 808 (1995).

**CONCLUSION**

For the foregoing reasons, this Court should dismiss McCullough's petition for writ of habeas corpus.

Respectfully submitted,

Troy King(KIN047)
Attorney General
By:


/s/Marc A. Starrett
Marc A. Starrett
Assistant Attorney General
ID #STARM1168

## EXHIBITS

EXHIBIT 1A:   Record on appeal in McCullough's first degree burglary and second degree theft convictions, McCullough v. State, Alabama Court of Criminal Appeals CR-02-9443   **(SUBMITTED BY CONVENTIONAL, RATHER THAN ELECTRONIC, MEANS DUE TO LENGTH )**

Exhibit 1B:  McCullough's Appellant's Brief, McCullough v. State, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1C:  State of Alabama's Appellee's Brief, McCullough v. State, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1D:   Alabama Court of Criminal Appeals' September 19, 2003 memorandum opinion affirming the trial court's judgment, McCullough v. State, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1E: McCullough's application for rehearing, McCullough v. State, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1F:   Alabama Court of Criminal Appeals' order overruling McCullough's application for hearing, McCullough v. State, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1G:  McCullough's petition for a writ of certiorari in the Alabama Supreme Court, Ex parte McCullough (v. State), Alabama Supreme Court No. 1030153

Exhibit 1H:  Alabama Supreme Court's December 12, 2003 order and certificate of judgment denying McCullough's petition for a writ of certiorari, Alabama Supreme Court, Ex parte McCullough (v. State), No. 1030153 (Ala. Dec. 12, 2003)

Exhibit 1I:  Alabama Court of Criminal Appeals' December 12, 2003 certificate of judgment, McCullough v. State, Alabama Court of Criminal Appeals CR-02-0943 (Ala. Crim. App. Dec. 12, 2003).

Exhibit 2A:  McCullough's March 28, 2004 Ala.R.Crim.P. Rule 32 petition, McCullough v. State, Chambers County Circuit Court CC-02-318.60 (challenging judgment in CC-02-189)

**EXHIBITS (continued)**

Exhibit 2B:  Alacourt.com SJIS database record of <u>McCullough v. State</u>, Chambers County Circuit Court CC-02-318.60 (challenging judgment in CC-02-189)

Exhibit 3A:  This Court's Recommendation regarding McCullough's first federal habeas petition, <u>McCullough v. Bullard, et al.</u>, case number 3:04cv631-A

Exhibit 3B:  Judge Albritton's order dismissing McCullough's first federal habeas petition, <u>McCullough v. Bullard, et al.</u>, case number 3:04cv631-A

Exhibit 3C:  Judge Albritton's final judgment dismissing McCullough's first federal habeas petition, <u>McCullough v. Bullard, et al.</u>, case number 3:04cv631-A

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of February, 2007, I electronically filed the foregoing, excluding Exhibit 1A which is filed by hand delivery on today's date, with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document with all exhibits to the following non-CM/ECF participant:

> CHRISTOPHER MCCULLOUGH, AIS # 174909
> Inmate, Donaldson Correctional Facility
> 100 Warrior Lane
> Bessemer, Alabama 35023

> /s/Marc A. Starrett
> Marc A. Starrett (STARM1168)
> Office of the Attorney General
> Alabama State House
> 11 South Union
> Montgomery, AL 36130-0152
> Telephone: (334) 242-7300
> Fax: (334) 242-2848
> E-Mail: MStarrett@AGO.State.Al.US

ADDRRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama 36130-0152
(334) 242-7300

229407

CR-02-0943


IN THE COURT OF CRIMINAL APPEALS

THE STATE OF ALABAMA


CHRISTOPHER McCULLOUGH,                                  APPELLANT


VS.


STATE OF ALABAMA,                                        APPELLEE


---


ON APPEAL FROM THE CIRCUIT COURT OF CHAMBERS COUNTY

OF THE STATE OF ALABAMA


BRIEF AND ARGUMENT IN SUPPORT OF APPEAL


---


Attorney for Appellant

Roland L. Sledge

4002 20th Avenue, Suite B

Valley, Alabama 36854

334-768-4026



EXHIBIT
1B

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to the Alabama Rules of Appellate Procedure Rule 34(a), Appellant does not request oral argument before the Court in this appeal. According to Rule 34, oral argument is not proper if, among other situations,

(3) The facts and legal arguments are adequately presented in the briefs and record and the decision process would not be significantly aided by oral argument.

Appellant believes oral argument is not appropriate in the instant case because the facts and legal arguments are clearly set forth in Appellant's brief and this Court will not be aided by oral presentation.

Roland L. Sledge
Attorney for Appellant

TABLE OF CONTENTS

Table of Authorities                              ii

Statement of the Case                            1-2

Statement of the Issues                           3

Statement of the Facts                           4-6

Statement of the Standard of Review              7-8

Summary of the Argument                         9-11

Argument                                        12-27

Conclusion                                      28-31

Certificate of Service                           32

Summary of Adverse Rulings                       33

TABLE OF AUTHORITIES

CASES                                                              Page

Chambers v. Maroney, 399 U. S. 42, 90 S. Ct. 1975,

                    26 L. Ed. 419 (1970)                            18

Chambers v. State, 497 So. 2d 607 (Ala. Crim. App. 1986)   26

Cooper v. State, 43 Ala. 385, 191 So. 2d 224 (1966)        24

Daniels v. State, 290 Ala. 316, 276 So. 2d 441 (1973).     15

Holt v. State, 383 So. 2d 895 (Ala. Crim. App.)

            cert. denied, 383 So. 2d 897 (Ala. 1980)       25

Jacks v. State, 364 So. 2d 397 (Ala. Crim. App.),

           cert. denied, 364 So. 2d 406 (Ala. 1978)   24 26

Leonard v. State, 43 Ala. App. 454,

                  192 So. 2d 46 (1966)                    23 24

Lucious v. State, 38 Ala. App. 484, 87 So. 2d 659 (1956)   26

McCoy v. State, 397 So. 2d 577 (Ala. Crim. App.),

            cert. denied, 397 So. 2d 589 (Ala. 1981)       23

Miller v. State, 290 Ala. 248, 275 So. 2d 675 (1973)       22

Radke v. State, 292 Ala. 290, 293 So. 2d 314 (1974)        23

Reed v. State, 407 S. 2d 153 (Ala. Crim. App. 1980)

                rev'd on other grounds,

                407 So. 2d 162 (Ala. 1981)                 20

Smith v. State, 223 So. 2d 605 (Ala. 1969)                 22

Steele v. State, 512 So. 2d 142 *Ala. Crim. App. 1987)     21

OTHER AUTHORITIES

                                                            Page

Rule 3.13(b), Alabama Rules of Criminal Procedure    14 19

<u>STATEMENT OF CASE</u>

The Appellant, Christopher McCullough, appeals from a conviction in the Circuit Court of Chambers County, Alabama for burglary in the first degree and theft of property in the second degree.

A warrant for arrest was issued for Christopher McCullough on March 19, 2002. (C-1). McCullough was arrested on March 19, 2002. The Grand Jury of Chambers County returned an indictment (CC-2002-189) for allegedly committing the crimes of burglary in the first degree, §13A-7-5, Code of Alabama, 1975, theft of property in the first degree, §13A-8-3, Code of Alabama, 1975, and receiving stolen property in the second degree, §13A-8-18, Code of Alabama, 1975.

McCullough was granted indigent status and appointed an attorney for the trial of his criminal charges. A jury trial was conducted before the Honorable Tom Young on November 7, 2002 in the Circuit Court for Chambers County, Alabama, Fifth Judicial Circuit. The jury found McCullough to be guilty of the charges of burglary in the first degree, theft of property in the second degree, a lesser included offense. (C. 43/44). The jury acquitted McCullough of the charge of receiving stolen property in the second degree. (C.42). The Honorable Tom Young, Circuit Judge of the Fifth Judicial Circuit denied the applications for probation of McCullough and sentenced McCullough to 15 years on the charge of burglary in the first degree and 10 years concurrent on the charge of theft of property in the second degree on January 7, 2003. McCullough filed a

1

Motion for De Novo Appeal/New Trial on January 18, 2003.

The trial counsel was dismissed and new counsel was appointed to represent McCullough on appeal. This counsel was allowed to withdraw due to a conflict of interest on May 21, 2003. New counsel was appointed to represent McCullough on this appeal.

## STATEMENT OF THE ISSUES

    DID THE TRIAL COURT ERR BY DENYING THE MOTION TO SUPPRESS THE NON-EXIGENT, NON-CONSENSUAL SEARCH OF THE HOUSE AND SEIZURE OF EVIDENCE?

YES.

    DID THE TRIAL COURT ERR BY DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL DUE TO LACK OF CORROBORATIVE EVIDENCE LINKING McCULLOUGH TO THE CRIME?

YES.

## STATEMENT OF THE FACTS

On March 13, 2002, a burglary occurred at the home of John Burton, located at 7146 Country Club Road, Lanett, Chambers County, Alabama between 6:45 a.m. and 7:00 p.m. (R-49). Taken in the burglary were two pistols, a rifle, a shotgun, assorted change, and assorted knives. (C-1). Entry into the residence of Mr. Burton was gained by kicking in the back door. (R-49).

On March 19, 2002, officers from the Lanett Police Department were dispatched to the area of Hillcrest cemetary. (R-56). Lieutenant Bettis of the Lanett Police Department arrived on the scene. He observed a vehicle and performed a felony stop. (R-57). The two people in the vehicle were identified as Christopher McCullough and Billy Norris. (R-58).

Lieutenant Richard Carter of the Lanett Police Department arrived at the cemetary. Two pistols were found in a compartment behind the back seat of the vehicle. (R-95-96).

Lieutenant Bettis was informed to go to a house located at 1108 East 1st Avenue, Lanett. (R-59). A rifle with a scope and a Buck knife were found at this house. (R-59). Also, discovered at the house was a telephone bill that had McCullough's name on it. (R-63).

McCullough signed a Waiver of Rights form on March 19, 2002 at the Lanett Police Department. (C-40). A statement was written for him by Lieutenant Richard Carter on that same day. However, McCullough did not sign the statement. (C-41).

McCullough and Norris were arrested on the charges of burglary in the first degree and theft of property in the first degree on March 19, 2002. McCullough had an initial appearance before District Judge Joel Holley on March 20, 2002. He was advised of his rights and bonds were set. (C-3-4).

McCullough was granted indigent status. Frank Patterson was appointed to represent McCullough. (C-5). A preliminary hearing was scheduled in the case for April 19, 2002. (C-6). At the hearing, Patterson was dismissed as counsel for McCullough and Steve Morris was appointed to represent him. The preliminary hearing was waived by McCullough and the charges were bound over for consideration by the grand jury.

On August 22, 2002, the Grand Jury of Chambers County returned a three count indictment against McCullough. (C-32-33). McCullough was charged with burglary in the first degree, theft of property in the first degree and receiving stolen property in the second degree.

McCullough filed a Plea of Not Guilty and Waiver of Arraignment on or about September 23, 2002. (C-34). A Motion for Discovery was filed on November 4, 2002. (C-36-37). Also, a Motion in Limine was filed on November 4, 2002. (C-38-39).

On November 7, 2002, a trial was held before a duly selected jury in the Circuit Court of Chambers County Honorable Tom Young, Circuit Judge, presided over the trial. The jury returned a verdict of not guilty on the charge of receiving stolen property in the second degree. (C-42). the jury returned guilty verdicts on the charges of burglary in the first degree and

5

theft of property in the second degree. (C-43 and 44). The charge of theft of property in the second degree was a lesser included charge to theft of property in the first degree.

During the course of the trial, counsel for McCullough raised an objection to the introduction of a videotape. Further, counsel raised a motion to suppress the video and evidence resulting from the search of the house located at 1108 East 1st Avenue, Lanett (R-60 through 64). The trial court denied the motion to suppress.

A sentencing and probation hearing was scheduled for January 7, 2003. Hon. Tom Young sentenced McCullough to 15 years on the burglary conviction and 10 years concurrent on the theft conviction. Judge Young denied the applications for probation. (C-54-55-56).

McCullough filed a Notice to appeal/Motion for De Novo Appeal on January 18, 2003. Trial counsel for McCullough were dismissed. Greg Ward was appointed to represent McCullough on the appeal. However, due to a conflict of interest Mr. Ward was allowed to withdraw. New counsel was appointed to represent McCullough on this appeal.

6

## STATEMENT OF THE STANDARD OF REVIEW

This matter is an appeal of the conviction of Christopher McCullough on the charges of burglary in the first degree and theft of property in the second degree in the Circuit Court of Chambers County, Alabama.    McCullough appeals on the basis of errors committed at the trial court and abuse of the discretion of the trial court.

In reviewing the appeal of McCullough, this Court must look at the record on appeal.    The first standard of review is plain error.    This Court can determine error from the record on its own initiative if it is determined that there was error at the trial court and this error was not preserved for appeal. This error must be determined to be harmful or detrimental to the defendant.

An appealed error by McCullough is one that has been preserved.    The Court must determine if this error was reversible.    In order for the Court to reverse the decision of the trial court, it must find that the error prejudiced McCullough to such a degree that a fair trial was not held.

This Court can determine that error by the trial court is harmless.    This can occur when the Court determines that the out come of the trial would have been the same with or without the appealed error.

The trial court is given great discretion in deciding evidential matters and cases.    The trial court hears the evidence

firsthand.  The trial court is able to view the witnesses and their demeanor in order to determine their credibility. If this Court finds that the trial court abused its discretion, this Court can reverse the trial courts decision.

There are two issues presented in this matter.  First, did the trial court err by denying the motion to suppress the non-exigent, non-consensual search of the residence and seizure of evidence.  The Rules of Criminal Procedure allow a motion to suppress to be made at any time after indictment.  This motion came before the trial court during the trial of the case. The trial court should have granted the motion and suppressed the evidence seized at the residence.  The trial court erred in not granting the motion to suppress.  This prejudiced McCullough

The second issue concerns error by the trial court in denying McCullough's motion for judgment of acquittal.  The evidence complied against McCullough amounted to accomplice testimony.  The trial court erred by denying the motion for judgment of acquittal to the prejudice of McCullough.

This Honorable Court is given the duty and responsibility to review the record on appeal and to reverse the decision of the trial court if prejudicial error is found and McCullough was not given a fair trial.

## SUMMARY OF THE ARGUMENT

Christopher McCullough appeals from the Circuit Court of Chambers County, Alabama, case no. CC-2002-189. McCullough was indicted on the charges of burglary in the first degree, theft of property in the first degree and receiving stolen property in the second degree.  He was convicted of the charges of burglary in the first degree and theft of property in the second degree.  He was acquitted on the charge of receiving stolen property in the second degree.

The issues presented on appeal concern error by the trial court in denying a motion to suppress and a motion for judgment of acquittal.  McCullough argues that the trial court erred by denying the motion to suppress the unlawful, non-exigent, non-consensual search of a residence and the evidence gathered from the search.

A motion to suppress may be made at any time after indictment.  The motion was raised on the grounds that the Lanett Police Department did not have a search warrant to enter the residence located at 1108 East 1st Avenue, Lanett. McCullough argues that there was no exception that would justify a warrantless search in this matter.  The six exceptions are: plain view, with voluntary, intelligent and knowingly given consent, incident to a lawful arrest, hot

9

pursuit or emergency situations, exigent circumstances, and stop¹ and frisk situations. None of these exceptions are found in this case.

The testimony of Norris showed him living at an address in LaFayette and at the house in Lanett. The testimony of McCullough showed him living at his girlfriends, another address at the top of his unsigned statement and at the house that was searched in the body of his statement. There was no direct evidence that would show consent was given to search the residence by Norris, McCullough or the lawful owner of the house. Further, there was evidence of a telephone bill of McCullough's that listed the residence searched as his residence.

There is enough confusion concerning the 1108 East 1st Avenue, Lanett address and who might or might not have been living there. The best thing to have been done in this situation was to request a search warrant for this residence. This was not done. The trial court erred by not granting the motion to suppress. This error should be corrected. McCullough requests this Honorable Court to remand this matter to the trial court with instructions to acquit him of the charges of which he was convicted and have him released from custody immediately.

The second issue on appeal in this matter concerns the lack of corroboration linking McCullough with the offenses

charged. McCullough argues that there was not sufficient evidence presented in the trial of this case to link him to the crimes committed.

The State had the co-defendant, Billy Norris, testify. His testimony was a recital of the details of the crimes. His testimony must be subtracted from the evidence. Norris and McCullough each testified that they had known each other for some time. This does not form the link needed. The State tries to link McCullough by the two pistols found in the car. This also is insufficient. The State wants to use the residence at 1108 East 1st Avenue as a link. This fails. Another attempt is the statement of McCullough. However, an involuntary statement is not sufficient.

The case of the State raises suspicion, conjecture, and surmise. However, these concepts are not enough to link McCullough with the crimes charged.

McCullough argues that the trial court committed reversible error by not granting his motion for judgment of acquittal. McCullough requests this Honorable Court to correct this error and to remand this matter to the trial court with instructions to acquit him of the charges and to release him immediately.

60). Defense counsel had not had an opportunity to view the videotape that was about to be played before the jury. The trial court tried to remedy the situation by recessing the trial to allow defense counsel an opportunity to view the two videotapes to be presented by the State. After viewing the videotapes, defense counsel raised a motion to suppress the videotape of the residence located at 1108 East 1st Avenue, Lanett, and the evidence received from the search of the residence. (R-61-62).

Defense counsel raised the motion to suppress on the grounds that the Lanett Police Department did not have a search warrant to enter the house. The District attorney's office responded to the Motion stating that "any motion along this line would be required to be filed pre-trial, which was not done in this case. And, second, I'm not sure that either --Well, I'm not sure that Mr. McCullough, the defendant in this case, would have standing to challenge the search." (R-62). The State goes own to argue that the house was abandoned. However, defense counsel argues that the videotape just viewed had a telephone bill of McCullough's in the car for that address. (R-63).

The State goes on to argue that the co-defendant, Billy Norris, was living at the residence and that the residence is vacant. (R-64). The State argues this position to circumvent the need for a search warrant. This argument is

13

not credible. The residence where the evidence was located is at 1108 East 1st Avenue, Lanett, Alabama. Norris testified he was living at 5255 County Road 32, Lafayette, Alabama at the time of his arrest. (R-78). McCullough testifies that he was staying at 1517 North 6th Avenue, Lanett, Alabama with his girlfriend. (R-113). However, in the unsigned statement of McCullough, he mentions: "We went to my house." (C-41). (R-101). Also, the statement gives another address for McCullough. The trial court errs when it denies the Motion to Suppress. (R-64).

The States argument concerning the failure of defense counsel to timely file the Motion to Suppress must fail. Rule 3.13(b), Alabama Rules of Criminal Procedure, states that a motion to suppress may be made at any time after indictment. An objection to illegally seized evidence as in the present case was made by a motion to suppress during the trial when the evidence is offered. Defense counsel had a duty to raise the motion to suppress the evidence at the time the videotape was offered into evidence. The State's argument of the timeliness of the motion to suppress at the trial of the case is of no consequence. The Rules of Criminal Procedure allow this motion to be presented at any time after indictment, even during the trial. Therefore, the first response of the State at trial must fail.

The second argument of the State was on the issue of

14

standing to bring the motion to suppress. Citizens are entitled to be free from unreasonable searches and seizures, and the law prefers a warrant, but warrantless arrests and searches are justified if one of the six exceptions to the warrant requirement is present. The six exceptions are as follows:

1.  In "plain view."

2.  With "consent," voluntarily, intelligently and knowingly given.

3.  As "incident to a lawful arrest."

4.  In "hot pursuit" or "emergency" situations.

5.  Where "exigent circumstances" exist coincidental with "probable cause."

6.  In "stop and frisk" situations.

Daniels v. State, 290 Ala. 316, 276 So. 2d 441 (1973).

In the present case, there is no exception that would release the State from obtaining a search warrant. The search of the residence is not in plain view as the house is some distance from the felony vehicle stop. The search is not incident to a lawful arrest, as there was a period of time that elapsed between the arrest and the search of the residence. There was sufficient time to transport Norris and McCullough to the Lanett Police Department and question Norris. The police officer went to the residence at a later time. (R-58). The police officers were not in hot pursuit or

in an emergency situation. This was not a stop and frisk situation.

The State would argue that there are two possibly three exceptions that could release them from obtaining a search warrant. These exceptions would be the consent exception and the exigent circumstance exception. The consent exception may offer the most hope to the State. Billy, Norris, the co-defendant, tells the police officers where to find a rifle and a knife that was taken from the residence of John Burton, the victim. (R-77). Norris does not know the address, but does give directions to 1108 East 1st Avenue, Lanett. In his testimony, he did know his address as 5255 County Road 32, Lafayette. The question posed to him concerned where he was living prior to the time of his arrest. (R-70). Lanett Police Officer Robby Bettis was given directions to go to the residence on 1st Avenue by Detective Lincoln Whaley after Norris was questioned. (R-58-59). Norris, in the cross-examination by defense counsel, was asked "You were living in a vacant house, right?" Norris answered "Yes. It was -- Yes, they said it was vacant. I was there, though." (R-78). Later in his testimony, Norris was asked "That rifle ended up in your vacant house, didn't it?" He answered "Yes." (R-82). This is enough to show that the house was not vacant. The State should have had a search warrant issued for the residence.

Officer Bettis was questioned in his testimony "Was this house occupied?" His response was: "The power was shut off to the house." He did not answer the question as posed. He did not answer whether the house was occupied or not.

Christopher McCullough testified on his own behalf during the trial. He gave his girlfriend's address as 1517 North 6th Avenue, Lanett. He testified that he was staying with his girlfriend. (R-113-114). He testified that Norris was staying in the vacant house. (R-122). The address on the top of the statement of Christopher McCullough is 604 S. 1st Avenue, Lanett, Al. (C-41). However, in the body of the statement, there is written: "After we left we went to my house and left all the guns there." (C-41). McCullough claimed that Lieutenant Carter had written the statement for him prior to his entering the room.

There is enough confusion here to question a voluntary consent to search the residence located at 1108 East 1st Avenue and a warrantless search of that residence. The State never questions Norris concerning the consent to search. It is not determined if the consent was voluntarily, intelligently, and knowingly given. There is only testimony that directions to the residence were given by Norris. For these reasons alone, the trial court erred in not granting the defense motion to suppress the search and seizure of the evidence located at 1108 East 1st Avenue,

Lanett.

The second exception for warrantless searches is where there are exigent circumstances. Exigent circumstances usually involve movable objects. Chambers v. Maroney, 399 U> S> 42, 90 S> Ct. 1975, 26 L> Ed. 419 (1970). There is no testimony by anyone in the trial of this case that shows any exigent circumstances to cause a warrantless search. There is no reason to show why the State did not contact the owner of the residence and request permission to search the residence. There is no reason the State did not request a search warrant to enter the residence.

The State could make a third argument for a warrantless search in that the house was vacant. Yet, the testimony of Norris, Bettis, and McCullough show that the residence was being used for some purpose. Norris testified that he was using the house. (R-78). The telephone bill of McCullough, found in the car at the time of the felony stop, was enough to show that McCullough had a possessory interest in the residence. If anyone was to be asked for consent to search the residence, it should have been McCullough. McCullough did not give consent to anyone to search the residence. Nor does it appear that anyone requested his consent. There is no testimony by Norris to show consent to search the residence. The State can not rely on the theory of a vacant house and the fact that Norris gave them directions to the

residence and told them there was a rifle and knife at the house as exigent circumstances to search a residence. The State is trying to make out a case for implied consent. This is a direct contradiction. Then there is the telephone bill of McCullough thrown into this mess. This telephone bill was found in the car at the felony stop sometime before the search of the residence. The police officers could have sent someone to the residence to watch while a search warrant was prepared. The State should have shown restraint and requested a search warrant to enter the residence.

Under the circumstances set out in the present matter, the trial court erred by not granting the defense counsel's motion to suppress. McCullough requests this Honorable Court to reverse the conviction of the trial court and to remand this matter to the trial court with instructions for the trial court to acquit him of the charges of burglary in the first degree and theft of property in the second degree.

ISSUE II

DID THE TRIAL COURT ERR BY DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL DUE TO LACK OF CORROBORATIVE EVIDENCE LINKING McCULLOUGH TO THE CRIME?

YES.

The trial court erred by not granting McCullough a judgment of acquittal. The trial counsel requested the court to grant a judgment of acquittal at the end of the State's case and at the end of the Defendant's case. (R-110/127). A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or circumstances thereof, it is not sufficient. Section 12-21-222, Code of Alabama, 1975.

The State felt that putting Norris on the stand to testify against McCullough would strengthen its credibility. Norris had entered into a negotiated plea of guilty. He received a 24-year sentence and agreed to testify against his co-defendants. In his testimony, Norris only gave details of the crime he committed. In Reed v. State, 407 So. 2d 153 (Ala. Crim. App. 1980), rev'd on other grounds,

407 So. 2d 162 (Ala. 1981), the Court stated that mere recitation of details of crime is insufficient if it fails to connect accused with offense.

Steele v. State, 512 So. 2d 142 (Ala. Crim. App. 1987), states as follows:

"The test for determining the sufficiency of the corroborative evidence of the testimony of an accomplice is through a 'subtraction process'. The test is generally stated:

[F]irst, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration...."

Justice McMillan further writes:

"The corroboration, which is sufficient to support the accomplices' testimony, must be of some fact tending to prove the guilt of the defendant.

"It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt...."

[E]vidence, which merely raises a conjecture, surmise, speculation, or suspicion that accused, is the guilty person is not... sufficiently corroborative of the testimony of an accomplice to warrant a conviction."

21

The corroboration of an accomplice when necessary is not sufficient if it merely shows the commission of the offense or the circumstances thereof, or that the accomplice and the defendant are acquainted or connected. There must be independent evidence supporting the testimony of an accomplice or tending to confirm him, which must be of a substantive character and must tend to connect the defendant with the commission of the crime charged or to identify him as the guilty person, and which is inconsistent with his innocence. It has been stated that the proper test in determining whether there has been sufficient corroboration of the testimony of an accomplice, according to statutory requirements is first to eliminate the evidence of the accomplice and then if upon examination of all other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. Smith v. State, 223 So. 2d 605 (Ala. 1969), Miller v. State, 290 Ala. 248, 275 So. 2d 675 (1973). If the testimony of Norris is eliminated, there was insufficient evidence to convict McCullough of the charges against him.

Norris and McCullough testified that they had known each other for some time. (R-71). (R-114-115, 119-120). The testimony of Norris was a recital of the events of the burglary. This does not present sufficient corroboration to

connect McCullough with the commission of a burglary and theft of property.

In the present case, the State attempts to present enough corroboration to connect McCullough with the commission of the crimes of burglary, theft of property and receiving stolen property through the testimony of Billy Norris, an accomplice. If this testimony is excluded, as the test requires, there is no evidence linking McCullough to the crimes. There must be independent evidence that would link McCullough to the crimes.

Corroborative evidence is not sufficient if it requires any of the accomplice's testimony to form the link between the defendant and the crime. McCoy v. State, 397 So. 2d 577 (Ala. Crim. App.), cert. denied, 397 So. 2d 589 (Ala. 1981). In the present case, the State did not have any corroborating evidence to link McCullough with the crimes. There is no evidence to show McCullough had any participation in the offenses other than the testimony of Norris, an accomplice. In Leonard v. State, 43 Ala. App. 454, 192 S. 2d 46 (1966), this Court stated that merely being at or near the scene of a crime without raising the hue and cry does not make a man either principal or accessory to that crime. In Radke v. State, 292 Ala. 290, 293 So. 2d 314 (1974), the mere presence at the scene of the crime, without more, cannot make an accused a party

to the crime.

In Leonard v. State, 43 Ala. App. 454, 192 So. 2d 46 (1966), if the evidence of the defendant's guilt in a felony case consist solely of the testimony of a witness whom the undisputed evidences shows to be an accomplice, the judge cannot submit the felony charge to the jury.  The trial court committed reversible error by allowing the felony charges of burglary, theft of property and receiving stolen property to be submitted to the jury.  The trial court should have granted the defense request for judgment of acquittal.

The State must show that Norris was an accomplice in the crimes of burglary, theft of property and receiving stolen property.  In Jacks v. State, 364 So. 2d 397 (Ala. Crim. App.), cert. denied, 364 So. 2d 406 (Ala. 1978).  "An accomplice is defined as an associate in crime; a partner or partaker in guilt."  In Cooper V. State, 43 Ala. App. 385, 191 So. 2d 224 (1966), "The usual test of whether one is an accomplice of an accused on trial is whether he could be prosecuted and punished for the crime with which the accused is charged."  Norris testified that he entered a plea of guilty and received a 24-year sentence.  (R-70-71).  There is no doubt that Norris is an accomplice in that he was a named co-defendant in two counts of the indictment against McCullough.

24

The State would argue that there is sufficient evidence, without the testimony of Norris, to link McCullough to the crimes. The State would have the Court believe the two pistols found in the back compartment of the car McCullough was driving is sufficient to link him to the crimes. It does not. Evidence of the defendant's possession of property stolen at the time of the offense may be insufficient to corroborate an accomplice's testimony. Holt v. State, 383 So. 2d 895 (Ala. Crim. App.) cert. denied, 383 So. 2d 897 (Ala. 1980). McCullough testified that he had allowed Norris to use his car on many occasions. (R-115 and 116). This is sufficient to show that Norris could have used McCullough's car and hid the two pistols in the back compartment. This raises the question of how the two pistols were placed in the back compartment of the car. Norris does not testify to placing them there. In the unsigned statement of McCullough, all of the guns were taken to the residence. (C-41). Also, the only testimony concerning McCullough taking the two pistols comes from Norris. (R-73).

The State would argue that the evidence found at the residence located at 1108 East 1st Avenue is sufficient to link McCullough to the crimes. This argument must fail. In prosecution for burglary, testimony that stolen items were found at place where accomplice testified that he and

defendant hid them was held as not sufficient corroboration. <u>Lucious v. State</u>, 38 Ala. App. 484, 87 So. 2d 659 (1956).

Another argument of the State would be the statement of McCullough. McCullough signed his Waiver of Rights form. (C-40). This was brought out in the testimony of Detective Jeff Blackstone, Chambers County Sheriff's Department. (R-87-90). However, he did not sign his statement as was testified by Lieutenant Richard Carter, Lanett Police Department. (R-98-101). McCullough, in his testimony, stated that Lieutenant Carter had the statement ready for his signature when he entered the room. (R-117-118). McCullough told detective Carter "he could keep it." Referring to the statement. (R-118). This Court has found in <u>Jacks v. State</u>, 364 So. 2d 397 (Ala. Crim. App.) cert. denied, 364 So. 2d 406 (Ala. 1978), and in <u>Chambers v. State</u>, 497 So. 2d 607 (Ala. Crim. App. 1986), that "Voluntary confession by accused may constitute sufficient corroboration of an accomplice to authorize a conviction." In the present case, we do not have a voluntary confession. We have a signed Waiver of Rights form. (C-40). We have an unsigned statement. (C-41). We have the testimony of McCullough stating that the statement was prepared prior to his entering the room.

There is no corroborating evidence that would tend to link McCullough to the crimes. The evidence presented

the trial of this matter by the State raises only conjecture, surmise and suspicion. McCullough should have been granted the motion for judgment of acquittal. McCullough now looks to this Court to correct the error committed by the trial court. McCullough requests this Honorable Court to reverse the decision of the trial court and to remand this matter to the trial court with instructions to acquit him of the charges of burglary in the first degree and theft of property in the second degree.

27

CONCLUSION

Christopher McCullough appeals from convictions in the Circuit Court of Chambers County, Alabama. McCullough was convicted by a jury of the crimes of burglary in the first degree and theft of property in the second degree. The theft of property in the second degree was a lesser-included offense to the charge of theft of property in the first degree as in the indictment. McCullough was acquitted of the charge of receiving stolen property in the second degree.

The First issue on appeal is whether the trial court committed error by denying the defense counsel's motion to suppress the search of the residence located at 1108 East 1st Avenue, Lanett, and the evidence seized as a result of the search.

McCullough argues that the six exceptions to a search warrant do not exist in the present case. The State would argue that there was consent to the search. They would argue that the consent was voluntarily, intelligently and knowingly given. The State would also argue exigent circumstances existed for a warrant less search. The State would also argue a third reason for the warrantless search being the residence was vacant.

All of these exceptions fail. There is conflicting testimony and evidence as to who was living at the residence

or if the residence was vacant. Billy Norris testified that he was at the residence. In the unsigned statement attributed to Christopher McCullough, there is a mention that "we went to my house." Norris gave an address in LaFayette as where he was living prior to his arrest. McCullough gave his girlfriends address as the place he was staying. There was a telephone bill found in the car at the felony stop with McCullough's name on it and the address of the residence where the stolen items were found.

The State did not show  consent from anyone to search the residence. The testimony was that Norris gave them direction to the residence and told them what items would be found there. McCullough had some possessory interest in the residence searched, because of the telephone bill and the mention of the residence being his house in his unsigned statement. McCullough did not give consent to search the residence. There was no attempt to find the actual owner of the residence to obtain his consent to search the residence.

There was testimony from Officer Bettis that there was no power to the house. He did not answer the question posed concerning whether the residence was occupied. The State could have prepared a search warrant to enter the residence. The trial court erred by denying the defense motion to suppress the search of the residence and the seized items.

The Second issue on appeal concerns error by the trial

court denying the motion for judgment of acquittal due to lack of corroborative evidence linking McCullough to the crimes.   The State attempted to use the testimony of the accomplice, Billy Norris, to link McCullough to the commission of the crimes.   The law is well settled that the testimony of an accomplice is not sufficient corroboration if it merely recites the facts of the crime.    In this case, the testimony of Norris was a recitation of the facts of the crime.   There was no supportive evidence to link McCullough to the commission of the crimes.

The State tries to link McCullough by the two pistols found in the back compartment of the car.   The only evidence to show that McCullough had the two pistols comes from Norris.   McCullough testified that he allowed Norris to use his car several times.    This does not give rise to sufficient corroboration.

The State attempts to corroborate the testimony from the items seized at the residence.   This argument fails in that the evidence seized is only the items that Norris admitted to taking from the victim's home.

The final attempt at corroboration from the State comes from the unsigned statement of McCullough.   The testimony of Lieutenant Carter and McCullough are at odds over the statement.   McCullough testifies that the statement was written prior to his entering the room.   He did not sign the

statement.

The State fails in all its attempts to corroborate the testimony of Billy Norris.  There is no independent evidence to link McCullough to the crimes of burglary and theft of property.

The trial court committed reversible error by denying the motion to suppress and by denying the motion for judgment of acquittal.  Christopher McCullough requests this Honorable Court to reverse the convictions for burglary in the first degree and theft of property in the second degree and to remand these matters to the Circuit Court of Chambers County with instructions to release him immediately.

31

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing documents has been served upon the following counsel of record, either by hand delivery or by placing same in the U.S. mail postage prepaid and properly addressed, this the __19__ day of __June__, 2002.

Office of the  Attorney General

Criminal Appeals Division

11 South Union Street

Montgomery, Alabama 36130


Honorable Bill Lisenby

Assistant District Attorney

Fifth Judicial Circuit

Chambers County Courthouse

LaFayette, Alabama 36862


Circuit Clerk of Chambers County

Chambers County Courthouse

LaFayette, Alabama 36862


Roland L. Sledge

Attorney for Appellant

SUMMARY OF RULINGS AND ACTIONS ADVERSE TO APPELLANT

Record Page No.                          Summary.

P. 60/61                 Objection/Motion to Suppress.

P. 64                    Overrule of Objection and Motion
                         to Suppress.

P. 81                    State's Objection/Sustained.

P. 105                   State's Objection/Sustained.

P. 110                   Motion for Acquittal/Denied.

P. 127                   Renewed Motion for Acquittal/Denied.

P. 160                   Application for Probation/Denied.
                         (Burglary Conviction).

P. 161                   Application for Probation/Denied.
                         (Theft of Property Conviction).

No. CR-02-9443

In the *COURT of CRIMINAL APPEALS of ALABAMA*

◆

CHRISTOPHER C. MCCULLOUGH,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

◆

*On Appeal from the Circuit Court of Chambers County (CC-2002-189)*

**BRIEF OF APPELLEE**

William H. Pryor Jr.
*Attorney General*

P. David Bjurberg
*Assistant Attorney General*

Marc A. Starrett
*Assistant Attorney General*
Counsel of Record*

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300*

July 16, 2002



## STATEMENT REGARDING ORAL ARGUMENT

The State of Alabama does not request oral argument, because the issues before this Court are adequately briefed and the Court's decisional process would not be significantly aided by oral argument. <u>Ala.R.App.P.</u> Rule 34 (a)(3).

**TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT......................... i

TABLE OF CONTENTS........................................ ii

TABLE OF AUTHORITIES.................................... iii

STATEMENT OF THE CASE..................................... 1

STATEMENT OF THE ISSUES.................................. 3

STATEMENT OF THE FACTS................................... 4

STANDARDS OF REVIEW...................................... 9

SUMMARY OF THE ARGUMENT................................. 11
ARGUMENT

    I.  The Trial Court Did Not Err In Denying
    McCullough's Motion To Suppress Evidence Stemming
    From The Search Of The 1108 East Avenue House,
    Because McCullough Did Not Have Standing To
    Contest That Search. .............................. 12

    II.  McCullough Has Failed To Preserve His
    "Insufficient Corroborative Evidence" Argument For
    Appellate Review ................................... 17

CONCLUSION.............................................. 18

CERTIFICATE OF SERVICE................................. 19

## TABLE OF AUTHORITIES

**Cases**

Crowder v. State,
  448 So. 2d 507 (Ala. Crim. App. 1984) ................. 18

Burton v. State,
  651 So. 2d 641 (Ala. Crim. App. 1993). ................ 14

Campbell v. State,
  709 So. 2d 1329 (Ala. Crim. App. 1997), .............. 15

Curry v. State,
  601 So. 2d 157 (Ala. Crim. App. 1992 .................. 14

McGowan v. MaAryland,
  366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed.2d 393 (1961). ... 14

Rakas v. Illinois,
  439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). .. 15

Smith v. State,
  745 So. 2d 922 (Ala. Crim. App. 1999) ................. 16

U.S. v. Handley,
  763 F.2d 1401 (11ᵗʰ Cir. 1985) ........................ 16

United States v. Meyer,
  656 F. 2d 979 (5th Cir.1981) .......................... 15

Ward v. State,
376 So. 2d 1112 (Ala. Crim. App. 1979).................. 17

Williams v. State,
  497 So. 2d 1142 (Ala. Crim. App. 1986) ............. 14, 18

Williams v. State,
  710 So. 2d 1276 (Ala. Crim. App. 1996). ............... 14

## STATEMENT OF THE CASE

Christopher C. McCullough appeals from his November 7, 2002 convictions and corresponding sentences following a jury trial in Chambers County Circuit Court before the Honorable Circuit Judge Tom F. Young, Jr. on the charges of burglary in the first degree and theft of property in the second degree. (C. 42-45, R. 150-152) The jury found McCullough not guilty on the charge of receiving stolen property in the second degree.  Id.  The Fall 2002 session of the Chambers County Grand Jury indicted McCullough on the charges of first degree theft pursuant to Ala. Code (1975) § 13A-8-3, first degree burglary pursuant to Ala. Code (1975) § 13A-7-5 (C. 22), and second degree receiving stolen property pursuant to Ala. Code (1975) § 13A-8-18. (C. 33)  The charges arose from a burglary committed by McCullough and a co-conspirator, Billy Norris, who was also indicted by the grand jury and who testified against Norris at trial.  (C. 33, R. 70)

The trial court adjudicated McCullough guilty in accordance with the jury's verdicts on the charges of first-degree burglary and second degree theft.  (C. 45) After reviewing McCullough's lengthy criminal record (C.

45, 49-50), McCullough was sentenced under the Alabama
Habitual Felony Offender Act to concurrent terms of fifteen
years' imprisonment on the first degree burglary charge and
ten years' imprisonment on the second degree theft charge.
(C. 54, 55, R. 155-156)  McCullough was also ordered to pay
$1,475 in restitution, attorney fees, and a sum of $100 in
victim's compensation assessments. (C. 54, 55, R. 158-161)
This appeal followed.  (C. 57-58)

## STATEMENT OF THE ISSUES

1.  Did the trial court err in denying McCullough's motion to suppress evidence stemming from the search of the house at 1108 East Avenue, when McCullough did not have standing to contest that search?

2. Has McCullough failed to preserve his "insufficient corroborative evidence" argument for appellate review?

## STATEMENT OF FACTS

At approximately 6:45 a.m. on March 13, 2002, John Burton left his home at 7146 Country Club Road in Lanett, Alabama, and he returned that evening at approximately 7:00-7:30 p.m. (R. 48) Upon his return, Burton noticed that the rear door to his home had been "kicked in" and broken. (R. 49, 51) When Burton entered his home he found that his King Cobra .357 pistol, Smith and Wesson 9 mm. pistol, Ruger 10-22 rifle, pocket knives, and $30-$40 in change were missing. (R. 49-51) Burton valued the pistols at approximately $375 and $550 each, the rifle at $550, and the knives at approximately $75. (R. 50-52) Burton had given permission to no one to enter his home, and did not know Christopher McCullough. (R. 53)

On March 19, 2002, City of Lanett Police Department Lieutenant Robby Bettis responded to a call and drove to an area near Lanett's Hillcrest Cemetery, where he observed a vehicle on a road near the "deepest part of the cemetery." (R. 56, 57) Because he believed the occupants of the vehicle to be armed and dangerous, Bettis conducted a felony stop, ordering the driver and passenger the leave their vehicle at gunpoint. (R. 57) Christopher McCullough

4

was driving the vehicle, a Ford Mustang, and Billy Norris was his passenger. (R. 57-58, 95) City of Lanett Police Department Lieutenant Richard Carter and Detective Lincoln Whaley soon arrived at the scene. (R. 58, 95) Lieutenant Carter found pistols in a compartment behind the vehicle's rear seat, and videotaped the weapons inside the vehicle; the videotape was later played for McCollough's jury. (R. 95, 97)

Norris informed the police that a stolen rifle could be found at an abandoned house in Lanett, and an item in McCullough's vehicle listed that address. (R. 77, 59) Norris lived at the home. (R. 78, 82) Lieutenant Bettis then went to the house, located at 1108 East Avenue in Lanett, to search for evidence. (R. 58-59) When Lieutenant Bettis arrived, he found that electrical service to the house had been shut off, there was no telephone, and the house was vacant; its door was ajar. (R. 59, 67-68) He found a rifle and a knife that had been stolen during the burglary of Burton's home. (R. 59, 66) Lieutenant Bettis videotaped the home, and the videotape was later played for McCullough's jury. (R. 59, 65-66) Detective Whaley also

5

investigated the 1108 East First Avenue house after Norris
gave him directions to the house. (R. 83, 84)

Norris, a close friend of McCullough, pleaded guilty to
the burglary of Burton's home and testified at McCullough's
trial. (R. 70-71, 78, 80)  Norris described how he and
McCullough broke into Burton's home after they parked
McCullough's vehicle in a nearby wooded area (R. 71-73):

> "You know, I took a .22 Ruger rifle that was
> standing on the corner of the wall. I took
> that and a couple of pocketknives.  And Mr.
> McCullough went to another portion of the
> house.  And, like I said, it was that quick,
> he came out and he had two pistols, two
> pistols.  And then we just left."

(R. 73)  As noted above, when they were later stopped by
Lieutenant Bettis, the pistols that McCullough took from
Burton's home were found in his Mustang vehicle.  (R. 77)
Norris gave the location of the rifle to the police: it was
"[a]t a house on Kroger block they call it.  Over by Kroger
in Lanett in a house over there."  (R. 77)  Norris stated
that he lived in that house:  "they said it was vacant.  I
was there, though."  (R. 78, 82)  "I told them where all of
it was."  (R. 77)

Chambers County Sheriff's Department Investigator Jeff
Blackston informed McCullough of his rights pursuant to

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) (R. 86, 88-89),

and McCullough thereafter issued the following written

statement:

> "Me and Billy parked about 3 miles from the
> house and walked through the woods to the back
> of the house.  We went to the back door then
> Billy went around to the front, I followed
> him.  He tried to kick the door in but the
> lock was too strong.  Then we went back to the
> back door and Billy kicked it open.  We went
> in and searched the house but wasn't nothing
> there except for the rifles and two pistols.
> The only things I took was the two pistols.
> Billy took a rifle, it was a .22 Ruger, a
> bunch of pocket knives and a jar of change.
> We were in the house for about five minutes.
> It was evening time when we went in.  It was
> before dark.  After we left we went to my
> house and put all the guns there."

(C. 41, R. 101)  McCullough read the statement and stated

that it was correct, but refused to sign it. (C. 41, R.

101-102)

McCullough testified at his trial.  (R. 113)  He stated

that he lived in Lanett at 1517 North Sixth Avenue with his

girlfriend and son, while Norris "was staying in that

vacant house." (R. 113, 120, 122)  McCullough denied any

knowledge of the Burton burglary, and stated that it was

possible that Norris borrowed his vehicle on March 13,

2002.  (R. 115-116, 118)  McCullough also denied having

issued the statement to the police regarding the burglary.
(R. 118)

As noted in the Statement of the Case, the jury found
McCullough guilty of burglary in the first degree and the
lesser included offense of theft of property in the second
degree, and found him not guilty on the charge of receiving
stolen property in the second degree. (C. 42-45, R. 150-
152)  The trial court sentenced McCullough under the
Alabama Habitual Felony Offender Act to concurrent terms of
fifteen years' imprisonment on the first degree burglary
charge and ten years' imprisonment on the second degree
theft charge.  (C. 54, 55)  McCullough was also ordered to
pay $1,475 in restitution, attorney fees, and a sum of $100
in victim's compensation assessments. (C. 54, 55, R. 158-
161)  This appeal followed.  (C. 57-58)

## STANDARDS OF REVIEW

1.  When this Court reviews a trial court's ruling on a motion to suppress, it "makes all the reasonable inferences and credibility choices supportive of the decision of the trial court." Kennedy v. State, 640 So.2d 22, 26 (Ala. Crim. App. 1993).  The trial court's ruling on a motion to suppress will not be disturbed unless it is "palpably contrary to the great weight of the evidence." Parker v. State, 587 So. 2d 1072, 1088 (Ala. Crim. App. 1991); Rutledge v. State, 680 So.2d 997, 1002 (Ala. Crim. App. 1996). The trial court is vested with broad discretion in its decision to admit or to exclude evidence, and this Court will not reverse the trial court's decision absent an abuse of discretion. City of Birmingham v. Moore, 631 So. 2d 972, 974 (Ala. 1994) (citing Eason v. Comfort, 561 So. 2d 1068, 1072 (Ala. 1990).  A party must have standing to assert a motion to suppress evidence. Burton v. State, 651 So. 2d 641, 650 (Ala. Crim. App. 1993).

2. Accomplice testimony must be corroborated, but that corroborative evidence need not be strong or even sufficient by itself to support a conviction.  Ala. Code (1975) § 12-21-222; Johnson v. State, 820 So. 2d 842, 869

9

(Ala. Crim. App. 2000). This issue must be first presented to the trial court, however, or it is not preserved for this Court's review. <u>Williams v. State</u>, 497 So. 2d 1142, 1145 (Ala. Crim. App. 1986).

## SUMMARY OF THE ARGUMENT

1.  McCullough did not have standing to contest the search of his co-conspirator's residence; therefore, the trial court did not err in denying his motion to suppress evidence stemming from the search of that residence.

2.  McCullough argues on the appeal that the State did not corroborate the testimony of his co-conspirator; however, he did not preserve this issue for this Court's review.

For these reasons, the trial court's judgment is due be affirmed.

**ARGUMENT**

I.   **The Trial Court Did Not Err In Denying McCullough's Motion To Suppress Evidence Stemming From The Search Of The 1108 East Avenue House, Because McCullough Did Not Have Standing To Contest That Search.**

McCullough first argues that the trial court erred in its denial of his motion to suppress the State's evidence stemming from the police officers' warrantless search of the house at 1108 East Avenue.  Appellant's Brief 12-19; (R. 61-65)  As noted in the Statement of the Facts, the police found a rifle and a knife stolen from John Burton's home at the house, and a videotape of the house was played for the jury during McCullough's trial. (R. 59, 65-66)

Billy Norris informed the police that a stolen rifle could be found at an abandoned house in Lanett, and gave the location of the rifle to the police: it was "[a]t a house on Kroger block they call it.  Over by Kroger in Lanett in a house over there."  (R. 77) An item in McCullough's vehicle also listed the house's address.  (R. 59)  Lieutenant Bettis then went to the house, located at 1108 East Avenue in Lanett, to search for evidence. (R. 58-59) The electrical service to the house had been shut off, there was no telephone, and the house appeared to be

vacant; its door was ajar.  (R. 59, 67-68)  He found a
rifle and a knife that had been stolen during the burglary
of Burton's home.  (R. 59, 66) Norris testified that he was
living in the "abandoned" house:  "they said it was vacant.
I was there, though." (R. 78, 82)  Norris "told them where
all of it was."  (R. 77)  McCullough, however, testified
that he (McCullough) lived in Lanett at 1517 North Sixth
Avenue with his girlfriend and son, and that it was Norris
who "was staying in that vacant house[,]"  (R. 113, 120,
122):

> "THE STATE: ...The address that you gave on
> North Sixth Avenue, were you living there with
> anyone?
>
> "THE DEFENDANT:  Living with who?
>
> "THE STATE:  Were you living with anyone?
>
> "THE DEFENDANT:  Yes.
>
> "THE STATE:  Who was that?
>
> "THE DEFENDANT:  My girlfriend.
>
> "THE STATE:  Was there anyone else living
> there?
>
> "THE DEFENDANT:  My little son.
>
> "...
>
> "THE STATE:  ... Now, Mr. Norris, was he
> living there in this house with you?

"THE DEFENDANT:  No.

"THE STATE:  Well, you said he had no job and
he had no housing, but whatever was yours was
his.  But he wasn't living there?

"THE DEFENDANT:  He was staying in that vacant
house."

(R. 121-122)

"When a motion to suppress evidence in a criminal case
is based on the ground that the evidence was obtained in
violation of the Fourth Amendment, one issue is whether the
movant has standing to assert the claim and to seek the
remedy of exclusion."  Burton v. State, 651 So. 2d 641, 650
(Ala. Crim. App. 1993).  McCullough possessed no standing
to challenge the search of the house at 1108 East Avenue;
therefore, the trial court did not err in denying his
motion to suppress the evidence stemming from that search.

"The general rule is that a defendant has standing to
challenge the admission of evidence only if the defendant's
constitutional rights have been violated."  Williams v.
State, 710 So. 2d 1276, 1311 (Ala. Crim. App. 1996). "It is
well-settled that 'a litigant may only assert his own
constitutional rights or immunities.'" Curry v. State, 601
So. 2d 157, 160 (Ala. Crim. App. 1992), citing McGowan v.
Maryland, 366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393

(1961).  As noted above, Norris testified that he -- not McCullough -- lived in the 1108 East Avenue house, and McCullough testified that he (McCullough) resided with his girlfriend and son at 1517 North Sixth Avenue.  (R. 113, 120, 122)  McCullough thus had no expectation of privacy in the house.

"'A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Campbell v. State, 709 So. 2d 1329, 1332-1333 (Ala. Crim. App. 1997), citing Rakas v. Illinois, 439 U.S. 128, 134, 99 S. Ct. 421, 425, 58 L. Ed. 2d 387 (1978). "'A defendant must also establish a legitimate expectation of privacy in the particular area searched in order for a Fourth Amendment challenge to be allowed.'" Campbell v. State, 709 So. 2d 1329, 1333, citing United States v. Meyer, 656 F. 2d 979, 981 (5th Cir.1981) (emphasis in original).

In Campbell, the appellant was found guilty of second-degree theft after he stole a television from a Decatur home furnishings store.  709 So. 2d 1329, 1331.  The

television was later discovered in the home of another man, who consented to the police's search of his home.  Id. This Court held that the appellant had no standing to contest the search of the residence where the television was found. Because he "failed to establish a legitimate expectation of privacy in the area searched[,]" the appellant "did not have standing to challenge the search of [the other man's] house, and [the] evidence seized during the search was properly admitted."  709 So. 2d 1329, 1333. See also Smith v. State, 745 So. 2d 922, 931 (Ala. Crim. App. 1999)(citing Rakas, and holding that appellant did not have standing to challenge the search of another's home because he did not demonstrate a proprietary or possessory interest in the property searched in order to substantiate a legitimate expectation of privacy).  Cf. Williams v. State, 710 So. 2d 1276, 1311 (defendant held no standing to challenge voluntariness of another witness's statement); Curry v. State, 601 So. 2d 157, 160-161 (defendant held no standing to challenge co-defendant's testimony on the basis of self-incrimination); U.S. v. Handley, 763 F.2d 1401, 1404-1405 (11th Cir. 1985) (holding that "[c]oconspirators and codefendants have been accorded no special standing[.]"

Because McCullough demonstrated no expectation of privacy in the house at 1108 East Avenue, he had no standing to contest the search of that residence, and the trial court therefore did not err in denying his motion to suppress.

## II. McCullough Has Failed To Preserve His "Insufficient Corroborative Evidence" Argument For Appellate Review.

McCullough next argues that the State's evidence did not sufficiently corroborate the testimony of Billy Norris, McCullough's indicted co-conspirator. Appellant's Brief 20-27.

While Section 12-21-222 of the Alabama Code (1975) provides that a criminal defendant cannot be convicted of a felony solely upon the testimony of an accomplice, a defendant must first specifically present his "lack of corroborative evidence" argument to the trial court, or he fails to preserve the issue for appellate review. By failing to make this argument to the trial court (R. 110, 127), McCullough has left nothing for this Court to review on this issue. Ward v. State, 376 So. 2d 1112, 1115 (Ala. Crim. App. 1979), cert. denied, 376 So. 2d 1117 (Ala. 1979)("Whether there is an accomplice witness and whether he has or has not been corroborated must first be put to

the trial judge...'[s]pecific objections or motions are generally necessary before the ruling of the trial judge is subject to review...'"); Crowder v. State, 448 So. 2d 507, 508 (Ala. Crim. App. 1984) ("[I]ssues of whether a witness is an accomplice and whether that testimony has been corroborated must be presented to the trial judge or else those issues are waived."); Williams v. State, 497 So. 2d 1142, 1145 (Ala. Crim. App. 1986) (citing Ward and Crowder and holding that, by failing to present the issue to the trial court, appellant failed to preserve his argument regarding whether a witness was an accomplice whose testimony required corroboration).

## CONCLUSION

For the foregoing reasons, the trial court's judgment is due to be affirmed.

Respectfully submitted,

William H. Pryor Jr.
*Attorney General*

P. David Bjurberg
*Assistant Attorney General*

by:

Marc A. Starrett
*Assistant Attorney General*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this _16th_ day of July,

2003, I did serve a copy of the foregoing on the following,

by placing the same in the United States Mail, postage

prepaid and properly addressed as follows:

> Ronald L. Sledge, Esq.
> 4002 20th Avenue, Suite B
> Valley, Alabama  36854

_____
Marc A. Starrett
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300
110639/STARRETT
50892-001

19

# Court of Criminal Appeals

State of Alabama
Judicial Building, 300 Dexter Avenue
**P. O. Box 301555**
**Montgomery, AL 36130-1555**





**H.W."BUCKY" McMILLAN**
Presiding Judge
**SUE BELL COBB**
**PAMELA W. BASCHAB**
**GREG SHAW**
**A. KELLI WISE**
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

### MEMORANDUM

CR-02-0943                    Chambers Circuit Court CC-02-189

<u>Christopher McCullough, alias v. State</u>

McMILLAN, Presiding Judge.

The appellant, Christopher McCullough, was convicted of first-degree burglary and second-degree theft of property. He was sentenced, as a habitual offender with one prior felony conviction, to 15 years' imprisonment for the burglary conviction, and to 10 years' imprisonment for the theft conviction. For each conviction, McCullough was also ordered to pay a $50 assessment to the Victims' Compensation Fund, restitution, attorney fees, and court costs.

McCullough's first argument on appeal is that the trial court erred in denying his motion to suppress. The motion sought to suppress a videotape of evidence obtained during a search of a house located at 1108 East 1st Avenue, Lanett

1



Alabama.[1]

It is clear from the record that the trial court's denial of McCullough's motion to suppress was not error, as McCullough did not have standing to challenge the search of this house.

> "'A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.' Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). 'A defendant must also establish a legitimate expectation of privacy in the particular area searched in order for a Fourth Amendment challenge to be allowed.' United States v. Meyer, 656 F.2d 979, 981 (5th Cir.1981) (quoted in Williams v. State, 601 So.2d 1062, 1071 (Ala.Cr.App.), aff'd, 662 So.2d 929 (table) (Ala.1991), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992))."

Campbell v. State, 709 So. 2d 1329, 1332-33 (Ala. Crim. App. 1997).

Here, the evidence indicated that the house was abandoned, but both McCullough and his co-defendant, Billy Norris, testified that Norris lived there at the time of the robbery. McCullough further stated that he lived at 1517 North 6th Avenue with his girlfriend and his infant son. McCullough did not live at 1108 East 1st Avenue and did not show that he had an expectation of privacy in the house. The trial court properly denied his motion to suppress.

McCullough also contends that the State did not sufficiently corroborate the evidence of his co-defendant at trial. However, he has not preserved this claim for appellate

---

[1]The evidence showed that McCullough's co-defendant had told police officers that a stolen rifle was in the house. During the search of the house, officers found the rifle as well as a knife that had been stolen from the victim.

review by first presenting it to the trial court. See <u>Ward v.</u> <u>State</u>, 376 So. 2d 1112, 1115 (Ala. Crim. App. 1979). Therefore, the issue cannot be considered by the Court on appeal.

The judgment of the trial court is affirmed.

AFFIRMED.

Cobb, Baschab, Shaw, and Wise, JJ., concur.

E.

APPLICATION
FOR REHEARING

02-0943

FILED
OCT 3 2003
Rec'd 10|8|03
CLERK
ALA COURT CRIMINAL APPEALS

September 27, 2003
PAGE ①

# MEMORANDUM REPLY TO COURT DECISION

This Courts PREDJUDICE TO ONE SAID
[CHRISTOPHER McCULLOUGH] IS OUTSPOKEN
AND UNDENIABLE.
I AM RESPONDING TO THIS COURTS
DECISION CAUSE IT IS VERY
CONSPICIOUS AND SHOWS BASIC
ALABAMA DESTRUCTIVE BEHAVIOR.
THERE IS NO CONCLUSIVE REASONS
WHY THIS COURT SHOULD UPHOLD THE
CIRCUIT COURTS WRONG DOING.
IN ORDER FOR THESE CHARGES TO GO
TO JURY TRIAL, THE STATE MUST
HAVE HAD INDEPENDANT, SUBSTANTIAL,
INCULPUTORY, AND CORROBORATIVE
EVIDENCE. THE STATE DID NOT.
BY ALL EVIDENCE AT TRIAL AND ON
COURT RECORDS THERES NO EVIDENCE
AGAINST MR. McCULLOUGH TO CONVICT or
HIM WITH THESE CRIMES. CHARGE
THE UNDISPUTED EVIDENCE SHOWS
THAT MR. McCULLOUGH HAD NO PARTICIPATION
IN THESE CRIMES.
SO HOW CAN A MAN BE CONVICTED OF
SUCH NONEXISTENCE.
THE ISSUES ARE ⑤ PAGES LONG STARTING
WITH THIS PAGE.
The ⑤ th Page is the Certificate of Service.

EXHIBIT
1E

Page ② First of all the state violated the discretion of this trial court by relinquishing the MOTION to Discovery.

It is well Settled in Alabama Law that the Defendant has the right to know what kind of Evidence the State has Compiled against him. This Motion for Discovery specifically states that Defense Counsel had the right to examine, inspect, copy any and all evidence the State has before Trial, not during Trial, this Constitutes Constitutional Violation.

The evidence at Jury Trial shows that this house was not vacant. The words abandoned and vacant are of two different terminology. A vacant house means that the residence or dwelling is of no use or is not occupied. By testimony of Record on Appeal this house was occupied and was in use for some purpose.

Defense Counsel instructed the Defendant to not say that he was at the resident at any time cause he says it's self incriminating. So Defendant complied to Defense Counsels request as of Best Interest.

I testified that I stayed at my girlfriends house at night to take care of my son. I never testified to not having interest in my house.

Page(4) The State did not Sufficiently corroborate the evidence of Co-Defendant at Trial. In fact the State had <u>no evidence whatsoever</u> against the Defendant <u>to convict</u> him of these crimes.

But the state tries to remedy this situation by stating that I didn't preserve this claim for appellate review by presenting it to the Trial Court first.

This is totally Ludacris, I4 the Court look at all records on appeal, I <u>presented</u> these issues to the trial Court when I filed my <u>2 Motions, for NEW Trial and Denovo Appeal</u> Around <u>January 7 or 18, of 2003,</u> And <u>I have those papers Notarised as Sufficient evidence.</u> And in process of these motions, I did not recieve any orders Inseweiring these Motions nor a Certificate of service to which state that these motions have been answered.

Insufficient counsels representation of the Defendant at Trial and Lere after on which he does not Meet the expectations to the Defendant standards to Certain objections and to raise Certain issues automatically gives rise to Defendant to <u>preserve this claim.</u> According to Appellate Procedure this Court is given the Duty to Review these matters again And Correct the Trial Court error for[MOTION of ACQUITTAL.]

(No additional info)

(5th Page)

# CONCLUSION

The Appeal Court alleges that I Mr. McCullagh did not preserve the right to appeal the factor of no Corroborative Evidence consulting the Co-Defendents testimony is an extremely direct Contradiction.

My Motion for New Trial specifically has the reasons for no Corroborated evidence as (2) issues for my reasons for New Trial amongst others which I properly brought to the Trials Court attention.

And in the response of Ward V. State he didn't file a Motion for New Trial based on the lack of Corroboration of evidence in his trial I did! And these written notifications are on Trial Courts Records as stated in my briefs, So Appeal Court could not have thoroughly read and inspected all paper work on records. This Lone alone constitutes prejudicial error cause it's very obvious that Trial Judge failed to act on these said motions by reviewing them before he made his ruling. not

After carefully examining all the evidence out of an abundance of caution The trial Court and The Appeal Courts Knows for a fact that there is no evidence that Contends to state that I had participated or Committed these crimes and that the Co-Defendant which is the said Accomplice was not Corroborated.

Page 6

## Certificate of Service

I certify that I have sent an exact same copy to the Court of Criminal Appeals Montgomery, Alabama 36130-1555

This is 1 of 3 copies

Sincerely,

Christopher McCullogh

Christopher McCullogh

50892
Starrett

# COURT OF CRIMINAL APPEALS
## STATE OF ALABAMA
### JUDICIAL BUILDING. 300 DEXTER AVENUE
### P.O. BOX 301555
### MONTGOMERY, AL 36130-1555

H. W. "Bucky" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
FAX (334) 242-4689

Hon. Charles W. Story, Circuit Clerk
Hon. Marc A. Starrett, Asst. Atty. Gen.
Hon. Roland Lewis Sledge, Attorney
Christopher McCullough, Pro Se

RE:  CR-02-0943
      Christopher McCullough, alias v. State of Alabama (Appeal
      from Chambers Circuit Court: CC02-189).

Dear Sir or Madam:

    You are hereby notified that on October 17th, 2003 the following action was taken in the above referenced
cause by the Court of Criminal Appeals:

    Application for rehearing overruled.

                                                      Lane W. Mann
                                                      Clerk
                                                      Court of Criminal Appeals

LWM/ lk

NOTE: If you are filing a petition for certiorari with the Alabama Supreme Court, Rule 39(e), Alabama Rules of
Appellate Procedure, states that a copy of the petition shall be filed with this Court.  Please be advised that your
failure to comply with this requirement could result in the issuance of a premature Certificate of Judgment.


EXHIBIT
1F

Page 3    THIS MOTION ESTABLISHES THAT I DID PROPERLY BRING THESE ISSUES TO THE TRIAL COURTS ATTENTION. FURTHERMORE AFTER 2 WEEKS OF NO ANSWER I GOT THESE PAPERS NOTARIZED ON 2-06-03 BY MRS. LINDSEY WILLIAMS OF THE CHAMBERS COUNTY JAIL.

THE ISSUE OF MY JUDGEMENT OF ACQUITTAL WAS SOLELY BASED ON ME NOT PRESENTING THIS TO THE TRIAL COURT WHICH SHOWS REVERSIBLE ERROR COMMITTED BY APPEALS COURT.

② THE BASIS OF THIS PETITION FOR THE WRIT IS THA THE DECISION OF THE APPELLATE COURT IS IN CONFLICT WITH IT'S PRIOR DECISIONS ON THE SAME POINT OF LAW. IN IT'S PRESENT DECISION THE APPELLATE COURT HELD: THAT BILLY WARD GAVE AN ORAL MOTION TO EXCLUDE STATES EVIDENCE. HE DID NOT ESTABLISH THE FACTS OF NO COOBORATE EVIDENCE. BUT BY INITIALLY BEING FOUND GUILTY HE WAS GRANTED A NEW TRIAL. REQUESTING A MOTION TO EXCLUDE STATES EVIDENCE WITHOUT RAISING THE ISSUES OF NO COOBORATE EVIDENCE ARE NOT GROUNDS TO GRANT THIS MOTION. IN THE CASE OF BILLY WARD V. STATE 376 SO. 2D 1112, 1115 THE APPELLATE COURT HELD: THAT I DID NOT PRESERVE THIS CLAIM FOR APPELLATE REVIEW BY PRESENTING IT TO THE TRIAL COURT FIRST OF THESE ISSUES BUT I DID SO THIS DECISION IS CONTRARY TO ALABAMA LAWS.

PETITIONER RESPECTFULLY REQUESTS THAT AFTER A PRELIMINARY EXAMINATION, THE WRIT OF CERTIORARI BE GRANTED AND THAT THIS COURT PROCEEDS UNDER ITS RULES TO REVIEW THE MATTERS COMPLAINED OF, AND TO REVERSE THE JUDGEMENT OF THE COURT OF CRIMINAL APPEALS, AND FOR SUCH OTHER RELIEF AS PETITIONER MAY BE ENTITLED TO

I CERTIFY THAT I HAVE THIS DAY SERVED COPIES OF THIS PETITION AND THE BRIEF ON ALL OTHER PARTIES TO THE APPEAL IN THE COURT OF APPEALS AND THE COURT OF CRIMINAL APPEALS.

ATTORNEY CONCLUDED REPRESENTATION ON 9-24-03 OF THESE MATTERS.

PETITION FOR WRIT OF CERTIORARI TO A
COURT OF APPEALS.

Page ①

1030153.

ORIGINAL    CHRISTOPHER McCULLOUGH

v.

STATE OF ALABAMA



FILED JR

OCT 22 2003

CLERK
SUPREME COURT OF ALABAMA

11-13-03    Submitted For
Preliminary Examination

CIRCUIT COURT OF CHAMBERS County

SC NO. _____

PETITION FOR WRIT OF CERTIORARI
TO THE SUPREME COURT OF ALABAMA:
COMES YOUR PETITIONER CHRISTOPHER McCULLOUGH
AND PETITIONS THIS COURT FOR A WRIT OF
CERTIORARI TO ISSUE TO THE COURT OF
CRIMINAL APPEALS IN THE ABOVE-STYLED CAUSE
UNDER RULE 39, ARAP, AND SHOWS THE FOLLOWING:
① PETITIONER WAS CONVICTED OF THE CHARGES
OF BURGLARY 1st DEGREE AND THEFT OF PROPERTY 2nd DEGREE
IN THE CIRCUIT COURT OF CHAMBERS COUNTY,
ALABAMA ON 11-7-02.

THE COURT OF CRIMINAL APPEALS AFFIRMED
THE JUDGEMENT ON 9-19-03, AN APPLICATION
FOR REHEARING WAS FILED ON 10-10-03 AND OVERRULED
ON 10-17-03.

② A COPY OF OPINION OF THE APPELLATE COURT
IS ATTACHED TO THIS PETITION WHICH SHOWS
THE COURT OF CRIMINAL APPEALS CASE TO BE
NO. CR-02-0843.

12/12/2003 - Writ Denied. No Opinion. Houston,
J., Lyons, Brown, Johnstone, and Woodall, JJ.,
concur. 1030153.

EXHIBIT
1G

Page 2

OF THE WRIT THE FOLLOWING:

1. THE BASIS OF THIS PETITION FOR THE WRIT IS THAT A MATERIAL QUESTION REQUIRING DECISION WAS ONE OF FIRST IMPRESSION IN THE APPELLATE COURTS OF ALABAMA AND WAS INCORRECTLY DECIDED THE ISSUE IS WHETHER THE APPELLATE COURT ERRED IN HOLDING THAT I DID NOT PRESERVE THE RIGHT TO CLAIM THE ISSUE OF NO CORROBORATE EVIDENCE FOR APPELLATE REVIEW CAUSE OF NOT PRESENTING IT TO THE TRIAL COURT FIRST. THIS IS A DIRECT CONTRADICTION BECAUSE OF IF ALL RECORDS ARE CORRECT ON COURT RECORDS MY MOTION FOR NEW TRIAL STATES THE FOLLOWING ISSUES:

1. THAT THE VERDICT RENDERED IN THIS CASE IS CONTRARY TO LAW.

2. THAT THE VERDICT RENDERED IN THIS CASE IS CONTRARY TO THE WEIGHT AND SUFFICIENCY OF EVIDENCE

3. THAT THE COURT ERRORED IN DENYING THE DEFENDANT MOTION FOR JUDGEMENT OF ACQUITTAL AT THE CLOSE OF THE STATES CASE.

4. THAT THE EVIDENCE OFFERED AND PRODUCED BY STATE TO PROVE THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT WAS INSUFFICIENT

5. THAT THE EVIDENCE OFFERED AGAINST THE DEFENDANT WAS LARGELY CIRCUMSTANTIAL AND UNSUPPORTED BY CORROBORATING EVIDENCE OF A DIRECT NATURE

6. THAT THE COURT ERRORED IN NOT SUPPRESSING THE EVIDENCE FOR UNLAWFUL SEARCH OF AN HOUSE WHO CO-DEFENDANT DID NOT HAVE LEGAL ACCESS TO

7. THAT THE STATE FAILED TO OFFER SUFFICIENT COOBORATING EVIDENCE TO CO-OBERATE THE CO-DEFENDANT

# ADDITIONAL STATEMENT OF FACTS

FILED TR
OCT 22 2003
CLERK
SUPREME COURT OF ALABAMA

THE FACTS ARE PRESENTED IN THIS CASE AS OVER LOOKED AND UNSEEN. THE APPEALS COURT DECISION IS VERY CONTRADICTIVE AND IS VERY UNPREDICTABLE FIRST OF ALL CONCERNING MY UNANSWERED MOTIONS FOR NEW TRIAL AND DENOVO APPEAL, THE LAW IS WELL SETTLED THAT IT IS REQUIRED ON APPEAL FOR TRIAL DE NOVO IT IS REQUIRED THAT THE PROSECUTOR MAKE A BRIEF, SIGNED STATEMENT OF THE CAUSE OF COMPLAINT AGAINST DEFENDANT, AND THE ABSCENCE OF SUCH A COMPLAINT NECESSITATES A REVERSAL OF CONVICTION ← CAMPBELL V. STATE ON WRITTEN RECORD FOR NEW TRIAL I DID ASSERT LACK OF COOBORATION AS A GROUND THEREFOR, APPEAL COURTS DECISION SHOWS ERR ← LEONARD V. STATE WHERE NO ONE EXCEPT ACCOMPLICE PUT PISTOLS IN DEFENDANTS POSSESSION OF PROPERTY, WHERE NO ONE EXCEPT ACCOMPLICE PUT DEFENDANT AT THE SCENE OF THE BURGLARY REQUIRED COOBORATING TESTIMONY INCLUDING NO EVIDENCE WAS FOUND AT THE SCENE OF THE CRIME AS ACCOMPLICE MADE STATEMENT THAT THE DEFENDANT WAS BARE HANDED IS INSUFFICIENT TO MEET STATUTORY REQUIREMENTS.
YARBER V. STATE

AND RESULTING TO THE ILLEGAL SEARCH AND SEIZURE WHERE POLICE WERE DIRECTED TO A RIFLE IN DEFENDANTS HOUSE THROUGH A SPECIFIC STATEMENT MADE BY CO-DEFENDANT WHERE STATE HAD NO SEARCH WARRANT FOR DEFENDANTS HOUSE AT TIME RIFLE WAS TAKEN AND THEY DID NOT AWARE ME OF MY CONSTITUTIONAL RIGHTS UNDER "MIRANDA" THIS RECOVERY OF THIS RIFLE WAS AN EXPLOITATION OF INFORMATION OBTAINED THEREFORE THE VIDEO TAPE SHOULD HAVE BEEN EXCLUDED BASED UPON "FRUIT OF THE POISONOUS TREE" DOCTRINE EX PARTE YARBER ALSO INCLUDES THE INTRODUCTION OF TESTIMONY CONCERNING OBJECTS ILLEGALLY OBSERVED

REL09/19/2003McCullough

# Court of Criminal Appeals
### State of Alabama
### Judicial Building, 300 Dexter Avenue
### P. O. Box 301555
### Montgomery, AL 36130-1555

**H.W."BUCKY" McMILLAN**
**Presiding Judge**
**SUE BELL COBB**
**PAMELA W. BASCHAB**
**GREG SHAW**
**A. KELLI WISE**
**Judges**

**Lane W. Mann**
**Clerk**
**Wanda K. Ivey**
**Assistant Clerk**
**(334) 242-4590**
**Fax (334) 242-4689**

## MEMORANDUM

CR-02-0943                    Chambers Circuit Court CC-02-189

Christopher McCullough, alias v. State

McMILLAN, Presiding Judge.

The appellant, Christopher McCullough, was convicted of first-degree burglary and second-degree theft of property. He was sentenced, as a habitual offender with one prior felony conviction, to 15 years' imprisonment for the burglary conviction, and to 10 years' imprisonment for the theft conviction. For each conviction, McCullough was also ordered to pay a $50 assessment to the Victims' Compensation Fund, restitution, attorney fees, and court costs.

McCullough's first argument on appeal is that the trial court erred in denying his motion to suppress. The motion sought to suppress a videotape of evidence obtained during a search of a house located at 1108 East 1st Avenue, Lanett

1

Alabama.[1]

It is clear from the record that the trial court's denial of McCullough's motion to suppress was not error, as McCullough did not have standing to challenge the search of this house.

> "'A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.' <u>Rakas v. Illinois</u>, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). 'A defendant must also establish a legitimate expectation of privacy in the particular area searched in order for a Fourth Amendment challenge to be allowed.' <u>United States v. Meyer</u>, 656 F.2d 979, 981 (5th Cir.1981) (quoted in <u>Williams v. State</u>, 601 So.2d 1062, 1071 (Ala.Cr.App.), aff'd, 662 So.2d 929 (table) (Ala.1991), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992))."

<u>Campbell v. State</u>, 709 So. 2d 1329, 1332-33 (Ala. Crim. App. 1997).

Here, the evidence indicated that the house was abandoned, but both McCullough and his co-defendant, Billy Norris, testified that Norris lived there at the time of the robbery. McCullough further stated that he lived at 1517 North 6th Avenue with his girlfriend and his infant son. McCullough did not live at 1108 East 1st Avenue and did not show that he had an expectation of privacy in the house. The trial court properly denied his motion to suppress.

McCullough also contends that the State did not sufficiently corroborate the evidence of his co-defendant at trial. However, he has not preserved this claim for appellate

---

[1]The evidence showed that McCullough's co-defendant had told police officers that a stolen rifle was in the house. During the search of the house, officers found the rifle as well as a knife that had been stolen from the victim.

review by first presenting it to the trial court. See <u>Ward v. State</u>, 376 So. 2d 1112, 1115 (Ala. Crim. App. 1979). Therefore, the issue cannot be considered by the Court on appeal.

The judgment of the trial court is affirmed.

AFFIRMED.

Cobb, Baschab, Shaw, and Wise, JJ., concur.

3

# IN THE SUPREME COURT OF ALABAMA



December 12, 2003

**1030153**

Ex parte Christopher McCullough, alias.  PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS  (In re: Christopher McCullough v. State
of Alabama)   (Chambers Circuit Court: CC02-189; Criminal Appeals : 020943).

## CERTIFICATE OF JUDGMENT

### Writ Denied

The above cause having been duly submitted, IT IS CONSIDERED AND
ORDERED that the petition for writ of certiorari is denied.

**Writ Denied.  No Opinion.**

HOUSTON, J.,  Lyons,  Brown, Johnstone, and Woodall, JJ., concur.

I Robert G. Esdale, Sr., as Clerk of the Supreme Court
of Alabama, do hereby certify that the foregoing is
a full, true and correct copy of the instrument(s)
herewith set out as same appear(s) of record in said
Court.
Witness my hand this 12th day of December, 2003

Clerk, Supreme Court of Alabama



/tr

# THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT
## THE ALABAMA COURT OF CRIMINAL APPEALS

*Starrett*
*50892*

**CR-02-0943**

Christopher McCullough, alias v. State of Alabama  (Appeal from Chambers Circuit Court: CC02-189).

# CERTIFICATE OF JUDGMENT

WHEREAS, the appeal in the above referenced cause has been duly submitted and considered by the Court of Criminal Appeals; and

WHEREAS, the judgment indicated below was entered in this cause on September 19th 2003:

## Affirmed by Memorandum

NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate Procedure, it is hereby certified that the aforesaid judgment is final.

**Witness. Lane W. Mann, Clerk**
**Court of Criminal Appeals, on this**
**the 12th day of December, 2003.**

**Clerk**
**Court of Criminal Appeals**
**State of Alabama**

cc: Hon. Tom F. Young, Jr., Circuit Judge
Hon. Charles W. Story, Circuit Clerk
Roland Lewis Sledge, Attorney
Christopher McCullough, Pro Se
Marc A. Starrett, Asst. Atty. Gen.



EXHIBIT
*tabbies*
**II**

# PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

### (Pursuant to Rule 32, Alabama Rules of Criminal Procedure)

FILED IN OFFICE THIS

3-25-04

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

**Case Number**

CC- 02 - 189

| ID | YR | NUMBER |

IN THE _CIRCUIT_ COURT OF _LAFAYETTE_ ALABAMA

_CHRISTOPHER C. McCULLOUGH_ vs. _CHAMBERS COUNTY_

Petitioner (Full Name)                    Respondent

[Indicate either the "State" or, if filed in municipal court, the name of the "Municipality"]

Prison Number _174909_     Place of Confinement _W.E. DONALDSON_

County of conviction _CHAMBERS_

**NOTICE: BEFORE COMPLETING THIS FORM, READ CAREFULLY THE ACCOMPANYING INSTRUCTIONS.**

1. Name and location (city and county) of court which entered the judgment of conviction or sentence under attack _LAFAYETTE, ALABAMA_

2. Date of judgment of conviction _JANUARY 7, 2003_

3. Length of sentence _15 YEARS_

4. Nature of offense involved (all counts) _BURGLARY 1st Degree, Theft of Property 2nd Degree_

5. What was your plea?   (Check one)
   (a) Guilty _____
   (b) Not guilty _✓_
   (c) Not guilty by reason of mental disease or defect _____
   (d) Not guilty and not guilty by reason of mental disease or defect _____

**EXHIBIT 2A**

6. Kind of trial: (Check one)

    (a)  Jury ✓           (b)  Judge only _____

7. Did you testify at the trial?

    Yes ✓           No _____

8. Did you appeal from the judgment of conviction?

    Yes ✓           No _____

9. If you did appeal, answer the following:

    (a)  As to the state court to which you first appealed, give the following information:

        (1)  Name of court  COURT OF CRIMINAL APPEALS

        (2)  Result  THIS COURT SAYS I DIDNT PRESERVE [A CLAIM] FOR NO CORROBORATE EVIDENCE

        (3)  Date of result  September 19 2003

    (b)  If you appealed to any other court, then as to the second court to which you appealed, give the following information:

        (1)  Name of court _____

        (2)  Result _____

        (3)  Date of result _____

    (c)  If you appealed to any other court, then as to the third court to which you appealed, give the following information:

        (1)  Name of court _____

        (2)  Result _____

        (3)  Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes _____          No __✓____

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

    (a)  (1)  Name of court _____

          (2)  Nature of proceeding _____

          (3)  Grounds raised _____

                        _____

                        _____

                        _____

                        _____

                (attach additional sheets if necessary)

          (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

                Yes _____          No _____

          (5)  Result _____

          (6)  Date of result _____

    (b)  As to any second petition, application, or motion, give the same information:

          (1)  Name of court _____

          (2)  Nature of proceeding _____

          (3)  Grounds raised _____

                          _____

                        _____

                        _____

                        _____

                (attach additional sheets if necessary)

          (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

                Yes _____          No _____

          (5)  Result _____

          (6)  Date of result _____

    (c)  As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

          (1)  Name of court _____

3

(2)  Nature of procee ̲g̲ _____  i̲ _____

(3)  Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____              No _____

(5)  Result _____

(6)  Date of result _____

(d)  Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1)  First petition, etc.       Yes _____          No _____

(2)  Second petition, etc.     Yes _____          No _____

(2)  Third petition, etc.      Yes _____          No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e)  If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

12.  Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

**Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):**

_V̲___  A.  The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation:.

4

(1)    Conviction obt    ed by plea of guilty which was unlawfull    duced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2)    Conviction obtained by use of coerced confession.

(3)    Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4)    Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5)    Conviction obtained by a violation of the privilege against self-incrimination.

(6)    Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7)    Conviction obtained by a violation of the protection against double jeopardy.

(8)    Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(9)    Denial of effective assistance of counsel.

**This list is not a complete listing of all possible constitutional violations.**

**If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.**

B.    **The court was without jurisdiction to render the judgment or to impose the sentence.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

C.    **The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

D.    **Petitioner is being held in custody after his sentence has expired.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

E.    **Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:**

**The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and**

**The facts are not merely cumulative to other facts that were known; and**

The facts do not merely amc     ) to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

> If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ F.   **The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.**

> If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13.  **IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:**

> "**Successive Petitions.**  The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A.   Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____                    No ⟋

B.   If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a)   Name of court _____

(b)   Result _____

(c)   Date of result _____
(attach additional sheets if necessary)

C.   If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ⟋                    No _____

6

15. Give the name and address, known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing _STEVE MORRIS  WEEDOWEE, ALABAMA 36278_

(b) At arraignment and plea _STEVE MORRIS  WEEDOWEE, ALABAMA 36278_

(c) At trial _STEVE MORRIS WEEDOWEE, ALABAMA 36278 MARK CARLTON LANETT ALABAMA 36863_

(d) At sentencing _STEVE MORRIS, WEE DOWEE, ALABAMA 36278_

(e) On appeal _HON. ROLAND L. SLEDGE VALLEY, ALABAMA 36854_

(f) In any post-conviction proceeding _____

_____

_____

(g) On appeal from adverse ruling in a post-conviction proceeding _____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes _✓_          No _____

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____          No _✓_

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) And give date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes _____          No _____

18. What date is this petition being mailed?

_____

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7

# PETITIONER'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on ___10/5/03_____
                     (Date)

_____
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the 5th _ day of _October 2003_____

_____
Notary Public

My Commission Expires _2/2/05_

## OR *

## ATTORNEY'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true and correct. Executed on _____.
                                        (Date)

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____, _____.

_____
Notary Public

Name and address of attorney representing petitioner in this proceeding (if any)

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the petition.

If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve months.

_____

_____

_____

_____

3.  Do you own cash, or do you have money in a checking or savings account?

    Yes _____          No _____

    (Include any funds in prison accounts.)

    If the answer is "yes", state the total value of the items owned.

    _____

    _____

    _____

4.  Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

    Yes _____          No _____

    If the answer is "yes", describe the property and state its approximate value.

    _____

    _____

    _____

5.  List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

    _____

    _____

    I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _____
                          (Date)

                    _____
                              Signature of Petitioner

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ _0.12_ on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said _Wm E. Donaldson C.F._ institution:

_____

_____

_09/30/03_
DATE

                              _C.C.Burnette_
                              AUTHORIZED OFFICER OF INSTITUTION

Rule 32

My Commission Expires _5/31/2004_

                              _Patricia H. Parsons_
                              _n.l_

Case Number

____ ____ _____
ID   YR   NUMBER
(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

_CIRCUIT COURT OF CHAMBERS COUNTY_
[Insert appropriate court]

_CHRISTOPHER McCULLOUGH_
(Petitioner)

vs.

_CHAMBERS COUNTY_
(Respondent(s)

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED
## IN FORMA PAUPERIS

I, _Christopher McCullough_, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?      Yes _____        No ✓

   a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

      _____
      _____

   b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.
      _1-19-02    $1,12.00.00_
      _____

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession, or other form of self-employment?
      Yes _____              No ✓

   b. Rent payments, interest, or dividends?
      Yes _____              No ✓

   c. Pensions, annuities, or life insurance payments?
      Yes _____              No ✓

   d. Gifts or inheritances?
      Yes _____              No ✓

   e. Any other sources?
      Yes _____              No ✓

2

# APPENDIX TO RULE 32

Form for use in State Court for Petitions
for Relief from Conviction or Sentence
Imposed in State Court
(Rule 32, Alabama Rules of Criminal Procedure)

[This form is not to be used to challenge loss of good time
deductions from sentence, changes in custody classification, or jail or prison conditions.]

## READ THESE INSTRUCTIONS CAREFULLY BEFORE YOU BEGIN PREPARING THE PETITION.

1. This petition must be legibly handwritten or typewritten, and must be signed by the petitioner or petitioner's attorney under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered completely in the proper space on the form or on additional sheets submitted with the form. This form may be obtained from the librarian or other authorized officer of the corrections institution where you are confined.

2. Additional pages are permitted. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum and not as part of this form.

3. Only the judgments entered in a single trial may be challenged in a particular petition. If you seek to challenge judgments entered in different trials, either in the same county or in different counties, you must file separate petitions.

4. YOU MUST INCLUDE IN THIS PETITION ALL GROUNDS FOR RELIEF. FAILURE TO INCLUDE A GROUND FOR RELIEF IN THIS PETITION MAY RESULT IN YOUR BEING BARRED FROM PRESENTING IT IN A FUTURE PETITION.

5. YOU MUST INCLUDE ALL FACTS SUPPORTING EACH GROUND FOR RELIEF AND YOU MUST BE AS SPECIFIC AS POSSIBLE AS TO THE FACTS.

6. Upon receipt of the appropriate fee, your petition will be filed if it is in proper order. If you do not know the amount of the fee, ask the librarian or other authorized officer of the corrections institution where you are confined to give you this information.

7. If you do not have the necessary fee, you may request permission to proceed in forma pauperis, in which event you must complete the declaration at the end of this form, setting forth information establishing your inability to pay the fees and costs or give security therefor. Your declaration must include financial information relating to the twelve (12) months preceding the filing of this petition.

    If you wish to proceed in forma pauperis, you must have an authorized officer at the corrections institution where you are confined complete the certificate at the end of your in forma pauperis declaration as to the amount of money and securities on deposit to your credit in any account in the institution.

8. Complete all applicable items in the petition. When the petition is fully completed, the ORIGINAL AND TWO (2) COPIES must be mailed to the Clerk of the Court in which you were convicted.

9. You must comply with these instructions in order to have your petition promptly considered.

N941

6.  Kind of trial: (Check one)

    (a)  Jury _✓____            (b)  Judge only _____

7.  Did you testify at the trial?

    Yes _✓_____            No _____

8.  Did you appeal from the judgment of conviction?

    Yes _✓___            No _____

9.  If you did appeal, answer the following:

    (a)  As to the state court to which you first appealed, give the following information:

        (1)  Name of court  COURT OF CRIMINAL APPEALS

        (2)  Result  THIS COURT SAYS I DIDN'T PRESERVE [A CLAIM] FOR NO CORROBORATE EVIDENCE

        (3)  Date of result  September 19, 2003

    (b)  If you appealed to any other court, then as to the second court to which you appealed, give the following information:

        (1)  Name of court _____

        (2)  Result _____

        (3)  Date of result _____

    (c)  If you appealed to any other court, then as to the third court to which you appealed, give the following information:

        (1)  Name of court _____

        (2)  Result _____

        (3)  Date of result _____

2

10.  Other than a direct appeal f      l the judgment of conviction and sent     e, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes _____                    No _____

11.  If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

   (a)  (1)  Name of court _____

        (2)  Nature of proceeding _____

        (3)  Grounds raised _____

             _____

             _____

             _____

             _____

             (attach additional sheets if necessary)

        (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

             Yes _____                 No _____

        (5)  Result _____

        (6)  Date of result _____

   (b)  As to any second petition, application, or motion, give the same information:

        (1)  Name of court _____

        (2)  Nature of proceeding _____

        (3)  Grounds raised _____

             _____

             _____

             _____

             _____

             (attach additional sheets if necessary)

        (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

             Yes _____                 No _____

        (5)  Result _____

        (6)  Date of result _____

   (c)  As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

        (1)  Name of court _____

(2) Nature of proceed _____

(3) Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary) _____

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5) Result _____

(6) Date of result _____

(d) Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1) First petition, etc.          Yes _____          No _____

(2) Second petition, etc.          Yes _____          No _____

(2) Third petition, etc.          Yes _____          No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e) If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

12. Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

**Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):**

____ A. The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation:.

4

(1) Conviction obta    d by plea of guilty which was unlawfully    uced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2) Conviction obtained by use of coerced confession.

(3) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5) Conviction obtained by a violation of the privilege against self-incrimination.

(6) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7) Conviction obtained by a violation of the protection against double jeopardy.

(8) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(9) Denial of effective assistance of counsel.

**This list is not a complete listing of all possible constitutional violations.**

**If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.**

_____ B.  The court was without jurisdiction to render the judgment or to impose the sentence.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ C.  The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ D.  Petitioner is being held in custody after his sentence has expired.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

✓ E.  Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and

The facts are not merely cumulative to other facts that were known; and

5

The facts do not merely amount to impeachment evidence; and

**If the facts had been known at the time of trial or sentencing, the result would probably have been different; and**

X **The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ F. **The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13. **IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:**

"**Successive Petitions**. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A. Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____         No ✓

B. If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a) Name of court _____

(b) Result _____

(c) Date of result _____
    (attach additional sheets if necessary)

C. If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ✓         No _____

6

15. Give the name and address, known, of each attorney who represen you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing _STEVE MORRIS WEEDOWEE, ALABAMA 36278_

(b) At arraignment and plea _STEVE MORRIS WEEDOWEE, ALABAMA 36278_

(c) At trial _STEVE MORRIS WEEDOWEE ALABAMA 36278_ _MARK CARLTON LANETT, ALABAMA 36863_

(d) At sentencing _STEVE MORRIS, WEEDOWEE, ALABAMA 36278_

(e) On appeal _HON. ROLAND L. SLEDGE VALLEY, ALABAMA 36854_

(f) In any post-conviction proceeding _____

(g) On appeal from adverse ruling in a post-conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes __✓__          No _____

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____          No __✓__

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) And give date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes _____          No _____

18. What date is this petition being mailed?

_____

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7

# PETITIONER'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on _10/5/03_ .
(Date)

_Chris McCulley_
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the _5th_ day of _October 2003_

_K. D. Clark_
Notary Public

My Commission Expires _2/2/05_

## OR *

## ATTORNEY'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true and correct. Executed on _____ .
(Date)

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____ , _____ .

_____
Notary Public

Name and address of attorney representing petitioner in this proceeding (if any)

_____

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the petition.

Case Number

| ID | YR | NUMBER |
|----|----|--------|

(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

CIRCUIT COURT OF CHAMBERS COUNTY

[Insert appropriate court]

CHRISTOPHER McCULLOUGH

(Petitioner)

vs.

CHAMBERS COUNTY

(Respondent(s)

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED
## IN FORMA PAUPERIS

I, _Christopher McCullough_ , declare that I am the petitioner
in the above entitled case; that in support of my motion to proceed without being required to prepay
fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs
of said proceeding or to give security therefor; that I believe I am entitled to relief.

1.  Are you presently employed?     Yes _____     No ✓

    a.  If the answer is "yes", state the amount of your salary or wages per month, and give the
        name and address of your employer.

        _____

        _____

    b.  If the answer is "no", state the date of last employment and the amount of the salary and
        wages per month which you received.

        _____1-19-2002  $1200.00_____

        _____

2.  Have you received within the past twelve months any money from any of the following sources?

    a.  Business, profession, or other form of self-employment?

        Yes _____     No ✓

    b.  Rent payments, interest, or dividends?

        Yes _____     No ✓

    c.  Pensions, annuities, or life insurance payments?

        Yes _____     No ✓

    d.  Gifts or inheritances?

        Yes _____     No ✓

    e.  Any other sources?

        Yes _____     No ✓

2

# RULE 32.  POST-CONVICTION REMEDIES

**Rule 32.1  Scope of Remedy.**

Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:

(a)  The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

(b)  The court was without jurisdiction to render judgment or to impose sentence.

(c)  The sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law.

(d)  Petitioner is being held in custody after petitioner's sentence has expired.

(e)  Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

    (1)  The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion persuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

    (2)  The facts are not merely cumulative to other facts that were known.

    (3)  The facts do not merely amount to impeachment evidence;

    (4)  If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

    (5)  The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received.

(f)  The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

**Rule 32.2  Preclusion of Remedy.**

(a)  **Preclusion of Grounds.** A petitioner will not be given relief under this rule based upon any ground:

    (1)  Which may still be raised on direct appeal under the Alabama Rules of Appellate procedure or by post-trial motion under Rule 24; or

    (2)  Which was raised or addressed at trial; or

    (3)  Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or

    (4)  Which was raised or addressed on appeal or in any previous collateral proceeding; or

    (5)  Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

(b)  **Successive Petitions.** The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

(c)  **Limitations Period.** Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within two (2) years after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, A.R.App.P.; or (2) In the case of

a conviction not appealed to the Court of Criminal Appeals, within two (2) years after the time for filing an appeal lapses. The Court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable two-year period specified in the first sentence of this section, or within six (6) months after the discovery of the newly discovered material facts, whichever is later; provided, however, that the two-year period during which a petition may be brought shall in no case be deemed to have begun to run before the effective date of the precursor of this rule, i.e., April 1, 1987.

Rule 32.3    Burden of proof.

The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.

Rule 32.4    Nature of proceeding and Relation to Other Remedies.

A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule. Proceedings under this rule shall be governed by the Rules of Criminal Procedure, except that the trial court in its sole discretion may allow the taking of depositions for discovery or for use at trial.

Rule 32.5    Venue.

Petitions filed under this rule shall be filed in and decided by the court in which the petitioner was convicted. If a petition is filed in another court, it shall be transferred to the court where the conviction occurred.

Rule 32.6    Commencement of Proceedings.

(a)    Form, Filing, and Service of Petition.    A proceeding under this rule is commenced by filing a petition, verified by the petitioner or petitioner's attorney, with the clerk of the court. A petition may be filed at any time after entry of judgment and sentence (subject to the provisions of Rule 32.2(c)). The petition should be filed by using or following the form accompanying this rule. If that form is not used or followed, the court shall return the petition to the petitioner to be amended to comply with the form. The petition shall be accompanied by two copies thereof. It shall also be accompanied by the filing fee prescribed by law or rule in civil cases in circuit court unless the petitioner applies for and is given leave to prosecute the petition in forma pauperis, in which event the fee shall be waived. If the petitioner desires to prosecute the petition in forma pauperis, he shall file the In Forma Pauperis Declaration at the end of the form. In all such cases, the petition shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined as to the amount of money or securities on deposit to the petitioner's credit in any account in the institution, which certificate may be considered by the court in acting upon his application for leave to proceed in forma pauperis. Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition and promptly send a copy to the district attorney (or, in the case of a petition filed in the municipal court, to the municipal prosecutor).

(b)    Specificity.    The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

(c)    Notification of Appellate Court.    If an appeal of the petitioner's conviction is pending, the clerk shall also promptly send a copy of the petition to the appropriate appellate court, noting in the record the date and manner by which it is sent.

(d)    Assignment of Judge.    The proceeding shall be assigned to the sentencing judge where possible, but for good cause the proceeding may be assigned or transferred to another judge.

Rule 32.7    Additional Pleadings; Summary Disposition; Amendments.

(a)    Prosecutor's Response.    Within thirty (30) days after the service of the petition, or within the time otherwise specified by the court, the district attorney (or, in the case of a petition filed in the municipal court, the municipal prosecutor) shall file with the court and send to the petitioner or counsel for the petitioner, if any, a response, which may be supported by affidavits and a

If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve months.

_____
_____
_____
_____

3. Do you own cash, or do you have money in a checking or savings account?

Yes _____          No __✓___

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

_____
_____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____          No __✓___

If the answer is "yes", describe the property and state its approximate value.

_____
_____
_____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

*I am Incarcerated*

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___*9/28/03*___
(Date)

*Christopher C. McCullough*
Signature of Petitioner

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ *0.128* on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said *Wm E. Donaldson C.F.* institution:

COURT COPY

_____
_____

*09/26/03*
DATE

*James A Beachem*

*CL Burnett*
AUTHORIZED OFFICER OF INSTITUTION

Rule 32

MY COMMISSION EXPIRES
SEPTEMBER 25, 2004                    3

# PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

(Pursuant to Rule 32,
Alabama Rules of Criminal Procedure)

Case Number

# APPENDIX TO RULE 32

Form for use in State Court for Petitions
for Relief from Conviction or Sentence
Imposed in State Court
(Rule 32, Alabama Rules of Criminal Procedure)

[This form is not to be used to challenge loss of good time
deductions from sentence, changes in custody classification, or jail or prison conditions.]

FILED IN OFFICE THIS

3-28-04

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY ALABAMA

READ THESE INSTRUCTIONS CAREFULLY BEFORE YOU BEGIN PREPARING THE PETITION.

1. This petition must be legibly handwritten or typewritten, and must be signed by the petitioner or petitioner's attorney under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered completely in the proper space on the form or on additional sheets submitted with the form. This form may be obtained from the librarian or other authorized officer of the corrections institution where you are confined.

2. Additional pages are permitted. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum and not as part of this form.

3. Only the judgments entered in a single trial may be challenged in a particular petition. If you seek to challenge judgments entered in different trials, either in the same county or in different counties, you must file separate petitions.

4. YOU MUST INCLUDE IN THIS PETITION ALL GROUNDS FOR RELIEF. FAILURE TO INCLUDE A GROUND FOR RELIEF IN THIS PETITION MAY RESULT IN YOUR BEING BARRED FROM PRESENTING IT IN A FUTURE PETITION.

5. YOU MUST INCLUDE ALL FACTS SUPPORTING EACH GROUND FOR RELIEF AND YOU MUST BE AS SPECIFIC AS POSSIBLE AS TO THE FACTS.

6. Upon receipt of the appropriate fee, your petition will be filed if it is in proper order. If you do not know the amount of the fee, ask the librarian or other authorized officer of the corrections institution where you are confined to give you this information.

7. If you do not have the necessary fee, you may request permission to proceed in forma pauperis, in which event you must complete the declaration at the end of this form, setting forth information establishing your inability to pay the fees and costs or give security therefor. Your declaration must include financial information relating to the twelve (12) months preceding the filing of this petition.

   If you wish to proceed in forma pauperis, you must have an authorized officer at the corrections institution where you are confined complete the certificate at the end of your in forma pauperis declaration as to the amount of money and securities on deposit to your credit in any _____ ___ the institution.

8. Complete all applicable items in the petition. When the petition is fully completed, the O AND TWO (2) COPIES must be mailed to the Clerk of the Court in which you were

9. You must comply with these instructions in order to have your petition promptly considered

N941

# PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

### (Pursuant to Rule 32,

### Alabama Rules of Criminal Procedure)

Case Number

CC- 02 -189

| ID | YR | NUMBER |

IN THE _CIRCUIT_ COURT OF _LAFAYETTE_ ALABAMA

_CHRISTOPHER C. McCULLOUGH_ vs. _CHAMBERS COUNTY_

Petitioner (Full Name)                    Respondent

[Indicate either the "State" or, if filed in municipal court, the name of the "Municipality"]

Prison Number _174909_ Place of Confinement _W.E. DONALDSON_

County of conviction _CHAMBERS_

### NOTICE:   BEFORE COMPLETING THIS FORM, READ CAREFULLY THE ACCOMPANYING INSTRUCTIONS.

1. Name and location (city and county) of court which entered the judgment of conviction or sentence under attack  _LAFAYETTE, ALABAMA_

2. Date of judgment of conviction  _JANUARY 7, 2003_

3. Length of sentence  _15 YEARS AND 10 YEARS_

4. Nature of offense involved (all counts)  _BURGLARY 1St Degree, Theft of Property 2nd Degree_

5. What was your plea?   (Check one)

   (a)   Guilty _____

   (b)   Not guilty _✓_

   (c)   Not guilty by reason of mental disease or defect _____

   (d)   Not guilty and not guilty by reason of mental disease or defect _____

6.  Kind of trial: (Check one)

    (a)  Jury ____✓____        (b)  Judge only _____

7.  Did you testify at the trial?

    Yes ____✓____        No _____

8.  Did you appeal from the judgment of conviction?

    Yes ____✓____        No _____

9.  If you did appeal, answer the following:

    (a)  As to the state court to which you first appealed, give the following information:

        (1)  Name of court ___COURT OF CRI. MENAL APPEALS___

        (2)  Result ___THIS COURT SAYS I DIDN'T PRESERVE [A CLAIM] FOR NO CORROBORATE EVIDENCE___

        (3)  Date of result ___September 19, 2003___

    (b)  If you appealed to any other court, then as to the second court to which you appealed, give the following information:

        (1)  Name of court _____

        (2)  Result _____

        (3)  Date of result _____

    (c)  If you appealed to any other court, then as to the third court to which you appealed, give the following information:

        (1)  Name of court _____

        (2)  Result _____

        (3)  Date of result _____

2

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes _____          No __✓___

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

(a) (1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application, or motion, give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5) Result _____

(6) Date of result _____

(c) As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

(1) Name of court _____

3

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5) Result _____

(6) Date of result _____

(d) Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1) First petition, etc.          Yes _____          No _____

(2) Second petition, etc.          Yes _____          No _____

(2) Third petition, etc.          Yes _____          No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e) If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

12. Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):

✓    A.    The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation:.

4

(1)    Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2)    Conviction obtained by use of coerced confession.

(3)    Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4)    Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5)    Conviction obtained by a violation of the privilege against self-incrimination.

(6)    Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7)    Conviction obtained by a violation of the protection against double jeopardy.

(8)    Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(9)    Denial of effective assistance of counsel.

This list is not a complete listing of all possible constitutional violations.

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

_____  B.    The court was without jurisdiction to render the judgment or to impose the sentence.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____  C.    The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____  D.    Petitioner is being held in custody after his sentence has expired.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____  E.    Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and

The facts are not merely cumulative to other facts that were known; and

5

The facts do not merely amount to impeachment evidence; and

☒ If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

☒ The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ F. The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13. IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:

> "Successive Petitions. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A. Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____          No ✓

B. If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a) Name of court _____

(b) Result _____

(c) Date of result _____
    (attach additional sheets if necessary)

C. If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ✓          No _____

15. Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing _STEVE MORRIS WEEDOWEE ALABAMA_
_3627_

(b) At arraignment and plea _STEVE MORRIS WEEDOWEE, ALABAMA_
_3627_

(c) At trial _STEVE MORRIS WEEDOWEE, ALABAMA 3627_
_MARK CARLTON LANETT, ALABAMA 36863_

(d) At sentencing _STEVE MORRIS, WEEDOWEE, ALABAMA -_
_3627_

(e) On appeal _HON. ROLAND SLEDGE VALLEY, ALABAMA_
_36854_

(f) In any post-conviction proceeding _____

_____

(g) On appeal from adverse ruling in a post-conviction proceeding _____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes __✓__          No _____

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____          No __✓__

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) And give date and length of sentence to be served in the future: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes _____          No _____

18. What date is this petition being mailed?

_____

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7

# PETITIONER'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on _____10/5/03_____
(Date)

_____
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the 5th day of _October_ 2003
_____
Notary Public

My Commission Expires 2/2/05

OR *

## ATTORNEY'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true and correct. Executed on _____
(Date)

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____

_____
Notary Public

Name and address of attorney representing petitioner in this proceeding (if any)

_____

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the petition.

Case Number

___ ___ ___
ID  YR  NUMBER
(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

CIRCUIT COURT OF CHAMBERS COUNTY

(Insert appropriate court)

CHRISTOPHER McCULLOUGH

(Petitioner)

vs.

CHAMBERS COUNTY

(Respondent(s)

### DECLARATION IN SUPPORT OF REQUEST TO PROCEED
### IN FORMA PAUPERIS

I, Christopher McCullough _____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1.  Are you presently employed?    Yes _____    No ✓

    a.  If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

    _____
    _____
    _____

    b.  If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

    _____ 1-19-02    $1200.00
    _____

2.  Have you received within the past twelve months any money from any of the following sources?

    a.  Business, profession, or other form of self-employment?

    Yes _____    No ✓

    b.  Rent payments, interest, or dividends?

    Yes _____    No _____

    c.  Pensions, annuities, or life insurance payments?

    Yes _____    No ✓

    d.  Gifts or inheritances?

    Yes _____    No ✓

    e.  Any other sources?

    Yes _____    No ✓

2

received from each during the past twelve months.

_____
_____
_____
_____

3.  Do you own cash, or do you have money in a checking or savings account?

Yes _____.            No _✓_

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

_____
_____

4.  Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____            No _✓_

If the answer is "yes", describe the property and state its approximate value.

_____
_____

5.  List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

I am Incarcerated
_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _____
                        (Date)

_____
Signature of Petitioner

**CERTIFICATE**

I hereby certify that the petitioner herein has the sum of $ 0.12 8 on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said Wm. E. Donaldson C.F. institution:

_____
_____

COURT COPY

09/30/13
DATE

N. Burnette
AUTHORIZED OFFICER OF INSTITUTION

Rule 32

My Commission Expires

3

# RULE 32.  POST-CONVICTION REMEDIES

Rule 32.1  Scope of Remedy.

Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:

(a)  The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

(b)  The court was without jurisdiction to render judgment or to impose sentence.

(c)  The sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law.

(d)  Petitioner is being held in custody after petitioner's sentence has expired.

(e)  Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

   (1)  The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion persuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

   (2)  The facts are not merely cumulative to other facts that were known.

   (3)  The facts do not merely amount to impeachment evidence;

   (4)  If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

   (5)  The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received.

(f)  The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

Rule 32.2  Preclusion of Remedy.

(a)  Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:

   (1)  Which may still be raised on direct appeal under the Alabama Rules of Appellate procedure or by post-trial motion under Rule 24; or

   (2)  Which was raised or addressed at trial; or

   (3)  Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or

   (4)  Which was raised or addressed on appeal or in any previous collateral proceeding; or

   (5)  Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

(b)  Successive Petitions. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

(c)  Limitations Period. Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within two (2) years after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, A.R.App.P.; or (2) In the case of

a conviction not appealed to the Court of Criminal Appeals, within two (2) years after the time for filing an appeal lapses. The court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable two-year period specified in sentence of this section, or within six (6) months after the discovery of the newly discovered material facts, whichever is later; provided, however, that the two-year period during which a petition may be brought shall in no case be deemed to have begun to run before the effective date of the precursor of this rule, i.e., April 1, 1987.

## Rule 32.3   Burden of proof.

The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.

## Rule 32.4   Nature of proceeding and Relation to Other Remedies.

A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule. Proceedings under this rule shall be governed by the Rules of Criminal Procedure, except that the trial court in its sole discretion may allow the taking of depositions for discovery or for use at trial.

## Rule 32.5   Venue.

Petitions filed under this rule shall be filed in and decided by the court in which the petitioner was convicted. If a petition is filed in another court, it shall be transferred to the court where the conviction occurred.

## Rule 32.6   Commencement of Proceedings.

(a) Form, Filing, and Service of Petition.  A proceeding under this rule is commenced by filing a petition, verified by the petitioner or petitioner's attorney, with the clerk of the court. A petition may be filed at any time after entry of judgment and sentence (subject to the provisions of Rule 32.2(c)). The petition should be filed by using or following the form accompanying this rule. If that form is not used or followed, the court shall return the petition to the petitioner to be amended to comply with the form. The petition shall be accompanied by two copies thereof. It shall also be accompanied by the filing fee prescribed by law or rule in civil cases in circuit court unless the petitioner applies for and is given leave to prosecute the petition in forma pauperis, in which event the fee shall be waived. If the petitioner desires to prosecute the petition in forma pauperis, he shall file the In Forma Pauperis Declaration at the end of the form. In all such cases, the petition shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined as to the amount of money or securities on deposit to the petitioner's credit in any account in the institution, which certificate may be considered by the court in acting upon his application for leave to proceed in forma pauperis. Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition and promptly send a copy to the district attorney (or, in the case of a petition filed in the municipal court, to the municipal prosecutor).

(b) Specificity.  The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

(c) Notification of Appellate Court.  If an appeal of the petitioner's conviction is pending, the clerk shall also promptly send a copy of the petition to the appropriate appellate court, noting in the record the date and manner by which it is sent.

(d) Assignment of Judge.  The proceeding shall be assigned to the sentencing judge where possible, but for good cause the proceeding may be assigned or transferred to another judge.

## Rule 32.7   Additional Pleadings; Summary Disposition; Amendments.

(a) Prosecutor's Response.  Within thirty (30) days after the service of the petition, or within the time otherwise specified by the court, the district attorney (or, in the case of a petition filed in the municipal court, the municipal prosecutor) shall file with the court and send to the petitioner or counsel for the petitioner, if any, a response, which may be supported by affidavits and a

certified record or such portions thereof as are appropriate or material to the issues raised in the petition.

(b) *Amendment of Pleadings.* Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.

(c) *Appointment of Counsel.* If the court does not summarily dismiss the petition, and if it appears that the petitioner is indigent or otherwise unable to obtain the assistance of counsel and desires the assistance of counsel, and it further appears that counsel is necessary to assert or protect the rights of the petitioner, the court shall appoint counsel.

(d) *Summary Disposition.* If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.

## Rule 32.8   Prehearing Conference.

In order to expedite the proceeding, the court may hold a prehearing conference, at which the petitioner need not be present if he or she is represented by counsel who is present. The conference may be by telephone. Whether held by telephone or in person, the conference shall be stenographically recorded or tape-recorded. At the prehearing conference, the court may order a showing by the petitioner of the materiality of the testimony expected to be presented by any witness subpoenaed by the petitioner, supported by affidavit where appropriate, and, upon petitioner's failure to show the requisite materiality, may order that the subpoena for such witness not be issued or be quashed.

## Rule 32.9   Evidentiary Hearing.

(a) *Hearing.* Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing to determine disputed issues of material fact, with the right to subpoena material witnesses on his behalf. The court in its discretion may take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing, in which event the presence of the petitioner is not required, or the court may take some evidence by such means and other evidence in an evidentiary hearing. When facilities are available, the court may in its discretion order that any evidentiary hearing be held at the place of petitioner's confinement, giving at least seven (7) days' notice to the officer in charge of the confinement facility. A verbatim record of the hearing shall be made.

(b) *Testimony of Petitioner.* The petitioner may be called to testify at the hearing by the court or by either party.

(c) *Decision.* If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the conviction, sentence, or detention; to any further proceedings, including a new trial; and to any other matters that may be necessary and proper.

(d) *Findings of Fact.* The court shall make specific findings of fact relating to each material issue of fact presented.

## Rule 32.10   Appeal.

(a) *Who May Appeal: Court to Which Appeal is Taken.* Any party may appeal the decision of a circuit court according to the procedures of the Alabama Rules of Appellate Procedure to the Court of Criminal Appeals upon taking a timely appeal as provided in Rule 4, Alabama Rules of Appellate Procedure. Any party may appeal a decision of a district or municipal court according to existing procedure.

(b) *Release of Petitioner.* The petitioner shall not be released on bond pending appeal by either party. Release of the petitioner on bond pending a retrial after an order requiring retrial has become final, or after the time for filing an appeal from such an order has lapsed, shall be governed by the laws and rules governing release on bond pending an initial trial.

Rule 32

## ALABAMA SJIS CC/DC CASE DETAIL

**OFFICE**                                                      PREPARED FOR: MARC STARRETT


alacourt:cor

County: **12**    Case Number: **CC-2002-000318.60**    Charge    **BUR1**
Name: **MCCULLOUGH CHRISTOPHER**

# Case

### Case Information

| | | | |
|---|---|---|---|
| County: **12 - CHAMBERS** | Case Number: **CC-2002-000318.60** | JID: **XXX ASSIGNED JUDGE** | DEF status: **J Jail** |
| Filed: **09/05/2002** | AAGCY: **C County** | Muni N°: **00** | City: |
| Arrest date: **08/26/2002** | Offe date: | ORI: **0120000** | Officer: |
| Indict date: **08/05/2002** | Grand jury: **270** | Atty 1: **GRO014A** | Ticket N°: |
| Tracking N°'s: **GJ200200027000/0/0** | | | |
| Date: **01/15/2004** | Que: **001** | Time: **09:00 AM** | Desc: **SENT SENTENCING DKT/HE** |

### Defendant Information

| | | | |
|---|---|---|---|
| Name: **MCCULLOUGH CHRISTOPHER** | | Alias 1: | Alias 2: |
| DOB: **11/27/1972** | SSN: **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** | | Driv License N°: **AL** |
| Height : **0""** | Weight: **0** | Race/Sex: **Black /M** | Eyes/Hair: **/** |
| SID: **AL0** | YDate: | AIS: **174909** | PR: **0** |
| Address 1: **W.E. DONALDSON4-25 CELL** | | Address 2: **100 WARRIOR LANE** | |
| Zip: **35023** | City: **BESSEMER** | State: **AL** | Country: **US** |

### Prosecutor & Atty Info

| | | |
|---|---|---|
| Prosecutor: | Attorney 1: **GRO014 A** | Attorney 2: |
| Prosecutor Flag: **N** | Attorney 1 Flag: **Y** | Attorney 2 Flag: **Y** |

### Warrant Information

| | | |
|---|---|---|
| Warrant Date: | WARACT: | WARLOC: |
| BP ISS: | BP RTN: | |

### Charges

| | | | | |
|---|---|---|---|---|
| 1. Crime co: **BUR1A** | Statute: **ATTEMPT - BURGLARY 1** | Stat Name: | Class/Categ: | Counts: **1** |
| 2. Crime co: | Statute: | Stat Name: | Class/Categ: | Counts: |
| 3. Crime co: | Statute: | Stat Name: | Class/Categ: | Counts: |
| More: **N** | Dom Viol: **N** | Case Type: | Case Categ: | |
| Comment: | | | | |

### Bonding Information

| | | |
|---|---|---|
| Bond amt: **50000.00** | Bond type: | Bond co: |
| Rel Date: | Surety: | CWIT: |
| Jury Demand: | | Appeal Date: |

# Settings

### Setting Dates

| | Date: | Que: | Time: | Description: |
|---|---|---|---|---|
| 1: | **01/15/2004** | **001** | **09:00 AM** | **SENT - SENTENCING DKT/HE** |
| 2: | | | | |
| 3: | | | | |
| 4: | | | | |



EXHIBIT
**2B**

## Disposition

### Disposition

| | | | |
|---|---|---|---|
| CRT ACT: 5 Petition denied | CA date: 09/26/2005 | Jury: | More: N |
| Charge 1: ATTEMPT - BURGLARY 1 | | Counts: 001 | CA: 09/26/2005 |
| Charge 2: | | Counts: | CA: |
| Charge 3: | | Counts: | CA: |
| Admin: | Why: | TBNV1: | TBNV2: |
| Appeal: | CAPP: | Type: | GJCA: |
| Cont Dt: | Why: | Cont N° : 0 | Dom Viol: N |
| Comment: | | | |
| Case Compl: N | Sent Prov: N | Due: | |
| Warr: 0 | SUBP: SUBP: | Updated: 12/01/2005 | |

## Sentence

### Sentence

| | | | |
|---|---|---|---|
| Sent: | Begin: | End 0 | PRB Beg: |
| IMP CONF: 00 00 000 | SUSP CONF: 00 00 000 | Total Conf: 00 00 000 | Jail Cred: 00 00 000 |
| LICN Susp: 00 00 000 | Probation: 00 00 000 | PRB Rev: | |

### Monetary

| | | | | |
|---|---|---|---|---|
| Cost: | Fine Imp: 0.00 | Fine Susp: 0.00 | CVCC: | HIS: |
| WCCS: | MCOS: | JFEE: 0.00 | DRGF: 0 | ASU: |
| PREL: | DRUG: | RCUP: 0.00 | | |
| RES1: 0.00 | | RES2: 0.00 | | RES3: 0.00 |
| RES4: 0.00 | | RES5: 0.00 | | RES6: 0.00 |

### Confine

| | | | | | | |
|---|---|---|---|---|---|---|
| PENT: | LIFE: | LWOP: | DEATH: | SPLIT: | BOOT: 0 | EMON: 0 |
| JAIL: | CCUR: | CSEC: | CTERM: | RVSPL: | GANG: 0 | |

### Programs

| | | | | | | |
|---|---|---|---|---|---|---|
| JDVR: | IPROB: | AASCH: | DUI: | DDC: | CSV: 0 | SAPP: |
| PTRL: | BCSCH: | MNTL: | CRO: | ASCH: | ANGER: | DRUGCT: |

### Enhanced

| | | | | |
|---|---|---|---|---|
| PROJ: | CNOT: | SCH: | VDOB: | HOOF: |
| DRUGCODE: | MEAS: | VOL: 0.00 | | |

SEC/CUR:
Comment:

| | | | |
|---|---|---|---|
| Bal Due: | Due: | CRO: | Updated:  Cost: 12/01/2005 |

© Alacourt.com  2/2/2007          3

## Case Action Summary

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 03/29/2004 | 4:30:25 | JUDG | ASSIGNED TO: (XXX)          (AR01) | CHS |
| 03/29/2004 | 4:30:26 | STAT | INITIAL STATUS SET TO: "J" - JAIL          (AR01) | CHS |
| 03/29/2004 | 4:30:27 | FILE | FILED ON: 09/05/2002          (AR01) | CHS |
| 03/29/2004 | 4:30:28 | ARRS | DEFENDANT ARRESTED ON: 08/26/2002          (AR01) | CHS |
| 03/29/2004 | 4:30:29 | INDT | DEFENDANT INDICTED ON: 08/05/2002          (AR01) | CHS |
| 03/29/2004 | 4:30:30 | ATY1 | ATTORNEY FOR DEFENDANT: KELIM KYLA L          (AR01) | CHS |
| 03/29/2004 | 4:30:31 | BOND | BOND SET AT: $50000.00          (AR01) | CHS |
| 03/29/2004 | 4:30:32 | DAT1 | SET FOR: SENTENCING DKT/HE ON 01/15/2004 AT(AR01) | CHS |
| 03/29/2004 | 4:30:33 | FILE | CHARGE 01: ATTEMPT - BURGLARY 1/#CNTS: 001  (AR01) | CHS |
| 03/29/2004 | 4:30:43 | RULE | RULE 32 FILED COPY TO D.A.'S OFFICE | CHS |
| 09/26/2005 | 2:16:37 | ADD1 | ADDR1 CHANGED FROM: 604 S 1ST AVE          (AR01) | CHS |
| 09/26/2005 | 2:16:38 | CITY | HOME CITY CHANGED FROM: LANETT          (AR01) | CHS |
| 12/01/2005 | 3:58:48 | DJID | DISPOSITION JUDGE ID CHANGED FROM:      TO: XXX | RHM |
| 12/01/2005 | 3:58:49 | DISP | CHARGE 01 DISPOSED BY: PET DENIED ON: 09/26/2005 | RHM |
| 12/01/2005 | 3:58:50 | DISP | CHARGE 01: ATTEMPT - BURGLARY /#CNTS: 001  (AR10) | RHM |

 **END OF THE REPORT**

*Starrett*
*68660*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHRISTOPHER MCCULLOUGH, #174 909    *

    Petitioner,    *

       v.    * CIVIL ACTION NO. 3:04-CV-631-A

STEPHEN BULLARD, WARDEN, *et al.*,    *

    Respondents.    *

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause of action is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Petitioner, Christopher McCullough, on June 28, 2004.  He seeks to challenge convictions for first degree burglary and second degree theft of property entered against him by the Circuit Court of Chambers County, Alabama, on November 7, 2002. Pursuant to an order of the court, Respondents filed an answer to the petition in which they maintain that the present petition is due to be dismissed because Petitioner has failed to exhaust available state remedies.  (Doc. No. 6.)  Petitioner was afforded an opportunity to show cause why his petition should not be dismissed.  Petitioner filed his response on July 30, 2004.  (Doc. No. 11.)

Upon review of the petition, Respondents' answer, and Petitioner's response, the court concludes that the instant habeas corpus action should be dismissed because Petitioner has failed to exhaust state remedies with respect to each of the claims raised therein. Specifically, the pleadings and documents before the court reflect that Petitioner has a Rule


EXHIBIT
**3A**

32 petition pending in the Circuit Court for Chambers County, Alabama, a copy of which has been referred to the District Attorney. (Doc. No. 6, Exhs. 4, 5.) Although Petitioner contends that no response to his Rule 32 petitioner has been filed yet (Doc. No. 11), this fact, without more, does not make the filing of the instant federal habeas petition appropriate at this juncture.[1]

**DISCUSSION**

The law is clear that a petition for writ of habeas corpus filed by "a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . ." 28 U.S.C. § 2254(1)(b)(1)(A). It is apparent from the petition filed herein that Petitioner has not yet exhausted his available state court remedies with respect to each claim presented in the instant habeas petition. This court does not deem it appropriate to rule on the merits of Petitioner's claims for relief without first requiring that he exhaust state remedies. *See* 28 U.S.C. § 2254(1)(b)(2).

In light of the foregoing, the Magistrate Judge concludes that the petition for habeas corpus relief should be dismissed without prejudice so that Petitioner can pursue his available state court remedies.

**CONCLUSION**

---

[1]Petitioner may wish to file a request for a status report in the Circuit Court for Chambers County concerning his pending Rule 32.

2

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief be dismissed without prejudice to afford Petitioner an opportunity to exhaust all available state court remedies.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation within a period of 13 days from the date of mailing or transmittal to them. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 4th day of August, 2004.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

*Starrett*
*6 8660*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHRISTOPHER McCULLOUGH, #174909,      )
                                      )
                Petitioner,           )
                                      )
vs.                                   )     CIVIL ACTION NO. 3:04cv631-A
                                      )
STEPHEN BULLARD, et al.,              )
                                      )
                Respondents.          )

## ORDER

Upon an independent evaluation and *de novo* review of this matter, including the

Recommendation of the Magistrate Judge entered on August 4, 2004, and the objection filed by

the Petitioner on August 16, 2004, the court finds the objection to be without merit, and it is

hereby overruled. The court adopts the Recommendation of the Magistrate Judge, and it is

hereby

ORDERED that the petition for habeas corpus relief is DISMISSED without prejudice, to

afford Petitioner an opportunity to exhaust all available state court remedies. Judgment will be

entered in accordance with this order.

DONE this 18th day of August, 2004.

                                /s/ W. Harold Albritton
                                W. HAROLD ALBRITTON
                                SENIOR UNITED STATES DISTRICT JUDGE



EXHIBIT
3B

Starrett

68660

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER McCULLOUGH, #174909, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    CIVIL ACTION NO. 3:04cv631-A |
| | ) |
| STEPHEN BULLARD, et al., | ) |
| | ) |
| Respondents. | ) |

## FINAL JUDGMENT

In accordance with the order entered in this case on this day dismissing the petition

without prejudice to afford Petitioner an opportunity to exhaust all available state court remedies,

JUDGMENT is entered in favor of the Respondents and against the Petitioner.

DONE this 18th day of August, 2004.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE



# EXHIBIT
# 1

# Court of Criminal Appeals No. *CR-02-0943*

## APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
### FROM
## CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

### Circuit Court Case Number: CC 2002-189
### Circuit Judge: Honorable TOM YOUNG

Type of Conviction / Order Appealed From:___State Conviction___
Sentence Imposed:_10 YEARS / 15 YEARS CONCURRENTLY___

Defendant Indigent: _X_ YES  _ NO

## CHRISTOPHER C. MCCULLOUGH
NAME OF APPELLANT

HON. STEVEN MORRIS
APPELLANT'S ATTORNEY                    (TELEPHONE NO.)
P.O. BOX 814
ADDRESS
WEDOWEE              ALABAMA          36251
CITY                STATE            ZIP CODE

### v.

STATE OF ALABAMA
NAME OF APPELLEE

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
Name and address of municipal attorney below.

(For Court of Criminal Appeals use only)

EXHIBIT
1A

COUR OF CRIMINAL APPEALS
APPEAL FROM CHAMBERS COUNTY
CC 2002-189
CHRISTOPHER CORNELIUS MCCULLOUGH
INDEX

| | PAGES |
|---|---|
| | 001 |
| AFFIDAVIT AND WARRANT OF ARREST | 003 |
| ORDER ON INITIAL APPEARANCE | 004 |
| ADVICE OF RIGHTS, INITIAL APPEARANCE | 005 |
| LETTER TO FRANK PATTERSON | 006 |
| ORDER, PRELIMINARY HEARING | 007 |
| ORDER, APPOINTING NEW ATTORNEY | 008 |
| ORDER, AFTER PRELIMINARY HEARING | 009 |
| DISTRICT COURT CASE ACTION SUMMARY SHEET | 011 |
| AFFIDAVIT AND WARRANT OF ARREST | 013 |
| ORDER ON INTIAL APPEARANCE | 014 |
| ADVICE OF RIGHTS | 015 |
| LETTER TO FRANK PATTERSON | 016 |
| ORDER, SCHEDULING PRELIMINARY HEARING | 017 |
| APPOINTMENT OF ATTORNEY | 018 |
| ORDER, WAIVING PRELIMINARY HEARING | 019 |
| ORDER, APPOINTING ATTORNEY | 020 |
| CASE ACTION SUMMARY SHEET | 022 |
| AFFIDAVIT AND WARRANT OF ARREST | 024 |
| ORDER ON INTIAL APPEARANCE | 025 |
| ADVICE OF RIGHTS | 026 |
| LETTER TO PATTERSON | 027 |
| ORDER, SCHEDULING PRELIMINARY HEARING | 028 |
| ORDER, APPOINTING NEW ATTORNEY | 029 |
| ORDER, WAIVING PRELIMINARY | 030 |
| CASE ACTION SUMMARY SHEETS | 032 |
| GRAND JURY INDICTMENT | 034 |
| PLEA OF NOT GUILTY AND WAIVER OF TRIAL | 035 |
| REQUEST FOR DISCOVERY BY STATE | 036 |
| MOTION FOR DISCOVERY BY DEFENDANT | 038 |
| DEFENDANT'S MOTION IN LIMINE | 040 |
| EXHIBITS | 042 |
| JURY GUILTY VERDICT | 045 |
| VERDICT ORDER | 046 |
| PRE-SENTENCE INVESTIGATION | 053 |
| CASE ACTION SUMMARY | 057 |
| PRO-SE NOTICE OF APPEAL | 058 |
| CLERK'S NOTICE OF APPEAL | |
| REPORTERS TRANSCRIPT NUMBERED PAGES | R-1  THROUGH  163 |

00ǁ

Warrant Number 147

# AFFIDAVIT
AND
# WARRANT OF ARREST

State of Alabama
Unified Judicial System

Case Number
020300272

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

## AFFIDAVIT

Before me, Judge/Magistrate of the District Court of Chambers County, personally appeared this

day _____ JOHN BURTON

and made oath that he/she has probable cause for believing and does believe, that in said State and

County, before the filing of this complaint, _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)

whose name is not known to the affiant, other than is stated, did, On or about MARCH 13, 2002

did knowingly obtain or exert unauthorized control over : Colt King Cobra .357, Smith & Wesson 6906 .9mm, Ruger 1022

rifle, and a Browning 12ga. shotgun, assorted change, assorted knives, the property of John Burton of the value in excess of $1000 (one thousand dollars), with

the intent to deprive the owner of said property, in violation of 13A-8-3 of the Code of Alabama, against the peace and dignity

of the State of Alabama.

/ 18-1

in violation of Section/Ordinance number .13A-8-3

which said offense was committed against the peace and dignity of the State of Alabama.

AFFIANT _____

ADDRESS 7146 Country Club Rd. Lanett, Al. 36863

TELEPHONE NUMBER 642-0904

Sworn to and subscribed before me this

3 - 19          20 02

_____
Judge/Magistrate

## WARRANT OF ARREST

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

Complaint on oath having been made before me that the offense of

THEFT OF PROPERTY 1ST

has been committed and accusing _____ CHRISTOPOHER CORNELIUS MCCULLOUGH (ALIAS)

with committing the same, you are therefore commanded forthwith to arrest said                and bring him/he

_____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)

before the District Court of Chambers County to answer said charge.

Witness my hand this _____ 3 - 19 _____ 20 02

_____
Judge/Magistrate

WARRANT

STATE'S WITNESSES

DISPOSITION OF CASE

# The State of Alabama
## Chambers County

# WARRANT

THE STATE OF ALABAMA
vs.

CHRISTOPHER CORNELIUS MCCULLOUGH

(ALIAS)

CHARGE:

THEFT OF PROPERTY 1

OFFICER'S RETURN

I have executed this writ by arresting the
defendant and committing him/her to jail or allow-
ing him/her to give bond.

This _19th_ day of _March_

20 _07_

_____, Sheriff

_____, Deputy Sheriff

DESCRIPTION OF DEFENDANT

Driver's License No. _____ NONE
Social Security No. _____ 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
Race _____ black _____ Sex _____ MALE
Height _____ 5-11 _____ Weight _____ 155
Hair Color _____ black
Eye Color _____ BROWN _____ Complexion _____ MED
Age _____ 29 _____
Date of Birth _____ 11/27/72
Scars or Marks _____
Peculiarities _____
Lives 604 S. 1st AVE. LANETT, AL. 36863
Works _____
Married _____ Single _____
Number of Dependents _____
VPD Case No. _____

1 Warrant ☐ Writ ☐ Summons
Copy Given To Defendant
03-19-2007

State of Alabama
Unified Judicial System

Form C-80    Rev. 8/2000

# ORDER
## ON INITIAL APPEARANCE

Case Number

_R-02-200-147_
_177_
_148_

IN THE _District_ COURT OF _Chambers_, ALABAMA
        (Circuit, District or Municipal)    (Name of County or Municipality)

Burg 1°
Theft 1°

☐ STATE OF ALABAMA    _State_ v. _Christopher C. McCollough_
☐ MUNICIPALITY OF ____    Defendant

The above-named defendant, charged with the criminal offense(s) of _Bat Burg 1° Attempt Burg 1°_ at _2:45_ o'clock _p_.m.,
was duly brought before the Court for initial appearance on _3/20/02_,    _Theft 1°_
whereupon the Court did the following, as checked in the appropriate blocks:    _Theft 1°_

(CHECK AS APPLICABLE):

☑ 1. Name and address of defendant.
      ✓ (a) Ascertained the true name and address of the defendant to be:
            _604 S. Lafayette Ave_
            _Lanett, Alabama_
      ____ (b) Amended the formal charges to reflect defendant's true name.
      ____ (c) Instructed the defendant to notify the Court promptly of any change of address.

☑ 2. Informed the defendant of the charges against him/her and ensured that the defendant was served with a copy
      of the charges.

☐ 3. Informed the defendant of the right to be represented by counsel, that he/she would be afforded time and
      opportunity to retain an attorney, and further advised the defendant that, if he/she were indigent and unable to
      obtain counsel, an attorney would be appointed by the Court to represent him/her. If requested counsel, defendant ☐ was
      Defendant ☐ requested    ☐ did not request court-appointed counsel. If requested counsel, defendant ☐ was
      ☐ was not given a copy of the Affidavit of Substantial Hardship to complete in order for indigency to be determined.

☑ 4. Informed the defendant that he/she had the right to remain silent and that anything that he/she said could be use
      against him/her.

☑ 5. Bail
      ____ (a) Determined that the defendant shall not be released from custody since charged with a non-bailable
            capital offense.
      ✓ (b) Determined that the defendant shall be released from custody pending further proceedings, subject to
            the mandatory conditions prescribed in Rule 7.3(a), A.R.Cr.P., and subject to the following additional
            conditions:
            1.) Execution of an appearance bond (recognizance) in the amount of $ ____
            2.) Execution of a secured appearance bond in the amount of $ _100,000_
            3.) Other conditions (specify) ____    _100,000_
                                                    _100,000_
                                                    _50,000_
                                                    _350,000_

☐ 6. If charged with a felony offense, informed the defendant of right to demand a preliminary hearing under Rule 5.1,
      A.R.Cr.P., and of the procedure by which that right may be exercised.

☐ 7. If charged with a felony offense a preliminary hearing was demanded with 30 days of date of arrest by the above
      named defendant, set a preliminary hearing to be held in the District Court of ____ (date) at ____ o'clock ____.m.
      an ____
      ____ (a) Notified the District Court that such demand was made.
      ✓ (b) Defendant made no demand for a preliminary hearing at the initial appearance hearings.

☑ 8. Other: _Has prior conviction - Risk to abscond._

_3/20/02_                                        _[signature]_
Date                                            Judge/Magistrate

**ADVICE OF RIGHTS ON INITIAL APPEARANCE
BEFORE JUDGE OR MAGISTRATE**
(Felony)

Case Number _OX_02_2044__
_20-1247_
_202-146_

... Alabama
... dicial System        11/91

THE _District_ COURT OF _Chambers_, ALABAMA
(Circuit, District, or Municipal)        (Name of County or Municipality)

STATE OF ALABAMA _State_
MUNICIPALITY OF _____    v. _Christopher C. McCullough_
                                                        Defendant

This is a first appearance hearing. You are charged with committing the offense(s) of _Attempted Burglary 1°_ in this court in violation of _Theft 1° / Burglary 3° Burglary 1° / Theft 1° Color of a Fire arm 1975 on assault_ . The primary purpose of this hearing is to ensure that you know and understand the charge or charges against you. At this hearing, there will be no determination made about your guilt or innocence of the crime charged, but only a determination that you know and understand the charge or charges against you. If you are before the court on a complaint following a warrantless arrest, the judge or magistrate will determine whether there is probable cause for the charge against you.

In addition, the purpose of this hearing is to determine whether bail should be set in your case; or, if it has been already set, if it should remain the same, be raised, be lowered, or whether you should be released upon your personal recognizance (that is, your promise to appear for future court proceedings) or released in the custody of some responsible person. In order to make this determination, it will be necessary for the judge or magistrate to ask you some questions concerning your ties with the community.

You are entitled to be represented by an attorney. You have a right to have your own attorney and will be given time and opportunity to retain an attorney. If you are unable to afford an attorney, one will be appointed for you by the court if you qualify for such representation. It will be necessary for you to complete an indigency questionnaire under oath in order for the court to make this determination.

You have a right to talk with your attorney, family, or friends and, if necessary, reasonable means will be provided in order to enable you to do so. You have the right to remain silent. Anything that you say may be used against you.

Because you are charged with a felony, you are entitled to demand a preliminary hearing before a judge or magistrate to determine whether there is sufficient evidence to establish that you probably committed the offense or offenses with which you are charged. You must make this demand with thirty (30) days of the date of arrest. If a hearing is demanded and one is conducted, and if, at the conclusion of the preliminary hearing, the judge finds that sufficient evidence has been shown to establish that you probably committed the offense or offenses with which you are charged, the judge will then bind you over for further action by a grand jury. If, on the other hand, the judge finds that the evidence is insufficient to establish that you probably committed the crime or crimes charged, then the judge will dismiss the charge and discharge you from further custody or pre-trial obligations subject to the right of the prosecution to reinstate the charges against you at a later time.

If you are released from custody (whether personal recognizance or otherwise), you must:
1) Appear to answer and submit to all orders and process of the court having jurisdiction in the case.
2) Refrain from committing any criminal offense.
3) Not depart from the State of Alabama without the leave of the court having jurisdiction of this case.
4) Promptly notify the court of any change of address or the phone number.
5) Other conditions: _X Cannot leave Chambers City info within permit of the court._

The provisions of the Release Order may be revoked or modified by the court for cause. The Release Order and any appearance bond executed in compliance with it will continue in force and effect until the dismissal, acquittal, or conviction on the charges, unless sooner revoked or modified by the court. Upon report of a violation of any of the above conditions, a warrant for your arrest will be issued.

_3/20/02_                                   _J. Hatley_
Date                                        Judge/Magistrate

I have read or have been advised of the matters herein set forth. I understand the explanation of procedures, rights, and information given to me at the initial court appearance. I understand the conditions of my release and the penalties applicable in the event that I violate any conditions imposed herein. I also understand that failure to appear as required may subject me to additional charges in the revocation of release.

_3/20/02_                                   _Chris McCulley_
Date                                        Defendant




## Joel G. Holley

District Judge
Chambers County
LaFayette, Alabama 36862

LaFayette (334) 864-4323
Valley 586-8223

Chambers County
Courthouse

MARCH 28, 2002

HON. FRANK PATTERSON
ATTORNEY AT LAW
POST OFFICE BOX 1001
LANETT, ALABAMA  36863

Case No.
DC-02-182    BURG 1ST
DC-02-183    TOP 1ST
DC-02-200146   ATT.BURG1ST
DC-02-200147   TOP 1ST
DC-02-200148   BURG 1ST

RE:  CHRISTOPHER MCCULLOUGH

Dear:  HON. FRANK PATTERSON;

The criminal defendant referred to is in jail, unable to make bond, and has been declared indigent by the Court.  You are appointed to represent said Defendant in all matters pending before the District Court. Please complete this enclosed form and return it to my office promptly.  Since the Defendant is in jail unable to make bond, please promptly make contact and proceed with the case.

If you have a conflict, please respond in writing in motion form.  If not you will be entered of record as appointed counsel.

Thank you for accepting this appointment.  This is a service to the Bar and the Court.  It will help keep the dockets moving and make sure all criminal defendants are represented by counsel.

Sincerely,

*Joel G. Holley /bt*

Joel G. Holley
District Judge

JGH/bt
Enclosure

Cc: Clerk's Office
Defendant

005

STATE OF ALABAMA
PLAINTIFF

VS.

CHRISTOPHER MCCULLOUGH
DEFENDANT

IN THE DISTRICT COURT OF

CHAMBERS COUNTY, ALABAMA

CASE NO. DC-02-182
DC-02-183
DC-02-200146
DC-02-200147
DC-02-200148

O R D E R

UPON CONSIDERATION OF DEFENDANT'S MOTION FOR A PRELIMINARY
HEARING, IT IS ORDERED THAT A PRELIMINARY HEARING BE AND IS
HEREBY SCHEDULED ON THE ___19TH___ DAY OF _____APRIL_____, 2002
AT 10:00 A.M. C.T.

AT LAFAYETTE, THIS THE ___3RD___ DAY OF _____APRIL_____, 2002.

_____
JOEL G. HOLLEY, DISTRICT JUDGE

FILED IN OFFICE THIS

APR 3 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

CC:  HON. FRANK PATTERSON, DEFENDANT'S ATTORNEY
HON. BILL LISENBY, ASSISTANT DISTRICT ATTORNEY
CHAMBERS COUNTY DETENTION FACILITY

IN THE DISTRICT COURT OF CHAMBERS COUNTY                    007

| | | |
|---|---|---|
| CITY OF LANETT | * | |
| | * | |
| Plaintiff | * | CASE NO. DC-02-146 |
| | * | DC-02-182 |
| | * | DC-02-183 |
| | * | DC-02-147 |
| v. | * | DC-02-148 |
| | * | DC-02-164 |
| CHRISTOPHER MCCULLOUGH | * | DC-02-178 |
| | * | DC-02-179 |
| Defendant | * | |

## ORDER

A Preliminary Hearing was set April 19, 2002 for Mr. Christopher McCullough.

The Hon. Frank Patterson was appointed as council. Because of a conflict with Mr.

Patterson, he has been relieved of his duties and the Hon. Steve Morris is appointed to

represent the Defendant Christopher McCullough.

At LaFayette, this 19th day of April, 2002.

_____
Judge Joel G. Holley, District Court

_____
Hon. Steve Morris

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

008

IN THE DISTRICT COURT OF CHAMBERS COUNTY

*State of Alabama*

CITY OF LANETT

    Plaintiff

    v.

CHRISTOPHER MCCULLOUGH

    Defendant

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CASE NO. DC-02-146
DC-02-182
DC-02-183
DC-02-147
DC-02-148
DC-02-164
DC-02-178
DC-02-179

## ORDER

Preliminary Hearing called.  Defendant present and counsel Hon. Steve Morris.
The Defendant stated he wanted to waive all Preliminary Hearing in all cases.  The Court
explained the purpose of said hearing and that his counsel was prepared.  Still, Defendant
wanted to waive. Counsel appeared.

Cases are bound over to the Grand Jury.  Bonds to remain the same.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

009

CASE: DC 2002 200147.00

ALABAMA JUDICIAL INFORMATION SYSTEM
CASE ACTION SUMMARY
DISTRICT   CRIMINAL

ACRO370
OPER: MAF
AGE:   1

RUN DATE: 03/20/2002

JUDGE: JGH

IN THE DISTRICT COURT OF   CHAMBERS          VS          MCCULLOUGH CHRISTOPHER C
                                                         604 S 1ST AVE
CITY OF LANETT
                                                         LANETT, AL  36863 0000
CASE: DC 2002 200147.00

                      SEX: M  RACE: B  HT: 5 11  WT: 155   HR:       EYES:

DOB: 11/27/1972    ALIAS NAMES:
SSN: 416114328
CHARGE01: THEFT OF PROP 1ST      CODE01: TOP1  LIT: THEFT OF PROP  TYP: F #: 001
OFFENSE DATE:                            AGENCY/OFFICER: AST4300 L WHALE

                                         DATE ARRESTED: 03/19/2002
DATE WAR/CAP ISS:                        DATE    FILED: 03/20/2002
DATE    INDICTED:                        DATE HEARING:
DATE    RELEASED:          $.00              SURETIES:
        BOND AMOUNT:
                                             TIME: 0000
DATE 1:           DESC:                       TIME: 0000
DATE 2:           DESC:

TRACKING NOS:                         TYPE:                              TYPE:

    DEF/ATY:                                                  00000

                            00000

PROSECUTOR:

                                                     GRAND JURY:
                                                              OPER: MAF
TH CSE:   000000000000 CHK/TICKET NO:    000000000
COURT REPORTER:              SID NO:                           OPE
DEF STATUS: JAIL            DEMAND:

| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | | |
|---|---|---|---|
| 03/20/2002 | ASSIGNED TO: (JGH) JOEL G. HOLLEY | (AR01) | MAF |
| 03/20/2002 | INITIAL STATUS SET TO: "J" - JAIL | (AR01) | MAF |
| 03/20/2002 | FILED ON: 03/20/2002 | (AR01) | MAF |
| 03/20/2002 | DEFENDANT ARRESTED ON: 03/19/2002 | (AR01) | MAF |
| 03/20/2002 | CHARGE 01: THEFT OF PROP 1ST/#CNTS: 001 | (AR01) | MAF |
| 03/20/2002 | PARTY ADDED  W001  JOHN BURTON | (AW21) | MAF |
| 03/20/2002 | CASE ACTION SUMMARY PRINTED | (AR08) | MAF |
| 03/20/2002 | CAS ATTACHMENT PRINTED | (AR08) | MAF |
| 3/20/02 | Initial appearn - Bail - set @ 25,000 JGH |  |  |
| 3/25/02 | Affidavit of Substantial Hardship & Order - Hon. F. Patterson |  |  |
| 4/3/02 | Motion for Pre-Lim |  |  |
| 4/3/02 | Order - Pre-Lim set for 4/19/02 |  |  |
| 4/19/02 | Order - Hon. Frank Patterson relieved of duties and Hon. Steve Morris is hereby appointed as counsel |  |  |
| 4/19/02 | Order - Pre-Lim waived; Case bound over to Grand Jury |  |  |

ALABAMA JUDICIAL INFORMATION CENTER

010

ACRO369    CASE ACTION SUMMARY    CASE: DC 2002 200147.00
CONTINUATION    JUDGE ID:    JGH

VS    MCCULLOUGH CHRISTOPHER C

CITY OF LANETT

ACTION, JUDGMENTS, CASE NOTES

| DATE | |
|------|--|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Warrant Number **0 11**
**146**

# AFFIDAVIT
## AND
# WARRANT OF ARREST

State of Alabama
Unified Judicial System

Case Number
020300375

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

**AFFIDAVIT**

Before me, Judge/Magistrate of the District Court of Chambers County, personally appeared this

day _____ and made oath that he/she has probable cause for believing and does believe, that in said State and
DET. LINCOLN WHALEY

County, before the filing of this complaint, _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)
whose name is not known to the affiant, other than is stated, did, On or about MARCH 19, 2002

did with intent to commit the crime of Burglary 1st Degree (13A-7-5 of the Code of Alabama) attempt to commit said offense
OF MIKE GRACE
by going to the residence armed with a Smith & Wesson .9mm to commit Burglary 1st Degree, in violation of 13A-4-2 of the

Code of Alabama, against the peace and dignity of the State of Alabama.

in violation of Section/Ordinance number   13A-4-2                    / 18-1
which said offense was committed against the peace and dignity of the State of Alabama.

**AFFIANT**

ADDRESS 401 N. Lanier Ave. 36863

TELEPHONE  NUMBER 644-5227

Sworn to and subscribed before me this
3-19                 20 02

Judge/Magistrate

WARRANT OF ARREST

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:
Complaint on oath having been made before me that the offense of

ATTEMPTED BURGLARY 1

has been committed and accusing _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)
with committing the same, you are therefore commanded forthwith to arrest said                    and bring him/her

CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)
before the District Court of Chambers County to answer said charge.

Witness my hand this _____ 3-19 _____ 20 02

Judge/Magistrate

AFFIDAVIT AND WARRANT

012

STATE'S WITNESSES

_____
_____
_____
_____
_____
_____

DISPOSITION OF CASE

_____
_____
_____
_____
_____

The State of Alabama
Chambers County

# WARRANT

THE STATE OF ALABAMA
vs.

CHRISTOPHER CORNELIUS MCCULLOUGH

(ALIAS)

_____

CHARGE:

ATTEMPTED BURGLARY 1

OFFICER'S RETURN

I have executed this writ by arresting the defendant and committing him/her to jail or allowing him/her to give bond.

This 15th day of March

20 05

_____, Sheriff

_____, Deputy Sheriff

_____ Police Officer

DESCRIPTION OF DEFENDANT

Case No. _____ NONE

___ No. _____ 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

black _____ Sex MALE Weight 155

_____ black

BROWN _____ MED

_____ Complexion

irth _____ 11/21/72

arks

S. 1st AVE. LANETT, AL. 36863

_____ Single

of Dependents _____

se No. _____

arrant ☐ Writ ☐ Summons
Given To Defendant
0319 _____ ID# __-07

013

State of Alabama
Unified Judicial System

**ORDER
ON INITIAL APPEARANCE**

Case Number
CC-02-200-147
177
148

Form C-80    Rev. 8/2000

IN THE _____Dist_____ COURT OF _____Chambers_____, ALABAMA
(Circuit, District or Municipal)         (Name of County or Municipality)

Burglary 1°
Theft 1°

☐ STATE OF ALABAMA _____State_____ v. _____Christopher C. McCollough_____
☐ MUNICIPALITY OF _____                                                    Defendant

---

The above-named defendant, charged with the criminal offense(s) of _Bt. Burg. 1° Attempt Burg. 1°_, at _2:45_ o'clock _p_.m.,
was duly brought before the Court for initial appearance on _3/20/02_, 
Theft 1°
whereupon the Court did the following, as checked in the appropriate blocks:    Theft 1°

**(CHECK AS APPLICABLE):**

☑ 1. Name and address of defendant.
   ✓ (a) Ascertained the true name and address of the defendant to be:
   _604 School Ave_
   _Lanett, Alabama_
   ____ (b) Amended the formal charges to reflect defendant's true name.
   ____ (c) Instructed the defendant to notify the Court promptly of any change of address.

☑ 2. Informed the defendant of the charges against him/her and ensured that the defendant was served with a copy
   of the charges.

☐ 3. Informed the defendant of the right to be represented by counsel, that he/she would be afforded time and
   opportunity to retain an attorney, and further advised the defendant that, if he/she were indigent and unable to
   obtain counsel, an attorney would be appointed by the Court to represent him/her. If requested counsel, defendant ☐ was
   Defendant ☐ requested    ☐ did not request court-appointed counsel.  ☐ was not given a copy of the Affidavit of Substantial Hardship to complete in order for indigency to be determined.

☑ 4. Informed the defendant that he/she had the right to remain silent and that anything that he/she said could be use
   against him/her.

☑ 5. Bail
   ____ (a) Determined that the defendant shall not be released from custody since charged with a non-bailable
      capital offense.
   ✓ (b) Determined that the defendant shall be released from custody pending further proceedings, subject to
      the mandatory conditions prescribed in Rule 7.3(a), A.R.Cr.P., and subject to the following additional
      conditions:
      1.) Execution of an appearance bond (recognizance) in the amount of $ _____
      2.) Execution of a secured appearance bond in the amount of $ _100,000_
                                                                    _100,000_
      3.) Other conditions (specify) _100,000_
                                     _50,000_

☐ 6. If charged with a felony offense, informed the defendant of right to demand a preliminary hearing under Rule 5.1,
   A.R.Cr.P., and of the procedure by which that right may be exercised.

☐ 7. If charged with a felony offense a preliminary hearing was demanded with 30 days of date of arrest by the above
   named defendant, set a preliminary hearing to be held in the District Court of _____,
   an _____ (date) at _____ o'clock ____.m.
   ____ (a) Notified the District Court that such demand was made.
   ____ (b) Defendant made no demand for a preliminary hearing at the initial appearance hearings.

☑ 8. Other: _D. has prior conviction - risk to abscond._
   _3/20/02_

014

## ADVICE OF RIGHTS ON INITIAL APPEARANCE
## BEFORE JUDGE OR MAGISTRATE
### (Felony)

State of Alabama
Unified Judicial System

Form C-81    11/91

Case Number
CC-02-2044
20-1247
202-146

IN THE ___District___ COURT OF ___Chambers___, ALABAMA
(Circuit, District, or Municipal)    (Name of County or Municipality)

☑ STATE OF ALABAMA ___State___
☐ MUNICIPALITY OF _____

v. ___Christopher C. McCullough___
Defendant

This is a first appearance hearing. You are charged with committing the offense(s) of _Attempted Burglary 1°_ in this court in violation of _Theft 1° / Burglary 1° Burglary 1° - / Theft 1°._ The primary purpose of this hearing is to ensure that you know and understand the charge or charges against you. At this hearing, there will be no determination made about your guilt or innocence of the crime charged, but only a determination that you know and understand the charge or charges against you. If you are before the court on a complaint following a warrantless arrest, the judge or magistrate will determine whether there is probable cause for the charge against you.

In addition, the purpose of this hearing is to determine whether bail should be set in your case; or, if it has been already set, if it should remain the same, be raised, be lowered, or whether you should be released upon your personal recognizance (that is, your promise to appear for future court proceedings) or released in the custody of some responsible person. In order to make this determination, it will be necessary for the judge or magistrate to ask you some questions concerning your ties with the community.

You are entitled to be represented by an attorney. You have a right to have your own attorney and will be given time and opportunity to retain an attorney. If you are unable to afford an attorney, one will be appointed for you by the court if you qualify for such representation. It will be necessary for you to complete an indigency questionnaire under oath in order for the court to make this determination.

You have a right to talk with your attorney, family, or friends and, if necessary, reasonable means will be provided in order to enable you to do so. You have the right to remain silent. Anything that you say may be used against you.

Because you are charged with a felony, you are entitled to demand a preliminary hearing before a judge or magistrate to determine whether there is sufficient evidence to establish that you probably committed the offense or offenses with which you are charged. You must make this demand with thirty (30) days of the date of arrest. If a hearing is demanded and one is conducted, and if, at the conclusion of the preliminary hearing, the judge finds that sufficient evidence has been shown to establish that you probably committed the offense or offenses with which you are charged, the judge will then bind you over for further action by a grand jury. If, on the other hand, the judge finds that the evidence is insufficient to establish that you probably committed the crime or crimes charged, then the judge will dismiss the charge and discharge you from further custody or pre-trial obligations subject to the right of the prosecution to reinstate the charges against you at a later time.

If you are released from custody (whether personal recognizance or otherwise), you must:
1) Appear to answer and submit to all orders and process of the court having jurisdiction in the case.
2) Refrain from committing any criminal offense.
3) Not depart from the State of Alabama without the leave of the court having jurisdiction of this case.
4) Promptly notify the court of any change of address or the phone number.
5) Other conditions: _Cannot leave Chambers City w/o written permit the court._
☒ _Cannot leave Chambers City w/o written permit the Court._

The provisions of the Release Order may be revoked or modified by the court for cause. The Release Order and any appearance bond executed in compliance with it will continue in force and effect until the dismissal, acquittal, or conviction on the charges, unless sooner revoked or modified by the court. Upon report of a violation of any of the above conditions, a warrant for your arrest will be issued.

___3/20/02___
Date

_____
Judge/Magistrate

I have read or have been advised of the matters herein set forth. I understand the explanation of procedures, rights, and information given to me at the initial court appearance. I understand the conditions of my release and the penalties applicable in the event that I violate any conditions imposed herein. I also understand that failure to appear as required may subject me to additional charges in the revocation of release.

___3/20/02___

_____
Defendant



Joel G. Holley

District Judge
Chambers County
Lafayette, Alabama 36862



Lafayette (334) 864-4323
Valley 586-8223

Chambers County
Courthouse

MARCH 28, 2002

HON. FRANK PATTERSON
ATTORNEY AT LAW
POST OFFICE BOX 1001
LANETT, ALABAMA  36863

RE:  CHRISTOPHER MCCULLOUGH

Case No.

DC-02-182    BURG 1ST
DC-02-183    TOP 1ST
DC-02-200146 ATT.BURG1S
DC-02-200147 TOP 1ST
DC-02-200148 BURG 1ST

Dear:  HON. FRANK PATTERSON;

The criminal defendant referred to is in jail, unable to make bond, and has been declared indigent by the Court.  You are appointed to represent said Defendant in all matters pending before the District Court. Please complete this enclosed form and return it to my office promptly.  Since the Defendant is in jail unable to make bond, please promptly make contact and proceed with the case.

If you have a conflict, please respond in writing in motion form.  If not you will be entered of record as appointed counsel.

Thank you for accepting this appointment.  This is a service to the Bar and the Court.  It will help keep the dockets moving and make sure all criminal defendants are represented by counsel.

Sincerely,

Joel A. Halley /BT

Joel G. Holley
District Judge

JGH/bt
Enclosure

Cc:  Clerk's Office
        Defendant

016

STATE OF ALABAMA
PLAINTIFF

IN THE DISTRICT COURT OF

CHAMBERS COUNTY, ALABAMA

VS.

CHRISTOPHER MCCULLOUGH
DEFENDANT

CASE NO.  DC-02-182
          DC-02-183
          DC-02-200146
          DC-02-200147
          DC-02-200148

O R D E R

UPON CONSIDERATION OF DEFENDANT'S MOTION FOR A PRELIMINARY

HEARING, IT IS ORDERED THAT A PRELIMINARY HEARING BE AND IS

HEREBY SCHEDULED ON THE  19TH  DAY OF  APRIL  , 2002

AT 10:00 A.M. C.T.

AT LAFAYETTE, THIS THE  3RD  DAY OF  APRIL  , 2002.

_JOEL G. HOLLEY_ /DT

JOEL G. HOLLEY, DISTRICT JUDGE

FILED IN OFFICE THIS

APR  3 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

CC:  HON. FRANK PATTERSON, DEFENDANT'S ATTORNEY
     HON. BILL LISENBY, ASSISTANT DISTRICT ATTORNEY
     CHAMBERS COUNTY DETENTION FACILITY

017

| | REQUEST/APPOINTMENT/ACCEPTANCE OF ATTORNEY/GUARDIAN AD LITEM | Case Number |
|---|---|---|

State of Alabama
Unified Judicial System

Form C-11          Rev 6/88

**Part I**

IN THE _____District_____ COURT OF _____Chambers_____, ALABAMA
(Circuit or District)                                   (Name of County)

_____State_____ v. _____Christopher McCullogh_____
(Plaintiff)                                    (Defendant)

In the Matter of: _____all Criminal cases_____
(Juvenile Case)

I request that a   ☑ Attorney   ☐ Guardian Ad Litem   be appointed for:

_____
(Name)

_____          _____
Date                         Signature

**Part II**

The court appoints _____ as
                          (Name of Attorney or Guardian Ad Litem)

☑ Attorney
☐ Guardian Ad Litem

_____4/19/02_____          _____[signature]_____
Date                         Judge

**Part III**

I accept the above appointment as   ☑ Attorney   ☐ Guardian Ad Litem

_____April 19/02_____          _____Steven R. Morris_____
Date                              Attorney or Guardian ad Litem

C18

IN THE DISTRICT COURT OF CHAMBERS COUNTY

*State of Alabama*

CITY OF LANETT

Plaintiff

v.

CHRISTOPHER MCCULLOUGH

Defendant

```
            *
            *
            *       CASE NO. DC-02-146
            *                DC-02-182
            *                DC-02-183
            *                DC-02-147
            *                DC-02-148
            *                DC-02-164
            *                DC-02-178
            *                DC-02-179
            *
            *
```

## ORDER

Preliminary Hearing called. Defendant present and counsel Hon. Steve Morris.

The Defendant stated he wanted to waive all Preliminary Hearing in all cases. The Court

explained the purpose of said hearing and that his counsel was prepared. Still, Defendant

wanted to waive. Counsel appeared.

Cases are bound over to the Grand Jury. Bonds to remain the same.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

(13)

## IN THE DISTRICT COURT OF CHAMBERS COUNTY

| | | |
|---|---|---|
| CITY OF LANETT | * | |
| | * | |
| Plaintiff | * | CASE NO. DC-02-146 |
| | * | DC-02-182 |
| | * | DC-02-183 |
| | * | DC-02-147 |
| v. | * | DC-02-148 |
| | * | DC-02-164 |
| CHRISTOPHER MCCULLOUGH | * | DC-02-178 |
| | * | DC-02-179 |
| Defendant | * | |
| | * | |

## ORDER

A Preliminary Hearing was set April 19, 2002 for Mr. Christopher McCullough.

The Hon. Frank Patterson was appointed as council. Because of a conflict with Mr.

Patterson, he has been relieved of his duties and the Hon. Steve Morris is appointed to

represent the Defendant Christopher McCullough.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

Hon. Steve Morris

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

020

ALABAMA JUDICIAL INFORMATION SYSTEM          CASE: DC 2002 200146.0(
                CASE ACTION SUMMARY                RUN DATE: 03/20/200;
ACRO370              DISTRICT  CRIMINAL
OPER: MAF                                          JUDGE: JGF
AGE:   1
:================================================================
IN THE DISTRICT COURT OF  CHAMBERS

CITY OF LANETT                         VS      MCCULLOUGH CHRISTOPHER C
                                               604 S 1ST AVE
CASE: DC 2002 200146.00                        LANETT, AL  36863 0000

                        SEX: M  RACE: B  HT: 5 11  WT: 155  HR:     EYES:
DOB: 11/27/1972  ALIAS NAMES:
SSN: 416114328                       BUR1A LIT: ATTEMPT - BURG TYP: F #: 001
==================================================================
CHARGE01: ATTEMPT - BURGLARY 1 CODE01: BUR1A  AGENCY/OFFICER: AST4300 L WHALE
OFFENSE DATE:
                                       DATE ARRESTED: 03/19/2002
DATE WAR/CAP ISS:                      DATE   FILED: 03/20/2002
DATE   INDICTED:                       DATE  HEARING:
DATE   RELEASED:          $.00             SURETIES:
          BOND AMOUNT:
                                       TIME: 0000
DATE 1:              DESC:              TIME: 0000
DATE 2:              DESC:

TRACKING NOS:                      /                            TYPE:
                                          TYPE:
     DEF/ATY:                                         00000
                        00000

PROSECUTOR:

                                          ===============================
                                          GRAND JURY:
==============================================================
TH CSE:  000000000000 CHK/TICKET NO:      000000000    OPER: MAF
COURT REPORTER:---------- SID NO:-------------------------------
DEF STATUS: JAIL          DEMAND:                           OPE
==================================================================
  TRANS DATE  |  ACTIONS, JUDGEMENTS, AND NOTES                    MAF
============================================================
| 03/20/2002 | ASSIGNED TO: (JGH) JOEL G. HOLLEY          (AR01)  MAF |
| 03/20/2002 | CHARGE 01: ATTEMPT - BURGLARY 1/#CNTS: 001  (AR01)  MAF |
| 03/20/2002 | INITIAL STATUS SET TO: "J" - JAIL           (AR01)  MAF |
| 03/20/2002 | DEFENDANT ARRESTED ON: 03/19/2002           (AR01)  MAF |
| 03/20/2002 | FILED ON: 03/20/2002                        (AR01)  MAF |
| 03/20/2002 | PARTY ADDED  W001  LINCOLN WHALEY           (AW21)  MAF |
| 03/20/2002 | CASE ACTION SUMMARY PRINTED                 (AR08)  MAF |
| 03/20/2002 | CAS ATTACHMENT PRINTED                      (AR08)  MAF |
| 3/20/02   | Initial appearance: Bond set @ 150,000 XX2 |
| 3/25/02   | Affidavit of Substantial Hardship + Order - Hon. F. Patterson |
| 4/3/02    | Motion for Pre-Lim |
| 4/3/02    | Order: Pre-Lim set for 4/19/02 |
| 4/18/02   | Hon: Frank Patterson dismissed as Counsel due to Conflict |
| 4/19/02   | Hon: Steve Morris appointed as Counsel (over) |

021

ACRO369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R
CASE ACTION SUMMARY
CONTINUATION

CASE: DC 2002 200146.00
JUDGE ID:  JGH

CITY OF LANETT

VS   MCCULLOUGH CHRISTOPHER C

ACTION, JUDGMENTS, CASE NOTES

| DATE | |
|---|---|
| 4/19/02 | Preliminary Hearing called; Def. states to the court that he wanted to waive preliminary hearing in all his cases. |
| | Cases are bound over to Grand Jury |

| | AFFIDAVIT | Warrant Number 0 148 |
|---|---|---|
| State of Alabama Unified Judicial System | AND WARRANT OF ARREST | Case Number 020300272 |

THE STATE OF ALABAMA                             IN THE DISTRICT COURT OF
CHAMBERS COUNTY                                  CHAMBERS COUNTY

**AFFIDAVIT**

Before me, Judge/Magistrate of the District Court of Chambers County, personally appeared this

day _____ JOHN BURTON _____

and made oath that he/she has probable cause for believing and does believe, that in said State and

County, before the filing of this complaint, _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS) _____

whose name is not known to the affiant, other than is stated, did, On or about   MARCH 13, 2002

did knowingly and unlawfully enter or remain unlawfully in a dwelling of JOHN BURTON with intent to commit a crime

therein to wit:  Theft of Property 1, and while effecting entry or while in the dwelling or in immediate flight therefrom, the said

defendant or another participant, to-wit: Billy Ralph Norris Jr., was armed with a deadly weapon, to-wit: Colt King Cobra .357,

Smith & Wesson 6906 .9mm, Ruger 1022 rifle, and a Browning 12ga. shotgun,

in violation of Section/Ordinance number   13A-7-5        / 18-1
which said offense was committed against the peace and dignity of the State of Alabama.

AFFIANT _____

ADDRESS 7146 Country Club Rd. Lanett, Al. 36863

TELEPHONE NUMBER 642-0904

Sworn to and subscribed before me this
3-19              20 02
_____
Judge/Magistrate

**WARRANT OF ARREST**

THE STATE OF ALABAMA                             IN THE DISTRICT COURT OF
CHAMBERS COUNTY                                  CHAMBERS COUNTY
TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:
    Complaint on oath having been made before me that the offense of

_____ BURGLARY 1 _____

has been committed and accusing _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS) _____
with committing the same, you are therefore commanded forthwith to arrest said

_____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS) _____                and bring him/her

before the District Court of Chambers County to answer said charge.

Witness my hand this _____ 3-19 _____ 20 02

_____
Judge/Magistrate

AFFIDAVIT AND WARRANT

024

| State of Alabama<br>Unified Judicial System | **ORDER<br>ON INITIAL APPEARANCE** | Case Number<br>_PK-02-200-178_<br>_177_<br>_146_ |
| --- | --- | --- |
| Form C-80    Rev. 8/2000 | | |

IN THE _District_ COURT OF _Chambers_, ALABAMA
(Circuit, District or Municipal)    (Name of County or Municipality)

☐ **STATE OF ALABAMA** _State_    _Burg 1°_
☐ **MUNICIPALITY OF**                    v. _Christopher C. McCullogA_    _Thft 1°_
                                                        Defendant    _Thft 1°_

The above-named defendant, charged with the criminal offense(s) of _3 ct Burg 1° Attempt Burg 1°_, at _2:45_ o'clock _p_.m.,
was duly brought before the Court for initial appearance on _3/20/02_,    _Thft 1°_
whereupon the Court did the following, as checked in the appropriate blocks:    _Thft 1°_

*(CHECK AS APPLICABLE):*

☑ 1. Name and address of defendant.
⎯ (a) Ascertained the true name and address of the defendant to be:
_604 S. 4th. Ave_
_Lanett, Alabama_
____ (b) Amended the formal charges to reflect defendant's true name.
____ (c) Instructed the defendant to notify the Court promptly of any change of address.

☑ 2. Informed the defendant of the charges against him/her and ensured that the defendant was served with a copy of the charges.

☐ 3. Informed the defendant of the right to be represented by counsel, that he/she would be afforded time and opportunity to retain an attorney, and further advised the defendant that, if he/she were indigent and unable to obtain counsel, an attorney would be appointed by the Court to represent him/her. If requested counsel, defendant ☐ was Defendant ☐ requested    ☐ did not request court-appointed counsel. If requested counsel, defendant ☐ was ☐ was not given a copy of the Affidavit of Substantial Hardship to complete in order for indigency to be determined.

☑ 4. Informed the defendant that he/she had the right to remain silent and that anything that he/she said could be use against him/her.

☑ 5. Bail
____ (a) Determined that the defendant shall not be released from custody since charged with a non-bailable capital offense.
____ (b) Determined that the defendant shall be released from custody pending further proceedings, subject to the mandatory conditions prescribed in Rule 7.3(a), A.R.Cr.P., and subject to the following additional conditions:
____ 1.) Execution of an appearance bond (recognizance) in the amount of $ _100,000_.
____ 2.) Execution of a secured appearance bond in the amount of $ _100,000_.
____ 3.) Other conditions (specify) _100,000_
_50,000_
_50,000_

☐ 6. If charged with a felony offense, informed the defendant of right to demand a preliminary hearing under Rule 5.1, A.R.Cr.P., and of the procedure by which that right may be exercised.

☐ 7. If charged with a felony offense a preliminary hearing was demanded with 30 days of date of arrest by the above named defendant, set a preliminary hearing to be held in the District Court of _____, _____,
(date) at _____ o'clock ____.m.
an ____ (a) Notified the District Court that such demand was made.
⎯ (b) Defendant made no demand for a preliminary hearing at the initial appearance hearings.

☑ 8. Other: _D has prior Conviction - Risk to abscond._

_3/20/02_                                            _[signature]_
                                                        Judge/Magistrate

025

**ADVICE OF RIGHTS ON INITIAL APPEARANCE**
**BEFORE JUDGE OR MAGISTRATE**
(Felony)

| | Case Number |
|---|---|
| State of Alabama<br>Unified Judicial System<br>Form C-81    11/91 | *DC-02-204* |

IN THE _____*District*_____ COURT OF _____*Chambers*_____ ALABAMA
(Circuit, District, or Municipal)          (Name of County or Municipality)

☑ STATE OF ALABAMA
☐ MUNICIPALITY OF _____*State*_____ v. _____*Christopher C. McCullough*_____
                                                              Defendant

This is a first appearance hearing. You are charged with committing the offense(s) of _____*Attempted Burglary 1°*_____ in this court in violation of _____*Theft 1° / Burglary 1° / Theft 1° / ... Code of AL ... 13A-7-5 or ...*_____. The primary purpose of this hearing is to ensure that you know and understand the charge or charges against you. At this hearing, there will be no determination of your guilt or innocence of the crime charged, but only a determination that you know and understand the charge or charges against you. If you are before the court on a complaint following a warrantless arrest, the judge or magistrate will determine whether there is probable cause for the charge against you.

In addition, the purpose of this hearing is to determine whether bail should be set in your case; or, if it has been already set, if it should remain the same, be raised, be lowered, or whether you should be released upon your personal recognizance (that is, your promise to appear for future court proceedings) or released in the custody of some responsible person. In order to make this determination, it will be necessary for the judge or magistrate to ask you some questions concerning your ties with the community.

You are entitled to be represented by an attorney. You have a right to have your own attorney and will be given time and opportunity to retain an attorney. If you are unable to afford an attorney, one will be appointed for you by the court if you qualify for such representation. It will be necessary for you to complete an indigency questionnaire under oath in order for the court to make this determination.

You have a right to talk with your attorney, family, or friends and, if necessary, reasonable means will be provided in order to enable you to do so. You have the right to remain silent. Anything that you say may be used against you.

Because you are charged with a felony, you are entitled to demand a preliminary hearing before a judge or magistrate to determine whether there is sufficient evidence to establish that you probably committed the offense or offenses with which you are charged. You must make this demand with thirty (30) days of the date of arrest. If a hearing is demanded and one is conducted, and if, at the conclusion of the preliminary hearing, the judge finds that sufficient evidence has been shown to establish that you probably committed the offense or offenses with which you are charged, the judge will then bind you over for further action by a grand jury. If, on the other hand, the judge finds that the evidence is insufficient to establish that you probably committed the crime or crimes charged, then the judge will dismiss the charge and discharge you from further custody or pre-trial obligations subject to the right of the prosecution to reinstate the charges against you at a later time.

If you are released from custody (whether personal recognizance or otherwise), you must:
1) Appear to answer and submit to all orders and process of the court having jurisdiction in the case.
2) Refrain from committing any criminal offense.
3) Not depart from the State of Alabama without the leave of the court having jurisdiction of this case.
4) Promptly notify the court of any change of address or the phone number.
5) Other conditions: _____*A cannot leave Chambers City w/o written permit of the Court.*_____

The provisions of the Release Order may be revoked or modified by the court for cause. The Release Order and any appearance bond executed in compliance with it will continue in force and effect until the dismissal, acquittal, or conviction on the charges, unless sooner revoked or modified by the court. Upon report of a violation of any of the above conditions, a warrant for your arrest will be issued.

_____*3/20/02*_____                    _____*[signature]*_____
Date                                            Judge/Magistrate

*I have read or have been advised of the matters herein set forth. I understand the explanation of procedures, rights, and information given to me at the initial court appearance. I understand the conditions of my release and the penalties applicable in the event that I violate any conditions imposed herein. I also understand that failure to appear as required may subject me to additional charges in the revocation of release.*

_____*3/20/02*_____                    _____*[signature] Chris McCullough*_____
Date                                            Defendant





026

**Joel G. Holley**

District Judge
Chambers County
Lafayette, Alabama 36862

Chambers County
Courthouse

Lafayette (334) 864-4323
Valley 586-8223

MARCH 28, 2002

HON. FRANK PATTERSON
ATTORNEY AT LAW
POST OFFICE BOX 1001
LANETT, ALABAMA  36863

RE:  CHRISTOPHER MCCULLOUGH

Case No.

| | |
|---|---|
| DC-02-182 | BURG 1ST |
| DC-02-183 | TOP 1ST |
| DC-02-200146 | ATT.BURG1ST |
| DC-02-200147 | TOP 1ST |
| DC-02-200148 | BURG 1ST |

Dear:  HON. FRANK PATTERSON;

The criminal defendant referred to is in jail, unable to make bond, and has been declared indigent by the Court.  You are appointed to represent said Defendant in all matters pending before the District Court.  Please complete this enclosed form and return it to my office promptly.  Since the Defendant is in jail unable to make bond, please promptly make contact and proceed with the case.

If you have a conflict, please respond in writing in motion form.  If not you will be entered of record as appointed counsel.

Thank you for accepting this appointment.  This is a service to the Bar and the Court.  It will help keep the dockets moving and make sure all criminal defendants are represented by counsel.

Sincerely,

Joel G. Holley /BT

Joel G. Holley
District Judge

JGH/bt
Enclosure

Cc: Clerk's Office
    Defendant

C27

STATE OF ALABAMA
PLAINTIFF

VS.

CHRISTOPHER MCCULLOUGH
DEFENDANT

IN THE DISTRICT COURT OF

CHAMBERS COUNTY, ALABAMA

CASE NO.   DC-02-182
            DC-02-183
            DC-02-200146
            DC-02-200147
            DC-02-200148

O R D E R

UPON CONSIDERATION OF DEFENDANT'S MOTION FOR A PRELIMINARY

HEARING, IT IS ORDERED THAT A PRELIMINARY HEARING BE AND IS

HEREBY SCHEDULED ON THE __19TH__ DAY OF ____APRIL____, 2002

AT 10:00 A.M. C.T.

AT LAFAYETTE, THIS THE __3RD__ DAY OF ____APRIL____, 2002.


_Joel G. Holley_ /BT
JOEL G. HOLLEY, DISTRICT JUDGE


FILED IN OFFICE THIS

APR 3 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA


CC:  HON. FRANK PATTERSON, DEFENDANT'S ATTORNEY
     HON. BILL LISENBY, ASSISTANT DISTRICT ATTORNEY
     CHAMBERS COUNTY DETENTION FACILITY

C23

## IN THE DISTRICT COURT OF CHAMBERS COUNTY

| | | |
|---|---|---|
| CITY OF LANETT | * | |
| | * | |
| Plaintiff | * | CASE NO. DC-02-146 |
| | * | DC-02-182 |
| | * | DC-02-183 |
| | * | DC-02-147 |
| v. | * | DC-02-148 |
| | * | DC-02-164 |
| CHRISTOPHER MCCULLOUGH | * | DC-02-178 |
| | * | DC-02-179 |
| Defendant | * | |
| | * | |

<u>ORDER</u>

A Preliminary Hearing was set April 19, 2002 for Mr. Christopher McCullough. The Hon. Frank Patterson was appointed as council. Because of a conflict with Mr. Patterson, he has been relieved of his duties and the Hon. Steve Morris is appointed to represent the Defendant Christopher McCullough.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

Hon. Steve Morris

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

029

IN THE DISTRICT COURT OF CHAMBERS COUNTY

*State of Alabama*

CITY OF LANETT

    Plaintiff

    v.

CHRISTOPHER MCCULLOUGH

    Defendant

CASE NO. DC-02-146
DC-02-182
DC-02-183
DC-02-147
DC-02-148
DC-02-164
DC-02-178
DC-02-179

## ORDER

Preliminary Hearing called.  Defendant present and counsel Hon. Steve Morris.

The Defendant stated he wanted to waive all Preliminary Hearing in all cases.  The Court

explained the purpose of said hearing and that his counsel was prepared.  Still, Defendant

wanted to waive. Counsel appeared.

Cases are bound over to the Grand Jury.  Bonds to remain the same.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

030

```
                        ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: DC 2002 200148.00
ACR0370                        CASE ACTION SUMMARY            RUN DATE: 03/20/2002
PER: MAF                       DISTRICT  CRIMINAL
GE:   1                                                              JUDGE: JGH
=========================================================================
IN THE DISTRICT COURT OF  CHAMBERS
                                    VS      MCCULLOUGH CHRISTOPHER C
CITY OF LANETT                              604 S 1ST AVE
CASE: DC 2002 200148.00                     LANETT, AL  36863 0000

                    SEX: M  RACE: B  HT: 5 11  WT: 155  HR:        EYES:
DOB: 11/27/1972
SSN: 416114328   ALIAS NAMES:
=========================================================================
CHARGE01: BURGLARY 1ST DEGREE   CODE01: BUR1  LIT: BURGLARY 1ST D TYP: F #: 001
OFFENSE DATE:                           AGENCY/OFFICER: AST4300 L WHALE

DATE WAR/CAP ISS:                       DATE ARRESTED: 03/19/2002
DATE    INDICTED:                       DATE   FILED: 03/20/2002
DATE    RELEASED:                       DATE HEARING:
      BOND AMOUNT:          $.00          SURETIES:

DATE 1:            DESC:                 TIME: 0000
DATE 2:            DESC:                 TIME: 0000

TRACKING NOS:                /                        /
                                      TYPE:                        TYPE:
   DEF/ATY:
                                                          00000
                          00000

PROSECUTOR:
                                                        GRAND JURY:
=========================================================================
UTH CSE:   000000000000 CHK/TICKET NO:                          OPER: MAF
COURT REPORTER: _____  SID NO:       000000000
DEF STATUS: JAIL              DEMAND:                                  OPE
=========================================================================
  TRANS DATE  | ACTIONS, JUDGEMENTS, AND NOTES                 (AR01)    MAF
-------------------------------------------------------------------------
 03/20/2002   | ASSIGNED TO: (JGH) JOEL G. HOLLEY             (AR01)    MAF
-------------------------------------------------------------------------
 03/20/2002   | INITIAL STATUS SET TO: "J" - JAIL            (AR01)    MAF
-------------------------------------------------------------------------
 03/20/2002   | FILED ON: 03/20/2002                         (AR01)    MAF
-------------------------------------------------------------------------
 03/20/2002   | DEFENDANT ARRESTED ON: 03/19/2002            (AR01)    MAF
-------------------------------------------------------------------------
 03/20/2002   | CHARGE 01: BURGLARY 1ST DEGREE /#CNTS: 001   (AR01)    MAF
-------------------------------------------------------------------------
 03/20/2002   | PARTY ADDED W001  JOHN BURTON                (AW21)    MAF
-------------------------------------------------------------------------
 03/20/2002   | CASE ACTION SUMMARY PRINTED                  (AR08)    MAF
-------------------------------------------------------------------------
 03/20/2002   | CAS ATTACHMENT PRINTED                       (AR08)    MAF
-------------------------------------------------------------------------
 3/20/02      | Initial appearance - Bond set @ 180,000
-------------------------------------------------------------------------
 3/25/02      | Affidavit of Substantial Hardship; Order - Hon F. Patterson
-------------------------------------------------------------------------
 4/3/02       | Motion for Pre-Lim
-------------------------------------------------------------------------
 4/3/02       | Order - Pre-Lim set for 4/19/02
-------------------------------------------------------------------------
 4/19/02      | Order - Hon Frank Patterson is relieved of duties and Hon
              |  Steve Morris is hereby appointed as counsel
-------------------------------------------------------------------------
 4/19/02      | Order - Pre-Lim waived; case bound over to Grand Jury
-------------------------------------------------------------------------
```

C31

ACRO369  A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E

CASE ACTION SUMMARY
CONTINUATION

CASE: DC 2002 200148.0
JUDGE ID:  JGH

CITY OF LANETT                          VS    MCCULLOUGH CHRISTOPHER C

DATE                    ACTION, JUDGMENTS, CASE NOTES

THE STATE OF ALABAMA

_____ COUNTY

Circuit Court. _____ Term, 20___

**To the Sheriff of said County:**

I hereby certify that this is a true and complete copy of the Indictment presented to the Court by the Grand Jury of said County against

_____

charged with _____

together with all endorsements on said Indictment, and that the trial is set for _____ , 20___

or _____
his counsel.

Witness my hand, this _____ , 20___

_____ , Clerk

I hereby certify that I have received above stated copy of Indictment from the Circuit Court Clerk of said County and served same on _____

at _____ o'clock _____ M., _____ 20___

_____ , Sheriff

_____ D.S.

---

No. ___ 1102-189 ___

THE STATE OF ALABAMA

CHAMBERS _____ COUNTY

CIRCUIT COURT

FALL _____ Term, 20_02_

THE STATE
vs
CHRISTOPHER MCCULLOUGH, ALIAS
BILLY NORRIS , ALIAS

**INDICTMENT**

BURGLARY FIRST DEGREE

THEFT OF PROPERTY FIRST DEGREE
RECEIVING STOLEN PROPERTY
SECOND DEGREE

No Prosecutor

WITNESSES:
JOHN BURTON
RICHARD CARTER

---

Grand Jury No. 272, 275, 273, 276, 274, 2__

A TRUE BILL: _____

_Joseph F. Floyd_
Foreman Gr__

Filed in open Court on the

'AUG 2 2 2002 , 2__

in the presence of the Grand Jury.

_Charles W. Story_ Cl__

Presented to the presiding Judge in open Co__
the Foreman of the Grand Jury, in the presenc__

_____ day of _____

Grand Jurors, and filed by order of the Court t__

_Charles W. Story_
day of, 'AUG 2 2 200__

Bail fixed at $ _150,000 @ total fo__

this _____ day-of _____ 'AUG 2 2 200__

_____
Judge Pr__

INDICTMENT                                                                                          033

# THE STATE OF ALABAMA, CHAMBERS COUNTY

## CIRCUIT COURT, FALL TERM, 2002

1.     The Grand Jury of Said County charges that before the finding of this Indictment, Christopher McCullough alias, and Billy Norris alias, whose names are otherwise unknown to the Grand Jury, did knowingly and unlawfully enter or remain unlawfully in a dwelling of another, to-wit: John Burton, with intent to commit a crime therein, to-wit: theft of property and while effecting entry or while in the dwelling or in immediate flight therefrom, the said Christopher McCullough and/or Billy Norris was armed with an explosive or deadly weapon, to-wit: a pistol or rifle, further descriptions of which are otherwise unknown to the Grand Jury, in violation of Section 13A-7-5 of the Code of Alabama, against the peace and dignity of the State of Alabama.

2.     The Grand Jury of Said County further charges that before the finding of this Indictment, Christopher McCullough alias, and Billy Norris alias, whose names are otherwise unknown to the Grand Jury, did knowingly obtain or exert unauthorized control over the following property, to-wit: two (2) pistols, five (5) knives, and one (1) rifle, further descriptions of which are otherwise unknown to the Grand Jury, and lawful currency of the United States of America, the exact denominations of which are otherwise unknown to the Grand Jury, the property of John Burton, and having a value in excess of $1,000.00 dollars, with the intent to deprive the owner of the said property, in violation of Section 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama.

3.     The Grand Jury of Said County further charges that before the finding of this Indictment, Christopher McCullough alias,  whose name is otherwise unknown to the Grand Jury, did intentionally receive, retain, or dispose of stolen property, to-wit: two (2) pistols, further descriptions of which are otherwise unknown to the Grand Jury, the property of John Burton, and having a value in excess of $100.00 dollars but not in excess of $1,000.00 dollars, knowing that it was stolen or having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation  of Section 13A-8-18 of the Code of Alabama, against the peace and dignity of the State of Alabama.

4.     The Grand Jury of Said County further charges that before the finding of this Indictment, Billy Norris alias,  whose name is otherwise unknown to the Grand Jury, did intentionally receive, retain, or dispose of stolen property, to-wit: two (2) pistols and one (1) rifle, further descriptions of which are otherwise unknown to the Grand Jury, the property of John Burton, and having a value in excess of $100.00 dollars but not in excess of $1,000.00 dollars, knowing that it was stolen or having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation  of Section 13A-8-18 of the Code of Alabama, against the peace and dignity of the State of Alabama.

_Rea L. Clark_

District Attorney of the Fifth Judicial Circuit

034

| State of Alabama<br>Unified Judicial System<br><br>Form CR-9    Rev. 3/95 | PLEA OF NOT GUILTY AND WAIVER OF<br>ARRAIGNMENT | Case Number<br>CC 2002  189<br>CC 2002  304, 31<br>32 |
|---|---|---|

IN THE ___Circuit___ COURT OF ___Chamber___ ALABAMA
(Circuit, District, or Municipal)        (Name of County or Municipality)

☐ STATE OF ALABAMA   v.  _Chris   McCullough_ , Defendant

COMES NOW the Defendant in the above styled matter, and to the offense charged enters a plea of

☑ Not Guilty

☐ Not Guilty by Reason of Mental Disease or Defect

☐ Not Guilty and Not Guilty by Reason of Mental Disease or Defect

Defendant acknowledges receipt of the copy of the charge against him and further waives the right to have an Arraignment at which the Defendant is present in person, or at which the Defendant is represented by an attorney.

But, the Defendant specifically and expressly reserves the right upon the filing hereof to hereafter, but before trial or before such date as may be set by the Court, to interpose any defenses, objections, or motions which the Defendant had the right as a matter of law or rule to interpose in this cause, prior to the filing hereof.

Defendant's date of birth is __11/27/72__ . Defendant's age is __29__

The Defendant is not eligible for consideration by the Court for Youthful Offender status as provided by law.

Date __Sept 23, 02__                     Defendant __Chris McCullough__

Date __Sept 23, 02__                     Attorney for Defendant __Steve R Morris__

This is to certify that I am the Attorney for the Defendant in this matter, and that I have fully explained this form and all matters set forth herein, and pertaining hereto, to the Defendant. I further state to the Court that I have explained to the Defendant his right to be Arraigned in person and his right to have me represent him at Arraignment. I further certify to the Court that my client hereby knowingly, voluntarily, and intelligently waives these rights after a full and complete explanation of each and every one of them to him by me. BOTH MYSELF AND THE DEFENDANT UNDERSTAND THAT I AM RESPONSIBLE FOR ASCERTAINING WHAT DATE, IF ANY, HAS BEEN SET BY THE COURT FOR THE MAKING OR FILING OF ANY DEFENSES, OBJECTIONS, OR MOTIONS. I FURTHER UNDERSTAND THAT I AM RESPONSIBLE FOR NOTIFYING MY CLIENT OF THE DATE HIS CASE IS SET FOR TRIAL, AND THAT I HAVE ADVISED AND INFORMED HIM THAT IN THE EVENT HE FAILS TO APPEAR ON THE DATE HIS CASE IS SET FOR TRIAL, ALL APPROPRIATE LEGAL ACTION WILL BE TAKEN BY THE COURT AGAINST THE DEFENDANT AND HIS BOND. I further certify to the Court that I have advised my client that he is responsible for obtaining the date his case is set for trial in this matter and that in the event he fails to appear on the date his case is set for trial all appropriate legal action will be taken by the Court against the Defendant and his bond, and I hereby certify that the Defendant knows that he is personally responsible for obtaining the date his case is set for trial and for being present in Court on that date.

Date __Sept 23, 02__                     Attorney for Defendant Signature __Steve R Morris__

I certify that I served a copy of the foregoing plea and waiver of arraignment on the Prosecutor by mailing/delivering a copy of the same to him on

Printed or Typed Attorney's Name __Steve R Morris__

_____                 Address __P.O. Box 814  Wedowee AL  36278__
(Date)

This is to certify that my Attorney has explained each and every matter and right set forth in this form and I have completely and fully read and do so understand each and every matter set forth in this form. I further state to the Court that I do not wish to be personally present at an Arraignment in this case and that I do not want to have an Attorney represent me at an Arraignment and WITH FULL KNOWLEDGE OF EACH OF THESE RIGHTS, I HEREBY EXPRESSLY WAIVE SUCH RIGHTS. I further state to the Court that I have been informed of the charge against me and have received a copy of the charge.

Date __9-23-02__                     Defendant Signature __Chris McCullough__

Filed in office this date _____     By: _____

**STATE OF ALABAMA**
**OFFICE OF THE DISTRICT ATTORNEY**
FIFTH JUDICIAL CIRCUIT

035

BILL LISENBY, JR.
ASSISTANT DISTRICT ATTORNEY
CHAMBERS COUNTY COURTHOUSE
P.O. BOX 609
LAFAYETTE, ALABAMA 36862

TELEPHONE 334/864-4327
334/642-5357

REA S. CLARK
DISTRICT ATTORNEY
P.O. BOX 609
LAFAYETTE, ALABAMA 36862



Sept. 24, 2002

Honorable *Steve Morris*
Attorney at Law

Re: *Christopher McCullough  CC 02-189*

Dear *Steve* :.

Pursuant to Rule 16.2 Ala. Rules of Crim. Proc., (Discovery by the State), please provide the District Attorney's Office with all material that is discoverable in the above referenced case.

Thank you for your cooperation and attention to this matter.

Sincerely,

Bill Lisenby, Jr.
Chief Assistant District Attorney

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served upon Counsel for the defendant, to the Honorable *Steve Morris* by ✓ mail/____ hand delivery, this 24 day of *September*, 2002.

Bill Lisenby, Jr.
Chief Assistant District Attorney

036

IN THE DISTRICT COURT OF RANDOLPH COUNTY, ALABAMA

STATE OF ALABAMA,

       PLAINTIFF,

VS.,

                                CASE NUMBER: CC-2002-189

CHRISTOPHER MCCULLOUGH,

       DEFENDANT.

## MOTION FOR DISCOVERY

**COMES NOW** the Defendant in the above styled cause and moves this Court under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Rule 16, Alabama Rules of Criminal Procedure, for an Order to compel disclosure and production of the following material which is in the custody and possession of the State:

1.      Specifically any and all evidence regarding fingerprint analysis of the Defendant.

      The pre-trial discovery requested in the foregoing motion is essential to ensure the Defendant his right to a fair hearing, is right to confrontation, his right to prepare a defense in his own behalf, and his right to effective counsel and due process of law and other rights not here enumerated.  See, Brandy v. Maryland 373 U.S. 83 (1968);  United States v. Giglio, 405 U.S. 150 (1972);  Moore v. Illinois, 408 U.S. 786 (1972).

      **THEREFORE,** the Defendant requests:

A.      That the Prosecuting Attorney be ordered to produce all information described directly herein or by implication and allow the Defendant the right to examine, inspect, copy, and photograph such material and information at a specific time and place reasonably in advance of trial.

B.      That the Court enter an order requiring the Prosecuting Attorney's office to make continuing disclosure of all matters requested herein up to and during the trial of the Defendant.

637

Respectfully submitted this _4_ day of ___Nov___, 2002.

FILED IN OFFICE THIS

NOV – 5 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

Steve R. Morris
Attorney for the Defendant
Post Office Box 814
Wedowee, Alabama 36278
(256) 357-9211 - Telephone
(256) 357-9222 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing **MOTION FOR DISCOVERY** upon the **Office of the District Attorney**, by placing said copy in the United States Mail, postage prepaid, to the respective mailing address on this the _4_ day of ___Nov___, 2002.

Steve R. Morris

C38

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA,

      PLAINTIFF,

                              CASE NUMBER: CC-2002-189

VS.,

CHRISTOPHER MCCULLOUGH,

      DEFENDANT.

## MOTION IN LIMINE

COMES NOW the Defendant, by counsel, and, subject to Defendant's right to amend this Motion, moves this Honorable Court for an order in limine excluding the following evidence:

1.    It is the belief of this Defendant that the State of Alabama will try to influence, mislead, sway, or otherwise unfairly prejudice the jury during direct and cross-examination of witnesses by trying to introduce evidence pertaining to charges the Defendant currently has against him. These charges have absolutely nothing to do with this charge. Such evidence would be impermissible character evidence and evidence of other acts not related to the indicted acts.

2.    The Defendant submits that the use of such evidence is irrelevant and therefore inadmissible as evidence in violation of Rule 402 Alabama Rules of Evidence which states "Evidence which is not relevant is inadmissible."

3.    Defendant contends that even if this Court finds that the use of such evidence relevant, then the probative value of the use of such evidence would be substantially outweighed by its prejudicial effect in direct violation of Rule 403 Alabama Rules of Evidence. This rule states that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudices, confusion of the issues, or misleading the jury. "Use of such evidence will serve no purpose to Counsel for the Plaintiff other than those stated above and should therefore be deemed inappropriate and inadmissible as evidence in this cause.

4.    Defendant further contends that the State of Alabama will try to influence, mislead, sway or other wise unfairly prejudice the jury during direct and cross-examination of witnesses by trying to introduce evidence pertaining to prior convictions of the Defendant is in violation of Rule 609 Alabama Rules of Evidence which states "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for the conviction, whichever is the later date, unless the court determines, in the interest of

039

justice; that the probative value of the conviction supported by specific facts and circumstances substantially outweigh its prejudicial effect.

**WHEREFORE THESE PREMISES CONSIDERED,** the Defendant prays that Your Honor will order that all use and allusion to any prior convictions or other charges against this Defendant in this case be deemed irrelevant and thus inadmissible as evidence in this cause pursuant to Rule 402 and 403 Alabama Rules of Evidence. That the prior convictions of this Defendant not be allowed into evidence pursuant to Rule 609(b). Defendant also prays that your Honor will rule that any violation of this order will result in sanctions against the State and a mistrial.

Respectfully submitted this the 4 day of ___Nov___, 2002.

FILED IN OFFICE THIS

NOV - 5 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

Steve R. Morris
Attorney for the Defendant
P.O. Box 814
Wedowee, Alabama 36278
(256)357-9211
(256)357-9222 - Facsimile

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served a copy of the foregoing Motion on the **OFFICE OF THE District Attorney,** by hand delivering the same on this the 4 day of November, 2002.

Steve R. Morris

# YOUR RIGHTS

040

PLACE: _Lanett P.D._

DATE: _3-19-02_

TIME: _1447_

Before we ask you any questions, you must understand your rights.

1) You have the right to remain silent.
2) Anything you say can and will be used against you in a court of law.
3) You have the right to a lawyer and have him present with you while you are being questioned.
4) If you cannot afford to hire a lawyer, one will be appointed to represent you before any question-
   ing if you wish.
5) You can decide at any time to exercise these rights and not answer any questions.

# WAIVER OF RIGHTS

I have read this statement of my rights, or have had them read to me, and I understand what my rights are. I am willing to waive these rights and make a statement. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed: ✗ _Chris McCullough_

Present.

Kenny Vines

Steve Smith

Mike Looser

Jeff Blackstone

STATE'S EXHIBIT
2

041

# I VETT POLICE DEPARTMENT

STATEMENT OF : Chris McCullough

ADDRESS: 604 S. 1st Ave Lanett, Al.

PHONE NUMBER: 586-1158

Date: 3-19-02

Time: 1653

Page 1 of 1 Pages

me and Billy PARKED ABOUT 3 miles From the house and walked through the woods to the Back of the house. We went to the Back Door then Billy went Around to the Front, I Followed him. He tried to Kick the Door in But the lock was too strong. Then we went Back to the Back Door and Billy Kicked it open. We went in And Searched the house But wasn't Nothing there except For the RIFLES AND TWO PISTOLS. The only things I took was the two PISTOLS. Billy took A Rifle, it was A .22 Ruger, A Bunch of Pocket Knives and a Jar of Change. We were in the house ABOUT 5 Minutes. It was Evening time when we went in. It was Before Dark. After we Left we went to my house and Put All the Guns there.

MR. McCullough Read this Statement and Advised it was True And Correct But would not Sign it. Lt. Reckard S. Cent

STATE'S
EXHIBIT
10

042

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA,                )
    Plaintiff,                   )
                        )
                        )     Case No. CC-02-189
vs.                              )
                        )
CHRISTOPHER McCULLOUGH,          )
    Defendant.                   )

## GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Receiving Stolen Property second degree as charged in count three of the indictment.

_____
Foreperson

## NOT GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Receiving Stolen Property second degree as charged in count three of the indictment.

_Marc Underwood_
Foreperson

FILED IN OFFICE THIS

NOV 7 2002

CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

043

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA,<br>Plaintiff, | )<br>)<br>) | |
| | )<br>) | Case No. CC-02-189 |
| vs. | )<br>) | |
| CHRISTOPHER McCULLOUGH,<br>Defendant. | )<br>) | |

## GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Theft of Property first degree as charged in count two of the indictment.

_____

Foreperson

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Theft of Property second degree as embraced in count two of the indictment.

_____

Foreperson

## NOT GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Theft of Property first degree as charged in count two of the indictment.

Foreperson

**FILED IN OFFICE THIS**

NOV  7 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

044

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA,         )
     Plaintiff,          )
                          )
                          )     Case No. CC-02-189
vs.                     )
                          )
CHRISTOPHER McCULLOUGH,  )
     Defendant.        )

## GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Burglary first degree as charged in count one of the indictment.

_Marie Underwood_
_____
Foreperson

## NOT GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Burglary first degree as charged in count one of the indictment.

_____
Foreperson

FILED IN OFFICE THIS

NOV 7 2002

CHARLES W. STORY
CIRCUIT CLERK

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

045

STATE OF ALABAMA,                )
      Plaintiff,                )
                          )
                          )       CASE NO. CC-02-189
vs.                              )
                          )
CHRISTOPHER McCULLOUGH,          )
      Defendant.                )

## VERDICT ORDER

On November 7, 2002, a duly empaneled jury returned the following verdict:

*"We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Burglary in the first degree, as charged in the indictment."*

                                     *Marcus K. Underwood*
                                       *Foreperson*

*"We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Theft of Property in the second degree, as embraced in the indictment."*

                                     *Marcus K. Underwood*
                                       *Foreperson*

*"We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Receiving Stolen Property in the second degree, as charged in the indictment."*

                                     *Marcus K. Underwood*
                                       *Foreperson*

Based upon the verdict of the jury, it is hereby ORDERED ADJUDGED AND DECREED that the defendant is guilty of the offenses of Burglary in the first degree and Theft of Property in second degree.

The defendant is Ordered to appear before the Court on January 7, 2003, at 9:00 a.m. for Sentencing and Probation Hearing. The Office of Probation and Parole is instructed to prepare a pre-sentence report. Upon oral motion of the State of Alabama, Defendant's bond in this matter is hereby revoked.

Let a copy of this Order issue to the defendant, counsel for the Defendant, the Office of the District Attorney, and the Office of Probation and Parole, and the Chambers County Jail.

Signed this the 7th day of November, 2002.

                                       TOM F. YOUNG, JR.
                                       Circuit Judge

ALABAMA BOARD OF PARDONS AND PAROLE

046

REPORT OF INVESTIGATION

Date Dictated  01-03-2003

Type of Investigation   Pre-Sentence Investigation

Name   Christopher McCullough                    True name   Christopher Cornelius McCullough

Alias   Christopher McCollough. "Rat"

RSA   BM 30          DOB   11-27-1972          Height and Weight   5'11"   155

Complexion   Medium          Color of Hair   Black          Color of Eyes   Brown

Bodily Marks   Tattoos: playboy bunny on right arm, marijuana plant on left arm.

Drivers License #   AL6975692 - Suspended          SSN   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

AIS#   174909          FBI#   777827MA5          SID#   AL01190292

Address   1075 Chambers Avenue          Phone #   334 756-2687
          Valley. AL 36854

County   Chambers                    Case #   CC-2002-189

Offense(s)   ~~15 - 99 yrs~~ + 10 years
          Burglary 1st Degree/Theft of Property 2nd Degree

Sentence(s)                    Date Sentence Began

Date of Sentence                    Bond Amount $   150,000
                    Date of Bond   Not Made

Date of Arrest   03-19-2002                    D.A.   Rea S. Clark

Judge   Honorable Tom F. Young. Jr.                    Appointed   X
                    Retained

Attorney   Steven R. Morris

Court Ordered Restitution $                    No   X
                    Yes

Barred From Parole

Date Copies Sent to Central Records

NOTES:   McCullough was found guilty in jury trial of Count 1 and 2 of the indictment. Count 3 was nol prossed upon
          motion of District Attorney.

PBF 203

047

## PRESENT OFFENSE(S)

<u>County, Court, and Case Number:</u>

Chambers County Circuit Court CC-2002-189 (CT1)

<u>Offense:</u>

Burglary 1st Degree

<u>Sentence:</u>

<u>Date of Sentence:</u>

<u>Details of Offense:</u>

On 03-19-2002 Christopher McCullough and Billy Norris, Jr. were arrested by Lanett Police Department and charged with Burglary 1st Degree and Theft of Property 1st Degree.

On 03-13-2002, John Burton reported that his house had been broken into while he was at work, and several guns were missing as well as five pocket knives and a cup of assorted change. Detective Lt. Richard Carter investigated the scene and photographed a boot print outside the residence. Entry was made through the back glass door which had apparently been kicked in.

On 03-19-2002, Lanett Police Officer responded to the residence of Mike Cragg on Country Club Road. Lt. Robert Bettis located a silver Ford Mustang backed into the woods in the back of the Hill Crest Cemetery. The officer then saw two black males run from the woods and get into the car. Lt. Bettis stopped them as they drove back into the cemetery. Sgt. Rick Brown arrived and assisted in getting the subjects out of the car. Chris McCullough was the driver, and it was noted that he had a ski mask in his rear pocket. Detective Lt. Carter also noted the mask, and he noticed that Billy Norris was wearing work boots that had a pattern similar to the one photographed at Mr. Burton's residence.

A search was made of the vehicle, and under the front passenger seat were found a blue bandanna, a roll of duct tape, brown work gloves, and Norris' ID Card and credit cards in his name. A further search revealed two handguns hidden behind the rear passenger seat. One was a Colt King Cobra which had been stolen from the Burton's residence and the Smith and Wesson 9mm was also believed to have come from Mr. Burton's home. Other items in the car were suspected

2

048

to have come from burglaries in the county. Investigator Jeff Blackstone was contacted, and he stated that he believed some of the items were from burglaries being worked by LaFayette PD.

Norris and McCullough each gave statement confessing to the burglary of Mr. Burton's home as well as to several others in the county and LaFayette.

Subject's Statement:

McCullough states that he picked up a friend who had two weapons in his possession, and the police stopped the car and said he was looking in someone's window with one of the weapons. McCullough said he was with his friend when these pistols were stolen so he went to jury trial and no evidence was shown, but the District Attorney says the State showed burden of proof. McCullough says he can prove they did not.

Case Status of CoDefendants:

Billy Ralph Norris, Jr. pled guilty in case CC-2002-190, Burglary 1st Degree, and was sentenced to 24 years.

Victim Notification Information:

The victim in this case is Mr. John Burton.

Victim Impact:

The restitution claim form indicates that Mr. Burton suffered loss of $1,475 due to an unrecovered shotgun valued at $675 and the damaged glass door valued at $800.

Location of Offense:

Lanett, Alabama.

Court Ordered Restitution:

RECORD OF ARREST(S)

Prior Arrest Record:

09-08-1989    Chambers Co., AL       Theft of Property 2nd       6 months juvenile probation.
              Juvenile Court

3

049

| | | | |
|---|---|---|---|
| 09-08-1989 | Chambers Co., AL Juvenile Court | Unlawful Breaking and Entering of Vehicle (2 cases) | 6 months juvenile probation, $60 restitution. |
| 03-11-1991 | Chambers Co., AL District Court | Resisting Arrest | 2 days county jail. |
| 03-11-1991 | Chambers Co., AL District Court | Criminal Trespass 3rd Degree | 2 days county jail. |
| 11-12-1991 | Chambers Co., AL District Court | Disorderly Conduct | 30 days. |
| 11-12-1991 | Chambers Co., AL District Court | Resisting Arrest | 30 days cc. |
| 12-07-1992 | Chambers Co., AL District Court | RSP 2nd reduced to RSP 3rd Degree | 12 months, serve 60 days, balance suspended. |
| 04-25-1993 | Chambers Co., AL TR-1993-200441 | No Drivers License | Dismissed. |
| 09-01-1993 | Chambers Co., AL TR-1993-300567 | Failure To Yield Right of Way | Guilty, $297.70 COM'S paid. |
| 09-07-1993 | Chambers Co., AL CC-1993-367 | RSP 2nd Degree | 5 years, probation denied. |
| 08-22-2000 | Chambers Co., AL DC-2000-200389 | Domestic Violence 3rd (Harassment) | 30 days, suspended 90 days, $331 COM'S, 03-11-01 arrested for probation violation, paid in full 03-22-2001. |
| 03-10-2001 | Chambers Co., AL TR-2001-300286 | Speeding (64/45) | Guilty, $146 fine and costs. |
| 04-21-2001 | Chambers Co., AL DC-2001-200285 | Resisting Arrest | Guilty, 10 days, 90 days probation, $230 COM'S. |
| 04-21-2001 | Chambers Co., AL TR-2001-200546 | Loud Music | Guilty, $176 fine and costs. |
| 06-09-2001 | Chambers Co., AL TR-2001-200753 | No Seat Belt | Guilty, $10 fine. |

4

050

| Date | Court | Charge | Disposition |
|------|-------|--------|-------------|
| 12-15-2001 | Lee Co., AL TR-2001-7311 | FTA/Speeding (102/70) | Pending. |
| 12-27-2001 | Chambers Co., AL TR-2001-301281 | Vehicle Entering From Private Roadway | Guilty, $196 fine and costs. |
| 12-27-2001 | Chambers Co., AL TR-2001-301282 | Operating Vehicle W/O Insurance | Nol Prossed with conditions, $176 costs ordered, 02-13-02 ordered to pay or lay. |
| 12-27-2001 | Chambers Co., AL TR-2001-301283 | Open Container | $25 fine. |
| 12-27-2001 | Chambers Co., AL TR-2001-301284 | Drivers License Not In Possession | Nol Prossed. |
| 03-05-2002 | Phenix City, AL Municipal Court TR-2002-1181 | Speeding (68/50) | Alias warrant issued 05-08-2002. |
| 03-05-2002 | Phenix City, AL Municipal Court TR-2002-1182 | Driving With Suspended License | Alias warrant issued 05-08-2002. |
| 03-05-2002 | Phenix City, AL Municipal Court TR-2002-1183 | Operating Vehicle W/O Insurance | Alias warrant issued 05-08-2002. |

Subsequent Arrest Record:

| Date | Court | Charge | Disposition |
|------|-------|--------|-------------|
| 03-20-2002 | Chambers Co., AL CC-2002-325 | Burglary 1st Degree and TOP 1st Degree | Pending. |
| 03-21-2002 | Chambers Co., AL CC-2002-304 | Burglary 1st Degree and TOP 2nd Degree | Pending. |
| 03-26-2002 | Chambers Co., AL CC-2002-312 | Burglary 2nd Degree | Pending. |
| 08-26-2002 | Chambers Co., AL CC-2002-318 | Attempted Burglary 1st | Pending. |

5

051

## PHYSICAL AND MENTAL HEALTH

McCullough states that he suffers from no physical disabilities or severe illnesses. He denies treatment for mental or emotional problems.

McCullough states that he used marijuana for two or three months prior to his present incarceration. He does not believe that drugs are a problem for him. He advises that he started drinking alcoholic beverages at the age of 16 and was a heavy weekend drinker. He stated he would drink until he was drunk when at clubs. He states that he does not believe that alcohol is a problem for him.

## PROBATION AND PAROLE OFFICER'S REMARKS

No letters of reference were received regarding Mr. McCullough.

When incarcerated, Mr. McCullough presented a management problem. He had an extensive disciplinary record including destroying State property, intentionally creating a security hazard, indecent exposure, and threats. He had well over 30 disciplinaries. He received poor work reports. He never made parole. To his credit, he obtained a GED while incarcerated. McCullough served more of a five year sentence than I have ever seen without a split being involved.

It appears that corrections did work for a little while. McCullough remained crime free for about three years after his release from prison.

McCullough stated that he lost everything due to this incident: he was working at Carter Mill, renting a house and buying a car. In fact, he had lost his job in September 2002 due to write-ups.

McCullough notes that his father was murdered in 1984. Perhaps this is a basis for his anti-social attitude. McCullough has had opportunities along the way to deal with this issue.

In view of McCullough's prior felony conviction, numerous pending felonies, and continued bad attitude, I recommend maximum sentence under Habitual Offender.

## PROBATION PLAN

Home:

McCullough states that he will continue living with his mother and brother at 1075 Chambers Drive, Valley, Alabama.

Employment:

McCullough advises that he is eligible for rehire and would plan to work at West Point-Stevens in Lanett.

Signed and dated in LaFayette, Alabama, on this the 3rd day of January 2003.

Ann W. Gault
Alabama Probation and Parole Officer

AWG/ph

MCCULLOUGH CHRISTOPHER
GAULT 14

053

```
                                    ALABAMA JUDICIAL INFORMATION SYSTEM        CASE: CC 2002 000189.00
ACR352                                       CASE ACTION SUMMARY               RUN DATE: 08/28/2002
OPER: RHM                                     CIRCUIT  CRIMINAL          ===================================
PAGE:  1                                                                                JUDGE: XXX
=====================================================================================================
  4 THE CIRCUIT COURT OF CHAMBERS
                                              VS          MCCULLOUGH CHRISTOPHER C
STATE OF ALABAMA                                          604 S 1ST AVE

CASE: CC 2002 000189.00                                   LANETT, AL  36863 0000

DOB: 11/27/1972              SEX: M  RACE: B  HT: 5 11  WT: 155   HR:        EYES:
SSN: 416114328   ALIAS NAMES:
=====================================================================================================
CHARGE01: BURGLARY 1ST DEGREE    CODE01: BUR1  LIT: BURGLARY 1ST D  TYP: F #: 001
CHARGE02: THEFT OF PROP 1ST      CODE02: TOP1                       TYP: F #: 001
CHARGE03: REC STOLEN PROP 2ND    CODE03: RSP2                       TYP: F #: 001
OFFENSE DATE:                                     AGENCY/OFFICER: AST4300 L WHALE

                                                  DATE ARRESTED: 03/19/2002
DATE WAR/CAP ISS:                                 DATE    FILED: 08/26/2002
DATE   INDICTED: 08/05/2002                       DATE  HEARING:
DATE   RELEASED:                                       SURETIES:
       BOND AMOUNT:       $150,000.00
                                                  TIME: 0900 A
DATE 1: 09/23/2002  DESC: ARRG                    TIME: 0000
DATE 2:             DESC:
TRACKING NOS: GJ 2002 000272 00  /  DC 2002 200148 00  /  DC 2002 000146 00
                                           TYPE: A                              TYPE:
        DEF/ATY: MORRIS STEVEN ROBERT
                 596 1ST AVENUE SE
                 P. O. BOX 814
                 WEDOWEE       AL 36278

PROSECUTOR:

                                                                          GRAND JURY: 272.73
    ================================================================================
    TH CSE: GJ200200027200 CHK/TICKET NO:
COURT REPORTER: _____         SID NO:      000000000            OPER: RHM
DEF STATUS: JAIL                        DEMAND:
                                                                               OPE
```

| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | | |
|---|---|---|---|
| 08/26/2002 | ASSIGNED TO: (XXX) | (AR01) | RHM |
| 08/26/2002 | CHARGE 02: THEFT OF PROP 1ST/#CNTS: 001 | (AR01) | RHM |
| 08/26/2002 | DEFENDANT INDICTED ON: 08/05/2002 | (AR01) | RHM |
| 08/26/2002 | CHARGE 03: REC STOLEN PROP 2ND /#CNTS: 001 | (AR01) | RHM |
| 08/26/2002 | SET FOR:  ARRAIGNMENT ON 09/23/2002 AT 0900A | (AR01) | RHM |
| 08/26/2002 | INITIAL STATUS SET TO: "J" - JAIL | (AR01) | RHM |
| 08/26/2002 | ATTORNEY FOR DEFENDANT: MORRIS STEVEN ROBERT | (AR01) | RHM |
| 08/26/2002 | CHARGE 01: BURGLARY 1ST DEGREE /#CNTS: 001 | (AR01) | RHM |
| 08/26/2002 | FILED ON: 08/26/2002 | (AR01) | RHM |
| 08/26/2002 | BOND SET AT: $150000.00 | (AR01) | RHM |
| 08/26/2002 | DEFENDANT ARRESTED ON: 03/19/2002 | (AR01) | RHM |
| 08/26/2002 | FREQUENCY AMOUNT SET TO: $100.00 | (FEE2) | RHM |
| 9/23/02 | Plea of Not Guilty + Waiver of Arrg    Plea 10/17/02 | | |
| 10/17/02 | J 11/4/02 | | |
| 11/5/02 | Motion in Limine | | |

054

11/5/02    Motion for Discovery.
11/7/02    Guilty Verdict of Theft & Perjury 2nd
           + Burg 1st.
11/7/02    Verdict order - Sent 1/7/03 @ 9:00Am

State of Alabama v.  Christopher C. McCullough
Case No. CC-  02 - 189    (Count I Burglary 1st degree)

On  1/7/03 _____, the Defendant appeared in open Court with counsel for sentencing. It is the Court's Order that (he/she) be and hereby is sentenced to:

[X]    The penitentiary of the State of Alabama for a term of ____ 15 years _____

_____
       to run (X) concurrently, ( ) consecutively, ( ) as an Habitual Offender.
       The Defendant's sentence shall be split with the Defendant serving _____
       Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of

_____
[ ]    The _____ County Jail for a term of _____ to run ( ) concurrently
       ( ) consecutively.
[ ]    The Defendant's sentence is hereby suspended for a period of _____.
[ ]    The custody of the Director of the Department of Corrections of this State as an Youthful Offender for a term of
       _____ to run ( ) concurrently, ( ) consecutively.

[X]    Defendant shall receive credit for any time served since the date of arrest in connection with this matter to which
       (he/she) may be legally entitled.
[X]    Defendant shall pay the costs of court, which shall include the cost of (his/her) legally appointed attorney.
[X]    Defendant shall reimburse the County for any medical or dental expenses incurred while an inmate in connection
       with this case.
[X]    Defendant shall pay a Victim's Compensation Fund Award of $ 50.00 _____.
[ ]    Defendant shall pay a fine of $1000.00 pursuant to Section 13A-12-281.
[ ]    Defendant shall pay a fine of $2000.00 pursuant to Section 13A-12-282.
[ ]    Defendant shall pay $100.00 to the Forensic Sciences Drug Trust Fund.
[ ]    Defendant shall pay $250.00 to the Alabama Head Injury Foundation Fund.
[ ]    Defendant shall pay $100.00 to the Alabama Chemical Testing Training and Equipment Trust Fund
[ ]    Defendant shall pay a fine of $_____
[X]    Defendant shall pay restitution as follows: $ 1475.00 _____

_____
[ ]    Defendant shall report to the Court Referral Office and successfully complete all programs as directed.
[ ]    Other conditions of sentence are: _____

_____
[ ]    Any items seized in connection with this case are to be condemned and forfeited to the investigating agency for
       proper disposal or destruction.
[X]    The Defendant was informed in open Court of his/her right to appeal this matter within forty-two (42) days of
       today's date.

ACR0369  A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2002 000189.00
JUDGE ID:  XXX

STATE OF ALABAMA                    VS   MCCULLOUGH CHRISTOPHER C

DATE            ACTION, JUDGMENTS, CASE NOTES

[X]  The Defendant made application for probation.
[ ]  Defendant waived (his/her) right to make application for probation.
     The Court considered the application of the Defendant for probation.  The Court took into consideration all
     evidence presented, including any report submitted by the Probation Officer.  Based upon the matters presented before the
     Court, IT IS ORDERED as follows:
[X]  Defendant's application for probation is denied.
[ ]  Defendant's application for probation is granted.  The Defendant shall be placed on (supervised)(unsupervised)
     probation for a period of _____.
[ ]  The Defendant's sentence shall be split with the Defendant serving _____
     Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of

     _____
[ ]  The Defendant shall attend and successfully complete the Substance Abuse Program through the Department of
     Corrections prior to (his/her) release.
[ ]  The Defendant is specifically Ordered to refrain from any consumption of alcoholic beverages during the duration
     of (his/her) probation period.
[ ]  Other conditions of probation are: _____

     _____

___1/7/03___                          _____
Date                                  Circuit Judge

State of Alabama v.  _Christopher C. McCullough_
Case No. CC-__02-__189__  (Count II (Theft of Property 2nd degree)

     On __1/7/03__, the Defendant appeared in open Court with counsel for sentencing. It is the Court's Order
that (he/she) be and hereby is sentenced to:
[X]  The penitentiary of the State of Alabama for a term of ____10 years_____

     _____
     to run (X) concurrently, ( ) consecutively, ( ) as an Habitual Offender.
[ ]  The Defendant's sentence shall be split with the Defendant serving _____.
     Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of

     _____.
[ ]  The _____County Jail for a term of _____ to run ( ) concurrently
     ( ) consecutively.
[ ]  The Defendant's sentence is hereby suspended for a period of _____
[ ]  The custody of the Director of the Department of Corrections of this State as an Youthful Offender for a term of
     _____ to run ( ) concurrently, ( ) consecutively.

[X]  Defendant shall receive credit for any time served since the date of arrest in connection with this matter to which
     (he/she) may be legally entitled.
[X]  Defendant shall pay the costs of court, which shall include the cost of (his/her) legally appointed attorney.
[X]  Defendant shall reimburse the County for any medical or dental expenses incurred while an inmate in connection
     with this case.
[X]  Defendant shall pay a Victim's Compensation Fund Award of $__50.00_____.
[ ]  Defendant shall pay a fine of $1000.00 pursuant to Section 13A-12-281.
[ ]  Defendant shall pay a fine of $2000.00 pursuant to Section 13A-12-282.
[ ]  Defendant shall pay $100.00 to the Forensic Sciences Drug Trust Fund.
[ ]  Defendant shall pay $250.00 to the Alabama Head Injury Foundation Fund

056

[ ]   Defendant shall pay $100.00 to the Alabama Chemical Testing Training and Equipment Trust Fund
[ ]   Defendant shall pay a fine of $_____.
[ ]   Defendant shall pay restitution as follows: _____
_____

[ ]   Defendant shall report to the Court Referral Office and successfully complete all programs as directed.
[ ]   Other conditions of sentence are: _____
_____

[ ]   Any items seized in connection with this case are to be condemned and forfeited to the investigating agency for
       proper disposal or destruction.
[X]   The Defendant was informed in open Court of his/her right to appeal this matter within forty-two (42) days of
       today's date.

[X]   The Defendant made application for probation.
[ ]   Defendant waived (his/her) right to make application for probation.
       The Court considered the application of the Defendant for probation.  The Court took into consideration all
evidence presented, including any report submitted by the Probation Officer.  Based upon the matters presented before the
Court, IT IS ORDERED as follows:
[X]   Defendant's application for probation is denied.
[ ]   Defendant's application for probation is granted.  The Defendant shall be placed on (supervised)(unsupervised)
       probation for a period of _____.
[ ]   The Defendant's sentence shall be split with the Defendant serving _____.
       Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of
       _____.

[ ]   The Defendant shall attend and successfully complete the Substance Abuse Program through the Department of
       Corrections prior to (his/her) release.
[ ]   The Defendant is specifically Ordered to refrain from any consumption of alcoholic beverages during the duration
       of (his/her) probation period.
[ ]   Other conditions of probation are: _____

_____1/7/03_____                                    _____
Date                                                Circuit Judge

# CHAMBERS COUNTY DETENTION FACILITY
## Inmate Stationery

FILED IN OFFICE THIS
JAN 1 8 2003
CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

057

I one said Christopher McCullough acknowleges my Notice of Appeal to the Circuit Court of Chamber County, Alabama

My Motion For De Novo Appeal goes as Stated:

(1) Police conducted an unlawful search and seizure of said residence.

(2) Police officer gave false statement to incriminate me the Defendant.

(3) Police gave false testimony on the arresting day of apprehension

(4) Mainly, my Witness's were not I repeat were not [Subpoena] cause of Assistant District Attorney [Bill Lisenby Jr.] did knowingly conduct willful disobedience by getting my lawyer to deliberately tell me that I was going to Jury Trial For the cemetery incident the morning I was arrested.

But November 3 2002 my lawyer one said [Steve Morris] came to the [County Jail] at 7.00 p.m. Wednesday night telling me that Assistant District Attorney [Bill Lisenby Jr.] told him quote - unquote [B.J.] said he changed his mind about [Mike Gregg] case I asked he's going to try [John Burton's] case. Intentional Assault!

(5) There was no physical evidence no substantial evidence, no witness's other than Co-defendant's false testimony. Irrelevant testimony by Mike Looser which had nothing to do with the Trial.

GROUNDS FOR A NEW TRIAL CAUSE OF THE INSUFFICINCY AND MALACIOUS MISTAKES

THIS IS ONE OF THREE COPIES
THIS COPY GOES TO CHARLES STORY-CIRCUIT CLERK

ACR371                          ALABAMA JUDICIAL DATA CENTER
            NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
                          BY THE TRIAL COURT CLERK                                    058
                     IN THE CIRCUIT COURT OF CHAMBERS COUNTY
STATE OF ALABAMA VS MCCULLOUGH CHRISTOPHER C   JUDGE: TOM. F. YOUNG JR.
--------------------------------------------------------------------------------
  APPEAL DATE: 00/00/0000
--------------------------------------------------------------------------------
  INDIGENCY STATUS:
     GRANTED INDIGENCY STATUS AT TRIAL COURT:        __X__ YES   __:__ NO
     APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:  __:__ YES   __X__ NO
     INDIGENT STATUS REVOKED ON APPEAL:              __X__ YES   __:__ NO
     INDIGENT STATUS GRANTED ON APPEAL:              _____ YES   __X__ NO

  DEATH PENALTY: NO

  APPEAL TYPE:
--------------------------------------------------------------------------------
  POST-JUDGMENT MOTIONS FILED:    DT FILED      DT DENIED     CON BY AGREE
  ___ MOTION FOR NEW TRIAL
  ___ MOTION FOR JUDG. OF ACQUIT  ---------     ----------    ------------
  ___ MOTION TO W/D GUILTY PLEA   ---------     ----------    ------------
  ___ MOTION FOR ATTY TO W/DRAW   ---------     ----------    ------------
  ___ OTHER _____ ---------     ----------    ------------
--------------------------------------------------------------------------------
  COURT REPORTER(S):              GARNER, MELANIE H.
  ADDRESS:                        C/O HON. PHILLIP O. SEGRE
                                  ALEXANDER CITY, AL  35011

  APPELLATE COUNSEL #1:           MORRIS STEVEN ROBERT
  ADDRESS:                        596 1ST AVENUE SE
                                  P. O. BOX 814
                                  WEDOWEE      , AL  36278
  PHONE NUMBER:                   256-357-9211

  APPELLATE COUNSEL #2:
  ADDRESS:                        ----------------------------------
                                  ----------------------------------
                                  ----------------------------------
  PHONE NUMBER:                   ----------------------------------

  APPELLANT (PRO SE):             MCCULLOUGH CHRISTOPHER C
  ADDRESS:                        604 S 1ST AVE
                                  LANETT       , AL  368630000
  AIS #:

  APPELLEE (IF CITY APPEAL):
  ADDRESS:                        ----------------------------------
                                  ----------------------------------
                                  ----------------------------------
--------------------------------------------------------------------------------
I CERTIFY THAT THE INFORMATION PROVIDED                   OPERATOR: CHB
ABOVE IS ACCURATE TO THE BEST OF MY               PREPARED 01/29/2003
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 29 DAY OF Jan , 2003          ------------------------------
                                                  CIRCUIT COURT CLERK

ORIGINAL <sup>1</sup>

1    IN THE FIFTH JUDICIAL CIRCUIT IN AND FOR CHAMBERS COUNTY

2                        STATE OF ALABAMA

3   STATE OF ALABAMA

4   VS                              Case No. CV-02-189

5   CHRISTOPHER MCCULLOUGH,

6           Defendant.

7   _____/

8

9        COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS

10  BEFORE:  THE HONORABLE TOM F. YOUNG, JR., CIRCUIT JUDGE

11          November 7, 2002 - Chambers County Courthouse

12          Lafayette, Alabama

13

14                      APPEARANCES

15  FOR THE STATE:

16      Bill Lisenby, Esq.

17      Amy Newsome, Esq.

18  FOR THE DEFENDANT:

19      Steve Morris, Esq.

20      Mark Carlton, Esq.

21

22

23

24        MELANIE H. GARNER, CSR, RPR

25          OFFICIAL COURT REPORTER

2

```
 1                        INDEX
 2   FOR THE STATE:          D    X    RD   RC
 3   John Burton            48   54
 4   Robby Bettis           56   66
 5   Billy Norris           70   78
 6   Lincoln Whaley         83
 7   Jeff Blackstone        86
 8   Richard Carter         91   102  109
 9   FOR THE DEFENDANT:
10   Christopher McCullough 113  119
11
12                        EXHIBITS
13   FOR THE STATE:                    ADMITTED
14   1 (8 MM VIDEOTAPE)                   X
15   2 (RIGHTS FORM)                      X
16   3 - 7 (PHOTOS)                       X
17   8 (8 MM VIDEOTAPE)                   X
18   10 (STATEMENT)                       X
19   11 (PHOTO)                           X
20   FOR THE DEFENDANT:
21   1 (WAIVER OF ARRAIGNMENT)
22   2 (PLEA AGREEMENT)
23   3 (CASE ACTION SUMMARY)
24   SENTENCING AND PROBATION                155
25   REPORTER'S CERTIFICATE                  163
```

3

1                        PROCEEDINGS

2                    (NOVEMBER 7, 2002)

3                    (BENCH CONFERENCE)

4        THE COURT:  All right.  State versus Christopher

5    McCullough.  Is there anything in this motion that we

6    need to address that's going to happen in the voir diring

7    process?

8        MR. MORRIS:  No, sir.

9        THE COURT:  Okay.

10        MR. LISENBY:  Do you want to ask about Mr. Gragg or

11    or any of the other victims -- alleged victims?

12        THE COURT:  What is this about?

13        MR. MORRIS:  Judge, he's got some other charges.

14        THE COURT:  You're going to have to speak up where I

15    can hear you.

16        MR. MORRIS:  He's got some other charges, and we

17    don't want anything outside of this case coming in.

18        THE COURT:  Why would we do it?

19        MR. LISENBY:  Well, there's going to be at least one

20    thing that we're going to need to get into, and I told

21    Steve we could address that.  I don't know that we need

22    to address it before voir dire.

23        THE COURT:  Okay.  While he's calling roll, we might

24    as well.

25        MR. LISENBY:  Very quickly, what happened is that

4

1    this burglary involving Mr. Burton's residence occurred

2    on March the 13th.  On March the 19th, the Lanett Police

3    Department got a call on another attempted burglary going

4    on at an individual's house by the name of Mike Gragg.

5    Police responded out there, and they stopped the vehicle

6    coming from the area of this residence and had this

7    defendant, Mr. McCullough, and the co-defendant, Billy

8    Norris, in it.  And they stopped the vehicle, and they

9    also had a mask and masking tape and those sort of

10   things.  And they also had two pistols that came out of

11   John Burton's residence inside the vehicle.  So that's

12   part of the theft count.

13        THE COURT:  Who is the victim on this one right

14   here?

15        MR. LISENBY:  John Burton is the victim in this

16   case.

17        THE COURT:  Burton.  Okay.

18        MR. LISENBY:  So two of the weapons that were stolen

19   in John Burton's burglary six days before the stop of the

20   vehicle were inside the vehicle.  So in some way we're

21   going to have to talk about that.

22        THE COURT:  So what they're going to be talking

23   about -- unless the testimony is going to say we got

24   called out to another burglary or we got another burglary

25   call.  We got out there, and we spotted this car.  We

5

1  stopped this car, at the time we searched the car and

2  found pistols from a burglary that had been previously

3  committed.  Right?

4      MR. MORRIS:  Just for the Record, we would like to

5  not even mention that they were called.  Just that there

6  was a stop and they found these weapons.  Because, if

7  they mention another burglary in the process, that's

8  going to prejudice my client.

9      THE COURT:  I promise you, everything they're going

10  to do in this trial is going to be prejudicial to your

11  client.

12      MR. MORRIS:  I know that.  I know.

13      THE COURT:  It's just that unduly, we don't want to

14  get into that.

15      MR. MORRIS:  Just the fact that they're trying this

16  case, and they was in the --

17      THE COURT:  Right.  So you don't want that

18  mentioned, because the mention of another burglary would

19  unduly prejudice.

20      MR. MORRIS:  I know --

21      THE COURT:  Bill, let the Court ask you this.  Do

22  you see any reason to mention what they were going to do

23  other than there was a stop?  Or do you think we're going

24  to have to have something justifying this stop, do you

25  believe, in the jury's eyes?

6

1        MR. LISENBY:  Well, let me tell you a little bit

2    about the circumstances of the stop.  To say that I think

3    we're going to have to get into a little something -- how

4    far the Court wants us to go, obviously we will follow

5    your instructions.  When they got the call to this

6    burglary at the Gragg residence, which is not this

7    burglary that we're trying, okay?  I will call it the

8    Gragg burglary.  This is the Burton burglary we're

9    doing.  When they got the call to the Gragg burglary,

10    officers, you know, went to the house.  They also went to

11    an area of the cemetery -- of a cemetery that was near

12    where that residence was.  And Officer Bettis went to the

13    area of the cemetery and saw a car coming out from the

14    dirt road into the cemetery.

15        MR. MORRIS:  How far was the cemetery away from the

16    house?

17        MR. LISENBY:  I don't know.  It wasn't that far.

18        MR. MORRIS:  Couple miles?

19        MR. LISENBY:  No, it wasn't near that far.  It was a

20    very short distance.  Now, we can phrase it however you

21    want us to.  But the mark --

22        MR. CARLTON:  What about a suspicious vehicle?

23        MR. LISENBY:  That's what I was going to say.  That

24    he received a call.  He went to the area of the cemetery,

25    observed the vehicle.

7

1    MR. MORRIS:  Okay.  But no mention of --

2    THE COURT:  Can you live with that?

3    MR. LISENBY:  I mean, I would at least like

4    something maybe for the Court to maybe in your charges at

5    the end to say something about -- I'm not -- I'm just

6    talking out loud at this point.

7    THE COURT:  Right.

8    MR. LISENBY:  Something about the jury shouldn't be

9    concerned about what happened at this traffic stop.

10   That's okay and, you know...

11   THE COURT:  Well, certainly if he mentions it like

12   -- if he mentions that I got a call out to an area and

13   while I was out there observed this vehicle and I stopped

14   this vehicle or whatever, certainly there can't be any

15   mention made by the defense about why did they stop him

16   or what caused that.  You know, I don't want any mention

17   of that.  If y'all allude to that, then I'm going to let

18   them go into exactly what they were doing out there.

19   MR. MORRIS:  Yes, sir.

20   THE COURT:  I mean, that's what you're talking

21   about, isn't it, Bill?

22   MR. LISENBY:  Yes, sir.

23   THE COURT:  That you want to make sure there's no

24   question in their mind that they're just riding around

25   and decide to stop the car.

8

1    MR. LISENBY:  Exactly.

2    THE COURT:  Well, I think he can say we got a call

3    on an official call, and we went out to this area.  Based

4    on the official call, we observed this vehicle and we

5    stopped this vehicle.  I mean, think that --

6    MR. LISENBY:  The officer is going to say what I did

7    is I had made a felony stop, you know, felony traffic

8    stop.

9    THE COURT:  Right.

10    MR. LISENBY:  Which means he comes out, guns drawn,

11    people lay down on the ground.

12    THE COURT:  Yes.  Okay.

13    MR. LISENBY:  I just want to make sure there's not a

14    question in anyone's mind about that.

15    THE COURT:  You understand, Steve, I mean, I don't

16    mind limiting what information comes out to just that

17    they went out there and not any particulars about why

18    they were out there.  But as long as they're not going to

19    be prejudiced in you mentioning, well, they shouldn't

20    have stopped him, or they didn't have any reason to stop

21    this person, they're just out there wandering around and

22    my guy is an innocent bystander and got caught up in all

23    of this.

24    MR. LISENBY:  Let me mention this to y'all, too,

25    while we're talking about this.  When we get to Mr.

9

1    McCullough's statement -- You've seen it, Steve.  This

2    first paragraph is about the Burton burglary.  The second

3    paragraph is the Gragg burglary.  You haven't seen this.

4    Well, you haven't seen it the way I've got it cut down,

5    is what I meant.

6         THE COURT:  Oh, I see what you did.  Yeah.

7         MR. LISENBY:  I took out that second paragraph, if

8    the Court wants me to do that.

9         THE COURT:  Y'all are not going to object to the

10   admission of this document, because I can't imagine y'all

11   would be, as it cuts out any reference to the other

12   burlgary.

13        MR. MORRIS:  That's fine.

14        THE COURT:  Okay.  So do we have a --

15        MR. MORRIS:  Are the police officers going to

16   understand they can't make reference?

17        MR. LISENBY:  Yes.  I think what we'll need to do is

18   after we get the jury selected, maybe the judge can send

19   them back into jury room and we'll take a couple of

20   minutes and tell the officers about what they can say and

21   can't say.

22        THE COURT:  All right.  Anything else before we --

23   so I'm going to go right into this right into voir dire.

24        MR. MORRIS:  There is a videotape that Whaley made.

25        THE COURT:  Not your videotape?

10

1      MR. LISENBY:  It's a videotape of the traffic stop,

2   I think.

3      THE COURT:  Oh.

4      MR. MORRIS:  Lincoln had a videotape and he was

5   holding it after they stopped him.

6      MR. LISENBY:  But that's at the Gragg burglary.

7      MR. MORRIS:  That's at the cemetery, yeah.  Are

8   y'all not going to --

9      MR. LISENBY:  I tell you what.  Before we -- I

10  haven't seen it.  I don't think you have either, have

11  you?

12     MR. MORRIS:  No.

13     MR. LISENBY:  I guess before we decide to get into

14  that, we will come up and approach the Court and let

15  everybody watch.

16     THE COURT:  Okay.  Well, let's have no mention -- I

17  don't want any mention in opening statements or anything

18  there, the things that we've got questions about the

19  admissibility of.

20     MR. MORRIS:  When Lincoln gets on the stand, can I

21  question him and say did you videotape?

22     THE COURT:  If you're going to do that, you're going

23  to make them aware of it, though.

24     MR. LISENBY:  If you're going to do that, we'll

25  just go ahead and play it.  I mean, it doesn't make any

11

1    difference to me.

2         MR. MORRIS:  Well, we'll talk about that.

3         THE COURT:  Okay.

4         MR. LISENBY:  When we get to Detective Whaley, we'll

5    just come up and approach the Court.

6         THE COURT:  Okay.  All right?

7              (BENCH CONFERENCE CONCLUDED)

8         THE COURT:  All right.  Good morning, ladies and

9    gentlemen.  I apologize for the delay.  We're trying to

10   get a few other organizational things going on.  You will

11   find that today will be a lot more expedient than

12   Monday.  Monday is our organizational day.  And, as you

13   see, we have all the cases up here.  We've got to go

14   through and identify everybody here.  We've got to do

15   excuses.  This morning won't involve all of that.  We'll

16   go right into the case.  At this time, we're going to

17   call the case of State of Alabama versus Christopher

18   McCullough.  State of Alabama ready?

19        MS. NEWSOME:  Yes, Your Honor.

20        THE COURT:  Okay.  Is the defendant ready in this

21   case?

22        MR. MORRIS:  Yes, sir.

23        THE COURT:  All right, sir.  Defense ready?

24        MR. MORRIS:  Yes, sir.

25        THE COURT:  All right.  Ladies and gentlemen, let me

12

1    introduce you to some of the people that will be involved

2    in this case.  First of all, the defendant in this case

3    is Christopher McCullough.  Mr. McCullough, will you

4    stand up, please, sir?

5                    (DEFENDANT COMPLIES)

6         THE COURT:  All right.  His attorney is Mr. Steve

7    Morris.  And also seated with Mr. Morris is Mr. Mark

8    Carlton.  All right.  Thank you, gentlemen.

9         All right.  State of Alabama will be represented by

10   Ms. Amy Newsome and by Mr. Bill Lisenby.  Mr. Lisenby,

11   have you got anybody else at your table?  Let me also

12   introduce -- I didn't have an opportunity to do this

13   Monday -- your elected district attorney, Mr. Rea Clark.

14        MR. CLARK:  Good morning.

15        THE COURT:  All right.  Do you have anybody else at

16   your table you need to introduce, Mr. Lisenby or Ms.

17   Newsome?

18        MS. NEWSOME:  The victim in this case is John

19   Burton.

20        THE COURT:  All right.  Let me read the indictment

21   in this case.  "The Grand Jury of said county charges

22   that before the finding of this indictment" -- Let me see

23   the parties for just one moment, please, before I go any

24   further.

25                    (BENCH CONFERENCE)

13

1      THE COURT:  Am I just leaving out the name of Billy

2  Norris in the reading of this indictment?

3      MR. LISENBY:  I mean, he's already entered a guilty

4  plea, but he was a co-defendant.  You know, we expect him

5  to testify, so I'm sure they will hear his name, anyway.

6      THE COURT:  All right.   That's what I wanted to

7  make sure of.

8      MR. LISENBY:  I think one of the counts in that is

9  just Mr. Morris.  I don't think you need to read that.

10      THE COURT:  Which one is that?

11      MR. LISENBY:  I think it's Number 3.

12      THE COURT:  No, McCullough is Number 3.  Must be

13  Number 4.

14      MR. LISENBY:  Number 4.

15      THE COURT:  Okay.  I won't read Number 4.  Okay?

16      MR. CARLTON:  Are all of the charges in this same

17  indictment, or are there multiple indictments?

18      THE COURT:  No, they're one indictment.

19      MR. CARLTON:  Are you going to read the counts of

20  the other burglary that involve the other thefts and

21  burglaries or just one count?

22      THE COURT:  This is all the counts in this case.

23      MR. CARLTON:  Okay.  I knew he had multiple.

24          (BENCH CONFERENCE CONCLUDED)

25      THE COURT:  All right.  Sorry, ladies and

14

1    gentlemen.   Count one of the indictment reads as

2    follows:  "The Grand Jury of said county charge that

3    before the finding of this indictment, Christopher

4    McCullough, alias, and Billy Norris, alias, whose names

5    are otherwise unknown to the Grand Jury, did knowingly

6    and unlawfully enter or remain unlawfully in a dwelling

7    of another, to wit: John Burton, with intent to commit a

8    crime therein, to wit: theft of property, and while

9    effecting entry or while in the dwelling or in immediate

10    flight therefrom, the said Christopher McCullough and/or

11    Billy Norris was armed with an explosive or deadly

12    weapon, to wit: A pistol or rifle, a further description

13    of which is otherwise unknown to the Grand Jury in

14    violation of Section 13A-7-5 of the Code of Alabama

15    against the peace and dignity of the State of Alabama.

16    "Count two.  The Grand Jury of said county charges

17    that before the finding of this indictment, Christopher

18    McCullough, alias, and Billy Norris, alias, whose names

19    are otherwise unknown to the Grand Jury did unknowingly

20    obtain or exert unauthorized control over the following

21    property, to wit:  Two pistols, five knives, and one

22    rifle, a further description of which are otherwise

23    unknown to the Grand Jury, and lawful currency of the

24    United States of America, the exact denominations of

25    which are otherwise unknown to the Grand Jury, the

1    property of John Burton, and having a value in excess of

2    one thousand dollars with intent to deprive the owner of

3    said property in violation of Section 13A-8-3 of the Code

4    of Alabama against the peace and dignity of the State of

5    Alabama.

6        "Count three.  The Grand Jury of said county further

7    charges that before the finding of this indictment,

8    Christopher McCullough, alias, whose name is otherwise

9    unknown to the Grand Jury, did intentionally receive,

10   retain, or dispose of stolen property, to wit:  Two

11   pistols, a further description of which is otherwise

12   unknown to the Grand Jury, the property of John Burton,

13   and having a value in excess of one $100 but not in

14   excess of one thousand dollars, knowing that it was

15   stolen or having reasonable grounds to believe it was

16   stolen and not having the intent to restore it to the

17   owner in violation of Section 13A-8-18 of the Code of

18   Alabama against the peace and dignity of the State of

19   Alabama."

20       What we're talking about is a burglary first degree

21   charge, a theft of property first degree charge, and

22   receiving stolen property second degree charge.

23       Okay.  Now, I have these questions to you about this

24   particular case.  Are any of you related by blood or

25   marriage to the defendant, his attorneys, the prosecutor,

16

1    or the alleged victim?

2        Have each of you been a resident householder or

3    freeholder of Chambers County for the preceding six

4    months?

5        Have any of you been indicted within the last 12

6    months for a felony or for an offense of the same

7    character as that with which the defendant is charged?

8        Do any of you have an interest in the conviction or

9    acquittal of the defendant?

10       Have any of you made any promises or given any

11   assurance that you will convict or acquit the defendant?

12       Do any of you have a fixed opinion as to the guilt

13   or innocence of the defendant which would bias your

14   verdict?

15       Are any of you a witness in this case?

16       Were any of you a member of the Grand Jury that

17   returned this indictment?  And I believe this was in

18   August of 2002.

19       Do any of you have a fixed opinion against

20   imprisonment in the penitentiary?

21       Would each of you convict on circumstantial

22   evidence?

23       Do any of you know anything about the facts of this

24   case which would influence your verdict one way or the

25   other?

17

1          Do any of you have any reason why you, if selected

2     as a juror in this case, could not give both the State of

3     Alabama and the defendant a fair and impartial trial?

4          All right.  At this time the attorneys will have

5     some additional questions.  State of Alabama, Ms.

6     Newsome.

7          MS. NEWSOME:  May it Please the Court.  Good

8     morning.  We're here to select another jury.  First I

9     would like to introduce myself.  My name is Amy Newsome.

10    I live in Valley, Alabama, with my husband and my

11    three-year-old daughter.  I am assistant district

12    attorney for the Fifth Judicial Circuit which includes

13    Chambers County, and my office is located here in

14    Lafayette.

15         First question I would like to ask is whether anyone

16    knows the defendant in this case, Christopher

17    McCullough?  Okay.  Sir, if you would please stand and

18    tell us your name so the court reporter can get that

19    down?

20         PROSPECTIVE JUROR:  George Short.

21         MS. NEWSOME:  Mr. Short, how do you know Christopher

22    McCullough?

23         PROSPECTIVE JUROR:  I used to work with him.

24         MS. NEWSOME:  How long did you work with him?

25         PROSPECTIVE JUROR:  Just a couple of months.

18

1     THE COURT:  Mr. Short, I will ask that you speak up,

2     because my court reporter has to get your answers up

3     here.  Okay?

4         MS. NEWSOME:  You worked with him for a couple of

5     months?

6         PROSPECTIVE JUROR:  Yes.

7         MS. NEWSOME:  Would you say that you're friends?

8         PROSPECTIVE JUROR:  No, I didn't know him that well.

9         MS. NEWSOME:  Would your knowledge or relationship

10    with Mr. McCullough influence your decision in this case

11    at all?

12        PROSPECTIVE JUROR:  No, ma'am.

13        MS. NEWSOME:  Thank you.  Does anyone else know

14    Christopher McCullough?

15        Mr. McCullough is represented today by Steve Morris

16    and Mark Carlton.  Does anyone know Steve Morris who is

17    an attorney whose main office is located in Wedowee?

18    Does anyone know Mark Carlton?  Yes, sir, in the back?

19        PROSPECTIVE JUROR:  He handled my divorce and

20    custody case.

21        MS. NEWSOME:  Could you speak up a little bit, and

22    first tell us your name?

23        PROSPECTIVE JUROR:  James Bassett.

24        MS. NEWSOME:  James Bass?

25        PROSPECTIVE JUROR:  Bassett.

1           MS. NEWSOME:  Bassett.  And Mr. Carlton has

2      represented you in the past?

3           PROSPECTIVE JUROR:  Yes.

4           MS. NEWSOME:  Would his representation of you in

5      the past influence your decision in this case at all?

6           PROSPECTIVE JUROR:  No, ma'am.

7           MS. NEWSOME:  Do you still consider him your

8      attorney?

9           PROSPECTIVE JUROR:  I will go back to him.

10          MS. NEWSOME:  Thank you.  Mr. Carlton has a law

11     partner whose name is Nick Wooten.  Does anybody know Mr.

12     Wooten?  Yes, ma'am?  Please stand and tell us your name?

13          PROSPECTIVE JUROR:  My name is Debra --

14          THE COURT:  Please remember -- we have got to

15     know -- it may be an unnatural thing to elevate your

16     voice some.  But, if you would, our court reporter has to

17     get everything that you're saying up here.  All right?

18          PROSPECTIVE JUROR:  Debra Hill, and he handled a

19     case for me.

20          MS. NEWSOME:  How long ago was that?

21          PROSPECTIVE JUROR:  Well, he said it would be like

22     in September before he handled it.

23          MS. NEWSOME:  So it's --

24          PROSPECTIVE JUROR:  An accident case.

25          MS. NEWSOME:  Okay.  That's a civil case?

1     PROSPECTIVE JUROR:  Yes.

2     MS. NEWSOME:  Okay.  He currently represents you?

3     PROSPECTIVE JUROR:  Yes.

4     MS. NEWSOME:  Would Mr. Wooten's representation of

5     you in that other case influence your decision in this

6     case?

7     PROSPECTIVE JUROR:  No, it wouldn't.

8     MS. NEWSOME:  The Lanett Police Department is

9     involved in this particular case, and I would like to

10    know if any of you have ever had any unpleasant

11    experience with the Lanett Police Department?  Had a

12    run-in with particular officers or you dislike them for

13    whatever reason?

14    The alleged victim in this case is Mr. John Burton

15    who is seated near our table.  Does anyone know John

16    Burton?

17    PROSPECTIVE JUROR:  Yes.

18    MS. NEWSOME:  Okay.  Let's start on the front row,

19    and please stand and tell us your name.

20    PROSPECTIVE JUROR:  I'm Julie Bonner, and John's

21    family and my family attended church at the same church

22    when we were children.  So we grew up together and go to

23    the same church.

24    MS. NEWSOME:  Would you consider yourself friends?

25    PROSPECTIVE JUROR:  Yes.  But, as far as contact,

21

1    there hasn't been any since we were teenagers.

2        MS. NEWSOME:  Would your knowledge of Mr. Burton and

3    your past relationship with him influence your decision

4    in this case one way or the other?

5        PROSPECTIVE JUROR:  No.

6        MS. NEWSOME:  Would you be able to be fair and

7    impartial?

8        PROSPECTIVE JUROR:  Yes.

9        MS. NEWSOME:  Thank you.  Is there anybody else on

10   the second row?

11       PROSPECTIVE JUROR:  Yes.  My name is Phillip Smith.

12   I know John through being a member of the Elks Club that

13   he went to.

14       MS. NEWSOME:  Do you still see him on a regular

15   basis?

16       PROSPECTIVE JUROR:  Not now.

17       MS. NEWSOME:  Would your knowledge of Mr. Burton

18   influence your decision in this case at all?

19       PROSPECTIVE JUROR:  No.

20       MS. NEWSOME:  Would you be able to be fair and

21   impartial?

22       PROSPECTIVE JUROR:  Yes.

23       MS. NEWSOME:  Thank you.  Anyone on the third row?

24   Fourth?

25       PROSPECTIVE JUROR:  Tamera Oliver.

1          MS. NEWSOME:  How do you know Mr. Burton?

2          PROSPECTIVE JUROR:  I would say we're friends.

3          MS. NEWSOME:  How long have y'all been friends?

4          PROSPECTIVE JUROR:  We've known each other for

5     years, several years.

6          MS. NEWSOME:  Would your friendship with Mr. Burton

7     influence your decision in this case one way or the

8     other?

9          PROSPECTIVE JUROR:  No.

10         MS. NEWSOME:  Would you tend to believe his

11    testimony over any other witness' testimony?

12         PROSPECTIVE JUROR:  No.

13         MS. NEWSOME:  Okay.  Anybody else on that row?  Yes,

14    ma'am?

15         PROSPECTIVE JUROR:  My name is Diane Dinger, and

16    John's mother worked at the school where my children go

17    to school.

18         MS. NEWSOME:  Do you know John personally?

19         PROSPECTIVE JUROR:  I just know who John is.

20         MS. NEWSOME:  Would your knowledge of Mr. Burton

21    influence your decision in this case?

22         PROSPECTIVE JUROR:  No.

23         PROSPECTIVE JUROR:  Glenn Pruitt.

24         MS. NEWSOME:  Glenn Pruitt?  How do you know Mr.

25    Burton?

23

1      PROSPECTIVE JUROR:  I work with him.

2      MS. NEWSOME:  You currently work with him?

3      PROSPECTIVE JUROR:  Yes.

4      MS. NEWSOME:  Would you consider yourself a friend

5  of Mr. Burton's?

6      PROSPECTIVE JUROR:  Well, we actually work in

7  different buildings, but I just know he works there.

8      MS. NEWSOME:  Would your knowledge of Mr. Burton

9  influence your decision in this case one way or the

10  other?

11      PROSPECTIVE JUROR:  No.

12      MS. NEWSOME:  You would be able to be fair and

13  impartial?

14      PROSPECTIVE JUROR:  Yes.

15      MS. NEWSOME:  Thank you.  Anybody else?

16      PROSPECTIVE JUROR:  Ted Sorrell.  I went to Auburn

17  University with John.

18      MS. NEWSOME:  How long ago was that?

19      PROSPECTIVE JUROR:  '88.

20      MS. NEWSOME:  1988?

21      PROSPECTIVE JUROR:  Yeah.

22      MS. NEWSOME:  Have you had any contact with him

23  since 1988?

24      PROSPECTIVE JUROR:  No, ma'am.

25      MS. NEWSOME:  Would your knowledge of Mr. Burton

24

1    influence your decision in this case?

2        PROSPECTIVE JUROR:  No, ma'am.

3        MS. NEWSOME:  Thank you.  Anybody else?

4        Judge Young has read the indictment, and the

5    charges in this case are burglary in the first degree,

6    theft of the property in the first degree, and receiving

7    stolen property.  I would like to know if anyone has been

8    charged with burglary and later found not guilty?  And,

9    if any of these questions are questions that you would

10   rather answer in private before the judge, come form a

11   line over here.  If anyone has been charged with burglary

12   or theft of property or receiving stolen property and

13   later found not guilty, or if you have a relative that

14   has been charged with any of those offenses and found

15   guilty or not guilty.

16       THE COURT:  All right.  How are you doing?  I'm

17   going to have to have your name for the Record.

18       PROSPECTIVE JUROR:  Okay.  My name is Sandra Mapp.

19   My cousin got a bunch of my -- a couple of my checks and

20   cashed them, but she paid them back.

21       THE COURT:  Okay.

22       PROSPECTIVE JUROR:  So I just wanted to let you

23   know.

24       THE COURT:  Sure.  Would the fact that your cousin

25   or that you've been the victim of a theft in essence,

25

1    would that cause you any problems being fair to both the
2    State of Alabama and the defendant in this case?
3         PROSPECTIVE JUROR:  No, it won't.
4         THE COURT:  Okay.  Anything from counsel?
5         MR. MORRIS:  Ma'am, what was your name?
6         PROSPECTIVE JUROR:  Sandra Mapp.
7         THE COURT:  All right.  Thank you.
8         PROSPECTIVE JUROR:  I have an uncle whose supposed
9    to be serving time, but I think he --
10        THE COURT:  Okay.  Give us your name first.
11        PROSPECTIVE JUROR:  Julie Brunner.  I'm sorry.  And
12   he stole from Wendy's and stole a car --
13        THE COURT:  Now, who is this?
14        PROSPECTIVE JUROR:  Joel Wall.
15        THE COURT:  Your uncle?
16        PROSPECTIVE JUROR:  Right.
17        THE COURT:  Let me ask you this.  Would the fact
18   that your uncle has been charged with something along the
19   same lines that this defendant has, would that cause you
20   to be unfair to the State of Alabama or the defendant in
21   this case?
22        PROSPECTIVE JUROR:  No.
23        THE COURT:  Okay.  Counsel, anything further?
24        MR. MORRIS:  No, sir.
25        THE COURT:  Thank you.

26

1       THE CLERK:  Mr. Adams has a felony conviction.  We

2  looked him up a minute ago.

3       THE COURT:  Okay.  You've got a felony conviction?

4       PROSPECTIVE JUROR:  I have been convicted of second

5  degree burglary.

6       THE COURT:  You have?  All right.  Let's go on and

7  excuse him at this time.  All right.  You'll be excused.

8  You're free to leave.

9       PROSPECTIVE JUROR:  David Adams.

10      THE CLERK:  He wasn't on the venire.

11      THE COURT:  He wasn't on there, Steve.  All right.

12  You're excused at this point.

13      PROSPECTIVE JUROR:  Okay.

14      THE COURT:  Anything further?

15      MS. NEWSOME:  I have one last question.

16      THE COURT:  Okay.

17      (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

18      MS. NEWSOME:  My last question is whether any of you

19  know any member of Christopher McCullough's immediate

20  family or extended family?  Do you know his parents?

21  Brothers and sisters?  Any member of Christopher

22  McCullough's family?  Okay.  Thank you very much.

23      THE COURT:  All right.  Thank you, Ms. Newsome.  Mr.

24  Morris.

25      MR. MORRIS:  Ladies and gentlemen, my name is Steve

1    Morris.  And, as Amy has said, I practice mainly in the

2    Wedowee area in Randolph County.  I'm going to be asking

3    just a few more questions this morning.

4        My first question is do I have I as an attorney ever

5    represented someone that was on the opposite side of the

6    controversy of you or a family member?

7        Okay.  My second question is -- This is not my

8    case.  This is Christopher McCullough's case.  Does

9    anybody not understand that?  Okay.  No response.

10       My third question is do you understand that the

11   defendant is innocent at this time?  Is there anybody

12   that doesn't understand that?  No response.

13       Do you have a problem with the legal system as it is

14   set up now with the jury?  Do you have a problem with

15   that?  No response.

16       I'm going to be asking some questions about some of

17   the police officers involved in this case.  Does anybody

18   personally know Richard Carter or know him on a social

19   basis or maybe attend church?  Okay.  Stand up, sir.

20       PROSPECTIVE JUROR:  I'm employed with the City of

21   Lanett as street superintendent.  I know all of the

22   police officers.

23       MR. MORRIS:  You know Mr. Carter and the other

24   officers?  Would the fact that you know Mr. Carter, would

25   that influence your ability to be fair and impartial in

1    this case?

2         PROSPECTIVE JUROR:  No, it would not, sir.

3         MR.  MORRIS:  State your name, please, sir.

4         PROSPECTIVE JUROR:  My name is Michael Bass.

5         MR. MORRIS:  Is there anybody else that knows

6    Richard Carter?

7         Does anybody know a police officer or law

8    enforcement officer Jeff Blackstone?  Know him from

9    church or social events?  Thank you.

10        Does anybody know a law enforcement officer Kenny

11   Vines?  Stand up, sir.  Okay.  We will take the --

12        PROSPECTIVE JUROR:  Kenny and I are first cousins.

13   Angela Johnson.

14        MR. MORRIS:  How do you know Mr. Vines?

15        PROSPECTIVE JUROR:  Kenny and I are first cousins.

16        MR. MORRIS:  Would the fact that you are related,

17   would that impair your ability to be fair and impartial?

18        PROSPECTIVE JUROR:  No.

19        MR. MORRIS:  Your name?

20        PROSPECTIVE JUROR:  Lavon White.

21        MR. MORRIS:  How do you know Mr. Vines?

22        PROSPECTIVE JUROR:  I just know him.  He's a police

23   officer in Lafayette.

24        MR. MORRIS:  Would the fact that you know him, would

25   that impair your ability to be fair and impartial?

29

```
 1          PROSPECTIVE JUROR:  No.

 2          PROSPECTIVE JUROR:  John Burton.

 3          MR. MORRIS:  What?

 4          PROSPECTIVE JUROR:  Burton.

 5          MR. MORRIS:  John Burton?  How do you know Mr.

 6     Vines, Mr. Burton?

 7          PROSPECTIVE JUROR:  Me and him are a member of the

 8     same church.  He's a deacon at the church.

 9          MR. MORRIS:  Y'all go to the same church?

10          PROSPECTIVE JUROR:  Yeah, we go to the same church.

11          MR. MORRIS:  Would the fact that you and Mr. Vines

12     go to the same church, would that impair your ability to

13     be fair and impartial?

14          PROSPECTIVE JUROR:  No.

15          MR. MORRIS:  It would not?

16              Okay.  Does anybody here know Steve Smith

17     personally or on a social basis?

18          PROSPECTIVE JUROR:  My name is Debra Hill.

19          MR. MORRIS:  How do you know Mr. Smith?

20          PROSPECTIVE JUROR:  He helped Mr. Wooten with my

21     case.

22          MR. MORRIS:  He what?

23          PROSPECTIVE JUROR:  Helped Mr. Wooten with my case.

24     Nicholas Wooten.

25          MR. MORRIS:  Okay.  Is there anybody else here that
```

30

1    knows Steve Smith?

2         Does anybody know Mike Looser on a personal basis or

3    social basis?  No response.

4         Does anybody know Lincoln Whaley on a personal basis

5    or on a social basis?  Stand up for me.

6         PROSPECTIVE JUROR:  My dad worked with his dad for

7    years.

8         MR. MORRIS:  Do what?

9         PROSPECTIVE JUROR:  My dad worked with his dad for

10   years.

11        MR. MORRIS:  What's your name?

12        PROSPECTIVE JUROR:  Lania Pollard.

13        MR. MORRIS:  Pollard.

14        PROSPECTIVE JUROR:  My name is Jimmy Heard, and I

15   know him through the school system.

16        MR. MORRIS:  You know him through the school system?

17   What's your last name again?

18        PROSPECTIVE JUROR:  Heard.

19        MR. MORRIS:  Heard?  Would the fact that you know

20   Mr. Whaley, would that impair your ability to be fair and

21   impartial?

22        PROSPECTIVE JUROR:  No.

23        MR. MORRIS:  And the lady, let me ask you that.

24   Would that impair your ability to be fair and impartial?

25        PROSPECTIVE JUROR:  No.

31

1          MR. MORRIS:  Does anyone here know Robby Bettis on a

2     personal basis or social basis?  Okay.  Y'all stand up,

3     please.

4          PROSPECTIVE JUROR:  Lania Pollard.  Robby is my

5     neighbor.

6          MR. MORRIS:  He's your neighbor?

7          PROSPECTIVE JUROR:  Um-hum.

8          MR. MORRIS:  Would that impair your ability to be

9     fair and impartial?

10         PROSPECTIVE JUROR:  No, sir.

11         MR. MORRIS:  All right.  Mr. Heard?

12         PROSPECTIVE JUROR:  His son used to attend the

13    school where I work, and he's done some work at the

14    school.

15         MR. MORRIS:  Okay.  Would that impair your ability

16    to be fair and impartial about sitting on the jury?

17         Do any of you know the people that work with the

18    D.A.'s Office, Bill Lisenby, on a personal basis?  Or do

19    you go to church with Mr. Lisenby?  No response.

20         PROSPECTIVE JUROR:  Other than the fact that you

21    just know him, who he is, and the position and that type

22    of thing?

23         MR. MORRIS:  Would that impair your ability to be

24    fair and impartial?  What is your name?

25         PROSPECTIVE JUROR:  Charles Wynn.

32

1          MR. MORRIS:  Are there any of you that know Amy

2     Newsome on a personal basis or on a social basis?

3          Is there anybody here that knows anybody else that

4     works with the D.A.'s Office?  No response.

5          Have you or a family member ever been the victim of

6     a crime?

7          PROSPECTIVE JUROR:  Larry Sharp.

8          MR. MORRIS:  Larry Sharp?  What happened, Larry?

9          PROSPECTIVE JUROR:  I believe it was the last

10    session we had here, I had a break-in at my home.  And

11    they convicted -- a plea bargain or something the guy

12    that broke in my home.

13         MR. MORRIS:  Okay.  Would the fact that you were the

14    victim of a crime, would that impair your ability to sit

15    on the jury and be fair and impartial?

16         PROSPECTIVE JUROR:  Not as long as the evidence is

17    there, it wouldn't be.

18         MR. MORRIS:  Okay.

19         PROSPECTIVE JUROR:  Tamera Oliver.

20         MR. MORRIS:  Who?

21         PROSPECTIVE JUROR:  Tamera Oliver.

22         MR. MORRIS:  You were the victim of a crime?

23         PROSPECTIVE JUROR:  My mother and I were both

24    stalked by the same person.

25         MR. MORRIS:  Do what?

33

1       PROSPECTIVE JUROR:  We were stalked by the same

2  person.

3       MR. MORRIS:  Okay.  Would the fact that you were the

4  victim, would that impair your ability to be fair and

5  impartial?

6       PROSPECTIVE JUROR:  No.

7       MR. MORRIS:  Anybody else?

8       PROSPECTIVE JUROR:  Charles Wynn.  I had a car that

9  was vandalized and spray painted and scratched with a

10  key.  And it was a bunch of kids, and it was settled in

11  Holley's court.

12       MR. MORRIS:  Would that impair your ability to be

13  fair and impartial based on that fact?

14       PROSPECTIVE JUROR:  No.

15       MR. MORRIS:  Have any of you read in the newspaper

16  or heard on the radio any radio reports surrounding this

17  incident that involves John Burton?  Nobody?  Nobody has

18  heard anything about this case?  No response.

19       Is there anyone here that simply does not feel

20  comfortable sitting on the jury?  No response.

21       I think that's all.

22       THE COURT:  All right.  Thank you.  Let me see

23  counsel for a moment.

24               (BENCH CONFERENCE)

25       THE COURT:  What I have done is to pare -- as I

34

1    understand, y'all pretty much expect this to be a one-day

2    affair?  Is that pretty much it?  I am going to pare this

3    down to 27, okay?  To allow y'all to select from 27.

4    What I'm going to do is I'm going to get a number from

5    you, and I'm going to get a number from Amy from one to

6    five.

7         MR. LISENBY:  I want to mention something real

8    quick.  I don't know if it will have anything to do with

9    your numbering situation, but Mr. Clark just told me that

10   Larry Sharp does know him through Mr. Clark's brother.

11   They used to work together, I think.

12        THE COURT:  Did he respond?

13        MR. LISENBY:  He did not respond about that.

14        THE COURT:  Okay.

15        MR. LISENBY:  It was a general question, "Do you

16   know anybody else that works with the D.A.'s office?" And

17   I don't know if --

18        THE COURT:  That's why I introduced Rea while ago.

19   Okay.

20        MR. LISENBY:  I don't know if he was thinking

21   maybe -- I don't know what he was thinking.

22        THE COURT:  Can I handle this for you?

23        MR. MORRIS:  Yes, sir.

24             (BENCH CONFERENCE CONCLUDED)

25        THE COURT:  All right.  Ladies and gentlemen, one

35

1    thing that when I identified your elected district

2    attorney, Mr. Rea Clark, just a moment ago, I did that

3    for a purpose.  First of all, to let you know that he was

4    here.  And, number two, when the question was asked does

5    anybody know anybody with the District Attorney's Office,

6    I guess that question ought to be expanded.  Does anybody

7    here also know the District Attorney?  Does anybody here

8    know the District Attorney Rea Clark?  Okay.  If you do,

9    stand up, please.

10        PROSPECTIVE JUROR:  Diane Adair.  I just know who

11   Rea is, just when I see him.

12        THE COURT:  All right.  Somebody else?

13        MR. MORRIS:  Would that affect your decision?

14        PROSPECTIVE JUROR:  No.

15        THE COURT:  Okay.

16        PROSPECTIVE JUROR:  Larry Sharp.  We were in school

17   together, and his wife -- excuse me.  My wife and his

18   brother work together.

19        THE COURT:  All right.  Anybody else?  Okay.  Thank

20   you.

21        PROSPECTIVE JUROR:  I don't know how close you're

22   supposed to go on these things, but the way I am, I run

23   into folks everywhere, you know, type thing.  I just know

24   who he is.

25        THE COURT:  All right.  That's fine.  So you know

36

1    him?  You don't have any kind of special relationship

2    with him?

3           PROSPECTIVE JUROR:  Ugh-ugh.

4           THE COURT:  All right.  Thank you very much.

5                       (BENCH CONFERENCE)

6           THE COURT:  All right.  Counsel, Steve, give me a

7    number between one and five.

8           MR. MORRIS:  Three.

9           THE COURT:  Three.

10          MS. NEWSOME:  Two.

11          THE COURT:  Okay.  That's five.  We'll use five.

12   What I'm going to do, Steve and Amy, I'm going to run

13   down -- Amy, I know you were here when I did the one

14   yesterday.  Mr. Story is going to run down the list, and

15   he's going start one, two, three, four, five.  That one

16   will be on the jury venire.  One, two, three, four, five.

17   And he'll go all the way down the list, and he'll come

18   back around and continue to do that until he has 27.

19   Okay.  Are you ready?

20          THE CLERK:  I'll be ready right now.

21          MR. CARLTON:  Judge, we want to ask for removal for

22   cause on Ms. Tamera Oliver.  She said she's known John

23   Burton all her life.  They grew up as friends.  I think

24   that might be prejudicial.

25          THE COURT:  Well, did you ask the question?

37

1        MR. CARLTON:  She said it would not.

2        MS. NEWSOME:  She said that she could set that

3    aside.

4        THE COURT:  Well, I think peremptory is going to

5    have to get her.  Okay.  She may not make the list.

6        MR. CARLTON:  That's true.

7        THE COURT:  Okay.  I think that based on that,

8    you're making a motion to strike for cause on Ms. Oliver?

9        MR. CARLTON:  Right.

10       THE COURT:  Based on her answers, I don't see it

11   gets there.  She knows the victim in this case.

12       MR. CARLTON:  Right.

13       THE COURT:  But she also said, as I recall, that she

14   could be fair to both State of Alabama and the defendant

15   in this case.

16       MR. CARLTON:  I just wanted to put it on the Record.

17       THE COURT:  Sure.  Get with Mr. Story in just a

18   second.

19       (THE CLERK AND COUNSEL STRUCK THE JURY WITHOUT THE

20       PRESENCE OF THE COURT REPORTER)

21       THE COURT:  Ladies and gentlemen, as Mr. Story calls

22   your name, I will ask you to come and have a seat in one

23   of these chairs right in front of me.

24       THE CLERK:  Linda Allison, Travis Baker, Wiley

25   Bishop, Virginia Elliott, Jimmy Heard, Dennis Hughes,

38

1      Sandra Mapp, Judy Overcash, Larry Presley, Angela Shears,

2      Mark Underwood, Lavon White.

3          THE COURT:  All right.  Is the State satisfied we

4      have the proper jury in the box?

5          MS. NEWSOME:  Yes, Your Honor.

6          THE COURT:  Is the defendant satisfied we have the

7      proper jury in the box?

8          MR. MORRIS:  Yes, Your Honor.

9          THE COURT:  All right.  Any motions?

10         MR. MORRIS:  Not at this time.

11         THE COURT:  All right.  Ladies and gentlemen, for

12     those of you who were not chosen for this jury, we're

13     going to reconvene tomorrow morning.  Let me see counsel

14     for one minute to make sure about this.

15                 (OFF-THE-RECORD SIDE BAR)

16         THE COURT:  Okay.  All right.  Having conferred

17     with the lawyers, I'm going to ask that everybody else

18     return tomorrow morning at 9:00 a.m.  Be here at 9:00

19     a.m. tomorrow morning.  All right?  The venire is excused

20     at this time.

21   (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

22         THE COURT:  Would y'all like to maybe go on and do

23     opening statements now and then come back and take a

24     break for lunch and come back after lunch and start the

25     trial?

39

MR. MORRIS:  I just as soon to go on and take a break now.

THE COURT:  Well, it's 11 o'clock.  I know it's 12:00 for some, but it's 11 o'clock.  At least we'll get that done and come back.  We'll take about an hour for lunch and come back.  Is that all right?  If y'all want the continuity of it to be a little different, we certainly can do it all at one time.

MR. LISENBY:  That will be fine.

THE COURT:  Okay.  Well, I've got to do my little precharge and all of that.

(BENCH CONFERENCE CONCLUDED; JURY PRESENT)

THE COURT:  All right.  I will have Mr. Story hand you these juror buttons.  I will ask you to wear these juror buttons while you're in the courthouse and when you go out to lunch sometime, because you may run into a situation where witnesses are out there and lawyers are out there and they may not know you're there.  You can get in and out of the scanner a little more easily if you've got your juror buttons on.

Okay.  Ladies and gentlemen, I'm going to ask that you stand at this time and let me swear you in.  Raise your right hands.

(PROSPECTIVE JURORS SWORN)

THE COURT:  Okay.  Have a seat, please.

40

1           Okay.  Members of the jury, it's very important that
2      you observe certain rules of conduct during your service
3      as a juror in this case.  These rules are directed to
4      your conduct when you're outside the jury box, whether
5      it's during a recess or an overnight separation.  Strict
6      compliance with these rules will help ensure a fair trial
7      to all concerned.  Failure to comply with these rules, on
8      the other hand, could result in the case having to be
9      tried again.
10          You shall have no discussion with anyone about this
11     case nor should you allow anyone to discuss this case in
12     your presence or hearing.  If anyone, including a family
13     member, seeks to engage you in a conversation about this
14     case, you should respond that you're under Court order
15     not to discuss the case.  It would be improper for you to
16     discuss this case even with a fellow member of the jury
17     except during deliberations in the jury room after the
18     Court has charged you on the law in the case.  Once a
19     verdict has been returned in this case and your service
20     as a juror is complete, you may discuss this case with
21     whomever you wish and to whatever extent you wish.
22          Do not try to learn anything about this case.  Avoid
23     all contact with family members, both of the victim and
24     the defendant.  Do not talk to any attorney, party, law
25     enforcement official, or any other person who may be a

1    witness in this case.  Avoid news media that may have

2    anything about the case.

3         You should isolate yourself from any circumstance

4    which might influence your verdict in this case, and you

5    should guard against any conduct that would give anyone

6    reason to doubt your fairness and impartiality.

7         Ladies and gentlemen, we're about to get started in

8    the trial of this case, and I want to discuss with you

9    for a moment the procedure that we will follow throughout

10   the trial.

11        This is a criminal trial, and the burden of proof or

12   responsibility to produce evidence falls completely upon

13   the State of Alabama.  Foremost, you must remember that

14   the defendant comes before you cloaked with the

15   presumption of innocence.  He is presumed innocent, and

16   the idea of his innocence is evidence in this trial and

17   even will go to the jury room with you for you to

18   consider at the end of the case.

19        Now, I want to review how this case will progress.

20   The State of Alabama has the burden of proof or

21   responsibility to prove to you certain things in order to

22   convince you that this defendant is guilty as charged.

23   The State must prove all the elements of the crime to a

24   certain degree of proof.  The level of proof falls only

25   within your mind.  They must prove the elements beyond a

42

1    reasonable doubt.

2         Since the State has the burden of proof, they will

3    have the opportunity to address you first in the opening

4    statement and lastly in the closing statements.  The

5    defendant has no burden at all in this case.  They may

6    decide to give an opening statement or examine the

7    State's witnesses, or they may decide to present their

8    own witnesses.  They have no responsibility at all in

9    this case.

10        I have used the term "opening statement."  This is

11   when the parties give you a road map or outline of what

12   they expect the evidence will show during the course of

13   the trial.  What these attorneys tell you in their

14   opening statements is not evidence.  The only evidence

15   that you will hear is what comes from the witness stand,

16   and you may have some exhibits that are admitted into

17   evidence.

18        At the end of all the testimony when the attorneys

19   have no further questions, the attorneys will have an

20   opportunity to give their closing arguments or closing

21   statements.  This will be the time when they will tell

22   you what they believe the evidence has shown you

23   throughout the course of the trial.

24        You are the trier of the facts.  You determine what

25   the facts are from what you have heard and what you have

43

seen.  It is my job to see that the trial moves smoothly
and that you receive only legal evidence and it is
properly presented in order for you to make your
decision.  Your job is to sift through the facts, decide
what they are, and then to apply the law to the facts as
you find them to be.

In the event a question is asked and the other side
makes an objection, if I sustain the objection, that's
the Court saying that the witness cannot give a proper
answer to that question or that this is not a proper
witness to give an answer to that question.  If I
overrule the objection, then you will hear the answer.

The same goes for an exhibit.  If there's a document
or photograph offered and there's an objection, if I
sustain the objection you will not see the exhibit.  This
is the Court saying that this witness cannot properly
authenticate the exhibit or that this is not the witness
to present the document through.  Of course, if I
overrule the objection, you will see the exhibit.

You must not concern yourself with the reasons for
my rulings since they are controlled and required by
rules of law.  You are to not speculate as to possible
answers to questions which I do not require to be
answered.  Additionally, the overruling of objections to
evidence is not intended to indicate the weight to be

44

given such evidence by you.

Occasionally during the course of the proceedings, it may become necessary for me to confer with the attorneys outside your presence or outside your hearing. Should I call counsel to the bench or excuse you from the courtroom, it will be to resolve a legal point or other matter which at that point may not be proper for you to hear and consider. You should not speculate on the content of any such conference or allow such conference or any inference that you may draw therefrom to affect your verdict.

Is the State of Alabama ready to proceed with trial?

MS. NEWSOME: Yes, Your Honor.

THE COURT: Okay. Is the defendant ready to proceed with trial?

MR. MORRIS: Yes, sir.

THE COURT: Okay. At this time we'll have opening statements. I'll call upon the State of Alabama. Ms. Newsome.

MS. NEWSOME: Thank you, Your Honor.

(MS. NEWSOME MADE AN OPENING STATEMENT, AND NO OBJECTIONS WERE MADE)

MR. MORRIS: Judge, at this time we move to invoke The Rule of the witnesses.

THE COURT: All right. Ladies and gentlemen,

45

1    anybody who's going to be a witness in this case, The

2    Rule has been invoked.  I'm going to ask that you step

3    outside the courtroom.  We will call you when you're

4    called as a witness.

5         MR. LISENBY:  Judge, of course, we would ask the

6    Court to allow Mr. Burton to remain in as the victim in

7    the case.

8         THE COURT:  Certainly.  All right.  Mr. Burton will

9    be excused from The Rule.

10        MR. MORRIS:  May it please the Court.

11        (MR. MORRIS MADE AN OPENING STATEMENT, AND

12        THE FOLLOWING OBJECTIONS WERE MADE:)

13   ... This indictment was brought by the State of Alabama

14   through the District Attorney's Office of Chambers

15   County, Alabama.  My client was not present at this Grand

16   Jury.

17        MR. LISENBY:  Your Honor, I object to that.

18        THE COURT:  All right.  I'm going to restrict the

19   opening statements to what you expect the evidence to

20   show.

21                    * * * * * * * *

22        THE COURT:  All right.  Thank you.  Ladies and

23   gentlemen, I think because when we get started with the

24   testimony, we may run well into our lunch hour, it may be

25   better that we take our lunch hour right now.  Can

46

1    everybody live with that?  I see some people doing this,

2    and some people probably just got through with breakfast

3    a couple of hours ago.  But what I want to do is ask that

4    you go and have lunch now.  I'm going to ask that you

5    come back at 12:15, and we'll start back with testimony

6    at that time.  12:15 Central time, now.  Okay?  All

7    right.  The jury is excused.

8        Ladies and gentlemen, you have heard certain things

9    in opening statements and when the indictment was read

10   about this case.  I've already told you about juror

11   conduct.  Do not try to investigate this case.  Do not

12   talk to anybody about this case.  Do not allow anybody to

13   talk about this case in your presence.  All right?  Thank

14   you very much.

15                     (JURY NOT PRESENT)

16       MR. LISENBY:  Before we go, I want to tell everybody

17   something.

18       THE COURT:  We're all ears.

19       MR. LISENBY:  You were asking earlier about

20   videotapes.  Let me tell you what I understand so that

21   we'll all be on the same page.  There was a videotape of

22   the traffic stop.  After the traffic stop, there was also

23   a videotape of the interior of the car.  So we won't show

24   the videotape of the traffic stop, but there is a

25   videotape of the car itself.

47

1        Okay.  There was also when they went and recovered

2    the .22 rifle, there was a videotape of that.  Now, we're

3    going to show that, too.  Now, that part of the videotape

4    is on the same tape as the traffic stop.  Okay?  So we

5    won't show that.  We're going to have it cued up to just

6    that point about the recovery of the rifle.

7        THE COURT:  Okay.

8        MR. LISENBY:  But if the jury wants to see it again,

9    we'll have to remember.

10       THE COURT:  Right.  Just like we did with the

11   audiotape yesterday.

12       MR. LISENBY:  Yes, sir.

13       THE COURT:  Okay.

14       MR. MORRIS:  Your witnesses, law enforcement knows

15   not to mention that?

16       MR. LISENBY:  We're going to tell them.

17       THE COURT:  That's why we wanted to take a break now

18   before we got started with it.

19       MR. LISENBY:  And basically what we're going to tell

20   them is that we're going to lead them into, you received

21   a call, you observed a suspicious vehicle, you performed

22   a traffic stop on that.

23       THE COURT:  All right.  So the game plan is we'll

24   start back at 12:15.  That gives you a little bit less

25   than an hour to eat.  And we'll just go on and knock this

48

1       thing out this afternoon.  Okay?  Any other questions?

2       Court will stand in recess until 12:15.

3                           (LUNCH RECESS)

4           THE COURT:  All right.  Ms. Newsome, are we ready

5       for the first witness?

6           MS. NEWSOME:  Yes, sir.  State calls John Burton.

7           THE COURT:  All right.  John Burton.  Mr. Burton, I

8       will have you stand right there, raise your right hand

9       and be sworn.

10                          (WITNESS SWORN)

11          THE COURT:  Mr. Burton, have a seat.  If you would

12      please speak loudly enough so everybody in the courtroom

13      can hear you.  Go ahead, Ms. Newsome.

14                          JOHN BURTON,

15          a witness, after having first been duly sworn to

16      speak the truth, the whole truth, and nothing but the

17      truth, took the stand and testified as follows:

18                       DIRECT EXAMINATION

19  BY MS. NEWSOME:

20  Q.   Mr. Burton, please tell us your full name.

21  A.   John Drew Burton.

22  Q.   Where do you currently reside?

23  A.   7146 Country Club Road in Lanett.

24  Q.   Is that where you were residing in March of this year?

25  A.   Yes, ma'am.

49

1  Q.    I'm going to ask you to direct your attention to that

2        particular date, March 13th, 2002.  Do you recall what

3        time you left home that morning?

4  A.    It was about a quarter till 7:00 in the morning.

5  Q.    Do you remember what time you returned that evening?

6  A.    Probably it was around between 7:00 and 7:30.

7  Q.    When you returned home that evening, did you notice

8        anything unusual?

9  A.    Yes.  The back door to my house was kicked in or busted

10       in.  You know, broke in.

11  Q.    Did you enter the residence at that time?

12  A.    Yes, ma'am.

13  Q.    Did you notice anything unusual about the interior of

14       your residence?

15  A.    Just at that time, you know, one or two things that were

16       missing.  But, you know, I was just looking in the house

17       seeing what else, making sure nothing had been damaged.

18  Q.    At some point, did you do an inventory and locate several

19       missing items?

20  A.    Yes, ma'am.

21  Q.    Please tell us what was missing from your home.

22  A.    Two pistols, a rifle, some pocketknives, some change --

23       pocket change.

24  Q.    What type of rifle was it?

25  A.    It was a 10-22 Ruger target rifle.

50

1   Q.   And what type of pistols were missing from your home?

2   A.   One was a King Cobra, Colt King Cobra, a .357 and a Smith

3        and Wesson nine millimeter.

4   Q.   And you also said there were some pocketknives that were

5        missing?

6   A.   Yes, ma'am.

7   Q.   How many?

8   A.   I think it was around maybe four or five, something like

9        that.

10  Q.   Can you give us a description of those knives?

11  A.   Some small, you know, folding pocketknives up to, you

12       know, a little bit larger, lock-blade pocketknife.

13  Q.   What was the value of each of the pistols that were taken

14       from your home?

15  A.   Separately or combined?

16  Q.   Separately.

17  A.   The King Cobra .357 roughly 375, and the Smith and Wesson

18       nine millimeter was about 550.

19  Q.   $550?

20  A.   Yes, ma'am.

21  Q.   And what is the value of the rifle that was taken from

22       your home?

23  A.   About 550, also.

24  Q.   And do you have a value for the knives that were taken?

25  A.   Probably total combined around $75.

51

1   Q.   The aggregate value of the knives was approximately $75?

2   A.   Yes, ma'am.

3   Q.   Was there also a cup of change that was missing?

4   A.   Yes, ma'am, loose pocket change.

5   Q.   Is this just something that you had collected over a

6        period of time?

7   A.   Yes, ma'am.

8   Q.   Do you have any idea how much change was in the cup?

9   A.   It was probably I would say maybe 30 or $40.

10  Q.   If you would, I would like to go back momentarily.  If

11       you could describe the damage that had been done to your

12       back door.

13  A.   Well, I could tell it was actually there were footprints

14       on it where it was a glass door, and they had just

15       repeatedly kicked it until it, you know, the frame of the

16       door broke.

17  Q.   Was there any damage to the interior of the house?

18  A.   None really to mention.  Just --

19  Q.   Where was the rifle located in your home before it was

20       removed?

21  A.   The rifle was leaning in a corner by a sofa in the living

22       room.  In the same room where the door was kicked in.

23  Q.   Okay.  Where were the pistols?

24  A.   One was actually in the den on the counter, and one was

25       actually in my bedroom.

52

```
 1        THE COURT:  You know, I don't know what to tell you
 2     here.  We got machines here, hammering here.
 3        MR. MORRIS:  Would she ask that question again?  I
 4     didn't hear.
 5        THE COURT:  That's what I was going to say.  By the
 6     way, if you get to a point -- I know some of you were on
 7     the jury earlier -- where you can't hear something, raise
 8     your hand and let me know.  I'll have them repeat answers
 9     and all.  Okay?  In fact, I can do this, I believe, if
10     you want me to.  Or do you want to ask the question
11     again?
12        MS. NEWSOME:  Judge, I'm just going to ask Mr.
13     Burton to describe where each item was in the home.
14  Q.  Let's start with the rifle again.  Where was the rifle
15     located before it was removed?
16  A.  Actually it was in the den leaning in the corner by the
17     sofa.  The Smith and Wesson nine millimeter was on a
18     counter between the den and the kitchen.  The Colt .357
19     was in my bedroom, and the knives were on my dresser in
20     my bedroom as well.  And the pocket change as well, too,
21     which came from the bedroom.
22  Q.  Was the rifle in the room that was the first room you
23     entered through the door that had been broken into?
24  A.  Yes, ma'am.
25  Q.  Did anyone have permission to enter your home while you
```

53

1      were away from home that day?

2  A.   No, ma'am.

3  Q.   Did anyone have permission to take the items that were

4      removed from your home?

5  A.   No, ma'am.

6  Q.   Do you know the defendant, Christopher McCullough?

7  A.   No, ma'am.

8  Q.   Have you ever seen him before today?

9  A.   No, ma'am.

10 Q.   Did he have permission to enter your home and take those

11     items?

12 A.   No, ma'am.

13         MR. MORRIS:  Object.

14         MR. CARLTON:  Judge, they haven't elicited any

15     testimony that Mr. McCullough was in the house.  I object

16     to him speculating that Mr. McCullough was even in the

17     house.

18         THE COURT:  I thought the question was did he know

19     Mr. McCullough.

20         MR. CARLTON:  The question was did he have

21     permission to be in the house.

22         THE COURT:  I'm going to overrule.

23 Q.   Did Mr. McCullough have permission to be in your home?

24 A.   Not at all.

25 Q.   Did Mr. McCullough have permission to take any of the

54

1       items that were removed from your home?

2   A.  No, ma'am.

3   Q.  Were any of these items ever returned to you?

4   A.  Yes, ma'am.

5   Q.  Which ones?

6   A.  Both pistols, the rifles, and I believe two of the knives

7       were returned.

8   Q.  Thank you, Mr. Burton.  That's all the questions I have.

9       The defense attorney may have some questions.

10              THE COURT:  All right.  Mr. Morris.

11                          CROSS-EXAMINATION

12  BY MR. MORRIS:

13  Q.  Mr. Burton, you were not at home when this incident

14      occurred, were you?

15  A.  No, sir.

16  Q.  You did not see with your own eyes who broke into your

17      house?

18  A.  No, sir.

19  Q.  Mr. Burton, you had a lot of other valuables like guns in

20      your house and things, right?

21  A.  Yes.

22  Q.  How many guns?  Just an estimate, how many guns were in

23      your house?

24  A.  At that time?   Thirteen.

25  Q.  Thirteen guns?  And all you're saying that was stolen was

55

1    a .22 rifle, two pistols, and four or five pocketknives

2    and some change?  Isn't it possible that one person could

3    have carried those things off?

4  A.  Sir?

5  Q.  Isn't it possible that one person could have carried a

6    rifle, two pistols, and pocketknives off?

7  A.  Yes, sir.

8  Q.  Thank you.

9        THE COURT:  All right.  Anything else from this

10   witness?

11       MS. NEWSOME:  No, sir.

12       THE COURT:  All right.  You can step down.  Thank

13   you.  Okay.  Ms. Newsome?

14       MR. LISENBY:  State calls Robby Bettis.

15       THE COURT:  Robby Bettis.  All right.  If you would

16   raise your right hand, face the court reporter and be

17   sworn.

18                 (WITNESS SWORN)

19       THE COURT:  All right.  I'm going to ask you to

20   speak loudly enough so everybody can hear you.

21       THE WITNESS:  Yes, sir.

22       THE COURT:  Go ahead, Mr. Lisenby.

23                 ROBBY BETTIS,

24   a witness, after having first been duly sworn to

25   speak the truth, the whole truth, and nothing but the

56

1      truth, took the stand and testified as follows:

2                      DIRECT EXAMINATION

3   BY MS. NEWSOME:

4   Q.   Would you tell me your name, please, sir?

5   A.   Lieutenant Robby Bettis.

6   Q.   Where are you employed?

7   A.   Lanett Police Department.

8   Q.   Presently a lieutenant there; is that correct?

9   A.   Yes, sir.

10  Q.   How long have you been with the Lanett Police Department?

11  A.   Almost 13 years.

12  Q.   In your present position as lieutenant, what are your

13       duties there?

14  A.   I'm assigned to patrol, and shift commander.

15  Q.   And, as shift commander, that means you take care of the

16       other officers working that same day; is that correct?

17  A.   Yes, sir.

18  Q.   Now, Lieutenant, I want to direct your attention back to

19       March the 19th of 2002 and ask if you had the occasion to

20       receive a call to go to an area around the Hillcrest

21       Cemetery in Lanett?

22  A.   Yes, I did.

23  Q.   While you were in that area, did you have the occasion to

24       observe a vehicle somewhere?

25  A.   Yes, sir, I did.

57

Q.   Where were you and where was that vehicle?

A.   When I went to Hillcrest Cemetery off Country Club Road,
     I observed something shiny caught my eye in the woods
     back in the deepest part of the cemetery.  That's when I
     heard doors shut and a vehicle start coming out.

Q.   Is there a road that you're describing in this area?

A.   It's an old dirt path.  That's the city's property right
     there in the back of the cemetery, and a lot of the city
     crews used to take carcasses and all back in that area.
     And that's pretty much -- it's just old like an old
     pulpwood road.

Q.   Okay.  Now, after you observed this vehicle at that
     location, just tell the members of the jury what you did
     in response to that vehicle.

A.   When I seen the vehicle, I conducted a felony stop on it.

Q.   What do you mean by a "felony stop"?

A.   Well, I was in the area on a call.

Q.   What did you do?  What was your response?

A.   A felony stop is where we take people out of a vehicle at
     gunpoint because we have information to believe they're
     armed and dangerous.  At that time I waited for my
     back-up, because I felt like they would leave out of the
     car in that wooded area.  So, when my back-up got there,
     we got them out and secured them on the ground until I
     could get other officers there.

58

1   Q.   How many people were in this vehicle?

2   A.   Two.

3   Q.   And do you recall their names?

4   A.   The driver was Chris McCullough and Billy, I think,

5        Norris was the passenger.

6   Q.   All right.  And is Chris McCullough, the person that you

7        described, is he present in the courtroom today?

8   A.   Yes, sir, he is.

9   Q.   Where is he, please?

10  A.   Sitting right there (indicating).

11           MR. LISENBY:  If the Record would reflect that the

12       officer has identified the defendant, Mr. McCullough.

13  Q.   Now, Lieutenant, after you had made this traffic stop and

14       gotten both individuals outside of the vehicle, you

15       mentioned earlier that you had some back-up officers.

16       Did detectives also arrive there?

17  A.   Yes, sir, they did.

18  Q.   Do you recall which detectives came?

19  A.   Lieutenant Richard Carter and Detective Lincoln Whaley

20       were the main two that I was discussing the case with.

21  Q.   All right.  Now, I want to direct your attention to a

22       little bit later on in that same day of March the 19th

23       and ask if you had the occasion to receive some

24       information from one of the detectives -- I believe it

25       was Detective Whaley -- to go to another location to look

59

1       for some items of evidence?

2   A.  Yes, sir.

3   Q.  And where did you go to?

4   A.  It was 1108 East -- I want to say it was First Avenue.

5       I'm not quite sure.  I know the house number was 1108.

6   Q.  Okay.  And we're still talking about inside Lanett?

7   A.  Yes, sir.

8   Q.  Okay.  You went to a residence; is that correct?

9   A.  Yes, sir.

10  Q.  Was this residence occupied?

11  A.  The power was shut off to the house.  And we found an

12      item that give that address inside the vehicle, and then

13      the detective told me that they -- that the gentleman

14      advised him that some stuff was still in the house, that

15      it was recovered.

16  Q.  Did you actually go into the house yourself?

17  A.  Yes, sir, I did.

18  Q.  And, when you went into the house, what if anything did

19      you observe with regard to items reported out of Mr.

20      Burton's burglary?

21  A.  The rifle with a scope, and I believe it was a Buck

22      Knife.

23  Q.  While you were there, did you participate in any

24      videotaping of this area?

25  A.  Yes, sir, I did.

60

1   Q.   And who actually did the videotape?

2   A.   I did.

3   Q.   Okay.

4        MR. MORRIS:  Judge, can we approach?

5        THE COURT:  Yes.

6   (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

7        MR. MORRIS:  Judge, I object to the video.  I filed

8   a motion for discovery, and I haven't got it.  I haven't

9   received it.

10       MR. LISENBY:  We gave notice of that probably in

11  March whenever the arraignment was.

12       THE COURT:  Did you get notice that it was at the

13  police department and you could view it there?

14       MR. MORRIS:  We've asked to look at it.

15       THE COURT:  What, now?

16       MR. MORRIS:  We've asked to look at it, and we

17  haven't gotten the opportunity.

18       THE COURT:  Okay.  Did y'all go down to the Lanett

19  Police Department?

20       MR. MORRIS:  I haven't.

21       THE COURT:  So you haven't seen this?

22       MR. MORRIS:  No.

23       THE COURT:  How long is it?

24       MR. LISENBY:  Five minutes.  It's not that long.

25       THE WITNESS:  It goes right into it.

61

1    THE COURT:  Okay.  I'm going to recess the jury for

2    a minute, and I'll let them look at it right now.

3        (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

4    THE COURT:  All right.  Ladies and gentlemen, I'm

5    going to ask you to step back in the jury room for just

6    one moment.  I'll be right back with you.

7            (JURY NOT PRESENT)

8    MR. LISENBY:  This has audio, but we're not going

9    to do the audio.  We're just going to show the video.

10   THE COURT:  Is that fine, Steve and Mark?

11   MR. LISENBY:  If they want to play it, it's fine

12   with me.

13   MR. CARLTON:  It would probably be better without

14   the audio, I would think.

15        (ATTORNEYS VIEWING VIDEOTAPE)

16   THE COURT:  We have a motion?  I want to note now

17   following our previous discussion that the attorneys now

18   have had an opportunity, as I understand it, to look at

19   the two videos that will be presented by the prosecution;

20   is that correct?

21   MR. LISENBY:  Yes, sir.

22   THE COURT:  All right.  And Mr. Carlton or Mr.

23   Morris had mentioned a motion?

24   MR. CARLTON:  Yes, sir.  We would like to raise a

25   motion to suppress the video and evidence coming from the

62

1    search of the residence.  From what I understand from

2    watching the video and just talking with Officer Bettis

3    here, he received a call from Lincoln Whaley to go to

4    this residence, that there was possibly some of the items

5    from the burglary in that residence.  They didn't have a

6    warrant to search the residence and enter the residence.

7    And, from what I understand from Officer Bettis, he

8    doesn't know who gave permission to go in the house.  So

9    if either the defendant or owner -- the leaseholder or

10   owner did not give Lanett P.D. permission to enter the

11   house, they had no right to conduct the search.  So

12   anything from that search would be fruit of the poisonous

13   tree and would not be admissible.

14        THE COURT:  All right.  Mr. Lisenby?

15        MR. LISENBY:  Well, I think we would have two

16   responses to that.  One, I believe any motions along this

17   line would be required to be filed pre-trial, which was

18   not done in this case.  And, second, I'm not sure that

19   either -- Well, I'm not sure that Mr. McCullough, the

20   defendant in this case, would have standing to challenge

21   the search.

22        THE COURT:  This is not Mr. McCullough's home we're

23   talking about?

24        MR. LISENBY:  According to the information I had in

25   the file was that it was an abandoned house.  That it was

63

1      not Mr. McCullough's home.

2              MR. CARLTON:  There's evidence on the video that --

3      I don't know if it's a check stub or utility bill or

4      something or tax refund receipt that had Mr. McCullough's

5      name on it that was recovered from the house.

6              THE COURT:  Mr. McCullough's?

7              THE WITNESS:  It was a telephone bill.  Once we got

8      in the house --

9              MR. CARLTON:  A telephone bill from the defendant

10     for that residence.  So I'm assuming without talking to

11     anybody that knows, at the time he would have been the

12     leaseholder interest in that house.  And from what I

13     understand from Officer Bettis, the Honorable Greg Ward

14     owns the house.  So, if they didn't get permission from

15     one of the two, they didn't have permission to enter.

16     And my response to what Mr. Lisenby was saying about the

17     pre-trial motion, I know what their position is about the

18     evidence and the defense having access to the evidence.

19     But I think it's -- from what I understand, it's the

20     State's responsibility to provide directly to the defense

21     the evidence, not the defense having to go out and track

22     it down.

23             THE COURT:  Okay.  Anything further?

24             MR. LISENBY:  Just in response to that, there are

25     cases out there that says as long as the State gives

64

notice and an opportunity, that's all we have to do.
Which is all the rules say, is an opportunity to copy and
inspect.  Once we give that -- and actually, I was
thinking -- I haven't looked at the file -- but this was
even before the arraignment day that we gave this.
Because Mr. Morris was involved in this case at a
preliminary hearing, and that's when we gave the
discovery out at that time.  So it's actually been longer
than the March 19th arraignment day that that information
has been out there.

MS. NEWSOME:  And also there is information to
indicate Mr. Norris was living there.  Mr. Norris told
the police where the rifle was located and told them
basically how to get there and gave them consent to go
retrieve the rifle.  That's why he was giving them the
information so they could go get that rifle from the
residence.

THE COURT:  All right.  I'm going to overrule.  I
guess I'm going to deny your motion to suppress.  I guess
that was kind of in the vain of a motion to suppress,
wasn't it?

MR. CARLTON:  That's right.

THE COURT:  I'll deny your motion to suppress,
then.  Are y'all ready to proceed?

MR. CARLTON:  Yes, sir.

65

1          THE COURT:  Have we got all the tapes cued back up

2     and all that?

3          MR. LISENBY:  Yes, sir, I think so.

4          THE WITNESS:  Yes, sir.

5          THE COURT:  Mr. Story, let's bring them back out.

6                    (JURY PRESENT)

7          THE COURT:  All right.  Mr. Lisenby.

8               DIRECT EXAMINATION (CONTINUED)

9     BY MR. LISENBY:

10    Q.   Lieutenant, let me show you what is marked as State's

11         Exhibit Number 1 and tell me if you recognize what that

12         is?

13    A.   Yes, sir.

14    Q.   What is that, please?

15    A.   That's the videotape that comes out of our patrol unit.

16         We can also take the camera out and videotape any crime

17         scene.

18    Q.   You mentioned earlier that you, in fact, had done a

19         videotape of the location of where the rifle was

20         recovered?

21    A.   Yes, sir.

22    Q.   That's this videotape?

23    A.   Yes, sir.

24    Q.   You've had an opportunity to review it?

25    A.   Yes, sir, I have.

66

1    Q.    And does it fairly and accurately depict or show the area

2          as you recall it that day?

3    A.    Yes, sir, it does.

4              MR. LISENBY:  We would offer Number 1, Your Honor.

5              THE COURT:  All right.  Any objections?

6              MR. MORRIS:  No.

7              THE COURT:  All right.  State's Exhibit Number 1

8          will be admitted.

9          (STATE'S EXHIBIT NO. 1 WAS ADMITTED INTO EVIDENCE)

10             MR. LISENBY:  May I show this to the jury?

11             THE COURT:  Yes.  Can everybody see it?

12   (STATE'S EXHIBIT NO. 1, A VIDEOTAPE, WAS PLAYED IN OPEN COURT)

13   Q.    All right.  Now, Lieutenant, with regard to that item

14         that you mentioned, a knife or two also that were

15         recovered there?

16   A.    Yes, sir, a Buck Knife.

17   Q.    Were those taken into custody by Detective Lincoln

18         Whaley?

19   A.    Yes, sir, they were.

20   Q.    Thank you, sir.  The defense may have some questions for

21         you.

22             THE COURT:  All right.  Mr. Morris.

23                      CROSS-EXAMINATION

24   BY MR. MORRIS:

25   Q.    Officer, you were the first one on the scene, right?

67

```
1    A.    Yes, sir.
2    Q.    All right.  You are saying that Mr. McCullough was
3          driving, right?
4    A.    Yes, sir.
5    Q.    And did they ever try to escape?  Did he ever try to
6          leave?  Get around you to leave the scene?
7    A.    I didn't really give him a chance.  No, sir, he didn't.
8    Q.    How do you know you didn't really give him a chance?
9    A.    Because the way the front of the vehicle when he come out
10         of the woods, there was another vehicle on the other road
11         coming in also when I came in.
12   Q.    Did he try to run?
13   A.    No, sir, he did not.
14   Q.    He didn't?  He just give up right there?
15   A.    Pretty much, yeah.
16   Q.    Okay.  The video that we just saw was the video that was
17         a vacant house, right?
18   A.    Yes, sir.
19   Q.    Did you do that videotape?
20   A.    Part of it, yes, sir.
21   Q.    And you were told by another officer that he had
22         information -- You were told by another officer to go to
23         this house, that there might be some items in this house?
24   A.    Yes, sir.  He told me that during the interview that to
25         go to the house, that he told one of them that was
```

68

1       supposed to be staying there.  That the house had no

2       power, that there would be some more guns in the house.

3  Q.  So there is no power hooked up at this house?

4  A.  No, sir.

5  Q.  No telephone?

6  A.  No, sir.

7  Q.  Was the door open when you came up?

8  A.  Partially open, yes.  It was ajar.

9  Q.  Partially open.  What time of day was this?

10  A.  I'm not real sure.  Around 2 o'clock, I think.

11  Q.  2 o'clock in the evening?

12  A.  Yes, sir, 2:00 or 3 o'clock.

13  Q.  Officer, is it standard procedure to use a video camera?

14  A.  Yes, sir.

15  Q.  In a situation like this?

16  A.  Yes, sir, it is.

17  Q.  Wouldn't you say the video camera would give the jury a

18       better idea of what the evidence is?  I mean, it gives

19       the jury a better picture than what you could get up here

20       and tell them?

21  A.  Yes, sir.

22  Q.  Why did you videotape that?

23  A.  I don't understand.  What do you mean?  Because we

24       recovered --

25  Q.  Why did you take a video camera over there?

69

1    A.    Because we were going to recover evidence, and I didn't
2          have a still camera.  We used that.
3    Q.    It's standard procedure to use a video camera in a
4          situation like this?
5    A.    Yes, sir.
6    Q.    Another thing, the video was used so the jury could see
7          it with their own eyes, right?
8    A.    Yes, sir.
9              MR. MORRIS:  Nothing further.
10             THE COURT:  All right.  Thank you very much.
11    Anything further for this officer?
12             MR. LISENBY:  Nothing else.  May this witness be
13    excused?
14             THE COURT:  May this witness be excused?
15             MR. MORRIS:  Yes, sir.
16             THE COURT:  All right.  Lieutenant, you're excused.
17    All right.  Mr. Lisenby, Ms. Newsome, next witness.
18             MR. LISENBY:  State calls Billy Norris.
19             THE COURT:  Billy Norris.  Mr. Norris, come on up,
20    please.  Come on up here.  Mr. Norris, I want to you
21    stand right there, raise your right hand.  Okay.  I want
22    you to face the court reporter right here and be sworn
23    in.
24                      (WITNESS SWORN)
25             THE COURT:  All right.  Have a seat, please, sir.

70

1          Mr. Norris, I'm going to ask you to speak loudly enough

2    so everybody can hear you.

3             THE WITNESS:  Yes, sir.

4                  BILLY NORRIS, JR.,

5        a witness, after having first been duly sworn to

6    speak the truth, the whole truth, and nothing but the

7    truth, took the stand and testified as follows:

8                DIRECT EXAMINATION

9    BY MR. LISENBY:

10    Q.   Can you tell me your name, please, sir?

11    A.   Billy Ralph Norris, Jr.

12    Q.   I can just barely hear you.  If this lady right here on

13         the corner can, I'm sure everybody can.  Okay?  Try that

14         one more time.

15    A.   Billy Ralph Norris, Jr.

16    Q.   Thank you.  I see that you're dressed in an orange jump

17         suit.  Does that mean that you're presently living at the

18         Chambers County jail?

19    A.   Yes, sir.

20    Q.   Where did you live prior to your being incarcerated down

21         at the jail?

22    A.   At 5255 County Road 32, Lafayette, Alabama.

23    Q.   Now, Mr. Norris, you are presently in jail because you

24         have been convicted of a burglary involving Mr. Burton's

25         residence; is that correct?

71

| | | |
|---|---|---|
| 1 | A. | Yes, sir. |
| 2 | Q. | And you received a 24-year sentence for that; is that |
| 3 | | right? |
| 4 | A. | Yes, sir. |
| 5 | Q. | Now, I want to ask you about March of 2002, March the |
| 6 | | 13th, and ask if on that day did you know the defendant |
| 7 | | in this case, Christopher McCullough? |
| 8 | A. | Yes. |
| 9 | Q. | How did you know Mr. McCullough? |
| 10 | A. | Me and Mr. McCullough, we grew up together. We was real |
| 11 | | good friends, always been good friends. Grew up |
| 12 | | together, like I said. |
| 13 | Q. | You grew up together and were real good friends? |
| 14 | | THE COURT: Okay. I'm going to ask you to keep your |
| 15 | | voice up, Mr. Norris, so that everybody can hear you. |
| 16 | | Okay? |
| 17 | Q. | If she can hear you on this corner and this lady can |
| 18 | | hear you on this corner, then we'll all be able to. |
| 19 | | Okay? |
| 20 | | Now, the date of March the 13th -- Well, let me |
| 21 | | just ask it this way. Was there an occasion when you |
| 22 | | were somewhere where Mr. Burton lived over in the Lanett |
| 23 | | area? |
| 24 | A. | Yes. |
| 25 | Q. | And how did you get there? |

72

| | | |
|---|---|---|
| 1 | A. | Through Mr. McCullough. |
| 2 | Q. | How did he get there? |
| 3 | A. | In his car, his vehicle. |
| 4 | Q. | In his car? |
| 5 | A. | Yeah. |
| 6 | Q. | Okay.  And, when you and Mr. McCullough went over to the |
| 7 | | area where Mr. Burton lived, do you recall about what |
| 8 | | time of the day or night that would have been? |
| 9 | A. | As I recall, it was in the evening of the day.  It wasn't |
| 10 | | quite dark yet, but it was in the evening time of the |
| 11 | | day. |
| 12 | Q. | Okay.  And did you know Mr. Burton? |
| 13 | A. | No, sir. |
| 14 | Q. | When you and Mr. McCullough got over to that area, tell |
| 15 | | me where you parked at and where you went to. |
| 16 | A. | We parked in a wooded area and went to his house. |
| 17 | Q. | How did you get to the house? |
| 18 | A. | Like I say, we parked in a wooded area.  We walked. |
| 19 | Q. | You walked from there? |
| 20 | A. | Yeah. |
| 21 | Q. | Okay.  Do you have a judgment as to about how far you had |
| 22 | | walked from where you had parked? |
| 23 | A. | I don't quite have a judgment how far we walked, but I |
| 24 | | know it was in a wooded area from his house.  We walked |
| 25 | | to his house. |

73

1   Q.   Okay.  All right.  When you got to his house, tell me

2        what you and Mr. -- was Mr. McCullough with you?

3   A.   Yes.

4   Q.   Tell me what you and Mr. McCullough did.

5   A.   First, like I say, we went around the house and made sure

6        no one was home.  Made sure no one was home.

7   Q.   And how did you go about doing that?

8   A.   We looked in the window and knocked on the door a few

9        times to see would anyone come to the door.

10  Q.   Did anyone ever come to the door?

11  A.   No, no one was home.

12  Q.   Okay.  What happened then?

13  A.   So, after we knew no one was home, I kicked the back door

14       in -- kicked the door in and we went in.

15  Q.   Who went in?

16  A.   Both of us went in.

17  Q.   You and Mr. McCullough?

18  A.   Yes, both of us.

19  Q.   Okay.  What happened then?

20  A.   You know, I took a .22 Ruger rifle that was standing on

21       the corner of the wall.  I took that and a couple of

22       pocketknives.  And Mr. McCullough went to another portion

23       of the house.  And, like I said, it was that quick, he

24       came out and he had two pistols, two pistols.  And then

25       we just left.

74

1   Q.   Let me ask you this.  The rifle that you mentioned, you

2        said it was in a room in a corner?

3   A.   Yes, it was standing in the corner on the wall in the

4        living room looked like, the front room of the house.

5   Q.   Okay.  I was going to ask.  When you came in the door, do

6        you recall which room that rifle would have been in?

7   A.   Like I say, you know, by the looks of the room, it looked

8        like the living room of the house.

9   Q.   Would that have been the room that you came into through

10       the door or another room?

11   A.   No, not exactly.  I don't recall.  But, like I said, like

12       I run around the house.  And it was standing in the

13       corner of the room of the house.  And, by the looks of

14       the stuff in the room, it looked like the living area of

15       the house.

16   Q.   Okay.  You said you got that and a couple of

17       pocketknives?

18   A.   Yes.

19   Q.   Do you recall where the knives were?

20   A.   Like I said, they was really like right there in -- like

21       in the room like on the table and on the wall, floors, on

22       the top of the -- what they call the dresser like, you

23       know.

24   Q.   Okay.

25   A.   Like I said, he looked like he was a real hunting man,

76

1     time.  You know, it was really quick, go in and get it.

2     Like I say, nothing was in the house really but, you

3     know, rifles that we could -- like that I was really

4     finding.  Because we really just wanted to get in and get

5     out, you know.  So we took them and left.  Like I say, it

6     was probably like a span of like 15 or 20 minutes, you

7     know.

8  Q.   Okay.  Now, did you see other weapons there other than

9     the ones that you described as being taken?  The rifle

10    and the two pistols?

11  A.   Like I said, there was other weapons in the house.  But I

12    really just -- the only one I took was the rifle-like

13    shotgun in the house.  But I hadn't really shot none.  I

14    didn't really want to be getting out -- and really, to

15    tell you the truth, that's really not what I was in there

16    for.

17  Q.   Okay.

18  A.   But I did go in there.  Like I say, shotguns, I didn't

19    want to get them.  I just took the rifle because it was

20    right there by the wall.  I just got that.

21  Q.   Okay.  Now, several days later, I guess about a week

22    later or so, were you and Mr. McCullough in a vehicle

23    when the police stopped you at the cemetery or near a

24    cemetery?

25  A.   Yes.

77

1   Q.   And was that the same vehicle that you described earlier
2        that was Mr. McCullough's?
3   A.   Yes.
4   Q.   Do you know where the pistols were that Mr. McCullough --
5        you said Mr. McCullough had taken out of Mr. Burton's
6        house?
7   A.   Like I say, they was in the trunk behind the back seat, I
8        guess.  Behind the back seat like in the trunk area.
9   Q.   Of that car?
10  A.   Of that car.
11  Q.   Okay.  Did you know where the rifle was?
12  A.   The rifle, I told the police where the rifle was.
13  Q.   Where did you tell the police the rifle was?
14  A.   At a house on Kroger block they call it.  Over by Kroger
15       in Lanett in a house over there.
16  Q.   Okay.
17  A.   They really confiscated a few things over there.  I
18       already gave statements on all of that.  I told them
19       where all of it was.
20  Q.   Okay.
21  A.   That's why I'm not going to trial.  I just --
22  Q.   Hold on just a second.
23  A.   That's really not why I'm not going to trial.  I just
24       took a sentence on mine.
25  Q.   Okay.

78

1   A.   I pled guilty to mine.

2   Q.   You've got 24 years on your sentence; is that right?

3   A.   Yes.

4   Q.   All right.  Mr. Norris, the defense may have some

5        questions for you.

6             THE COURT:  All right.  Mr. Morris or Mr. Carlton.

7                       CROSS-EXAMINATION

8   BY MR. MORRIS:

9   Q.   Mr. Norris, how long have you known Chris McCullough?

10  A.   I would say 15 or 16 years.

11  Q.   All right.  He's always been a good friend to you, hasn't

12       he?

13  A.   Yes, he has.

14  Q.   All right.  You don't have a job, do you?  You didn't

15       have a job when you got arrested, did you?

16  A.   At that point I did not.  I had recently.

17  Q.   You didn't have a place to stay either, did you?

18  A.   Not at that point.  I had moved from LaGrange.  I had

19       recently came out of a divorce from my wife, so I didn't.

20  Q.   Okay.  You was living in a vacant house, right?

21  A.   Yes.  It was -- Yes, they said it was vacant.  I was

22       there, though.

23  Q.   Okay.  And you told one of the police officers that there

24       was a rifle in that house, didn't you?

25  A.   Yes.

79

1   Q.   Okay.  Chris would give you -- If Chris would see you on

2        the road, he would pick you up and give you a lift at

3        times, wouldn't he?  Because you didn't have a car at the

4        time, did you?

5   A.   No, I didn't.

6   Q.   As a matter of fact, he let you drive his car, didn't he?

7        Yes or no, Mr. Norris?  Did he let you drive his car?

8   A.   Yes, sir, I drove his car.

9   Q.   Okay.  Mr. Norris, I want to show you what's marked

10       Exhibit 2.  Do you recognize that document?  That's your

11       plea offer, isn't it?

12   A.   Yes, that's my plea offer.

13   Q.   Okay.  Is that your signature at the bottom down there?

14   A.   Yes, that's my signature.

15   Q.   Okay.  Pleading guilty to 24 years, right?

16   A.   Yes.

17   Q.   And part of your plea bargain is to testify against Chris

18       McCullough, wasn't it?

19          MR. LISENBY:  I object to that.  That's not what's

20       on the plea agreement.  If he will read what's on the

21       plea agreement, I will accept that.

22          THE COURT:  All right.

23   Q.   Read what it says on the plea agreement.

24   A.   All the way through?

25   Q.   No, right down here.

80

```
 1   A.   "Defendant agrees to testify truthfully in all cases
 2        involving co-defendants."
 3   Q.   All right.  On October the 17th, you pled guilty?
 4   A.   Yes, I pled guilty after --
 5   Q.   After?
 6   A.   Like I say, I was --
 7   Q.   You was guilty?
 8   A.   Yes, I was guilty.  I was guilty.  I told them I was
 9        guilty.
10   Q.   I will show you what's Defendant's Exhibit 1.  Do you
11        recognize that document?
12             MR. LISENBY:  May I see that?
13             THE COURT:  You need to let them see that first.
14   A.   Plea of not guilty.
15   Q.   Is that your signature down at the bottom, Mr. Norris?
16   A.   Yeah.
17   Q.   That's the arraignment waiver right there.  Do you
18        recognize it?  The first time you was in court on the
19        23rd of September, do you remember waiving or signing
20        that waiver, that arraignment?  You remember the
21        arraignment, right?
22   A.   Yes, I remember the arraignment.
23   Q.   Okay.  Is that your signature down at the bottom down
24        there?
25   A.   Yes.  Like I said, I was told by my lawyer to sign it.
```

81

1   Q.   Is that your signature right there?

2   A.   Yes.

3   Q.   What does that say right there?

4   A.   Not guilty.

5   Q.   That's a lie, isn't it, Mr. Norris?  You lied in court?

6        MR. LISENBY:  Your Honor, I'm going to object to

7   that.  He knows that that is a standard process that

8   occurs every time at arraignment.

9        MR. MORRIS:  That's a signed statement.

10       THE COURT:  Hold on.

11       MR. LISENBY:  That's a legal document that's

12  required to be filed.

13       MR. MORRIS:  That's a signed statement by Mr. Norris

14  saying he's not guilty.

15       THE COURT:  I'm going to sustain the objection.

16  Q.   Mr. Norris, you kicked Mr. Burton's back door down,

17       didn't you?

18  A.   Yes, sir.

19  Q.   You stole that .22 rifle, didn't you?

20  A.   Yes, sir.

21  Q.   You stole those pocketknives, didn't you?

22  A.   Yes, sir.

23  Q.   You stole those pistols, didn't you?

24  A.   No, no, no.

25  Q.   You did it by yourself?

82

1   A.   Yes, sir.

2   Q.   You used his car that day, didn't you?

3   A.   No.

4   Q.   You was all by yourself?

5   A.   No, I wasn't.

6   Q.   That rifle ended up in your vacant house, didn't it?

7   A.   Yes.

8   Q.   And you admitted it, right?

9   A.   Yes.

10  Q.   Okay.  Thank you.

11          THE COURT:  All right.  Anything further?

12          MR. LISENBY:  I don't have any other questions for

13  Mr. Norris.  May he be excused?

14          THE COURT:  Yes.  May this witness be excused?

15          MR. MORRIS:  Yes, sir.

16          THE COURT:  All right.  Thank you, Mr. Norris.  You

17  can step down.

18          All right.  Next witness, please.

19          MS. NEWSOME:  Your Honor, the State calls Lincoln

20  Whaley.

21          THE COURT:  Lincoln Whaley.  Mr. Whaley, come on up,

22  please, sir.  If you would stand there, raise your right

23  hand, face the court reporter and be sworn in.

24                          (WITNESS SWORN)

25          THE COURT:  All right.  If you would have a seat.

83

1        If you would speak loudly, please.  We have machines and

2        such going on around here.  We need as much volume out of

3        you as we can get.

4            THE WITNESS:  Yes, sir.

5                    LINCOLN SCOTT WHALEY,

6        a witness, after having first been duly sworn to

7   speak the truth, the whole truth, and nothing but the

8   truth, took the stand and testified as follows:

9                    DIRECT EXAMINATION

10  BY MS. NEWSOME:

11  Q.   Please tell us your full name.

12  A.   I'm Lincoln Scott Whaley.  Work at Lanett P.D.

13  Q.   What is your position at the Lanett Police Department?

14  A.   Detective.

15  Q.   How long have you been employed there?

16  A.   Six and a half years.

17  Q.   Have you always been employed there as a detective?

18  A.   No, ma'am.  I have been in the detective division for two

19       years now.

20  Q.   What are your duties as a detective?

21  A.   Investigate felony crimes that are reported to our

22       department.

23  Q.   Have you had occasion to investigate a case against

24       Christopher McCullough?

25  A.   Yes, ma'am.

84

1  Q.  Do you recognize Christopher McCullough as being here
2      today?
3  A.  Yes, ma'am.
4  Q.  Where is he?
5  A.  He's right there in the light blue shirt.
6  Q.  Are you also familiar with the co-defendant of his, Billy
7      Norris?
8  A.  Yes, I am.
9  Q.  Did you as part of your investigation of this case, did
10     you recover a .22 rifle that was stolen from John
11     Burton's residence?
12 A.  Yes, I did.
13 Q.  Where did you find that .22 rifle?
14 A.  It was located at a residence at 1108 East First Avenue.
15 Q.  How did you know that the rifle was located at that
16     particular residence?
17 A.  Billy Norris gave us the directions to the residence, and
18     we sent someone there to try to find it.
19 Q.  After you took possession of the .22 rifle, what did you
20     do with it?
21 A.  It was -- I give it to Lieutenant Carter, and it was
22     returned to the owner.
23 Q.  Thank you.  That's all the questions I have.  The defense
24     attorney may have some questions for you.
25          THE COURT:  All right.  Mr. Morris.

85

1          MR. MORRIS:  No questions, Judge.

2          THE COURT:  All right.  May this officer be

3     excused?

4          MS. NEWSOME:  Yes, sir.

5          MR. MORRIS:  Yes.

6          THE COURT:  All right.  You're excused.  Thank you

7     very much.

8          THE WITNESS:  Thank you, Judge.

9          THE COURT:  All right.  Next witness, please.

10         MR. LISENBY:  May we approach just a second?

11         THE COURT:  Certainly.

12    (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

13         MR. LISENBY:  We are down to the statement of Mr.

14    McCullough.  I just wanted you to be aware of where we

15    were headed.

16         (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

17         THE COURT:  All right.  Who do we have next?

18         MS. NEWSOME:  State calls Jeff Blackstone.

19         THE COURT:  Jeff Blackstone.  Come on up, Mr.

20    Blackstone.  Stand there, face the court reporter, raise

21    your right hand and be sworn.

22                    (WITNESS SWORN)

23         THE COURT:  All right.  Mr. Blackstone, I'm going to

24    ask that you speak loudly enough so everybody can hear

25    you.

86

1          THE WITNESS:  Yes, sir.

2                      JEFF BLACKSTONE,

3          a witness, after having first been duly sworn to

4      speak the truth, the whole truth, and nothing but the

5      truth, took the stand and testified as follows:

6                      DIRECT EXAMINATION

7   BY MS. NEWSOME:

8   Q.    Investigator Blackstone, would you please tell us your

9          full name?

10  A.    Jeff Blackstone.

11  Q.    Where are you currently employed?

12  A.    Chambers County Sheriff's Department.

13  Q.    And what is your position there?

14  A.    Investigator.

15  Q.    How long have you been employed at the Chambers County

16         Sheriff's Office as an investigator?

17  A.    Approximately four years.

18  Q.    And what is the total length of your employment with the

19         sheriff's office?

20  A.    Approximately nine years.

21  Q.    What are your duties as an investigator?

22  A.    I investigate burglaries, rapes, robberies, stuff like

23         that.

24  Q.    Just investigation of different crimes?

25  A.    General investigation.

87

1  Q.  Do you recognize Christopher McCullough?

2  A.  Yes, I do.

3  Q.  Do you see him in the courtroom today?

4  A.  Yes, I do.

5  Q.  Please point him out.

6  A.  That's Christopher McCullough on the right of Mr.

7      Carlton.

8  Q.  Are you also familiar with the co-defendant of his, Billy

9      Norris?

10 A.  Yes, ma'am.

11 Q.  Did you investigate a case against him, also?

12 A.  Yes, ma'am.

13 Q.  During your investigation of Christopher McCullough, did

14     you have occasion to inform him of his constitutional

15     rights?

16 A.  Yes, I did.

17 Q.  What is your procedure for informing a person under

18     investigation of their constitutional rights?

19 A.  Any time that, you know, we determine that a suspect is

20     in a crime, we'll advise them of the Miranda rights.

21 Q.  Do you read their rights to them?

22 A.  I read them, have him read them back, and initial.

23 Q.  Do you recognize this document?

24 A.  Yes, ma'am.

25          THE COURT:  What are we referring to?

88

```
 1              MS. NEWSOME:   State's 2, Judge.

 2   Q.   Do you recognize that document?

 3   A.   Yes, ma'am.

 4   Q.   What is that document?

 5   A.   It's a copy of the waiver of rights that I read to them.

 6        Actually, the waiver from the Chambers County Sheriff's

 7        Department that I read to a suspect.

 8   Q.   Are those the rights that you read to Christopher

 9        McCullough?

10   A.   Yes, ma'am.

11   Q.   Where were you when you informed him of those rights?

12   A.   Lanett Police Department.

13   Q.   Do you recall what time it was when you did this?

14   A.   2:45 Central time.

15   Q.   Was anyone else present when you informed the defendant

16        of his rights?

17   A.   Yes, ma'am.

18   Q.   Who was present?

19   A.   Kenny Vines with Lafayette P.D., Steve Smith with the

20        Lafayette P.D., Mike Looser with Chambers County

21        Sheriff's Department.  Also, Lincoln Whaley was there,

22        but I didn't write it on here.

23   Q.   Would you please read the rights that are included on

24        that form?

25   A.   Yes, ma'am.  Before I questioned Mr. McCullough, I read
```

1   him these rights.  "You have the right to remain silent.
2   Anything you say can and will be used against you in a
3   court of law.  You have a right to a lawyer and have him
4   present with you while you're being questioned.  If you
5   cannot afford to hire a lawyer, one will be appointed to
6   represent you before any questions if you wish.  You can
7   decide at any time to exercise these rights and not
8   answer any questions."
9        I also read him the waiver of rights.  "I have read
10   this statement of my rights or had them read to me, and I
11   understand what my rights are.  I'm willing to waive
12   these rights and make a statement.  No promises or
13   threats have been made to me, or no pressure or coercion
14   of any kind has been used against me."  And I had him to
15   go over everything I read and initial.
16  Q.  Did the defendant indicate that he understood what his
17      rights were?
18  A.  Yes, ma'am.
19  Q.  How did he indicate that?
20  A.  He initialed every -- I had him read it back, one through
21      five, he initialed that.  And then he signed the waiver
22      of rights as "Chris McCullough."
23  Q.  So he agreed to waive his rights and speak to you?
24  A.  Make a statement, yes, ma'am.
25  Q.  Did anyone in your presence or you yourself threaten,

90

1     coerce, or intimidate Mr. McCullough into making him sign

2     that statement?

3  A.   No, ma'am.

4  Q.   Or sign his waiver of rights?

5  A.   No, ma'am.

6         MS. NEWSOME:  Your Honor, the State asks that

7     State's Exhibit Number 2 be admitted into evidence.

8         THE COURT:  All right.  Any objections?

9         MR. MORRIS:  None.

10        THE COURT:  All right.  State's Exhibit Number 2

11    will be admitted.

12    (STATE'S EXHIBIT NO. 2 WAS ADMITTED INTO EVIDENCE)

13        MS. NEWSOME:  That's all the questions I have.

14        THE COURT:  Okay.  Mr. Morris?

15        MR. MORRIS:  Judge, I have no questions.

16        THE COURT:  All right.  Investigator Blackstone will

17    be excused.

18        MR. LISENBY:  State calls Richard Carter.

19        THE COURT:  Okay.  Richard Carter.  All right.  Come

20    forward, please, sir.  Raise your right hand and be

21    sworn.

22              (WITNESS SWORN)

23        THE COURT:  All right.  Thank you.  If you would

24    have a seat.  Speak loudly enough so everybody can hear

25    you.

91

1           THE WITNESS:  Yes, sir.

2                        RICHARD CARTER,

3           a witness, after having first been duly sworn to

4       speak the truth, the whole truth, and nothing but the

5       truth, took the stand and testified as follows:

6                        DIRECT EXAMINATION

7   BY MR. LISENBY:

8   Q.   Would you tell me your name, please, sir?

9   A.   Richard Carter.

10  Q.   Where are you employed?

11  A.   With the Lanett Police Department.

12  Q.   What is your present position with the Lanett Police

13       Department?

14  A.   I'm a lieutenant there in charge of investigations.

15  Q.   How long have you been with the Lanett Police Department?

16  A.   I've been with Lanett 11 years and three or four months.

17  Q.   How long have you been involved in investigations?

18  A.   Approximately six years and six months.

19  Q.   You said you are the lieutenant in charge of

20       investigations?

21  A.   Yes, sir.

22  Q.   All right.  Lieutenant Carter, I want to direct your

23       attention back to March the 13th of 2002 and ask if you

24       had the occasion to go to a residence identified as

25       belonging to John Burton?

92

1    A.    Yes, I did.

2    Q.    Can you tell me where that was, please?

3    A.    Residence on Country Club Road inside the jurisdiction of

4          Lanett.

5    Q.    Is that located here in Chambers County, Alabama?

6    A.    Yes, it is.

7    Q.    When you went to this location, do you recall what time

8          of the day or night it was that you went?

9    A.    It was at night, approximately 9 o'clock.

10   Q.    When you got to this residence, tell me what, if

11         anything, you observed with regard to any damage to the

12         house itself?

13   A.    I arrived and noted the back glass door had been kicked

14         in -- appeared to have been kicked in, glass busted.  On

15         the front door, I noticed a boot print where someone had

16         attempted to kick that door in but had not gained entry

17         there.  Looking through the house, I noticed things in

18         disarray.  One of the bedrooms looked like some drawers

19         had been pulled open.

20   Q.    While you were there, did you take some photographs?

21   A.    Yes, I did.

22         (STATE'S EXHIBIT NOS. 3 THROUGH 11, INCLUSIVE, WERE

23         MARKED FOR IDENTIFICATION)

24   Q.    Lieutenant, I would like you to take a look at these

25         photographs that I have marked as Exhibits 3 through 7

93

1    and Number 11, and tell me if you recognize what those

2    are, please?

3  A.  These are pictures that I took from the residence of Mr.

4    Burton.

5  Q.  And do those photographs fairly and accurately depict or

6    show the areas of the residence as you recall them on

7    that evening?

8  A.  Yes, they do.

9      MR. LISENBY:  We would offer Exhibits 3 through 7

10   and Number 11.

11      THE COURT:  All right.  Any objections?

12      MR. MORRIS:  None.

13      THE COURT:  State's Exhibits 3 through 7 and 11 will

14   be admitted.

15   (STATE'S EXHIBIT NOS. 3 THROUGH 7, INCLUSIVE, AND

16   NUMBER 11 WERE ADMITTED INTO EVIDENCE)

17      THE COURT:  Are you going to publish?

18      MS. NEWSOME:  Yes, sir.  I'm going to ask him to

19   describe some of them for me.

20  Q.  Lieutenant, I'm going to kind of stand here and hold

21   these, and you don't have to write on it but just kind of

22   point out if you could.  This is Exhibit Number 3.  Can

23   you tell the members of the jury what is shown in this

24   photograph?

25  A.  This is a picture of the back glass door that was forced

94

1    open from the inside of the residence looking to the

2    outside.  It was on the -- I don't know if it was a porch

3    that had been enclosed at one time, but this is kind of a

4    pretty big room and the damage to the door.

5    Q.   Number 4?

6    A.   This is a view of the same door looking from the outside

7         toward the inside into that room.  The next door, the

8         kitchen area.  Again, the damage done to the door.

9    Q.   Number 5?

10   A.   That is a picture of the door with some type of shoe

11        print or boot print on it in some mud.

12   Q.   Number 6?

13   A.   That is a picture of the same thing at a different angle

14        where the mud was on the window.

15   Q.   Number 7?

16   A.   It's a picture of one of the bedrooms in the house, the

17        dresser.  It's where the jar of change was that Mr.

18        Burton had reported.

19   Q.   Number 11?

20   A.   It's a picture of the front door with the muddy boot

21        print.  It appeared that someone had tried to kick in the

22        front door but was unsuccessful.

23   Q.   All right.  Now, Lieutenant, I want to direct your

24        attention now to March the 19th of 2002 and ask if you

25        had the occasion to respond to an area where a vehicle

95

| | | |
|---|---|---|
| 1 | | had been stopped by Lieutenant Robby Bettis in your |
| 2 | | department? |
| 3 | A. | Yes, I did. |
| 4 | Q. | And, when you got to this area, can you tell me what you |
| 5 | | observed about that? |
| 6 | A. | When I arrived, I noticed a silver Mustang in the back |
| 7 | | part of the cemetery.  Lieutenant Bettis was there, |
| 8 | | Sergeant Rick Brown was there, and I noticed the two |
| 9 | | subjects laying on the ground out beside the car. |
| 10 | Q. | What two subjects was that? |
| 11 | A. | Billy Ralph Norris and Chris McCullough. |
| 12 | Q. | Now, while you were there, were you involved in looking |
| 13 | | in this vehicle and observing some pistols that were in |
| 14 | | there? |
| 15 | A. | Yes, sir. |
| 16 | Q. | Did you recognize those pistols or were you able to |
| 17 | | determine whether those pistols were involved in the |
| 18 | | Burton burglary that you had worked about a week before? |
| 19 | A. | Yes, sir. |
| 20 | Q. | If you can remember, where were these pistols located at |
| 21 | | inside the vehicle? |
| 22 | A. | They were in a compartment behind the back seat.  Pull |
| 23 | | the back seat down, and they were stuck in right there. |
| 24 | Q. | Okay.  Now, you said this was a Mustang? |
| 25 | A. | Yes, sir. |

96

1   Q.   All right, sir.  We're talking about bucket seats up

2        front?

3   A.   Yes, sir.

4   Q.   And then a bench back seat?

5   A.   That's correct.

6   Q.   You said it was behind the back seat?

7   A.   Yes, sir.

8   Q.   Was that an area that would go into a trunk or not?

9   A.   Yes, sir, I believe it would.  But there was some type

10       of -- I don't know if it was a speaker or something was

11       obstructing it to go from one compartment to the other.

12  Q.   Okay.  And did you actually recover these pistols?

13  A.   Yes, sir.

14  Q.   What did you later do with those pistols?

15  A.   I returned them back to Mr. Burton.

16  Q.   While you were there at the scene, did you have the

17       occasion to be involved in the videotaping of a location

18       of these pistols?

19  A.   Yes, sir.  I directed one of the officers there to

20       videotape it.

21  Q.   Let me show you what's marked as State's Exhibit Number 8

22       and ask if you recognize that?

23  A.   Yes, sir.

24  Q.   What is that, please?

25  A.   This is one of the eight millimeter tapes that we use in

97

1     our patrol cars, the videotaping system.  And this was

2     one that was used in the videotaping of the weapons.

3  Q.  Can you take the video camera that's in the patrol car

4     out to someplace else?  Is that what you're talking

5     about?

6  A.  Yes, sir.

7  Q.  Okay.  And this is that videotape?

8  A.  Yes, sir.

9  Q.  Have you had an opportunity to review that tape?

10  A.  Yes, sir.

11  Q.  Does it fairly and accurately show the locations where

12     the pistols were located at inside this vehicle?

13  A.  Yes.

14          MR. LISENBY:  We would offer Number 8, Your Honor.

15          THE COURT:  All right.  Any objections?

16          MR. MORRIS:  No.

17          THE COURT:  All right.  What's the exhibit number on

18     it?

19          MR. LISENBY:  State's 8.

20          THE COURT:  Okay.  State's Exhibit Number 8 will be

21     admitted.

22      (STATE'S EXHIBIT NO. 8 WAS ADMITTED INTO EVIDENCE)

23          MR. LISENBY:  May we show that to the jury?

24          THE COURT:  Yes.

25  Q.  And were those the pistols that you later returned to Mr.

98

1       Burton as having come from this burglary?

2  A.   Yes.

3  Q.   Now, also during the course of this investigation, did

4       you have the occasion to receive a rifle from Detective

5       Whaley that was also involved in Mr. Burton's burglary?

6  A.   Yes, I did.

7  Q.   Did you also return that to Mr. Burton?

8  A.   Yes, sir.

9  Q.   Now, I want to direct your attention to March the 19th of

10      2002 and ask if you had the occasion in connection with

11      this case to speak with the defendant, Christopher

12      McCullough?

13  A.   Yes, I did.

14  Q.   Where was that at, please?

15  A.   At the Lanett Police Department.

16  Q.   And, when you spoke to him, did you have knowledge that

17      Investigator Blackstone with the sheriff's department had

18      already advised him of his constitutional rights?

19  A.   Yes, sir.

20  Q.   When you went to speak with Mr. McCullough, was there

21      anyone else present with you?

22  A.   Investigator Blackstone was at first.  And Detective

23      Whaley, I believe.

24  Q.   Detective Whaley with your office?

25  A.   Yes, sir.

99

1    Q.    Okay.  When you went to speak with Mr. McCullough, did

2          you or anyone in your presence threaten or coerce him?

3    A.    No, sir.

4    Q.    Did you or anyone in your presence offer him anything or

5          offer him any hope of reward?

6    A.    No, sir.

7    Q.    Did you or anyone in your presence tell him it would be

8          better to make a statement than to not make a statement?

9    A.    No, sir.

10   Q.    Did you then talk to him about Mr. Burton's burglary?

11   A.    Yes, I did.

12   Q.    Did he give you a statement with regard to that?

13   A.    Yes, he did.

14   Q.    Did you take that down in some manner?

15   A.    Yes, sir, I did.

16   Q.    How was that done?

17   A.    In written form.

18   Q.    Now, when you're talking about in written form, was this

19         in a question and answer type situation?  Or how did you

20         go about taking the statement?

21   A.    He told us about what had happened.  After going over it,

22         and I wrote it down in a narrative form.

23   Q.    And after that did you have the occasion to ask him if

24         that was, in fact, what his statement was?

25   A.    Yes, I did.

100

1    Q.    Did you give him an opportunity to read over the

2          statement?

3    A.    Yes, I did.

4    Q.    Did he read over the statement or make any changes or

5          corrections?

6    A.    He read over the statement, but he didn't make any

7          changes.

8    Q.    Did he sign the statement?

9    A.    No, he did not.

10   Q.    Let me show you what is marked as State's Exhibit Number

11         10.  Would you take just a moment and tell me if you

12         recognize that being the statement that you took from Mr.

13         McCullough with regard to Mr. Burton's burglary?

14   A.    I'm sorry.  Repeat your question.

15   Q.    Yes, sir.  Can you tell me if that's the statement that

16         you took from Mr. McCullough with regard to Mr. Burton's

17         burglary?

18   A.    Yes, sir, it's a copy.

19   Q.    It's a copy?  All right.  If you would tell -- I'm

20         sorry.  Do you see any changes, marks, or alterations on

21         that other than the exhibit sticker on there with regard

22         to Mr. Burton's burglary?

23   A.    Oh, no, sir.

24   Q.    All right.

25              MR. LISENBY:  At this time we would offer State's

101

1      Exhibit Number 10.

2          THE COURT:  Any objections?  Any objections to

3      State's Exhibit Number 10?

4          MR. MORRIS:  None.

5          THE COURT:  State's Exhibit Number 10 will be

6      admitted.

7      (STATE'S EXHIBIT NO. 10 WAS ADMITTED INTO EVIDENCE)

8  Q.  If you would, tell us what Mr. McCullough told you on

9      that occasion.

10 A.  "Me and Billy parked about three miles from the house and

11     walked through the woods to the back of the house.  We

12     went to the back door.  Then Billy went around to the

13     front.  I followed him.  He tried to kick the door in,

14     but the lock was too strong.  Then we went back to the

15     back door, and Billy kicked it open.  We went in and

16     searched the house, but wasn't nothing there except for

17     the rifles and two pistols.  The only thing I took was

18     the two pistols.  Billy took a rifle.  It was a .22

19     Ruger, a bunch of pocketknives, and a jar of change.  We

20     were in the house about five minutes.  It was evening

21     time when we went in.  It was before dark.  After we

22     left, we went to my house and put the guns there."

23 Q.  Okay.  And there's a part on there about him not signing

24     the statement; is that right?

25 A.  That's right.

102

1   Q.   What did you write there?

2   A.   "Mr. McCullough read the statement and advised it was

3        true and correct but would not sign it."  And then my

4        signature.

5             MR. LISENBY:  May we publish the photographs to the

6        jury, Your Honor?

7             THE COURT:  Yes.  These are State's Exhibits which

8        ones, Mr. Lisenby?

9             MR. LISENBY:  Those would be 3 through 7 and 11.

10            THE COURT:  All right.

11            MR. LISENBY:  I believe that's all the questions I

12       have for Lieutenant Carter.  The defense may have some

13       questions.

14            THE COURT:  All right.  Mr. Morris.

15                         CROSS-EXAMINATION

16  BY MR. MORRIS:

17  Q.   Mr. Carter, you went to the scene where Mr. McCullough

18       and Billy Norris were arrested, right?

19  A.   Yes, sir.

20  Q.   And how long after they had been arrested did you arrive

21       at the scene?

22  A.   I had gotten to the scene approximately 15 to 20 minutes

23       after the stop.

24  Q.   Okay.  You did the videotaping?

25  A.   No, sir.

103

```
 1   Q.   The videotape we were just shown, who took that
 2        videotape?
 3   A.   I believe it was Officer Steven Wood.
 4   Q.   Okay.  But you were there while the videotaping was going
 5        on, right?
 6   A.   Yes, sir.
 7   Q.   Officer Carter, why did you videotape that?
 8   A.   We wanted to show the location of the weapons before we
 9        started handling them after we found them.
10   Q.   You wanted to show the specific locations of the weapon,
11        right?
12   A.   Yes, sir.
13   Q.   So there wouldn't be no doubt in these jurors' minds
14        exactly where these weapons were?
15   A.   That's correct.
16   Q.   Because a picture -- Well, it's worth a thousand words,
17        isn't it?  I mean, it's better than secondhand somebody
18        telling you?  You see a picture, and you really know
19        exactly what happened, right?
20   A.   Yes, sir.
21   Q.   Mr. Carter, Mr. McCullough signed his waiver of rights,
22        right?
23   A.   Yes, sir.
24   Q.   He didn't sign that statement, did he?
25   A.   No, sir.
```

104

1  Q.   As a matter of fact, that statement is in your

2       handwriting, isn't it?

3  A.   It is.

4  Q.   Why didn't you just take a pencil and pen and hand it

5       to Mr. McCullough?  He's got a 12th grade education.  He

6       can read and write.  Why didn't you just let him make his

7       own statement?

8  A.   It's always been my habit when I'm taking a statement

9       from somebody once we talk about the facts, and I put it

10      down.

11 Q.   Did he initial -- put his initials anywhere on that

12      statement that you claim he made?

13 A.   No, sir.

14 Q.   Did he ever adopt -- did he ever adopt that statement

15      officially by any marks or anything?

16 A.   No, sir, not any marks.

17 Q.   Did you tape his conversation with you by audiotape while

18      you were interviewing him?

19 A.   No, sir.

20 Q.   Why not?

21 A.   It's not my procedure.

22 Q.   Not a proper procedure.  You're trying to throw a man in

23      prison, and you videotape the alleged crime scene and you

24      won't videotape an alleged confession that a man won't

25      sign?

105

1        MR. LISENBY:  I object to the form of the question.

2        THE COURT:  Sustained.

3   Q.  Mr. Carter, when you were interviewing Mr. McCullough,

4        you had a video camera available, didn't you?  If you

5        wanted to, you had a video camera available?

6   A.  Yes, sir.

7   Q.  And this jury could see exactly what happened, because

8        that video camera would be viewing Mr. McCullough and you

9        at the same time asking questions?

10       MR. LISENBY:  May we approach just a moment?

11       THE COURT:  Yes.

12   (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

13       MR. LISENBY:  I believe Mr. Morris has now opened

14       the door with regard to the remainder of that statement.

15       Because, in fact, while they were interviewing him with

16       regard to this particular burglary, they were

17       interviewing him with regard to all of the burglaries

18       that were involved.

19       MR. MORRIS:  There's two separate statements.

20       MR. LISENBY:  No, there's not.  There's one

21       statement about the Burton/Gragg burglary.

22       THE COURT:  Don't forget he took the one that you

23       may be looking at, was only a paragraph that he Xeroxed.

24       Another thing, too, sentencing is not a matter for the

25       jury.  Sentencing is a matter for the judge.

106

1          I'm going to overrule your objection at this point.

2     Okay?  Don't go into that any further, though.  Because

3     if you refer any further to that statement past the

4     extent of that part that the D.A. has provided for you,

5     then I'm going to let the whole statement go in.

6          MR. MORRIS:  Okay.  I just want to show that they

7     videotaped this, this, and this, but they didn't

8     videotape his statement.

9          THE COURT:  Well, when you talk about that, they

10    were able to see everything that went on and that gets

11    into a lot of other conversations they had with him.

12         MR. LISENBY:  Which is exactly the reason we asked

13    them not to videotape these things, because that's the

14    reason.  Is that you can't do that in front of the jury,

15    you know.  If nothing else, Your Honor, I would like to

16    at least be able to ask Lieutenant Carter something with

17    regard to that.  And, you know, if he was talking to him

18    about other matters, that would be the videotape, too.  I

19    think I ought to be able to have at least some response

20    in kind to that.

21         THE COURT:  Well, how about this, Bill?  How about

22    if the question would be "Did y'all discover other things

23    that aren't relevant to this case?"  Just to that extent?

24         MR. LISENBY:  Yes, sir.

25         THE COURT:  Okay.  I'll let you do that.

107

1          MR. LISENBY:  I will be glad to lead him to it.

2          THE COURT:  Don't go into that any further, though.

3          MR. MORRIS:  I can't mention the videotape or

4     audiotape?

5          THE COURT:  I'll let you mention it.  But when you

6     start challenging it, then the problem is you bring in

7     the rest of the conversation.  So I guess you objected to

8     the question and asked permission to mention what else

9     went on.  I then denied that request, allowing you to ask

10    a limited amount about the procedure that went on at that

11    time or interrogation procedures.

12         MR. LISENBY:  "At that time you discussed other

13    matters other than this particular burglary involving Mr.

14    McCullough"?

15         THE COURT:  "Did you discuss other matters other

16    than this one."

17         MR. LISENBY:  Oh, okay.  Okay.

18         THE COURT:  All right.

19         (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

20    Q.   Mr. Carter, you had interviewed Billy Norris basically

21         30 to 40 minutes before you interviewed Mr. McCullough,

22         right?

23    A.   Yes, sir, I think so.

24    Q.   It was shortly right after that, right?

25    A.   Yes, sir.

108

1   Q.   And basically during this whole interview with Mr.

2        McCullough, you were telling Mr. McCullough what Billy

3        Norris said.  You were saying "That's what Billy Norris

4        said; that's what Billy Norris said."  Isn't that right,

5        Mr. Carter?  Isn't that right?

6   A.   No, sir.

7   Q.   Mr. McCullough said, "I want my attorney; I'm not signing

8        nothing."  Isn't that right, Mr. Carter?

9   A.   No, sir.

10  Q.   And he didn't sign it, did he, Mr. Carter?

11  A.   He didn't sign it.

12  Q.   Mr. Carter, you investigated the scene where John

13       Burton's house got broken into, right?

14  A.   Yes, sir.

15  Q.   Did you find Mr. McCullough's fingerprints inside that

16       house?

17  A.   No, sir.

18  Q.   Did you do any footprint analysis on the crime scene at

19       Mr. Burton's house?

20  A.   No, sir.

21  Q.   Now, there has been mention of a footprint on the door,

22       front door, the back door.  Do you recall that?

23  A.   Yes, sir.

24  Q.   Did you do any kind of analysis to see whose footprint

25       that was?

109

1  A.   No, sir.

2          MR. MORRIS:  Nothing further.

3          THE COURT:  All right.  Thank you.  Anything further

4      for this witness?

5          MR. LISENBY:  Just briefly, Your Honor.

6                    REDIRECT EXAMINATION

7  BY MR. LISENBY:

8  Q.   Lieutenant Carter, when you were speaking with Mr.

9      McCullough on this occasion that we were talking about,

10     did you discuss other matters?  Other matters with him,

11     also?

12 A.   Yes.

13         MR. LISENBY:  That's all.

14         THE COURT:  All right.  Is there anything else for

15     this officer?  Is that all for this officer?

16         MR. MORRIS:  Sir?

17         THE COURT:  Is that all for this officer right here?

18         MR. MORRIS:  Yes, sir.

19         THE COURT:  All right.  May this officer be excused?

20         MR. MORRIS:  Yes, sir.

21         THE COURT:  All right.  Thank you very much.  You're

22     excused.  Next witness, Mr. Lisenby or Ms. Newsome.

23         MS. NEWSOME:  State rests.

24         THE COURT:  All right.  Ladies and gentlemen, I need

25     to speak with the attorneys for just a moment.  I'm going

110

1    to ask you to step back in the jury room for about five

2    minutes.  All right?  Thank you.

3                    (JURY NOT PRESENT)

4        THE COURT:  Do you have any motions?

5        MR. MORRIS:  Judge, at this time I move for motion

6    of acquittal based on the following separate grounds that

7    the State of Alabama has totally failed to prove a prima

8    facie case against the defendant.  The State of Alabama

9    has failed to prove beyond a reasonable doubt and to a

10   moral certainty the charge of burglary against

11   Christopher McCullough.  The State of Alabama has failed

12   to prove beyond a reasonable doubt and to a moral

13   certainty the charge of theft one against Chris

14   McCullough.  The State of Alabama has failed to prove

15   beyond a reasonable doubt and to a moral certainty the

16   charge of receiving stolen property two.  The State has

17   failed to prove all elements of the charge of burglary

18   against Mr. McCullough.  State has failed to prove all

19   elements of the charge of theft one against Mr.

20   McCullough, and the State has failed to prove all the

21   elements of receiving stolen property two against Mr.

22   McCullough.  And the State has failed to exclude every

23   reasonable hypothetisis except the guilt of the

24   defendant, and the defendant is entitled to be acquitted

25   at the discretion of the Court.

111

1      THE COURT:  All right.  Thank you very much.  I'm

2  going to deny your motions, Mr. Morris, as to the State's

3  failure to prove a prima facie case.  I think the

4  reasonable doubt issue will be in the minds of the

5  jurors.  Obviously, that will be up to them.  So I will

6  deny your motion at this time.  Are y'all ready to move

7  forward?

8      MR. MORRIS:  We need just a few minutes.

9      THE COURT:  I was going to ask, do you plan on

10  putting on any witnesses?

11      MR. MORRIS:  Our only witness will be our client.

12      THE COURT:  So you're going to determine whether

13  you're going to do that or not?  Because if not, we can

14  take care of some other matters before they come in.  All

15  right.  Why don't y'all take a five-minute break?  I'm

16  going to let the jury have about 10 minutes.  What I

17  intend to do if, in fact, Mr. McCullough wants to do

18  his -- wants to testify, then fine.  If not, I'm probably

19  going to get right on into closing and that sort of

20  thing.  So I'm going to give them a break right now.

21                    (RECESS)

22                (JURY NOT PRESENT)

23      THE COURT:  All right.  Back on the record.  Mr.

24  Morris, do you have a --

25      MR. MORRIS:  Judge, just for the Record, we have

112

1    discussed with Mr. McCullough the pros and cons of
2    testifying, and he wants to proceed to testify.
3        THE COURT:  Okay.  Is this against your advice?  Is
4    that what you're telling me?
5        MR. CARLTON:  No, sir.  We just want the Record to
6    reflect that he understands that he can be cross-examined
7    by the State if he testifies, and he would be waiving his
8    right to remain silent at that point.
9        THE COURT:  Mr. McCullough, I think you and I had a
10   discussion about your constitutional rights over at the
11   jail, didn't we?
12       THE DEFENDANT:  Yes, sir.
13       THE COURT:  Okay.  Do you remember me telling you
14   that if you entered a plea of guilty, if you decide to
15   take the stand you will be subjecting yourself to
16   cross-examination.  And you will in essence be waiving
17   any Fifth Amendment privileges that you would have
18   against self-incrimination?  You understand that?
19       THE DEFENDANT:  Yes.
20       THE COURT:  And you're telling us you want to
21   testify?
22       THE DEFENDANT:  Yes.
23       THE COURT:  And you understand the ups and downs of
24   it?
25       THE DEFENDANT:  Yes.

113

```
 1              THE COURT:  All right.  Thank you very much.
 2                          (JURY PRESENT)
 3              THE COURT:  All right.  Ladies and gentlemen, the
 4      State has rested its case, as you've heard.  Mr. Morris
 5      and Mr. Carlton, do you have any witnesses?
 6              MR. CARLTON:  Yes, sir, Your Honor, the defense
 7      calls Christopher McCullough.
 8              THE COURT:  Mr. McCullough, come on up.  Stand right
 9      here, raise your right hand, face Ms. Garner and be
10      sworn.
11                          (WITNESS SWORN)
12              THE COURT:  All right.  Speak loudly enough so that
13      everybody can hear you, Mr. McCullough.  Okay.  Mr.
14      Carlton.
15                    CHRISTOPHER MCCULLOUGH,
16         a witness, after having first been duly sworn to
17      speak the truth, the whole truth, and nothing but the
18      truth, took the stand and testified as follows:
19                        DIRECT EXAMINATION
20  BY MR. MORRIS:
21  Q.  Chris, would you state your name for the Record, please?
22  A.  Christopher Cornelius McCullough.
23  Q.  Where do you live, Chris?
24  A.  1517 North Sixth Avenue.
25  Q.  Where is that?
```

114

1   A.   Lanett, Alabama.

2   Q.   Are you currently employed?

3   A.   No.

4   Q.   Why is that?

5   A.   I was laid off.

6   Q.   You were laid off?

7   A.   From Carter Mills.

8   Q.   Laid off from Carter Mills.  Why is that?

9   A.   Sleeping in the bathroom.

10  Q.   Sleeping in the bathroom?

11  A.   Yes, sir.

12  Q.   While you were on the job?

13  A.   Yes, sir.

14  Q.   Okay.  But, prior to that point, you were gainfully

15       employed; is that right?

16  A.   Yes, unemployment check.

17  Q.   Are you currently drawing unemployment now?

18  A.   Yes.

19  Q.   Do you know a young man that testified earlier by the

20       name of Billy Norris?

21  A.   Yes.

22  Q.   How do you know him?

23  A.   We was raised up together.

24  Q.   How long do you think you've known him?

25  A.   Ever since the sixth grade.

115

1   Q.   Sixth grade.  You would say y'all are good friends?

2   A.   Yeah.  Well, almost best friends.

3   Q.   Okay.  What kind of -- At the time this investigation was

4        going on, what kind of lifestyle did Mr. Norris lead?

5   A.   He had a bad lifestyle.  He didn't --

6   Q.   Did he have a job?

7   A.   No job.  No house.  No nothing.

8   Q.   Did you help take care of him?

9   A.   Yes.

10  Q.   Did you let him borrow things of yours?

11  A.   What I had he had.  My car, my house.

12  Q.   Eat your food?  Stay at your house?

13  A.   Yes.

14  Q.   Did you ever let him borrow your vehicle from time to

15       time?

16  A.   All the time.

17  Q.   All the time.  He asked to borrow your vehicle and you

18       didn't need it, did you let him use it?

19  A.   Yeah.

20  Q.   Now, I know there's no possible way you can tell us what

21       was going on in your life on March the 13th of this year?

22  A.   Yes, sir.

23  Q.   Is it possible that Billy Norris borrowed your car at

24       that time?

25            MR. LISENBY:  I'm going to object to that.

116

1              THE COURT:   Sustained.

2    Q.   Did you let him borrow your car any time he asked?

3    A.   Yes.

4    Q.   Okay.   Now, did Mr. Norris ever have a conversation with

5         you about John Burton?

6    A.   No.

7    Q.   Did he ever tell you that he broke into John Burton's

8         house?

9    A.   No.

10   Q.   Did Billy Norris ever talk to you about any property he

11        may have taken from Mr. Burton's house?

12   A.   No.

13   Q.   Did you ever see any guns or knives or pocket change or

14        anything that you thought was suspicious?

15   A.   No.

16   Q.   He never showed you any of that?

17   A.   No.

18   Q.   He never said anything to you about any guns being in

19        your car?

20   A.   No.

21   Q.   Did you know there were guns in the trunk of your car?

22   A.   No.

23   Q.   All right.   Do you remember talking with Lieutenant

24        Richard Carter of the Lanett Police Department shortly

25        after you were arrested?

117

1   A.   Yes.

2   Q.   Okay.  Did you voluntarily give Mr. Carter a statement

3        that day?

4   A.   No.  He already had a written statement for me.

5   Q.   You're saying he already had a written statement?  Is

6        that what you said?

7   A.   Yes.

8   Q.   He didn't sit down with you and ask you questions and you

9        sit there and respond to his questions?

10  A.   No.  He told me everything what Billy Norris had said.

11  Q.   He came back to you with a statement from what Billy

12       Norris had said?

13  A.   Yes.

14  Q.   You didn't write that statement that they talked about

15       earlier?

16  A.   No.

17  Q.   You didn't tell him what was written on that statement

18       that you talked about earlier?

19  A.   No.

20  Q.   The first time you saw that piece of paper, it already

21       had writing on it?

22  A.   Yes.

23  Q.   You didn't tell him any of that that was written on

24       there?

25  A.   No.

118

1  Q.  Did you read over that statement?

2  A.  Yes.

3  Q.  What did you tell Mr. Carter after you read over it?

4  A.  I told him he could keep it.

5  Q.  You could keep it.  Why is that?

6  A.  Because I didn't do it, and I didn't make no statement.

7  Q.  Is that why you didn't sign it?

8  A.  Yes.

9  Q.  Before today, have you ever seen Mr. Burton before?

10 A.  No.

11 Q.  You don't know him at all?

12 A.  No.

13 Q.  Do you know where he lives?

14 A.  No.

15 Q.  To your knowledge have you ever been to his house?

16 A.  No.

17 Q.  Did you break your way into Mr. Burton's house on March

18     the 13th of this year?

19 A.  No.

20 Q.  Did you take any items from Mr. Burton's house?

21 A.  No.

22 Q.  To your knowledge, did you ever have any items that

23     belonged to Mr. Burton in your possession?

24 A.  No.

25 Q.  All the allegations the State of Alabama has made against

119

1    you today is false; is that correct?

2  A.  Yes.

3  Q.  You're not guilty of anything?

4  A.  No.

5        MR. CARLTON:  I don't think I have anything else,

6  Your Honor.

7        THE COURT:  All right.  Mr. Lisenby or Ms. Newsome.

8        MR. LISENBY:  Just one moment, Your Honor.

9                    CROSS-EXAMINATION

10 BY MR. LISENBY:

11 Q.  Mr. McCullough, I believe you indicated that at the very

12     beginning of your testimony that you and Mr. Norris were

13     very good friends; is that right?

14 A.  Yes.

15 Q.  And I think that even in response to one of Mr. Carlton's

16     questions that you said that you were almost best

17     friends?

18 A.  Yes.

19 Q.  Is that right?

20 A.  Yes.

21 Q.  You've known each other for how long?

22 A.  Ever since the sixth grade.

23 Q.  A long time?  Is your birth date November the 27th of

24     '72?

25 A.  Yes.

120

1   Q.   So the sixth grade would have been about, what, '84 or

2        '85?  Somewhere in there?

3   A.   '86.

4   Q.   I'm sorry?

5   A.   1986.

6   Q.   '86?  Okay.  So you've known him since at least that

7        long; is that right?

8   A.   Yes.

9   Q.   Now, I'm sorry.  I was trying to take notes.  You

10       indicated to Mr. Carlton that you had been laid off from

11       Carter Mill?

12  A.   Yes.

13  Q.   Were you laid off at the time of March -- in March of

14       2002?

15  A.   Yes.

16  Q.   Okay.  Do you recall the date that you were laid off?

17  A.   It was about February the 16th, somewhere in there.

18  Q.   Okay.  So, on March the 13th, you would have been out of

19       work for about a month?

20  A.   Yes.

21  Q.   Is that a fair statement?

22  A.   Yes.

23  Q.   Okay.  The address that you gave on North Sixth Avenue,

24       were you living there with anyone?

25  A.   Living with who?

121

| | | |
|---|---|---|
| 1 | Q. | Were you there living with anyone? |
| 2 | A. | Yes. |
| 3 | Q. | Who was that? |
| 4 | A. | My girlfriend. |
| 5 | Q. | Your girlfriend?  What was her name? |
| 6 | A. | Geraldine Dowell. |
| 7 | Q. | Was there anyone else living there? |
| 8 | A. | My little son. |
| 9 | Q. | I'm sorry? |
| 10 | A. | My son. |
| 11 | Q. | How old was your son? |
| 12 | A. | He was seven months.  He's a year now. |
| 13 | Q. | Okay.  But back in March of 2002, he was seven months |
| 14 | | old? |
| 15 | A. | Yes. |
| 16 | Q. | Was your girlfriend working? |
| 17 | A. | Yes. |
| 18 | Q. | Where was she working at? |
| 19 | A. | Waffle House. |
| 20 | Q. | Working at the Waffle House? |
| 21 | A. | Yes. |
| 22 | Q. | So the only income that was coming in was what she was |
| 23 | | doing at the Waffle House? |
| 24 | A. | No. |
| 25 | Q. | I asked who else was living there, you said it was just |

122

1       you --

2    A.   I was drawing a unemployment check.

3    Q.   You had an unemployment check?  Okay.  How much was that?

4    A.   152 a week.

5    Q.   $52 a week?

6    A.   152.

7    Q.   152.  I'm sorry.  It's kind of hard to hear in this big

8         room.

9             All right.  Now, was Mr. Norris, was he living

10        there in this house with you?

11   A.   No.

12   Q.   Well, you said he had no job and he had no housing, but

13        whatever was yours was his.  But he wasn't living there?

14   A.   He was staying in that vacant house.

15   Q.   So whatever was yours is his is not completely accurate?

16   A.   That's my girlfriend's house.  He can't stay with my

17        girlfriend.

18   Q.   Well, your comment to Mr. Carlton was "whatever I had, he

19        had?"

20   A.   That's right.

21   Q.   All right.  But he wasn't living there with you?

22   A.   It wasn't mine.

23   Q.   Okay.  Is that right?  He wasn't living there with you?

24   A.   Yes.

25   Q.   Okay.  Now, you do recall March the 19th of 2002, do you

123

1      not?

2   A.   Yes.

3   Q.   The date that you and Mr. Norris were together when the
4        police stopped you?

5   A.   Yes.

6   Q.   And that was outside of the Hillcrest Cemetery area; is
7        that correct?

8   A.   Yes.

9   Q.   And that was your car that you were in?

10  A.   Yes.

11  Q.   And the two pistols that you have seen on the videotape,
12       that was in your car?

13  A.   Yes.

14  Q.   And, if I understood what you said, you said that
15       Lieutenant Carter when he walked in to see you already
16       had the statement written out?

17  A.   Yes.

18  Q.   Is that what you're saying?

19  A.   Yes.

20  Q.   So have you seen this before?

21  A.   Yes, sir, two copies of it.

22  Q.   Okay.  And you're saying that he had -- Lieutenant Carter
23       who testified in this case had it written out when he
24       walked in the door to see you?

25  A.   Yes.  That's the wrong address right there.

124

1   Q.   They had the wrong address up there?

2   A.   He even put the wrong address at the top to let you know

3        it was pre-written.

4   Q.   Okay.  So he didn't get that from you?

5   A.   No.

6   Q.   He didn't get that phone number from you?

7   A.   No, he probably got it from Billy.

8   Q.   He just made that up?

9   A.   No.  I don't know.

10  Q.   Well, if you didn't tell him that address or that

11       telephone number, are you saying --

12  A.   That's not my address.

13  Q.   Okay.  So it's your testimony that Lieutenant Carter

14       while investigating this burglary came in, simply showed

15       that to you, and said, here, sign it?

16  A.   Yeah, basically.

17  Q.   Okay.  Well, you also started telling Mr. Carlton

18       something about that he was telling you what Billy Norris

19       had said?

20  A.   That's where the statement come from is Billy Norris.

21  Q.   Okay.  Well, if all he did is walk in and show you that

22       statement to sign, why would he be telling you what Billy

23       Norris said?

24  A.   He wanted to see what I had to say about the idea.

25  Q.   I'm sorry?

125

1    A.    He wanted to see what I had to say about the idea, the
2          situation.
3    Q.    About the situation?
4    A.    Yeah.
5    Q.    Okay.  Even though he had it all printed out for you?
6    A.    That's right.  He still questioned me about it.
7    Q.    All right.  Does it say on the statement that he got this
8          from Billy Norris?
9    A.    No.
10   Q.    It starts out, it says, "Me and Billy," right?
11   A.    That's what it says.
12   Q.    Okay.  But he just made all of that up?
13   A.    I guess so.
14   Q.    And, when he told you what Mr. Norris had said about this
15         burglary involving John Burton, he talked to you about
16         when it occurred, did he not?
17   A.    Yes.
18   Q.    All right.  So, on March the 19th, which was less than --
19         well, less than a week, six days later, you knew the date
20         of March the 13th, correct?
21   A.    No.
22   Q.    You didn't?  I just asked you did he tell you that, and
23         you said yes?
24   A.    You said did he remind me of that.
25   Q.    I'm sorry?

126

1   A.   You asked me did he remind me of that, didn't you?

2   Q.   No.   I said when he came in and started telling you about

3        what Billy Norris had said happened regarding Mr.

4        Burton's burglary on March the 13th?

5   A.   Oh.

6   Q.   And you said, yes, he told me that?

7   A.   I didn't hear you.

8   Q.   Okay.

9   A.   I didn't hear you.

10  Q.   Okay.   So on March the 19th, which was six days after

11       that event, you knew about Mr. Burton's burglary having

12       occurred on March the 13th?

13  A.   I was told of it.

14  Q.   All right.   And you still don't know, it's your testimony

15       to this jury, where you were on March the 13th?   You just

16       don't have any idea?

17  A.   Not really.

18  Q.   Even though only six days after that, you first learned

19       that that's when this burglary occurred?

20  A.   That's right.

21  Q.   So you just don't have any idea?

22  A.   No.

23  Q.   All right.   Now, Mr. McCullough, are you the same

24       Christopher McCullough that on September the 27th of 1993

25       was convicted of receiving stolen property in the second

127

1      degree and received a sentence of five years here in

2      Chambers County?

3  A.    Yes.

4          MR. LISENBY:  I don't have any other questions.

5      Thank you.

6          THE COURT:  All right.  Anything else for this

7      witness?

8          MR. CARLTON:  Nothing.

9          THE COURT:  All right.  You can step down, sir.

10     Thank you.

11         All right.  Mr. Carlton and Mr. Morris, any further

12     witnesses?

13         MR. CARLTON:  Defense rests, Judge.

14         THE COURT:  All right.  Everybody ready to go

15     forward at this time?

16         Why don't we come up here?

17     (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

18         THE COURT:  Are you renewing your motion for

19     judgment of acquittal?

20         MR. MORRIS:  Yes, sir.

21         THE COURT:  That motion will be denied.

22         MR. MORRIS:  Okay.

23         THE COURT:  Okay.  Are y'all ready to get started?

24         MR. CARLTON:  Yes, sir.

25         THE COURT:  Closing arguments?

128

1          MR. LISENBY:  Yes, sir.

2          THE COURT:  Okay.  Let's get started.

3          (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

4          THE COURT:  Okay.  Ladies and gentlemen, the State

5     has rested.  The defense has rested.  Okay?  I told you

6     when I outlined our procedures that once the testimony

7     concluded, what we would have next would be closing

8     arguments.  I want to remind you that this is an

9     opportunity for the attorneys to tell you what they

10    believe the evidence has been in this case and to draw

11    reasonable inferences from that evidence.

12         I also want to remind you that what the attorneys

13    say is not evidence.  All right?  You should depend on

14    what came from the witness stand and those items that

15    have been admitted as evidence.  All right?  That being

16    said, I will call on the State of Alabama.  Ms. Newsome?

17         MS. NEWSOME:  Yes, sir.  Thank you, Your Honor.

18         (MS. NEWSOME MADE A CLOSING ARGUMENT, AND NO

19         OBJECTIONS WERE MADE)

20                   *  *  *  *  *  *  *  *

21         (MR. MORRIS MADE A CLOSING ARGUMENT, AND NO

22         OBJECTIONS WERE MADE)

23                   *  *  *  *  *  *  *  *

24         (MR. LISENBY MADE A CLOSING ARGUMENT, AND NO

25         OBJECTIONS WERE MADE)

129

1                    * * * * * * * *

2          THE COURT:  All right.  Thank you.

3          Ladies and gentlemen, it's now my turn to give you

4     the instructions or laws that apply to this case.

5          MR. CARLTON:  Judge, can we approach for a second?

6          THE COURT:  Yes.

7     (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

8          MR. CARLTON:  I just wanted to make sure.  You are

9     going to give the charge that he can't be convicted on

10    all three counts?

11         THE COURT:  Yes.  In fact, what I'm going to tell

12    them is this.  I think Amy touched on it and Bill touched

13    on it.  He can be -- they can find him guilty if they see

14    fit on the burglary charge and theft charge.  But, if

15    they do it on either burglary or theft, on both of them,

16    they can't do it on the receiving stolen property.  I'll

17    tell them that.

18         MR. CARLTON:  That's the only charge we had.

19         THE COURT:  Y'all have heard my charge.  I pretty

20    well cover it.  I don't know of any written charges that

21    you really could have given me.

22         MR. CARLTON:  Right.

23         THE COURT:  And I'm also going to charge on theft of

24    property in the second degree, okay?  As embraced in the

25    indictment -- as embraced in count two.  He's charged

130

1   with theft one.  I'm also going to charge on theft two.

2   That's actually under the provision of taking a firearm,

3   right?

4        MR. LISENBY:  Right.

5        THE COURT:  Yeah.

6        MR. LISENBY:  But that is okay with the defense that

7   that's being given?

8        THE COURT:  Y'all don't have any objection?  It's a

9   lesser-included.

10       MR. CARLTON:  It can't hurt him, I wouldn't say.

11  The lesser the better.

12       THE COURT:  All right.  Thank you.

13       (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

14

15                    JURY CHARGE

16       All right.  As I was saying, this is my opportunity

17  now to give you the instructions on the law as it applies

18  to this case.  Once again, let me read the indictment to

19  you.  "The Grand Jury of said county charge that before

20  the finding of this indictment, Christopher McCullough,

21  alias, and Billy Norris, alias, whose names are otherwise

22  unknown to the Grand Jury, did knowingly and unlawfully

23  enter or remain unlawfully in a dwelling of another, to

24  wit: John Burton, with intent to commit a crime therein,

25  to wit: theft of property, and while effecting entry or

131

1    while in the dwelling or in immediate flight therefrom,

2    the said Christopher McCullough or/or Billy Norris was

3    armed with an explosive or deadly weapon, to wit:  a

4    pistol or rifle, a further description of which is

5    otherwise unknown to the Grand Jury in violation of

6    Section 13A-7-5 of the Code of Alabama against the peace

7    and dignity of the State of Alabama.

8         "Count two.  The Grand Jury of said county further

9    charges that before the finding of this indictment,

10   Christopher McCullough, alias, and Billy Norris, alias,

11   whose names are otherwise unknown to the Grand Jury, did

12   knowingly obtain or exert unauthorized control over the

13   following property, to wit: two pistols, five knives, and

14   one rifle, a further description of which are otherwise

15   unknown to the Grand Jury, and lawful currency of the

16   United States of America, the exact denominations of

17   which are otherwise unknown to the Grand Jury, the

18   property of John Burton, and having a value in excess of

19   one thousand dollars with the intent to deprive the owner

20   of said property in violation of Section 13A-8-3 of the

21   Code of Alabama against the peace and dignity of the

22   State of Alabama.

23        "Count three, the Grand Jury of said county further

24   charges that before the finding of this indictment,

25   Christopher McCullough, alias, whose name is otherwise

132

1    unknown to the Grand Jury did intentionally receive,

2    retain, or dispose of stolen property, to wit: two

3    pistols, further descriptions of which are otherwise

4    unknown to the Grand Jury, the property of John Burton,

5    and having a value in excess of one hundred dollars but

6    not in excess of one thousand dollars, knowing that it

7    was stolen or having reasonable grounds to believe that

8    it had been stolen and not having the intent to restore

9    it to the owner in violation of Section 13A-8-18 of the

10   Code of Alabama against the peace and dignity of the

11   State of Alabama."

12        The indicment in this case is not evidence, and the

13   fact that the defendant has been indicted is not to be

14   considered by you as a circumstance against him, but the

15   indictment is merely the method of placing the defendant

16   on trial.

17        In determining what the true facts are in this case,

18   you are limited to evidence that has been presented from

19   the witness stand as opposed to matters that have been

20   stated by the lawyers in the course of the trial.  What

21   the lawyers have said both for the State and for the

22   defendant is not evidence in this case.  What they have

23   argued to you at various points in this trial is not

24   evidence.  They have the right and a duty at the

25   appropriate time in the trial to comment on the evidence

133

1    and to draw reasonable inferences from the evidence as

2    they argue their respective positions.  What they say is

3    not evidence, and you should put what they say in the

4    proper category in your thinking.  And it should not be

5    in the evidence category, just as the indictment in this

6    case should not be in the evidence category.

7        When a Judge and jury sit together as a Court of

8    law, it is the duty of the Judge to see that the trial

9    progresses in an orderly fashion, to rule upon all legal

10   matters that are presented, to define the issues

11   involved, and to instruct the jury as to the law that

12   applies to that particular case.  It will be your duty as

13   jurors to follow the law as stated to you by the judge.

14   You will therefore render a verdict in accordance with

15   the facts as you determine them from the evidence and the

16   law as given to you by the Court.

17       The Judge is not permitted to expose his opinion or

18   comment on the effect of the evidence presented to you

19   or the credibility of any witness in the case.

20   Therefore, any ruling, statement, or expression which has

21   been made by me during the course of this trial is not to

22   be considered by you as any effort on my part to convey

23   to you my feeling or opinion about the facts in this case

24   or the credibility of any witness.

25       In arriving at your verdict in this case, you should

134

1    not permit sympathy, prejudice, or any emotion to

2    influence you.  Base your verdict on the evidence and the

3    law.  Don't apply any evidence or law other than the

4    evidence presented at trial and the law instructed by the

5    Court.

6         Whatever verdict you reach must be unanimous.  The

7    verdict must be the verdict of each of the 12 jurors.

8         In coming before you, a jury of his peers, upon his

9    plea of not guilty the defendant is presumed to be

10   innocent of the charges against him.  This presumption

11   remains with him throughout every stage of the trial and

12   during your deliberations on the verdict and is not

13   overcome unless from all the evidence in the case you're

14   convinced beyond a reasonable doubt that the defendant is

15   guilty.

16        The State has the burden of proving the guilt of the

17   defendant beyond a reasonable doubt, and this burden

18   remains on the State throughout the trial.  The defendant

19   is not required to prove his innocence.

20        The phrase "reasonable doubt" is self-explanatory,

21   and efforts to define it do not always clarify the term.

22   But it may help you some to say that the doubt which

23   would justify an acquittal must be an actual doubt and

24   not a mere possible doubt.  A reasonable doubt is not a

25   mere guess or surmise.  It is not a forced or captious

135

1   doubt.

2       If after considering all the evidence in the case,

3   you have an abiding conviction of the truth of the

4   charge, then you're convinced beyond a reasonable doubt

5   and it would be your duty to convict the defendant.  The

6   reasonable doubt which entitles the accused to an

7   acquittal is not a mere fanciful, vague, conjectural, or

8   speculative doubt, but a reasonable doubt arising from

9   the evidence or the lack of it and remaining after a

10  careful consideration of the testimony.  This is a doubt

11  that reasonable, fair-minded and conscientious men and

12  women would entertain under all circumstances.

13      Now, you will observe that the State is not required

14  to convince you of the defendant's guilt beyond all

15  doubt, but simply beyond all reasonable doubt.  If after

16  comparing and considering all the evidence in this case,

17  your minds are left in such a condition that you cannot

18  say that you have an abiding conviction of the

19  defendant's guilt, then you're not convinced beyond a

20  reasonable doubt and the defendant would be entitled to

21  an acquittal.  The defendant has no burden of proof

22  whatsoever.

23      All right.  I'm going to give you the definitions of

24  the charges against the defendant at this time.  We will

25  start with burglary in the first degree.  The defendant

136

1    is charged I believe in count one of this indictment with

2    burglary in the first degree.

3        A person commits the crime of burglary in the first

4    degree if he knowingly and unlawfully enters or remains

5    unlawfully in a dwelling and he does so with intent to

6    commit a crime therein, and while effecting entry or

7    while in the dwelling or in the immediate flight

8    therefrom, he or another participant in the crime is

9    armed with an explosive or deadly weapon.

10       To convict, the State must prove beyond a reasonable

11   doubt each of the following elements of burglary in the

12   first degree:  number one, that the defendant,

13   Christopher McCullough, knowingly and unlawfully entered

14   or remained unlawfully in the dwelling of John Burton.

15   Number two, that in doing so, the defendant acted with

16   the intent to commit a crime; namely, theft therein.

17   And, number three, that while in the dwelling or in

18   effecting entry thereto or in the immediate flight

19   therefrom, the defendant or another participant in the

20   crime was armed with an explosive or deadly weapon.

21       A dwelling is defined as a building which is used or

22   normally used by a person for sleeping, living, or

23   lodging therein.

24       An intruder acts knowingly if he is aware of the

25   fact that he has no license or privilege to enter or

137

1     remain.

2          A person acts with intent with respect to a result

3     or to conduct when his purpose is to cause that result or

4     to engage in that conduct.

5          A person enters or remains unlawfully in or upon

6     premises when he is not licensed, invited, or privileged

7     to do so.

8          If you find from the evidence that the State has

9     proved beyond a reasonable doubt -- excuse me.  Let me

10    define a deadly weapon.  I'm sorry.  A deadly weapon is a

11    firearm or anything manifestly designed, made, or adapted

12    for the purpose of inflicting death or serious physical

13    injury.

14         Now, if you find from the evidence that the State

15    has proved beyond a reasonable doubt each of the above

16    elements of the offense of burglary in the first degree,

17    then you shall find the defendant guilty of burglary in

18    the first degree.  If you find that the state has failed

19    to prove beyond a reasonable doubt any one or more of the

20    elements of the offense of burglary in the first degree,

21    then you cannot find the defendant guilty of burglary in

22    the first degree.

23         In count two, he is charged with theft in the first

24    degree.  A person commits the crime of theft if he

25    knowingly obtains or exerts unauthorized control over the

138

property of another with the intent to deprive the owner

of his property.  The theft of property which exceeds one

thousand dollars in value constitutes theft of property

in the first degree.

To convict, the State must prove beyond a reasonable

doubt each of the following elements of theft of property

in the first degree.  Number one, that the defendant,

Christopher McCullough, knowingly obtained or exerted

unauthorized control over the property of John Burton,

more specifically -- and I believe from reading the

indictment -- property of two pistols, five knives, one

rifle, and lawful currency of the United States of

America.  Number two, that the property exceeded one

thousand dollars in value.  And, number three, that the

defendant acted with the intent to deprive the owner of

his property.

One acts with intent to deprive another of his

property when he acts with the purpose of causing that

result.  A person acts knowingly with respect to conduct

or to a circumstance when he is aware that his conduct is

of that nature or that the circumstance exists.

The term "obtains or exerts unauthorized control

over property" includes but is not necessarily limited to

the taking, carrying away, or the sale, conveyance, or

transfer of title to or interest in or possession of

139

1    property.

2        If you find from the evidence that the State has

3    proved beyond a reasonable doubt each of the above

4    elements of the offense of theft of property in the first

5    degree as charged, then you shall find the defendant

6    guilty of theft of property in the first degree.

7        If you find that the State has failed to prove

8    beyond a reasonable doubt any one or more elements of the

9    offense of theft in the first degree, then you cannot

10   find the defendant guilty of theft of property in the

11   first degree.

12       Now, embraced in count two of the indictment is also

13   what we call a lesser-included offense.  That would be

14   theft of property in the second degree.  I will now

15   define that for you.  A person commits the crime of theft

16   of property if he knowingly obtains or exerts

17   unauthorized control over the property of another with

18   intent to deprive the owner of his property.  Okay.  In

19   this section, the theft of a firearm, rifle, or shotgun

20   constitutes theft of property in the second degree.

21       To convict, the State must prove beyond a reasonable

22   doubt each of the following elements of theft of property

23   in the second degree:  number one, that the defendant,

24   Chris McCullough, knowingly obtained or exerted

25   unauthorized control over the property of John Burton.

140

1    More specifically, two pistols and one rifle in count

2    two.  Number two, that the defendant acted with intent to

3    deprive the owner of his property.

4    Once again, I will define some of the things in this

5    definition or in this description.  One acts with intent

6    to deprive another of his property when he acts with the

7    purpose of causing that result.  A person acts knowingly

8    with respect to conduct or to a circumstance when he is

9    aware that his conduct is of that nature or that the

10    circumstance exists.  The term "obtains or exerts

11    unauthorized control over property" includes but is not

12    necessarily limited to the taking, carrying away, or the

13    sale, conveyance, or transfer of title to or interest in

14    or possession of property.

15    If you find from the evidence that the State has

16    proved beyond a reasonable doubt each of the above

17    elements of the offense of theft of property in the

18    second degree as embraced in the indictment, you shall

19    find the defendant guilty of theft of property in the

20    second degree.  If you find the State has failed to prove

21    beyond a reasonable doubt any one or more of the elements

22    of the offense of theft of property in the second degree,

23    then you cannot find of the defendant guilty of theft of

24    property in the second degree.

25    In count three, the defendant is charged with

Court of Criminal Appeals No. _CR-02-0943_

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
## FROM
# CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

### Circuit Court Case Number: CC 2002489
### Circuit Judge: Honorable TOM YOUNG

Type of Conviction / Order Appealed From:___State Conviction_____
Sentence Imposed:_10 YEARS / 15 YEARS CONCURRENTLY_____

Defendant Indigent: _X_ YES    _ NO

## CHRISTOPHER C. MCCULLOUGH

NAME OF APPELLANT

HON. STEVEN MORRIS
APPELLANT'S ATTORNEY                    (TELEPHONE NO.)
P.O. BOX 814
ADDRESS
WEDOWEE            ALABAMA            36251
CITY               STATE              ZIP CODE

### v.

## STATE OF ALABAMA

NAME OF APPELLEE

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
Name and address of municipal attorney below.

(For Court of Criminal Appeals use only)

141

1    receiving stolen property.  I will now define that for

2    you.  A person commits the crime of receiving stolen

3    property if he intentionally receives, retains, or

4    disposes of stolen property knowing that it has been

5    stolen or having reasonable grounds to believe it has

6    been stolen unless the property is received, retained, or

7    disposed of with the intent to restore it to the owner.

8    Receiving stolen property which exceeds one hundred

9    dollars in value but does not exceed one thousand dollars

10   in value constitutes receiving stolen property in the

11   second degree.

12       To convict, the State must prove beyond a reasonable

13   doubt each of the following elements of receiving stolen

14   property in the second degree:  number one, that the

15   defendant, Christopher McCullough, intentionally

16   received, retained, or disposed of stolen property;

17   namely, in the indictment those things we reference in

18   the indictment, two pistols.  Number two, that the

19   defendant acted knowing that the property had been stolen

20   or having reasonable grounds to believe that it had been

21   stolen.  Three, that the defendant acted without the

22   intent to restore the property to the owner.  And, four,

23   that the property exceeded one hundred dollars in value

24   but did not exceed one thousand dollars in value.

25       Okay.  A person acts intentionally with respect to a

1   result in the conduct when his purpose is to cause that
2   result or to engage in that conduct.  A person acts
3   knowingly with respect to conduct or to a circumstance
4   when he is aware that his conduct is of the nature or
5   that the circumstance exists.  Value means the market
6   value of the property at the time and place of the
7   criminal act.
8        If you find from the evidence the State has proved
9   beyond a reasonable doubt each of the above elements of
10  the offense of receiving stolen property in the second
11  degree as charged, then you shall find the defendant
12  guilty of receiving stolen property in the second
13  degree.  If you find the State has failed to prove beyond
14  a reasonable doubt any one or more elements of the
15  offense of receiving stolen property in the second
16  degree, then you cannot find the defendant guilty of
17  receiving stolen property in the second degree.
18       All right.  Ladies and gentlemen, use your common
19  sense that you do in everyday affairs in determining what
20  the truth is based on the testimony.  You will be the
21  sole and exclusive judges of the facts.  It will be your
22  duty to attempt to reconcile the testimony of all the
23  witnesses so as to make them all speak the truth, if this
24  can be done so reasonably.  If you cannot reasonably
25  reconcile all the testimony, then it will be your duty to

143

consider the testimony with a view of determining what
the true facts are.  In doing so, you may accept or
reject part of the testimony of any witness or any part
of the testimony of any witness and accept only the part
of the testimony that you consider worthy of belief.

   An attorney is an officer of the Court.  It is his
or her duty to present evidence on behalf of their
clients and to make objections as they deem proper and to
fully argue their client's cause.  An attorney's
statements and arguments are intended to help you
understand the evidence and apply the law.  However,
their statements are not evidence, and you should
disregard any remarks, statement, or argument which is
not supported by evidence or by the law as given to you
by the Court.  Likewise, statements made by the Court are
not evidence and are not to be considered by you.

   In determining what the true facts are from the
evidence, you may take into consideration any natural
interest or bias a witness may have as a result of any
connection with the case.  You may take into
consideration the interest or bias a witness may show
while testifying.  You may take into consideration the
demeanor of any witness as to whether the witness has
apparently testified frankly or evasively.  You may take
into consideration any matter which you would in your

144

1    everyday affairs in passing upon the truthfulness and

2    accuracy of the testimony.  Weigh the testimony in light

3    of your common observation and experience and reach a

4    verdict which will be based upon the truth as you

5    determine it from all of the evidence.

6         The defendant may testify as a witness on his own

7    behalf.  And, when he does so, you may consider the

8    testimony of the defendant along with all other evidence

9    in light of the fact that he is the defendant and the

10   interest he has in your verdict.  This is to be taken

11   into consideration together with all the other evidence

12   or lack of evidence.

13        If you believe that any material part of the

14   evidence of any witness was willfully false, you may

15   disregard all of the testimony of such witness or that

16   portion of the testimony that you determine to be

17   willfully false.

18        The test of the sufficiency of circumstantial

19   evidence is, one, whether the circumstances as proved

20   convince you to the exclusion of all reasonable doubt of

21   the guilt of the defendant.  And, two, whether the

22   circumstances are incapable of explanation upon any

23   reasonable hypothesis consistent with the defendant's

24   innocence.  There should not be a conviction based upon

25   circumstantial evidence unless it excludes every

1    reasonable hypothesis other than that of the guilt of the

2    accused.  No matter how strong may be the circumstances,

3    if they can be reconciled with the theory that the

4    defendant is innocent, then the guilt of the accused is

5    not shown by that full measure of proof the law requires

6    and the defendant should be acquitted.

7         All right.  I will explain the verdict forms to you

8    now.  There are three counts we have spoken about in this

9    trial.  The first count Mr. McCullough, the defendant, is

10   charged with burglary in the first degree, the first

11   verdict form -- and you will have each one of these

12   verdict forms, okay?  The first verdict form reads as

13   follows --  and take no leave by the way I have these set

14   out on the verdict forms.  I just put them in this order

15   to make sure I got everything included.  Okay?

16        The verdict form on the first one reads, We, the

17   jury, find the defendant, Christopher McCullough, guilty

18   of the offense of burglary in the first degree as charged

19   in count one of the indictment.  There's a line for the

20   foreperson to sign if that is your verdict.  On the other

21   hand, if you find the defendant not guilty of burglary,

22   you will use this verdict form: We, the jury, find the

23   defendant, Christopher McCullough, not guilty of the

24   offense of burglary first degree as charged in count one

25   of the indictment.  And your foreperson would sign that

146

1    verdict form.

2    Number two, in count two the defendant is charged

3    with theft of property in the first degree.  Also,

4    embraced in that is a lesser-included offense of theft of

5    property in the second degree.  If after considering all

6    the evidence you determine that the defendant is guilty

7    of the offense of theft of property in the first degree,

8    you will use this verdict form.  It says, we, the jury,

9    find the defendant, Christopher McCullough, guilty of the

10   offense of theft of property in the first degree as

11   charged in count two of the indictment.  Your foreperson

12   would sign that.  If after examining all the evidence

13   you're not convinced that he is guilty of theft of

14   property in the first degree, then you can go to the

15   lesser-included and look at this.  It says, We, the jury,

16   find the defendant, Christopher McCullough, guilty of the

17   offense of theft of property in the second degree as

18   embraced in count two of the indictment.  If you're not

19   convinced of that, then you can go also to the not guilty

20   portion.  It says, We, the jury, find the defendant,

21   Christopher McCullough, not guilty of the offense of

22   theft of property in the first degree as charged in the

23   indictment.

24   Okay.  The third verdict form that I'm showing you

25   involves count three where he is charged with receiving

147

1    stolen property in the second degree.  If you find from

2    the evidence that he is guilty of receiving stolen

3    property in the second degree as defined by the Court

4    based on the evidence, you can use this verdict form.

5    We, the jury, find the defendant, Christopher McCullough,

6    guilty of the offense of receiving stolen property in the

7    second degree as charged in count three of the

8    indictment.  If you find that he is not guilty of that

9    offense, then you will have to use a second verdict form

10   that says, We, the jury, find the defendant, Christopher

11   McCullough, not guilty of receiving stolen property in

12   the second degree as charged in count three of the

13   indictment.

14        Now, let me explain one other thing to you.  It's

15   been referenced by both parties.  If you find the

16   defendant guilty of burglary, you cannot find him guilty

17   of receiving stolen property.  You can find the defendant

18   guilty or not guilty of burglary, guilty or not guilty of

19   theft of property first or second degree.  However, if

20   you find from the facts, okay, and based on the law that

21   I've instructed you that he is guilty of burglary, you

22   can find him guilty of burglary, you could find him

23   guilty of theft.  But you can't find him guilty of

24   burglary, theft, and receiving stolen property.  If you

25   find him guilty of burglary, you have to find him not

148

1  guilty of receiving stolen property.  Okay?  Do you
2  understand what I'm saying on that?
3      All right.  So I guess what I'm saying is that you
4  can find for guilt or innocence, of course, you know, in
5  all counts, too.  But if you find him guilty in count one
6  of burglary and then you find him also guilty in count
7  two of theft of property in any degree, then you will
8  have to find him not guilty of receiving stolen
9  property.  On the other hand, if you find from the
10 evidence or lack thereof and based on my instructions to
11 you that he's not guilty of these three offenses, you use
12 the not guilty verdicts.  All right?
13     That being said, all 12 of you must agree on the
14 verdict.  It must be a unanimous verdict.  Now, your
15 verdict must be unanimous.  All 12 of you must agree
16 either for guilty or not guilty, all 12 either way.  It
17 must be your verdict individually.  It must be your
18 verdict collectively.  Each person has an equal vote.
19 When you go back in a minute, you will select a
20 foreperson.  Their job is to make sure that every juror
21 has had an opportunity to state their idea, to have their
22 say, and then to call for a vote, count the vote, and
23 sign the verdict form.  The foreperson is selected by a
24 majority.  Only seven of you must agree on the
25 foreperson.  The foreperson must sign the verdict forms.

149

1          Before you go, there's always some questions that
2     jurors have.  I want to try to answer them now before you
3     go back for your deliberations.  Number one, I cannot
4     give you a copy of my charge on the law.  The law does
5     not allow me to provide you with the printed word.
6     Number two, there's no transcript of a witness.  It would
7     take weeks to get that printed.  Number three, you must
8     rely on your collective memories.  If you have taken
9     notes, they are permitted to be used by you, but they
10    will not be authoritative of what has gone on in this
11    courtroom during this trial.  And, last, if I give you
12    another charge, I will have to give you the entire charge
13    again.  You're to knock on the door when you've reached a
14    verdict.
15         THE COURT:  Okay.  What says the State?
16         MS. NEWSOME:  State is satisfied, Your Honor.
17         THE COURT:  What says the defense?
18         MR. MORRIS:  Ready.
19         THE COURT:  Are y'all satisfied?
20         MR. MORRIS:  Yes, sir.
21         THE COURT:  All right.  How about the exhibits?  Are
22    y'all satisfied that they're all present and ready to be
23    distributed to the jury?
24         MR. MORRIS:  Yes, sir.
25         THE COURT:  Okay

150

1        MR. LISENBY:  Yes, sir.

2        THE COURT:  While they're looking at that, ladies

3    and gentlemen, you will notice there are 13 of you here.

4    Only 12 of you will deliberate.  So that means somebody

5    gets released and is what we consider an alternate

6    juror.  All right.  I will announce that person at this

7    time.  Ms. Linda Allison.  Ms. Allison, I'm going to

8    release you at this time and thank you for your service.

9    I will have you see Mr. Charles Story and have you report

10    back tomorrow morning at 9 o'clock.  All right?  Come

11    back tomorrow morning at 9 o'clock.

12        All right.  Ladies and gentlemen, you may retire and

13    deliberate.  Thank you very much.

14  (THE JURY RETIRED TO COMMENCE DELIBERATIONS AT 3:25 P.M.)

15        THE COURT:  Counsel, I'm just going to have Mr.

16    Story tell them that if they desire to view these films

17    again, that we'll just bring them back out here and run

18    them out here.

19                          VERDICT

20  (THE JURY RETURNED WITH THE FOLLOWING VERDICT AT 4:05 P.M.)

21        THE COURT:  Has the jury reached a verdict?

22        THE FOREMAN:  Yes, sir.

23        THE COURT:  All right.  Give the verdict forms to

24    the clerk, please.  All right.  Hand them back.

25        All right.  Mr. Foreman, if you would stand up and

1    read the verdict forms for us, please.

2        THE FOREMAN:  We, the jury, find the defendant,

3    Christopher McCullough, guilty of the offense of burglary

4    first degree as charged in count one of the indictment.

5        THE COURT:  Read your name, please.

6        THE FOREMAN:  Mark Underwood.

7        THE COURT:  Okay.

8        THE FOREMAN:  We, the jury, find the defendant,

9    Christopher McCullough, guilty of the offense of theft of

10    property in the second degree as embraced in count two of

11    the indictment.  Mark Underwood.

12        THE COURT:  All right.  And the third?

13        THE FOREMAN:  We, the jury, find the defendant,

14    Christopher McCullough, not guilty of the offense of

15    receiving stolen property second degree as charged in

16    count three of the indictment.  Mark Underwood.

17        THE COURT:  All right.  Thank you very much.  Would

18    you like to have the jury polled?

19        MR. CARLTON:  Yes, sir.

20        THE COURT:  Ladies and gentlemen, I am going to ask

21    you at this point if this is your verdict, and I will

22    point to you individually to make sure I get everybody

23    included.  All right?  As read by your foreman, is this

24    your verdict?

25        JUROR:  Yes.

152

1    (THE JURY WAS POLLED BY THE COURT AND EACH RESPONDED IN

2    THE AFFIRMATIVE)

3        THE COURT:  All right.  Ladies and gentlemen, I

4    want to thank you for your service.  I am going to ask

5    that before you leave, of course, you give your buttons

6    to Mr. Story.  If you need work permits or anything of

7    that nature, I think Mr. Story has some in his office for

8    you; is that correct?

9        THE CLERK:  Yes, sir, I do, Your Honor.  The ones

10   that we got from yesterday, I have not prepared another

11   one.  But, if you need one, I will.  For the ones that

12   were not on the jury for yesterday, they're in my office.

13       THE COURT:  All right.  I will ask that you return

14   here tomorrow morning at 9 o'clock.  All right?  Thank

15   you very much for your service.

16                    (JURY EXCUSED)

17       THE COURT:  Mr. Morris, if you would bring your

18   client forward, please.

19       Mr. McCullough, a jury has found you guilty of

20   burglary in the first degree.  I find that you are guilty

21   of burglary in the first degree.  I will set your

22   sentencing in that case for January the 7th.  January the

23   7th of 2003 at 9:00 a.m.

24       In count two, the jury has found you guilty of the

25   charge of theft of property in the second degree.  I find

153

1    that you are guilty of theft of property in the second

2    degree.  I will set your sentencing in that case for

3    January the 7th at 9:00 a.m.

4        The jury found you not guilty of the charge of

5    receiving stolen property in the second degree, and I

6    will discharge you as to that offense.  All right.

7    Anything further for the Court?

8        MR. LISENBY:  Yes, sir, just briefly.  Judge, we

9    will be invoking the Habitual Offender Act based on the

10   conviction that Mr. McCullough admitted during the course

11   of the trial.  We will also be asking at the sentencing

12   hearing for restitution.  It appears to be to me in the

13   amount of $800 for Mr. Burton.

14       THE COURT:  All right.  You will have either

15   affidavits or something to that effect; is that right?

16       MR. LISENBY:  Yes, sir.

17       THE COURT:  So y'all have been put on notice that

18   they intend to invoke the Habitual Offender Act at your

19   sentencing based on the prior conviction that he admitted

20   to on the stand.  All right.  Anything else?

21       MR. LISENBY:  Just at this point based on the

22   conviction and the fact that he has other charges

23   pending, we would ask the Court to revoke his bond that

24   he has outstanding now so that he remains incarcerated

25   until the time of sentencing.

154

1          THE COURT:  All right.  I will grant that motion.  I

2    will revoke any bond that you have at any point pending

3    sentencing on January the 7th at 9 o'clock.  All right?

4    Thank you very much.  I will put you in the custody of

5    the deputy sheriff.

6                         END OF TRIAL

155

SENTENCING AND PROBATION

(JANUARY 7, 2003)

THE COURT: State of Alabama versus Christopher McCullough. Mr. McCullough, have you had an opportunity to go over this report with your attorney? Do you have anything that you want to add to it, take away from it, or modify in any way?

THE DEFENDANT: No, sir.

THE COURT: Okay. Have you got anything that you want to say before I pronounce sentence in this case?

MR. MORRIS: Judge, I would like to say a couple things. Judge, Mr. McCullough has been incarcerated for approximately 10 months now. If he is placed on probation, he has a place to live with his family. And he does have a small child to support. And he would like to say a couple of things.

THE DEFENDANT: Yes, I understand that a crime has been committed. But, like I told y'all before, I didn't do this and I can prove I didn't do it. Even though I got found guilty at jury trial. And the dude testify, I know he told a lie on me. There ain't nothing to do about it.

THE COURT: Well, the jury has found you guilty. So the issue of your guilt is kind of a done deal on this point. What's the range on the burglary first?

1      MS. NEWSOME:  Mr. McCullough has -- 15 to 99 or

2   life.  A co-defendant in this case has admitted his role

3   in this and other particular burglaries and received a

4   24-year sentence, and that co-defendant has no priors.

5   So the State is going for at least 35 for Mr. McCullough.

6      THE COURT:  What about on theft second degree?  That

7   was the conviction on theft two; is that correct, Steve?

8   The theft second is a Class B.  With one prior, we are

9   talking about 10; is that right?

10      MR. MORRIS:  Judge, the prior felony is

11   approximately 10 years old.  I would like for you to take

12   that into consideration.

13      THE COURT:  I don't know that that makes any

14   difference with the Habitual Offender Act.  It goes to

15   enhance the sentence.  Burglary first, is that an A?

16      MS. NEWSOME:  Yes, sir.

17      MR. MORRIS:  Burglary first.  That was classified as

18   a first, but that's because there was a gun taken out of

19   the residence.  It wasn't used.

20      THE COURT:  Actually, if you take one in or take one

21   out, you get burglary first.

22      Okay.  Now, Mr. McCullough, you know what your

23   record looks like.  You've got an extensive -- tickets,

24   receiving stolen property, domestic violence, criminal

25   trespass, unlawfully breaking and entering into a

157

1      vehicle.

2           THE DEFENDANT:  I never broke in a vehicle in my

3      life.

4           THE COURT:  Well, you got two cases in juvenile

5      court.

6           THE DEFENDANT:  I know.

7           THE COURT:  You've got -- that is juvenile court, I

8      just noticed.  Then after this case you have been

9      arrested on burglary first degree; is that right?

10          THE DEFENDANT:  No, sir.

11          MS. NEWSOME:  Judge, he still has charges pending.

12     It was a crime spree involving him and his co-defendant.

13     I'm not sure if those were obtained -- some of them were

14     obtained after he was arrested.

15          THE COURT:  What's the case number in this case

16     right here?

17          MS. NEWSOME:  02-189.

18          MR. MORRIS:  After he was arrested, he's got

19     burglary first pending, burglary first pending, another

20     theft second, burglary, a burglary second pending.

21          MS. NEWSOME:  I think he was arrested on all of

22     those at the same time.

23          THE DEFENDANT:  I have been in jail ever since

24     March the 19th.

25          MS. NEWSOME:  Judge, he was arrested on subsequent

158

1   charges while he was incarcerated.

2        THE COURT:  How did you commit those while you were

3   incarcerated?

4        THE DEFENDANT:  I don't know.

5        THE COURT:  Is that something you did before you got

6   put in jail?

7        THE DEFENDANT:  That's what they did.

8        THE COURT:  All right.  So subsequent charges is his

9   interpretation of what -- whether there's a subsequent

10  charge or not.

11       PROBATION OFFICER:  Same bunch of stuff.

12       THE COURT:  I am not going to count that as a

13  subsequent charge.  All right.  Anything that you want to

14  say before I pronounce sentences?

15       THE DEFENDANT:  No, sir.

16       THE COURT:  All right.  As to the burglary first

17  degree charge, Court pronounces sentence of -- sentences

18  you to 15 years in the State of Alabama Department of

19  Corrections.  Court will order you to pay court costs to

20  include the cost of your legally appointed attorney.

21  Also $50 to the Victim's Compensation Fund award.  Any

22  restitution?

23       MS. NEWSOME:  Yes, sir.

24       THE COURT:  The affidavit is in our file?

25       MS. NEWSOME:  I don't have that one.

159

1       THE COURT:  Okay.  Restitution will be determined at

2   a later date, Steve.  Okay?

3       MS. NEWSOME:  Judge, Mr. Pugh had a copy of our

4   file, and the restitution affidavit indicated $1475.

5       THE COURT:  Any issues with that, Steve?

6       THE DEFENDANT:  Can I say something about that?

7       THE COURT:  Sure.

8       THE DEFENDANT:  Billy Norris admitted to doing the

9   damage to that door in court and out of court.  So why am

10  I being charged for it?

11      THE COURT:  Well, if you were involved with him.

12      THE DEFENDANT:  I wasn't involved in it.

13      THE COURT:  Is this the same one that's convicted

14  of --

15      MS. NEWSOME:  Yes, sir.

16      THE COURT:  Well, the jury said you were.  So that

17  issue is a dead issue.  You and Mr. Norris will be

18  jointly and severally responsible for that amount of

19  restitution.  What's the amount again?

20      MS. NEWSOME:  $1475.

21      PROBATION OFFICER:  Due to the unrecovered shotgun

22  and the damage to the front door to the victim's property.

23      THE COURT:  Okay.  All right.  I'll also give you

24  credit for any time served in this matter to which you

25  may be legally entitled.  I will order that you pay any

160

1    medical or dental expenses that you may have incurred

2    while incarcerated in the Chambers County jail.  Did I

3    cover Victims Compensation?

4        All right.  Any applications in that case for

5    probation?

6        MR. MORRIS:  I thought we was applying for probation.

7        THE COURT:  This is sentencing first.  All right,

8    sir.  I will note your application for probation, Mr.

9    McCullough, and that application will be denied.  You

10    have 42 days in which to appeal this conviction.  Do you

11    understand that?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Okay.  I don't necessarily sentence

14    somebody because of their co-defendant.  I do like to

15    keep consistent on some things.  I have to listen to what

16    I heard in this case and make a determination.  Did the

17    co-defendant, was he probated or not probated in this

18    case?

19        MS. NEWSOME:  He was not.  I don't think so.

20        THE COURT:  He got how much?

21        MS. NEWSOME:  24.  But his plea involved all of his

22    pending charges.  This is just these.  Mr. McCullough has

23    just been convicted of these two.

24        THE COURT:  All right.  And count two, theft of

25    property in the second degree conviction.  Do you have

161

1    anything to say before the Court pronounces sentence?

2         THE DEFENDANT:  No, sir.

3         THE COURT:  All right.  Court sentences you to a

4    term of 10 years with the State of Alabama Department of

5    Corrections.  I will run that sentence concurrently with

6    that sentence.  Okay?  The Court will order that you pay

7    court costs to include the cost of your legally appointed

8    attorney.  You will be given credit for any time served

9    in connection with this case that you may be legally

10   entitled.  The Court is going to order that you pay $50

11   to the Victim's Compensation Fund award.  The Court will

12   order that you reimburse the State of Alabama or Chambers

13   County for any medical or dental expense you may have

14   incurred while in jail. All right.  Any application in

15   this case, Mr. Morris?

16        MR. MORRIS:  Apply for probation.

17        THE COURT:  All right.  I will note your application

18   for probation.  I looked at your report.  I will deny

19   that application for probation.  All right?  Anything

20   further in this case?  You have 42 days in which to

21   appeal this case.

22        THE DEFENDANT:  How long if I apply for court

23   docket?  How long have I got to get that?  How long can I

24   receive on my transcripts on the trial?

25        THE COURT:  Well, if they order that and that's

162

1    granted, you know, it depends on what she's doing.  She

2    will have to do the transcript, and it may take awhile to

3    get it, you know.  Anything else?

4         MR. MORRIS:  No, sir.

5         THE COURT:  All right.  Restitution in that one to

6    be announced -- to be determined later.

7         MS. NEWSOME:  It was the same amount.

8         THE COURT:  All right.  Good luck to you.

9                   END OF PROCEEDINGS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

163

1       CERTIFICATE OF COMPLETION OF REPORTER'S TRANSCRIPT

2       IN THE CIRCUIT COURT FOR CHAMBERS COUNTY, ALABAMA

3  STATE OF ALABAMA

4  VS                     Case No. CC-02-189

5  CHRISTOPHER MCCULLOUGH,

6       DEFENDANT.

7        I, MELANIE H. GARNER, OFFICIAL COURT REPORTER FOR

8      THE FIFTH JUDICIAL CIRCUIT OF ALABAMA, HEREBY CERTIFY

9      THAT I HAVE THIS DATE COMLETED AND FILED WITH THE CLERK

10     OF THE TRIAL COURT THE ORIGINAL AND THREE COPIES OF A

11     TRUE AND CORRECT TRANSCRIPT OF ALL THE EVIDENCE AND

12     MATTERS TAKEN IN THE ABOVE-STYLED CAUSE.  ALL PAGES ARE

13     NUMBERED SERIALLY, PREFACED BY AN INDEX AND ENDING WITH

1      THE NUMBER APPEARING AT THE TOP OF THIS CERTIFICATE.

15        I FURTHER CERTIFY THAT A COPY OF THIS CERTIFICATE

16     HAS THIS DATE BEEN SERVED ON THE CLERK OF THE APPELLATE

17     COURT, AND THE ATTORNEY GENERAL, AND COUNSEL FOR THE

18     DEFENDANT.

19        DATED THIS THE 1ST DAY OF MAY, 2003.

20

21

22

23                  MELANIE H. GARNER, CSR, RPR

24                  OFFICIAL COURT REPORTER

25

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

CHRISTOPHER MCCULLOUGH,)
                  )
    PETITIONER,      )
                  )
vs.                )    CASE NO.  3:07-CV-26-MEF
                 )            (WO)
                 )
DANIEL JONES, WARDEN, et al.,)
                 )
    RESPONDENTS.    )

**RESPONDENTS' ANSWER TO PETITION FOR
WRIT OF HABEAS CORPUS**

Come now the Respondents, by and through the Attorney General for the

State of Alabama, and, pursuant to this Court's January 16, 2007 and February 5,

2007 orders, hereby respectfully submit this Answer to the petition for writ of

habeas corpus filed by Christopher McCullough challenging his November 7, 2002

Chambers County Circuit Court convictions of first degree burglary and second

degree theft and their corresponding sentences (Chambers County Circuit Court

CC-02-189).

    The Respondents deny that McCullough is entitled to any relief whatsoever

under the federal writ of habeas corpus.

**PROCEDURAL BACKGROUND**

**A. McCullough's convictions and sentences in Chambers County Circuit Court CC-02-189, and direct appeal**

1.  On November 7, 2002, McCullough was convicted in Chambers County Circuit Court CC-02-189 of the offenses of first degree burglary and second degree theft, violations of Alabama Code (1975) Sections 13A-7-5 and 13A-8-3 respectively, following a jury trial; the jury acquitted McCullough on a charge of second degree receiving stolen property.  Ex. 1A, (C. 42-45, R. 15-152).[1] Chambers County Circuit Court Judge Tom F. Young, Jr. presided over McCullough's trial and sentencing.  Ex. 1A, (R. 1, 155).  The convictions arose from a burglary spree committed by McCullough in and around Lanett, Alabama, and were just two of several convictions of McCullough arising from that spree.[2]

---

[1] The clerk's record and trial transcript of McCullough's jury trial and resulting convictions and sentences -- i.e., the record on appeal from McCullough's direct appeal from these judgments -- are included as Exhibit 1A to the instant Answer.

[2] Though not directly at issue in this petition, it is noted that, in a separate trial, McCullough was convicted on November 14, 2003 of attempted burglary in Chambers County Circuit Court CC-02-318 arising from the same burglary spree, and he currently challenges that conviction and its resulting sentence through his federal habeas petition in McCullough v. Jones, et al., 3:07-CV-71-WHA, filed simultaneously with the instant petition in this Court on December 28, 2006.  As will be discussed below, McCullough appears to have attached a brief supporting his challenge to that November 14, 2003 attempted burglary conviction, rather than the November 7, 2002 burglary and theft convictions, to the instant petition.  See Doc. 2, pp. 1-28.

2

2. On January 7, 2003, the trial court sentenced McCullough pursuant to the Alabama Habitual Felony Offender Act to concurrent terms of fifteen years' imprisonment on the first degree burglary conviction and ten years' imprisonment on the second degree theft conviction. Ex. 1A, (C. 54, 55, R. 155-156).

3. McCullough appealed to the Alabama Court of Criminal Appeals, and, in his Appellant's Brief, submitted the following arguments against his conviction: 1) the trial court erred denying his motion to suppress law enforcement officers' search of a house where certain stolen items were recovered; and, 2) the State failed to corroborate the testimony of a co-conspirator. Ex. 1B (Appellant's Brief 12-19, 20-27). The State submitted an Appellee's Brief arguing for the affirmance of the trial court's judgment. Ex. 1C.

4. The Alabama Court of Criminal Appeals affirmed McCullough's convictions by memorandum opinion in McCullough v. State, CR-02-0943 (Ala. Crim. App. Sep. 19, 2003). Ex. 1D. The Court of Criminal Appeals held that the trial court did not err in denying McCullough's motion to suppress the search of the house because he possessed no standing to object to the search, and further held that McCullough failed to preserve his "uncorroborated testimony" argument for appellate review by failing to first present it to the trial court. Ex. 1D, pp. 1-3. McCullough filed an application for rehearing, which the Court of Criminal Appeals overruled. Exs. 1E, 1F.

5. McCullough then filed a petition for a writ of certiorari in the Alabama Supreme Court, essentially arguing the same claims for relief; McCullough also contended that he had preserved his "uncorroborated testimony" claim. Ex. 1G. The Alabama Supreme Court denied the petition and entered a certificate of judgment on December 12, 2003, and the Court of Criminal Appeals entered a certificate of judgment on the same date. Ex. 1H, 1I. McCullough did not seek certiorari review in the United States Supreme Court.

**B. McCullough's post-conviction proceedings pursuant to Ala.R.Crim.P. Rule 32, and his federal habeas petition dismissed without prejudice by this Court during those proceedings**

6. On March 28, 2004,[3] McCullough filed a petition in Chambers County Circuit Court pursuant to Ala.R.Crim.P. Rule 32 challenging these convictions. Ex. 2A. The petition was erroneously docketed under CC-02-318.60, the case number (with ".60" notation as a Rule 32 petition) for McCullough's November 14, 2003 Chambers County attempted burglary conviction not at issue in the instant habeas petition before this Court, but which, as discussed in Footnote 2 above, McCullough currently challenges in the federal habeas petition in

---

[3] The petition was stamped as filed on March 28, 2004. Ex. 2A. McCullough apparently verified the petition on October 5, 2003, while his direct appeal was still pending; however, it contains no mailing date. As will be shown below, even if the Rule 32 petition were construed as having been filed on October 5, 2003, rather than March 28, 2004, McCullough's instant habeas petition was filed outside of the AEDPA limitation period.

McCullough v. Jones, et al., 3:07-CV-71-WHA.[4]  In the petition, McCullough

merely circled or checked various grounds of relief, without submitting facts or

argument in support of the grounds:  "(3) Conviction obtained by use of evidence

gained pursuant to an unconstitutional search and seizure"; "(7) Conviction

obtained by a violation of the protection against double jeopardy"; "(9) Denial of

effective assistance of counsel."  Ex. 2A.  He also checked the ground alleging

"Newly discovered material facts exist which require that the conviction or

sentence be vacated," and placed stars beside the statements "If the facts had been

known at the time of trial or sentencing, the result would probably have been

different" and "The facts establish that petitioner is innocent of the crime for which

he was convicted or should not have received the sentence that he did."  Id.

7.  The trial court summarily dismissed the petition September 26, 2005.  Ex.

2B.  McCullough did not appeal from the trial court's judgment.  Id.

8.  During the pendency of the aforementioned Rule 32 petition,

McCullough, on June 18, 2004, filed a petition for a writ of habeas corpus in this

Court in McCullough v. Bullard, et al., case number 3:04-cv-631-A, challenging

these convictions.  After the Respondents informed this Court regarding

---

[4]While Alabama state courts typically denote Rule 32 cases with a ".60," ".61,"
etc. added to the original case number, the Chambers County Circuit Court did not
docket a separate casefile for the Rule 32 petition challenging the CC-02-189
conviction; thus, there is no casefile denominated as CC-02-189.60.  It is noted that
the Alacourt.com record for CC-02-318.60 erroneously refers to "attempted
burglary" as the conviction at issue in the March 28, 2004 petition.  See  Ex. 2B.

McCullough's then-pending March 28, 2004 Rule 32 petition, this Court, on

August 18, 2004, dismissed the habeas petition without prejudice to allow him to

exhaust his state court remedies.  Exs. 3A, 3B, 3C.

### C.  The instant petition for habeas corpus

9.  In the instant December 28, 2006 petition before this Court,

McCullough seeks a federal writ of habeas corpus on the following grounds:

> A)   His conviction stemmed from an unlawful search and seizure of
> his 1998 Mustang car; the search arose because of "false allegations
> stating that the hired help saw the co-defendant looking in a window
> with a gun in his hand[,]" which led to his co-defendant telling the
> police that McCullough "had weapons hid in [his] 1998
> Mustang...which they retrieved this day without acquiring a search
> warrant to search my Mustang";

> B)  The State failed to disclose favorable evidence that there was "no
> fingerprints...found anywhere in this residence[,]" which was in
> conflict the "co-defendant's statement...that [McCullough] burglarized
> this residence barehanded";

> C) His trial counsel, Steve Morris, Esq., rendered ineffective
> assistance by failing to object to a videotape evidence of the interior
> of McCullough's car on the ground that it was insufficient
> corroborative evidence;

> D)  His convictions violated his double jeopardy rights because the
> trial court erred in instructing the jury regarding his burglary, theft,
> and receiving stolen property charges.

Doc. 1, pp. 6-7.

10.  While McCullough has attached a handwritten brief to the instant

habeas petition, in that brief he appears to challenge his attempted burglary

conviction that is the subject of his petition in McCullough v. Jones, et al.,

3:07-CV-71-WHA, filed simultaneously with the instant petition in this

Court on December 28, 2006. Doc. 2, pp. 1-28. Thus, the claims asserted in

that brief are not at issue in the instant petition, and are not set forth above as

claims for federal habeas relief from his burglary and theft convictions.[5]

11.  By its January 16, 2007 and February 5, 2007 orders, this Court directed

the Respondents to answer McCullough's petition. Docs. 5-1, 9.

## ARGUMENT

### MCCULLOUGH'S HABEAS PETITION IS UNTIMELY, AND ITS CLAIMS ARE PROCEDURALLY DEFAULTED; ACCORDINGLY, THIS COURT SHOULD DISMISS THE PETITION.

**A. McCullough's petition is time-barred.**

12.  McCullough's petition is barred by the limitation period set forth in the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244

(d)(1).

13.  The AEDPA, which became effective on April 24, 1996, imposes a

one-year statute of limitation on all habeas corpus petitions; "[t]his rule 'serves the

well-recognized interest in the finality of state court judgments' and 'reduces the

---

[5]Because the brief appears to challenge McCullough's attempted burglary
conviction, and was filed on the same date as McCullough's federal habeas petition
filed in McCullough v. Jones, et al., 3:07-CV-71-WHA that challenges the
attempted burglary conviction, the Respondents shall address those claims in their
answer in that case.

potential for delay on the road to finality by restricting the time that a prospective

federal habeas petitioner has in which to seek federal habeas review.'" Drew v.

Department of Corrections, 297 F.3d 1278, 1283 (11th Cir. 2002), citing Duncan

v. Walker, 533 U.S. 167, 179, 121 S. Ct. 2120, 2128 (2001). Title 28 U.S.C. §

2244 (d)(1)(A) provides that the limitation period begins to run on the date that the

time for seeking direct review of the challenged judgment expires. When a

petitioner seeks certiorari review in the Alabama Supreme Court on direct appeal,

but does not seek certiorari review in the United States Supreme Court, the

AEDPA limitation period begins to run ninety days after the Alabama Supreme

Court's entry of its certificate of judgment -- the time within which the petitioner

could have sought certiorari review in the United States Supreme Court, had he

chosen to do so. See Coates v. Byrd, 211 F. 3d 1225 (11th Cir. 2000); Rule 13.1,

Rules of the United States Supreme Court.

    14. The one-year limitation period is subject to statutory tolling under

certain circumstances, such as when a properly filed state court postconviction

petition is pending for review. Goodman v. United States, 151 F. 3d 1335, 1337

(11th Cir. 1998); 28 U.S.C. § 2244 (d)(2). This tolling provision "does not

encompass a period of time in which a state prisoner does not have a 'properly

filed' post-conviction application actually pending in state court." Moore v.

Crosby, 321 F. 3d 1377, 1381 (11th Cir. 2003). "The days when nothing was

pending would count toward the one-year limitation period." <u>Stafford v. Thompson</u>, 328 F. 3d 1302, 1303 (11th Cir. 2003).

15. The filing of a federal habeas petition that is dismissed without prejudice does not toll the AEDPA limitation period. <u>Duncan v. Walker</u>, 533 U.S. 167, 181, 121 S. Ct. 2120, 2129 (2001) ("Tolling the limitation period for a federal habeas petition that is dismissed without prejudice would...create more opportunities for delay and piecemeal litigation without advancing the goals of comity and federalism that the exhaustion requirement serves.").

16. Because McCullough appealed from his convictions to the Court of Criminal Appeals, applied for rehearing in that court, and sought certiorari review in the Alabama Supreme Court -- but did not seek certiorari review in the United States Supreme Court -- his convictions became final for the purposes of calculation of the AEDPA limitation period on March 11, 2004, 90 days after the Alabama Supreme Court's December 12, 2003 certificate of judgment. Ex. 1H.

17. McCullough's <u>Ala.R.Crim.P.</u> Rule 32 petition was stamped as filed in Chambers County Circuit Court on March 28, 2004. Ex. 2A. McCullough's filing of the Rule 32 petition tolled the AEDPA limitation period. <u>Webster v. Moore</u>, 199 F. 3d 1256, 1259 (11th Cir. 2000); 28 U.S.C. § 2244 (d)(2). However, between March 11, 2004 -- the conclusion of his direct appeal proceedings for purposes of the AEDPA limitation period here -- and March 28, 2004, 17 days of

McCullough's one-year limitation period for filing a petition for writ of habeas

corpus under the AEDPA had passed.   As noted above, McCullough's Rule 32

petition was apparently verified on October 5, 2003, and contains no mailing date.

Ex. 2A.  This verification occurred during the pendency of McCullough's direct

appeal.  While a pro se inmate's petition is deemed filed on the date it is delivered

to prison officials for mailing, see Houston v. Lack, 487 U.S. 266, 271-272, 108 S.

Ct. 2379 (1988); see also Ex parte Allen, 825 So. 2d 271, 272 (Ala. 2002) (noting

that "Alabama courts have held that a pro se incarcerated petitioner/appellant is

considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a

writ of certiorari when those documents are given to prison officials for mailing"),

a Rule 32 petition filed during the pendency of a direct appeal is held in abeyance

until the certificate of judgment in the direct appeal. E.g., Rogers v. State  782

So.2d 847, 848 (Ala. Crim. App. 2000);  Barnes v. State, 621 So. 2d 329, 333 (Ala.

Crim. App. 1992).

18.  On September 26, 2005, the trial court denied McCullough's Rule 32

petition. Ex. 2B.  McCullough did not appeal from this judgment within 42 days

as allowed by Ala.R.App.P. Rule 4 (b); thus, the AEDPA limitation period began

to run again on November 7, 2005, the 42nd and final day that the Rule 32

proceeding remained pending in state court.   See Cramer v. Secretary, Dept. of

Corrections, 461 F. 3d 1380, 1384 (11th Cir. 2006) (AEDPA limitation period

tolled for time during which appeal could have been taken from state court's denial of petition for post-conviction relief, regardless whether appeal was taken). McCullough's June 18, 2004 federal habeas petition filed in this Court in McCullough v. Bullard, et al., case number 3:04-cv-631-A, later dismissed without prejudice, did not toll the limitation period. Duncan v. Walker, 533 U.S. at 181, 121 S. Ct. at 2129.

19. After allowing for statutory tolling, and including the 17 days between the conclusion of McCullough's direct appeal and the March 28, 2004 actual filing of his Rule 32 petition, the one year AEDPA limitation period applicable to McCullough's convictions expired on October 21, 2006. McCullough filed the instant petition in this Court on December 28, 2006. Docs. 2, p. 28, 5-1, p. 1. Accordingly, McCullough's petition was filed 68 days outside the one-year AEDPA limitation period. If McCullough's Rule 32 petition is construed as having been filed on the date of its verification (during the pendency of his direct appeal) -- October 5, 2003 -- and the 17 days were not counted against him, McCullough's habeas petition would still be untimely filed 51 days outside of the limitation period.

20. McCullough has shown no "rare and exceptional" circumstances that would entitle him to equitable tolling, "an extraordinary remedy which is typically applied sparingly[,]" to excuse his failure to file within the statutory period.

Arthur v. Allen, 452 F. 3d 1234, 1253 (11th Cir. 2006); Steed v. Head, 219 F. 3d

1298, 1300 (11th Cir. 2000). It is noted that, in his response to his petition's

question regarding why he "did not appeal from the adverse action on any petition,

application or motion," McCullough asserts that he did not receive notice of the

trial court's September 26, 2005 denial of his Rule 32 petition until December 1,

2006:

> "I just received information from the circuit clerk Charles W. Story
> on December 1, 2006 that this petition was denied on September 26,
> 2005 on which time of appeal to the Court of Criminal Appeals and
> the Alabama Supreme Court had lapsed."

Doc. 1, p. 4. This assertion, without more, cannot suffice to support a claim for the

"extraordinary remedy" of equitable tolling. While "[a] lengthy delay between the

issuance of a necessary order and an inmate's receipt of it might provide a basis for

equitable tolling if the petitioner has diligently attempted to ascertain the status of

that order and if the delay prevented the inmate from filing a timely federal habeas

petition[,]" Drew v. Department of Corrections, 297 F. 3d at 1288, McCullough

has made no such showing of due diligence and prejudicial delay. See also

Logreira v. Secretary for the Dept. of Corrections, 161 Fed. Appx. 902 (11th Cir.

2006) (unpublished opinion discussing Drew and the standards for equitable tolling

in such circumstances and finding no error in district court's dismissal of untimely

habeas petition).

21. Accordingly, McCullough's petition is due to be dismissed as untimely, and this Court need look no further for its disposition of the petition.

**B. McCullough's various claims are procedurally defaulted.**

22. Even if McCullough had timely filed the habeas petition, its claims are procedurally defaulted by his failure to exhaust them in the state courts.

23. This Court will not review claims made in a petition for habeas corpus that were not first properly presented to the state courts. "Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court." McNair v. Campbell, 416 F. 3d 1291, 1302 (11th Cir. 2005). 28 U.S.C. § 2254 (b)(1)(A) requires the federal habeas petitioner to first exhaust his remedies in the state court system; this exhaustion requirement is "grounded in the principles of comity and federalism[.]" Henderson v. Campbell, 353 F. 3d 880, 897-898 (11th Cir. 2003). "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731, 111 S. Ct. 2546, 2555 (1991). "The exhaustion doctrine...is now codified at 28 U.S.C. § 2254 (b) (1)[.]" O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).

24. For purposes of exhaustion, the habeas claims must have been presented throughout the state appellate court system. "'[S]tate prisoners must

give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary.'" Pruitt v. Jones, 348 F. 3d 1355, 1358-59 (11th Cir. 2003) (citing Boerckel, 526 U.S. at 845, 119 S. Ct. at 1732-1733. The certiorari review procedure of the Alabama Supreme Court falls within the Boerckel rule. Smith v. Jones, 256 F. 3d 1135, 1140 (11th Cir. 2001). "Under Alabama law, 'one complete round' of review... includes:  (1) filing a petition for certiorari in state circuit court, see Johnson v. State, 729 So. 2d 897, 898 (Ala. Crim. App. 1997); (2) appealing the denial of that petition to the Alabama Court of Criminal Appeals, see Ala.Code § 12-3-9 (2003); Johnson, 729 So. 2d at 898; (3) petitioning the Alabama Court of Criminal Appeals for rehearing, see Ala.R.App.P. 39(c)(1); and (4)  seeking discretionary review in the Alabama Supreme Court, see Ala.R.App.P. 39 (c)." Dill v. Holt, 371 F. 3d 1301, 1303 (11th Cir. 2004).

25.  As noted above, in the instant December 28, 2006 petition before this Court,  McCullough argues that he is entitled to federal habeas relief on the following grounds:

> A)   His conviction stemmed from an unlawful search and seizure of his 1998 Mustang car; the search arose because of "false allegations stating that the hired help saw the co-defendant looking in a window with a gun in his hand[,]" which led to his co-defendant telling the police that McCullough "had weapons hid in [his] 1998

Mustang...which they retrieved this day without acquiring a search warrant to search my Mustang";

B) The State failed to disclose favorable evidence that there was "no fingerprints...found anywhere in this residence[,]" which was in conflict the "co-defendant's statement...that [McCullough] burglarized this residence barehanded";

C) His trial counsel, Steve Morris, Esq., rendered ineffective assistance by failing to object to a videotape evidence of the interior of McCullough's car on the ground that it was insufficient corroborative evidence;

D) His convictions violated his double jeopardy rights because the trial court erred in properly instructing the jury regarding his burglary, theft, and receiving stolen property charges.

Doc. 1, pp. 6-7.

26. McCullough did not raise these claims during his direct appeal proceedings, and further did not raise these claims in his Rule 32 petition. See Exs. 1B, 1D, 1E, 1G, 2A. While McCullough now alleges that he did not receive timely notice of the trial court's denial of his Rule 32 petition, and did not appeal from that judgment for this reason, see Doc. 1, p. 4, any alleged lack of notice would be of no consequence to his exhaustion of his federal habeas claims because he did not raise these claims in the Rule 32 petition; thus, an appeal from that judgment could not have exhausted the habeas claims he now asserts in this Court See Ex. 2A. "The rule that '[r]eview on appeal is limited to review of any questions properly and timely raised at trial,' is often repeated by the Alabama

courts." <u>Smelcher v. Attorney Gen. of Alabama</u>, 947 F. 2d 1472, 1477 n. 7 (11th

Cir. 1991).

27. McCullough's procedurally defaulted habeas claims are not capable of

further presentation to the state courts via <u>Ala.R.Crim.P.</u> Rule 32 because they

would stem from an untimely, successive petition, and because they could have

been raised at trial or on direct appeal. <u>Ala.R.Crim.P.</u> Rules 32.2 (a)(3), (a)(5), (b),

(c). Further, McCullough has not shown cause and actual prejudice arising from

an alleged violation of federal law, nor has he shown a resulting fundamental

miscarriage of justice if this Court does not consider the merits of the claims. <u>E.g.</u>,

<u>Schlup v. Delo</u>, 513 U.S. 298, 320, 115 S. Ct. 851, 864, 130 L. Ed. 2d 808 (1995).

## CONCLUSION

For the foregoing reasons, this Court should dismiss McCullough's petition

for writ of habeas corpus.

Respectfully submitted,

Troy King(KIN047)
Attorney General
By:


/s/Marc A. Starrett
Marc A. Starrett
Assistant Attorney General
ID #STARM1168

16

# EXHIBITS

EXHIBIT 1A:   Record on appeal in McCullough's first degree burglary and second degree theft convictions, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-9443   **(SUBMITTED BY CONVENTIONAL, RATHER THAN ELECTRONIC, MEANS DUE TO LENGTH )**

Exhibit 1B:  McCullough's Appellant's Brief, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1C:  State of Alabama's Appellee's Brief, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1D:   Alabama Court of Criminal Appeals' September 19, 2003 memorandum opinion affirming the trial court's judgment, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1E: McCullough's application for rehearing, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1F:   Alabama Court of Criminal Appeals' order overruling McCullough's application for hearing, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-9443

Exhibit 1G:  McCullough's petition for a writ of certiorari in the Alabama Supreme Court, <u>Ex parte McCullough (v. State)</u>, Alabama Supreme Court No. 1030153

Exhibit 1H:  Alabama Supreme Court's December 12, 2003 order and certificate of judgment denying McCullough's petition for a writ of certiorari, Alabama Supreme Court, <u>Ex parte McCullough (v. State)</u>, No. 1030153 (Ala. Dec. 12, 2003)

Exhibit 1I:  Alabama Court of Criminal Appeals' December 12, 2003 certificate of judgment, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-0943 (Ala. Crim. App. Dec. 12, 2003).

Exhibit 2A:  McCullough's March 28, 2004 <u>Ala.R.Crim.P.</u> Rule 32 petition, <u>McCullough v. State</u>, Chambers County Circuit Court CC-02-318.60 (challenging judgment in CC-02-189)

## EXHIBITS (continued)

Exhibit 2B:  Alacourt.com SJIS database record of <u>McCullough v. State</u>, Chambers County Circuit Court CC-02-318.60 (challenging judgment in CC-02-189)

Exhibit 3A:  This Court's Recommendation regarding McCullough's first federal habeas petition, <u>McCullough v. Bullard, et al.</u>, case number 3:04cv631-A

Exhibit 3B:  Judge Albritton's order dismissing McCullough's first federal habeas petition, <u>McCullough v. Bullard, et al.</u>, case number 3:04cv631-A

Exhibit 3C:  Judge Albritton's final judgment dismissing McCullough's first federal habeas petition, <u>McCullough v. Bullard, et al.</u>, case number 3:04cv631-A

18

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of February, 2007, I electronically filed the foregoing, excluding Exhibit 1A which is filed by hand delivery on today's date, with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document with all exhibits to the following non-CM/ECF participant:

CHRISTOPHER MCCULLOUGH, AIS # 174909
Inmate, Donaldson Correctional Facility
100 Warrior Lane
Bessemer, Alabama  35023

/s/Marc A. Starrett
Marc A. Starrett (STARM1168)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 242-2848
E-Mail:  MStarrett@AGO.State.Al.US

ADDRRESS  OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama  36130-0152
(334) 242-7300

229407