IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 FEB 13  P 3: 35

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| CHRISTOPHER MCCULLOUGH,) | |
| PETITIONER, ) | |
| vs. ) | **CASE NO.  3:07-CV-26-MEF** |
| ) | **(WO)** |
| DANIEL JONES, WARDEN, et al., ) | |
| RESPONDENTS. ) | |

## NOTICE OF CONVENTIONAL SUBMISSION OF EXHIBITS

Come now the Respondents, by and through the Attorney General for the

State of Alabama, and hereby respectfully submit to this Court, in paper form,

Exhibit 1A to the Respondents' Answer.  This exhibit is submitted in this manner,

rather than by electronic filing, due to its length.  The remaining exhibits to the

Respondents' Answer are electronically filed on today's date.

Respectfully submitted,

Troy King(KIN047)
Attorney General
By:

Marc A. Starrett
Assistant Attorney General
ID #STARM1168

# EXHIBIT:

**EXHIBIT 1A:**  Record on appeal in McCullough's first degree burglary and second degree theft convictions, <u>McCullough v. State</u>, Alabama Court of Criminal Appeals CR-02-9443

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of February, 2007, I filed the instant

document and Exhibit 1A with the Clerk of the Court by hand delivery, and hereby

certify that I have mailed by United States Postal Service the document to the

following:

CHRISTOPHER MCCULLOUGH, AIS # 174909
Inmate, Donaldson Correctional Facility
100 Warrior Lane
Bessemer, Alabama  35023

Marc A. Starrett (STARM1168)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 242-2848
E-Mail:  MStarrett@AGO.State.Al.US

ADDRRESS  OF COUNSEL;

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama  36130-0152
(334) 242-7300

# EXHIBIT
# 1

## Court of Criminal Appeals No. *CR-02-0943*

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
### FROM
## CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

### Circuit Court Case Number: CC 2002-189
### Circuit Judge: Honorable TOM YOUNG

Type of Conviction / Order Appealed From:   State Conviction

Sentence Imposed: 10 YEARS / 15 YEARS CONCURRENTLY

Defendant Indigent: _X_ YES   _ NO

## CHRISTOPHER C. MCCULLOUGH
NAME OF APPELLANT

### HON. STEVEN MORRIS
APPELLANT'S ATTORNEY                  (TELEPHONE NO.)

P.O. BOX 814
ADDRESS

WEDOWEE                ALABAMA              36251

CITY                   STATE                ZIP CODE



**v.**

## STATE OF ALABAMA
NAME OF APPELLEE

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
Name and address of municipal attorney below.

(For Court of Criminal Appeals use only)



EXHIBIT
1A

COUR OF CRIMINAL APPEALS
APPEAL FROM CHAMBERS COUNTY
CC 2002-189
CHRISTOPHER CORNELIUS MCCULLOUGH
INDEX

| | PAGES |
|---|---|
| | 001 |
| AFFIDAVIT AND WARRANT OF ARREST | 003 |
| ORDER ON INITIAL APPEARANCE | 004 |
| ADVICE OF RIGHTS, INITIAL APPEARANCE | 005 |
| LETTER TO FRANK PATTERSON | 006 |
| ORDER, PRELIMINARY HEARING | 007 |
| ORDER, APPOINTING NEW ATTORNEY | 008 |
| ORDER, AFTER PRELIMINARY HEARING | 009 |
| DISTRICT COURT CASE ACTION SUMMARY SHEET | 011 |
| AFFIDAVIT AND WARRANT OF ARREST | 013 |
| ORDER ON INTIAL APPEARANCE | 014 |
| ADVICE OF RIGHTS | 015 |
| LETTER TO FRANK PATTERSON | 016 |
| ORDER, SCHEDULING PRELIMINARY HEARING | 017 |
| APPOINTMENT OF ATTORNEY | 018 |
| ORDER, WAIVING PRELIMINARY HEARING | 019 |
| ORDER, APPOINTING ATTORNEY | 020 |
| CASE ACTION SUMMARY SHEET | 022 |
| AFFIDAVIT AND WARRANT OF ARREST | 024 |
| ORDER ON INTIAL APPEARANCE | 025 |
| ADVICE OF RIGHTS | 026 |
| LETTER TO PATTERSON | 027 |
| ORDER, SCHEDULING PRELIMINARY HEARING | 028 |
| ORDER, APPOINTING NEW ATTORNEY | 029 |
| ORDER, WAIVING PRELIMINARY | 030 |
| CASE ACTION SUMMARY SHEETS | 032 |
| GRAND JURY INDICTMENT | 034 |
| PLEA OF NOT GUILTY AND WAIVER OF TRIAL | 035 |
| REQUEST FOR DISCOVERY BY STATE | 036 |
| MOTION FOR DISCOVERY BY DEFENDANT | 038 |
| DEFENDANT'S MOTION IN LIMINE | 040 |
| EXHIBITS | 042 |
| JURY GUILTY VERDICT | 045 |
| VERDICT ORDER | 046 |
| PRE-SENTENCE INVESTIGATION | 053 |
| CASE ACTION SUMMARY | 057 |
| PRO-SE NOTICE OF APPEAL | 058 |
| CLERK'S NOTICE OF APPEAL | |
| REPORTERS TRANSCRIPT NUMBERED PAGES | R-1 THROUGH 163 |

# AFFIDAVIT
### AND
# WARRANT OF ARREST

Warrant Number 147

Case Number 020300272

State of Alabama
Unified Judicial System

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

**AFFIDAVIT**

Before me, Judge/Magistrate of the District Court of Chambers County, personally appeared this

day _____ JOHN BURTON

and made oath that he/she has probable cause for believing and does believe, that in said State and

County, before the filing of this complaint, _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)

whose name is not known to the affiant, other than is stated, did, On or about MARCH 13, 2002

did knowingly obtain or exert unauthorized control over : Colt King Cobra .357, Smith & Wesson 6906 .9mm, Ruger 1022

rifle, and a Browning 12ga. shotgun, assorted change, assorted knives, the property of John Burton of the value in excess of $1000 (one thousand dollars), with

the intent to deprive the owner of said property, in violation of 13A-8-3 of the Code of Alabama, against the peace and dignity

of the State of Alabama.

in violation of Section/Ordinance number .13A-8-3                    / 18-1

which said offense was committed against the peace and dignity of the State of Alabama.

AFFIANT _____

ADDRESS 7146 Country Club Rd. Lanett, Al. 36863

TELEPHONE NUMBER 642-0904

Sworn to and subscribed before me this

3 - 19                         20 02

_____
Judge/Magistrate

**WARRANT OF ARREST**

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

Complaint on oath having been made before me that the offense of

THEFT OF PROPERTY 1ST

has been committed and accusing _____ CHRISTOPOHER CORNELIUS MCCULLOUGH (ALIAS)

with committing the same, you are therefore commanded forthwith to arrest said                    and bring him/he

CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)

before the District Court of Chambers County to answer said charge.

Witness my hand this ___ 3 - 19 ___ 20 02

_____
Judge/Magistrate

STATE'S WITNESSES

DISPOSITION OF CASE

# The State of Alabama
## Chambers County

# WARRANT

THE STATE OF ALABAMA
vs.

CHRISTOPHER CORNELIUS MCCULLOUGH

(ALIAS)

CHARGE:

THEFT OF PROPERTY 1

OFFICER'S RETURN

I have executed this writ by arresting the defendant and committing him/her to jail or allowing him/her to give bond.

This ___19th___ day of ___March___

20 _07_

_____, Sheriff

_____, Deputy Sheriff

DESCRIPTION OF DEFENDANT

Driver's License No. _____NONE_____

Social Security No. _____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_____

Race _____black_____ Sex _____MALE_____

Weight _____5-11_____ Weight _____155_____

Hair Color _____black_____

Eye Color _____BROWN_____ Complexion _____MED_____

Age _____29_____ Date of Birth _____11/27/72_____

Scars or Marks _____

Peculiarities _____

Lives 604 S. 1st AVE. LANETT, AL. 36863

Works _____

Married _____ Single _____

Number of Dependents _____

VPD Case No. _____

☐ Warrant ☐ Writ ☐ Summons
☐ Given To Defendant
03-19-2007

State of Alabama
Unified Judicial System

# ORDER
# ON INITIAL APPEARANCE

Case Number
_DC-02-200-147_
_177_
_148_

Form C-80    Rev. 8/2000

COURT OF _Chambers_ , ALABAMA
(Name of County or Municipality)

IN THE _Dist_ (Circuit, District or Municipal)

☐ STATE OF ALABAMA    _State_    v. _Christopher C. McCollough_
☐ MUNICIPALITY OF _____    Defendant

_Burg 1°_
_Theft 1°_

The above-named defendant, charged with the criminal offense(s) of _B ct Burg 1° Attempt Burg 1°_ , at _2:45_ o'clock _p_.m., was duly brought before the Court for initial appearance on _3/20/02_ , whereupon the Court did the following, as checked in the appropriate blocks:

_Theft 1°_
_Theft 1°_

(CHECK AS APPLICABLE):

☑ 1. Name and address of defendant.
    ✓ (a) Ascertained the true name and address of the defendant to be:
    _604 S. Foot Ave_
    _Lanett, Alabama_
    _____ (b) Amended the formal charges to reflect defendant's true name.
    _____ (c) Instructed the defendant to notify the Court promptly of any change of address.

☑ 2. Informed the defendant of the charges against him/her and ensured that the defendant was served with a copy of the charges.

☐ 3. Informed the defendant of the right to be represented by counsel, that he/she would be afforded time and opportunity to retain an attorney, and further advised the defendant that, if he/she were indigent and unable to obtain counsel, an attorney would be appointed by the Court to represent him/her. If requested counsel, defendant ☐ was Defendant ☐ requested    ☐ did not request court-appointed counsel. If requested counsel, defendant ☐ was ☐ was not given a copy of the Affidavit of Substantial Hardship to complete in order for indigency to be determined.

☑ 4. Informed the defendant that he/she had the right to remain silent and that anything that he/she said could be use against him/her.

☑ 5. Bail
    _____ (a) Determined that the defendant shall not be released from custody since charged with a non-bailable capital offense.
    ✓ (b) Determined that the defendant shall be released from custody pending further proceedings, subject to the mandatory conditions prescribed in Rule 7.3(a), A.R.Cr.P., and subject to the following additional conditions:
        1.) Execution of an appearance bond (recognizance) in the amount of $ _____
        2.) Execution of a secured appearance bond in the amount of $ _100,000_
        _100,000_
        3.) Other conditions (specify) _100,000_
        _50,000_
        _350,000_

☐ 6. If charged with a felony offense, informed the defendant of right to demand a preliminary hearing under Rule 5.1, A.R.Cr.P., and of the procedure by which that right may be exercised.

☐ 7. If charged with a felony offense a preliminary hearing was demanded with 30 days of date of arrest by the above named defendant, set a preliminary hearing to be held in the District Court of _____ (date) at _____ o'clock _____.m. an _____
    _____ (a) Notified the District Court that such demand was made.
    ✓ (b) Defendant made no demand for a preliminary hearing at the initial appearance hearings.

☑ 8. Other: _B has prior conviction - failure to appear._

_3/20/02_
Date

Judge/Magistrate

ADVICE OF RIGHTS ON INITIAL APPEARANCE
BEFORE JUDGE OR MAGISTRATE
(Felony)

Case Number
_OX_-02-204,
204-127
202-146

_of Alabama_
_..dicial System_     11/91

COURT OF _Chambers_, ALABAMA

_District_
(Circuit, District, or Municipal)

(Name of County or Municipality)

THE

STATE OF ALABAMA     _State_     v. _Christopher C. McCullough_
MUNICIPALITY OF                                        Defendant

This is a first appearance hearing. You are charged with committing the offense(s) of _Attempted Burglary 1°_
_In this court in violation of_
_Theft 1° / Burglary 1° / Burglary 1° / Theft 1° / Order of a Weapon / Attempt 1° 1975, as amended_. The primary purpose of this hearing is
to ensure that you know and understand the charge or charges against you. At this hearing, there will be no determination made
about your guilt or innocence of the crime charged, but only a determination that you know and understand the charge or
charges against you. If you are before the court on a complaint following a warrantless arrest, the judge or magistrate will
determine whether there is probable cause for the charge against you.

In addition, the purpose of this hearing is to determine whether bail should be set in your case; or, if it has been already
set, if it should remain the same, be raised, be lowered, or whether you should be released upon your personal recognizance
(that is, your promise to appear for future court proceedings) or released in the custody of some responsible person. In order
to make this determination, it will be necessary for the judge or magistrate to ask you some questions concerning your ties with
the community.

You are entitled to be represented by an attorney. You have a right to have your own attorney and will be given time
and opportunity to retain an attorney. If you are unable to afford an attorney, one will be appointed for you by the court if you
qualify for such representation. It will be necessary for you to complete an indigency questionnaire under oath in order for the
court to make this determination.

You have a right to talk with your attorney, family, or friends and, if necessary, reasonable means will be provided in
order to enable you to do so. You have the right to remain silent. Anything that you say may be used against you.

Because you are charged with a felony, you are entitled to demand a preliminary hearing before a judge or magistrate
to determine whether there is sufficient evidence to establish that you probably committed the offense or offenses with which
you are charged. You must make this demand with thirty (30) days of the date of arrest. If a hearing is demanded and one is
conducted, and if, at the conclusion of the preliminary hearing, the judge finds that sufficient evidence has been shown to
establish that you probably committed the offense or offenses with which you are charged, the judge will then bind you over for
further action by a grand jury. If, on the other hand, the judge finds that the evidence is insufficient to establish that you probably
committed the crime or crimes charged, then the judge will dismiss the charge and discharge you from further custody or pre-
trial obligations subject to the right of the prosecution to reinstate the charges against you at a later time.

If you are released from custody (whether personal recognizance or otherwise), you must:
1) Appear to answer and submit to all orders and process of the court having jurisdiction in the case.
2) Refrain from committing any criminal offense.
3) Not depart from the State of Alabama without the leave of the court having jurisdiction of this case.
4) Promptly notify the court of any change of address or the phone number.
5) Other conditions: _Cannot leave Chilton City info within permit of the_
_court._

The provisions of the Release Order may be revoked or modified by the court for cause. The Release Order and any
appearance bond executed in compliance with it will continue in force and effect until the dismissal, acquittal, or conviction on
the charges, unless sooner revoked or modified by the court. Upon report of a violation of any of the above conditions, a
warrant for your arrest will be issued.

_3/20/02_                                        _J Halley_
Date                                              Judge/Magistrate

I have read or have been advised of the matters herein set forth. I understand the explanation of procedures, rights,
and information given to me at the initial court appearance. I understand the conditions of my release and the penalties
applicable in the event that I violate any conditions imposed herein. I also understand that failure to appear as required may
subject me to additional charges in the revocation of release.

_Chris McCulley_
_3/20/02_                                        Defendant
Date





## Joel G. Holley

District Judge
Chambers County
Lafayette, Alabama 36862

Lafayette (334) 864-4323
Valley 586-8223

Chambers County
Courthouse

MARCH 28, 2002

HON. FRANK PATTERSON
ATTORNEY AT LAW
POST OFFICE BOX 1001
LANETT, ALABAMA   36863

Case No.
DC-02-182      BURG 1ST
DC-02-183      TOP 1ST
DC-02-200146   ATT.BURG1ST
DC-02-200147   TOP 1ST
DC-02-200148   BURG 1ST

RE:  CHRISTOPHER MCCULLOUGH

Dear:  HON. FRANK PATTERSON;

The criminal defendant referred to is in jail, unable to make bond, and has been declared indigent by the Court.  You are appointed to represent said Defendant in all matters pending before the District Court. Please complete this enclosed form and return it to my office promptly.  Since the Defendant is in jail unable to make bond, please promptly make contact and proceed with the case.

If you have a conflict, please respond in writing in motion form.  If not you will be entered of record as appointed counsel.

Thank you for accepting this appointment.  This is a service to the Bar and the Court.  It will help keep the dockets moving and make sure all criminal defendants are represented by counsel.

Sincerely,

Joel A. Holley /bT

Joel G. Holley
District Judge

JGH/bt
Enclosure

Cc:  Clerk's Office
     Defendant

005

STATE OF ALABAMA
PLAINTIFF

VS.

CHRISTOPHER MCCULLOUGH
DEFENDANT

IN THE DISTRICT COURT OF

CHAMBERS COUNTY, ALABAMA

CASE NO.   DC-02-182
           DC-02-183
           DC-02-200146
           DC-02-200147
           DC-02-200148

O R D E R

UPON CONSIDERATION OF DEFENDANT'S MOTION FOR A PRELIMINARY
HEARING, IT IS ORDERED THAT A PRELIMINARY HEARING BE AND IS
HEREBY SCHEDULED ON THE ___19TH___ DAY OF _____APRIL_____, 2002
AT 10:00 A.M. C.T.

AT LAFAYETTE, THIS THE __3RD__ DAY OF _____APRIL_____, 2002.

_____
JOEL G. HOLLEY, DISTRICT JUDGE

FILED IN OFFICE THIS

APR 3 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

CC:  HON. FRANK PATTERSON, DEFENDANT'S ATTORNEY
     HON. BILL LISENBY, ASSISTANT DISTRICT ATTORNEY
     CHAMBERS COUNTY DETENTION FACILITY

IN THE DISTRICT COURT OF CHAMBERS COUNTY                    007

CITY OF LANETT                          *
                                        *
        Plaintiff                       *      CASE NO. DC-02-146
                                        *               DC-02-182
                                        *               DC-02-183
                                        *               DC-02-147
                                        *               DC-02-148
        v.                              *               DC-02-164
                                        *               DC-02-178
CHRISTOPHER MCCULLOUGH                   *               DC-02-179
                                        *
        Defendant                       *

## ORDER

A Preliminary Hearing was set April 19, 2002 for Mr. Christopher McCullough.

The Hon. Frank Patterson was appointed as council.  Because of a conflict with Mr.

Patterson, he has been relieved of his duties and the Hon. Steve Morris is appointed to

represent the Defendant Christopher McCullough.

At LaFayette, this 19th day of April, 2002.

                                    _____
                                    Judge Joel G. Holley, District Court

                                    _____
                                    Hon. Steve Morris

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

008

IN THE DISTRICT COURT OF CHAMBERS COUNTY

*State of Alabama*

CITY OF LANETT

    Plaintiff

    v.

CHRISTOPHER MCCULLOUGH

    Defendant

```
*
*
*
*
*
*
*
*
*
*
*
*
```

CASE NO. DC-02-146
DC-02-182
DC-02-183
DC-02-147
DC-02-148
DC-02-164
DC-02-178
DC-02-179

## ORDER

Preliminary Hearing called. Defendant present and counsel Hon. Steve Morris. The Defendant stated he wanted to waive all Preliminary Hearing in all cases. The Court explained the purpose of said hearing and that his counsel was prepared. Still, Defendant wanted to waive. Counsel appeared.

Cases are bound over to the Grand Jury. Bonds to remain the same.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

```
                                                           CASE: DC 2002~200147.00
              ALABAMA JUDICIAL INFORMATION SYSTEM            RUN DATE: 03/20/2002
ACRO370                    CASE ACTION SUMMARY
OPER: MAF                DISTRICT   CRIMINAL                        JUDGE: JGH
AGE:  1
IN THE DISTRICT COURT OF CHAMBERS        VS    MCCULLOUGH CHRISTOPHER C
                                               604 S 1ST AVE
CITY OF LANETT
                                               LANETT, AL  36863  0000
CASE: DC 2002 200147.00
                     SEX: M  RACE: B  HT: 5 11  WT: 155   HR:      EYES:
DOB: 11/27/1972    ALIAS NAMES:
SSN: 416114328                     CODE01: TOP1  LIT: THEFT OF PROP  TYP: F #: 001
CHARGE01: THEFT OF PROP 1ST              AGENCY/OFFICER: AST4300 L WHALE
OFFENSE DATE:
                                         DATE ARRESTED: 03/19/2002
DATE WAR/CAP ISS:                        DATE   FILED: 03/20/2002
DATE   INDICTED:                         DATE HEARING:
DATE  RELEASED:           $.00              SURETIES:
        BOND AMOUNT:
                                          TIME: 0000
DATE 1:           DESC:                   TIME: 0000
DATE 2:           DESC:
                                 /                    /
TRACKING NOS:                        TYPE:                         TYPE:

    DEF/ATY:                                                 00000
                          00000
                                 00000

PROSECUTOR:
                                                   GRAND JURY:
                                                             OPER: MAF
TH CSE:  000000000000 CHK/TICKET NO:    000000000
COURT REPORTER:             SID NO:                              OPE
DEF STATUS: JAIL            DEMAND:                              MAF
    TRANS DATE   ACTIONS, JUDGEMENTS, AND NOTES        (AR01)    MAF
                 ASSIGNED TO: (JGH) JOEL G. HOLLEY     (AR01)    MAF
 03/20/2002   |  INITIAL STATUS SET TO: "J" - JAIL     (AR01)    MAF
 03/20/2002   |  FILED ON: 03/20/2002                  (AR01)    MAF
 03/20/2002   |  DEFENDANT ARRESTED ON: 03/19/2002     (AR01)    MAF
 03/20/2002   |  CHARGE 01: THEFT OF PROP 1ST/#CNTS: 001 (AW21)  MAF
 03/20/2002   |  PARTY ADDED  W001  JOHN BURTON        (AR08)    MAF
 03/20/2002   |  CASE ACTION SUMMARY PRINTED           (AR08)    MAF
 03/20/2002   |  CAS ATTACHMENT PRINTED                (AR08)
```

| | |
|---|---|
| 3/20/02 | Initial appearance - Bond - set @ 25,000 JGH |
| 3/25/02 | Affidavit of Substantial Hardship & Order - Hon. F. Patterson |
| 4/3/02 | Motion for Pre-Lim |
| 4/3/02 | Order - Pre-Lim set for 4/19/02 |
| 4/19/02 | Order - Hon Frank Patterson relieved of duties and Hon. Steve Morris is hereby appointed as counsel |
| 4/19/02 | Order - Pre-Lim waived; case bound over to Grand Jury |

ALABAMA JUDICIAL INFORMATION CENTER

ACRO369  A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: DC 2002 200147.00
JUDGE ID:   JGH

CITY OF LANETT                          VS    MCCULLOUGH CHRISTOPHER C

ACTION, JUDGMENTS, CASE NOTES

| DATE | |
|------|--|

Warrant Number 011
146

# AFFIDAVIT
## AND
# WARRANT OF ARREST

State of Alabama
Unified Judicial System

Case Number
020300375

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

THE STATE OF ALABAMA
CHAMBERS COUNTY

## AFFIDAVIT

Before me, Judge/Magistrate of the District Court of Chambers County, personally appeared this

day _____ and made oath that he/she has probable cause for believing and does believe, that in said State and

DET. LINCOLN WHALEY

County, before the filing of this complaint, _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)

whose name is not known to the affiant, other than is stated, did, On or about MARCH 19, 2002

did with intent to commit the crime of Burglary 1st Degree (13A-7-5 of the Code of Alabama) attempt to commit said offense

OF MIKE GRACE

by going to the residence armed with a Smith & Wesson .9mm to commit Burglary 1st Degree, in violation of 13A-4-2 of the

Code of Alabama, against the peace and dignity of the State of Alabama.

/ 18-1

in violation of Section/Ordinance number   13A-4-2

which said offense was committed against the peace and dignity of the State of Alabama.

AFFIANT

ADDRESS 401 N. Lanier Ave. 36863

TELEPHONE  NUMBER 644-5227

Sworn to and subscribed before me this

3-19       20 02

Judge/Magistrate

## WARRANT OF ARREST

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

THE STATE OF ALABAMA
CHAMBERS COUNTY
TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

Complaint on oath having been made before me that the offense of

ATTEMPTED BURGLARY 1

CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)

has been committed and accusing _____

with committing the same, you are therefore commanded forthwith to arrest said

and bring him/her

CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS)

before the District Court of Chambers County to answer said charge.

Witness my hand this _____ 3-19 _____ 20 02

Judge/Magistrate

AFFIDAVIT AND WARRANT

012

STATE'S WITNESSES

_____
_____
_____
_____
_____
_____
_____

DISPOSITION OF CASE

_____
_____
_____
_____
_____
_____

# The State of Alabama
## Chambers County

# WARRANT

THE STATE OF ALABAMA
vs.

CHRISTOPHER CORNELIUS MCCULLOUGH

_____

(ALIAS)

_____
_____

CHARGE:

ATTEMPTED BURGLARY 1

_____

OFFICER'S RETURN

I have executed this writ by arresting the
defendant and committing him/her to jail or allow-
ing him/her to give bond.

This _13th_ day of _March_

20 _05_                    _____, Sheriff

_____, Deputy Sheriff

_____ Police Officer

DESCRIPTION OF DEFENDANT

_e No. _____ NONE

_y No. _____ 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

black _____ Sex _MALE_  Weight _155_

_____ black

_____ BROWN _____ MED

_____ Complexion _____

_irth _____ 11/27/72

_arks _____

S. lst AVE. LANETT, AL. 36863

_____ Single _____

_of Dependents _____

_se No. _____

_arrant ☐ Writ ☐ Summons
Given To Defendant
_0379    B-3-02    ID# _/07_

013

State of Alabama
Unified Judicial System

Form C-80    Rev. 8/2000

**ORDER
ON INITIAL APPEARANCE**

Case Number
*CC-02-200-147*
*172*
*148*

IN THE ___*Dist*___ COURT OF ___*Chambers*___, ALABAMA
        (Circuit, District or Municipal)        (Name of County or Municipality)

☐ STATE OF ALABAMA        ___*State*___    v. ___*Christopher C. McCollough*___
☐ MUNICIPALITY OF _____                    **Defendant**

The above-named defendant, charged with the criminal offense(s) of *3 ct Burg 1° Attempt Burg 1°* o'clock *p*.m., was duly brought before the Court for initial appearance on *3/20/02*, at *2:45* whereupon the Court did the following, as checked in the appropriate blocks:

*Theft 1°*
*Theft 1°*

**(CHECK AS APPLICABLE):**

☑ 1. Name and address of defendant.
   ✓ (a) Ascertained the true name and address of the defendant to be:
      *604 School Ave*
      *Smith, Alabama*
   ____ (b) Amended the formal charges to reflect defendant's true name.
   ____ (c) Instructed the defendant to notify the Court promptly of any change of address.

☑ 2. Informed the defendant of the charges against him/her and ensured that the defendant was served with a copy of the charges.

☐ 3. Informed the defendant of the right to be represented by counsel, that he/she would be afforded time and opportunity to retain an attorney, and further advised the defendant that, if he/she were indigent and unable to obtain counsel, an attorney would be appointed by the Court to represent him/her. If requested counsel, defendant ☐ was Defendant ☐ requested ☐ did not request court-appointed counsel. ☐ was not given a copy of the Affidavit of Substantial Hardship to complete in order for indigency to be determined.

☑ 4. Informed the defendant that he/she had the right to remain silent and that anything that he/she said could be use against him/her.

☑ 5. Bail
   ____ (a) Determined that the defendant shall not be released from custody since charged with a non-bailable capital offense.
   ✓ (b) Determined that the defendant shall be released from custody pending further proceedings, subject to the mandatory conditions prescribed in Rule 7.3(a), A.R.Cr.P., and subject to the following additional conditions:
      ____ 1.) Execution of an appearance bond (recognizance) in the amount of $ _____.
      ____ 2.) Execution of a secured appearance bond in the amount of $ *100,000*
                                                                        *100,000*
      ____ 3.) Other conditions (specify) _____ *100,000*
                                                            *50,000*
      _____ *50,000*

☐ 6. If charged with a felony offense, informed the defendant of right to demand a preliminary hearing under Rule 5.1, A.R.Cr.P., and of the procedure by which that right may be exercised.

☐ 7. If charged with a felony offense a preliminary hearing was demanded with 30 days of date of arrest by the above named defendant, set a preliminary hearing to be held in the District Court of _____,
    an _____ (date) at _____ o'clock ____.m.
   ____ (a) Notified the District Court that such demand was made.
   ____ (b) Defendant made no demand for a preliminary hearing at the initial appearance hearings.

☑ 8. Other: *D has prior conviction - risk to abscond.*

_____

014

## ADVICE OF RIGHTS ON INITIAL APPEARANCE
## BEFORE JUDGE OR MAGISTRATE
### (Felony)

State of Alabama
Unified Judicial System

Form C-81        11/91

Case Number
*OC-02-2001,*
*20-127*
*202-148*

IN THE _____ *District* _____ COURT OF _____ *Chambers* _____ ALABAMA
(Circuit, District, or Municipal)        (Name of County or Municipality)

☑ STATE OF ALABAMA        *State*
☐ MUNICIPALITY OF _____        v. *Christopher C. McCullough*
                                                    Defendant

This is a first appearance hearing. You are charged with committing the offense(s) of *Attempted Burglary 1°* in this court in violation of *Theft 1° / Burglary 1° - / Theft 1°.* _____ . The primary purpose of this hearing is *Color of a claim — Theft, on account.*
to ensure that you know and understand the charge or charges against you. At this hearing, there will be no determination made about your guilt or innocence of the crime charged, but only a determination that you know and understand the charge or charges against you. If you are before the court on a complaint following a warrantless arrest, the judge or magistrate will determine whether there is probable cause for the charge against you.

In addition, the purpose of this hearing is to determine whether bail should be set in your case; or, if it has been already set, if it should remain the same, be raised, be lowered, or whether you should be released upon your personal recognizance (that is, your promise to appear for future court proceedings) or released in the custody of some responsible person. In order to make this determination, it will be necessary for the judge or magistrate to ask you some questions concerning your ties with the community.

You are entitled to be represented by an attorney. You have a right to have your own attorney and will be given time and opportunity to retain an attorney. If you are unable to afford an attorney, one will be appointed for you by the court if you qualify for such representation. It will be necessary for you to complete an indigency questionnaire under oath in order for the court to make this determination.

You have a right to talk with your attorney, family, or friends and, if necessary, reasonable means will be provided in order to enable you to do so. You have the right to remain silent. Anything that you say may be used against you.

Because you are charged with a felony, you are entitled to demand a preliminary hearing before a judge or magistrate to determine whether there is sufficient evidence to establish that you probably committed the offense or offenses with which you are charged. You must make this demand with thirty (30) days of the date of arrest. If a hearing is demanded and one is conducted, and if, at the conclusion of the preliminary hearing, the judge finds that sufficient evidence has been shown to establish that you probably committed the offense or offenses with which you are charged, the judge will then bind you over for further action by a grand jury. If, on the other hand, the judge finds that the evidence is insufficient to establish that you probably committed the crime or crimes charged, then the judge will dismiss the charge and discharge you from further custody or pre-trial obligations subject to the right of the prosecution to reinstate the charges against you at a later time.

If you are released from custody (whether personal recognizance or otherwise), you must:
1) Appear to answer and submit to all orders and process of the court having jurisdiction in the case.
2) Refrain from committing any criminal offense.
3) Not depart from the State of Alabama without the leave of the court having jurisdiction of this case.
4) Promptly notify the court of any change of address or the phone number.
5) Other conditions: _____ *Cannot leave Chambers City w/o written permit the*
*Court.*
☒ *Cannot leave Chambers City w/o written permit the Court.*

The provisions of the Release Order may be revoked or modified by the court for cause. The Release Order and any appearance bond executed in compliance with it will continue in force and effect until the dismissal, acquittal, or conviction on the charges, unless sooner revoked or modified by the court. Upon report of a violation of any of the above conditions, a warrant for your arrest will be issued.

_____ *3/20/02* _____        _____ *J Holley* _____
Date                                          Judge/Magistrate

*I have read or have been advised of the matters herein set forth. I understand the explanation of procedures, rights, and information given to me at the initial court appearance. I understand the conditions of my release and the penalties applicable in the event that I violate any conditions imposed herein. I also understand that failure to appear as required may subject me to additional charges in the revocation of release.*

_____ *3/20/02* _____        _____ *Chris McCullough* _____
                                          Defendant



Joel G. Holley

District Judge
Chambers County
Lafayette, Alabama 36862



Lafayette (334) 864-4323
Valley 586-8223

Chambers County
Courthouse

MARCH 28, 2002

HON. FRANK PATTERSON
ATTORNEY AT LAW
POST OFFICE BOX 1001
LANETT, ALABAMA 36863

RE:  CHRISTOPHER MCCULLOUGH

Case No.

DC-02-182    BURG 1ST
DC-02-183    TOP 1ST
DC-02-200146  ATT.BURG1S
DC-02-200147  TOP 1ST
DC-02-200148  BURG 1ST

Dear:  HON. FRANK PATTERSON;

The criminal defendant referred to is in jail, unable to make bond, and has been declared indigent by the Court.  You are appointed to represent said Defendant in all matters pending before the District Court. Please complete this enclosed form and return it to my office promptly.  Since the Defendant is in jail unable to make bond, please promptly make contact and proceed with the case.

If you have a conflict, please respond in writing in motion form.  If not you will be entered of record as appointed counsel.

Thank you for accepting this appointment.  This is a service to the Bar and the Court.  It will help keep the dockets moving and make sure all criminal defendants are represented by counsel.

Sincerely,

Joel G. Holley /BT

Joel G. Holley
District Judge

JGH/bt
Enclosure

Cc:  Clerk's Office
     Defendant

016

STATE OF ALABAMA
PLAINTIFF

VS.

CHRISTOPHER MCCULLOUGH
DEFENDANT

IN THE DISTRICT COURT OF

CHAMBERS COUNTY, ALABAMA

CASE NO.  DC-02-182
          DC-02-183
          DC-02-200146
          DC-02-200147
          DC-02-200148

O R D E R

UPON CONSIDERATION OF DEFENDANT'S MOTION FOR A PRELIMINARY
HEARING, IT IS ORDERED THAT A PRELIMINARY HEARING BE AND IS
HEREBY SCHEDULED ON THE __19TH__ DAY OF ____APRIL____, 2002
AT 10:00 A.M. C.T.

AT LAFAYETTE, THIS THE __3RD__ DAY OF ____APRIL____, 2002.


_____
JOEL G. HOLLEY, DISTRICT JUDGE

FILED IN OFFICE THIS

APR 3 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA


CC:  HON. FRANK PATTERSON, DEFENDANT'S ATTORNEY
     HON. BILL LISENBY, ASSISTANT DISTRICT ATTORNEY
     CHAMBERS COUNTY DETENTION FACILITY

017

| State of Alabama<br>Unified Judicial System<br><br>Form C-11      Rev 6/88 | REQUEST/APPOINTMENT/ACCEPTANCE<br>OF ATTORNEY/GUARDIAN AD LITEM | Case Number |

**Part I**

IN THE _____District_____ COURT OF _____Chambers_____, ALABAMA
      *(Circuit or District)*                          *(Name of County)*

_____State_____ v. _____Christopher McCullough_____
      *(Plaintiff)*                          *(Defendant)*

In the Matter of: _____all criminal cases_____
*(Juvenile Case)*

I request that a    ☑ Attorney    ☐ Guardian Ad Litem    be appointed for:

_____
                *(Name)*

_____        _____
Date                 Signature

**Part II**

The court appoints _____ as
                    *(Name of Attorney or Guardian Ad Litem)*

☑ Attorney
☐ Guardian Ad Litem

_____4/19/02_____        _____
Date                     Judge

**Part III**

I accept the above appointment as    ☑ Attorney    ☐ Guardian Ad Litem

_____April 19/02_____        _____Steve R Morris_____
Date                          Attorney or Guardian ad Litem

C18

IN THE DISTRICT COURT OF CHAMBERS COUNTY

CITY OF LANETT

    Plaintiff

v.

CHRISTOPHER MCCULLOUGH

    Defendant

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CASE NO. DC-02-146
DC-02-182
DC-02-183
DC-02-147
DC-02-148
DC-02-164
DC-02-178
DC-02-179

## ORDER

Preliminary Hearing called. Defendant present and counsel Hon. Steve Morris. The Defendant stated he wanted to waive all Preliminary Hearing in all cases. The Court explained the purpose of said hearing and that his counsel was prepared. Still, Defendant wanted to waive. Counsel appeared.

Cases are bound over to the Grand Jury. Bonds to remain the same.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

(1)

## IN THE DISTRICT COURT OF CHAMBERS COUNTY

CITY OF LANETT                     *
                                   *
        Plaintiff                  *     CASE NO. DC-02-146
                                   *              DC-02-182
                                   *              DC-02-183
                                   *              DC-02-147
v.                                 *              DC-02-148
                                   *              DC-02-164
CHRISTOPHER MCCULLOUGH             *              DC-02-178
                                   *              DC-02-179
        Defendant                  *
                                   *

### ORDER

A Preliminary Hearing was set April 19, 2002 for Mr. Christopher McCullough.
The Hon. Frank Patterson was appointed as council. Because of a conflict with Mr.
Patterson, he has been relieved of his duties and the Hon. Steve Morris is appointed to
represent the Defendant Christopher McCullough.

At LaFayette, this 19th day of April, 2002.

                                    Judge Joel G. Holley, District Court


                                    Hon. Steve Morris

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

020

ALABAMA JUDICIAL INFORMATION SYSTEM          CASE: DC 2002 200146.0(
ACRO370                    CASE ACTION SUMMARY              RUN DATE: 03/20/200:
OPER: MAF                  DISTRICT  CRIMINAL                       JUDGE: JGI
AGE:   1
:=====================================================================
IN THE DISTRICT COURT OF  CHAMBERS
                                         VS      MCCULLOUGH CHRISTOPHER C
CITY OF LANETT                                   604 S 1ST AVE

CASE: DC 2002 200146.00                          LANETT, AL  36863 0000

                         SEX: M  RACE: B  HT: 5 11  WT: 155  HR:      EYES:
DOB: 11/27/1972  ALIAS NAMES:
SSN: 416114328                      BUR1A LIT: ATTEMPT - BURG TYP: F #: 001
=====================================================================
CHARGE01: ATTEMPT - BURGLARY 1 CODE01: BUR1A LIT: ATTEMPT - BURG TYP: F #: 001
OFFENSE DATE:                       AGENCY/OFFICER: AST4300 L WHALE

DATE WAR/CAP ISS:                   DATE ARRESTED: 03/19/2002
DATE   INDICTED:                    DATE   FILED: 03/20/2002
DATE   RELEASED:                    DATE  HEARING:
         BOND AMOUNT:       $.00          SURETIES:

DATE 1:          DESC:                   TIME: 0000
DATE 2:          DESC:                   TIME: 0000

TRACKING NOS:                      /                              /
    DEF/ATY:                    TYPE:                          TYPE:
                          00000                          00000

PROSECUTOR:
                                              GRAND JURY:
=====================================================================
TH CSE:  000000000000 CHK/TICKET NO:        000000000           OPER: MAF
COURT REPORTER:              SID NO:                                      OPE
DEF STATUS: JAIL             DEMAND:                                      OPE
=====================================================================
  TRANS DATE     ACTIONS, JUDGEMENTS, AND NOTES
| 03/20/2002 | ASSIGNED TO: (JGH) JOEL G. HOLLEY              (AR01) | MAF |
| 03/20/2002 | CHARGE 01: ATTEMPT - BURGLARY 1/#CNTS: 001     (AR01) | MAF |
| 03/20/2002 | INITIAL STATUS SET TO: "J" - JAIL             (AR01) | MAF |
| 03/20/2002 | DEFENDANT ARRESTED ON: 03/19/2002             (AR01) | MAF |
| 03/20/2002 | FILED ON: 03/20/2002                          (AR01) | MAF |
| 03/20/2002 | PARTY ADDED  W001  LINCOLN WHALEY             (AW21) | MAF |
| 03/20/2002 | CASE ACTION SUMMARY PRINTED                   (AR08) | MAF |
| 03/20/2002 | CAS ATTACHMENT PRINTED                        (AR08) | MAF |
| 3/20/02 | _Initial appearance: Bond set @ $150,000 XX2_ |
| 3/25/02 | _Affidavit of Substantial Hardship + Order - Hon. F. Patterson_ |
| 4/3/02 | _Motion for Pre-Lim_ |
| 4/3/02 | _Order: Pre-Lim set for 4/19/02_ |
| 4/18/02 | _Hon. Frank Patter dismissed as Counsel_ |
|  | _due to Conflict_ |
| 4/19/02 | _Hon. Steve Morris appntd as Counsel_ |
|  | _(over)_ |

ALABAMA    JUDICIAL    INFORMATION    CENTER

021

ACRO369    ALABAMA    JUDICIAL    INFORMATION
CASE ACTION SUMMARY
CONTINUATION

CASE: DC 2002 200146.00
JUDGE ID:  JGH

| | VS    MCCULLOUGH CHRISTOPHER C |
|---|---|
| CITY OF LANETT | |

ACTION, JUDGMENTS, CASE NOTES

| DATE | |
|---|---|
| 4/19/02 | @ Preliminary Hear called; Df. states to the court that he wanted to waive preliminary hearing in all his cases. |
| | Cases are bound over to Grand Jury |

# AFFIDAVIT
## AND
# WARRANT OF ARREST

State of Alabama
Unified Judicial System

Warrant Number C 148

Case Number
020300272

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

**AFFIDAVIT**

Before me, Judge/Magistrate of the District Court of Chambers County, personally appeared this

day _____ JOHN BURTON _____

and made oath that he/she has probable cause for believing and does believe, that in said State and

County, before the filing of this complaint, _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS) _____

whose name is not known to the affiant, other than is stated, did, On or about  MARCH 13, 2002

did knowingly and unlawfully enter or remain unlawfully in a dwelling of JOHN BURTON with intent to commit a crime

therein to wit:  Theft of Property 1, and while effecting entry or while in the dwelling or in immediate flight therefrom, the said

defendant or another participant, to-wit: Billy Ralph Norris Jr., was armed with a deadly weapon, to-wit: Colt King Cobra .357,

Smith & Wesson 6906 .9mm, Ruger 1022 rifle, and a Browning 12ga. shotgun,

in violation of Section/Ordinance number  13A-7-5          / 18-1
which said offense was committed against the peace and dignity of the State of Alabama.

AFFIANT _____

ADDRESS 7146 Country Club Rd. Lanett, Al. 36863

TELEPHONE NUMBER 642-0904

Sworn to and subscribed before me this
3-19          20 02
_____
Judge/Magistrate

**WARRANT OF ARREST**

THE STATE OF ALABAMA
CHAMBERS COUNTY

IN THE DISTRICT COURT OF
CHAMBERS COUNTY

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:
Complaint on oath having been made before me that the offense of

BURGLARY 1

has been committed and accusing _____ CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS) _____

with committing the same, you are therefore commanded forthwith to arrest said

CHRISTOPHER CORNELIUS MCCULLOUGH (ALIAS) _____ and bring him/her

before the District Court of Chambers County to answer said charge.

Witness my hand this  3-19          20 02

_____
Judge/Magistrate

AFFIDAVIT AND WARRANT

024

State of Alabama
Unified Judicial System

Form C-80    Rev. 8/2000

# ORDER
# ON INITIAL APPEARANCE

Case Number
DC-02-200-148
147
146

IN THE _Dist_ COURT OF _Chambers_ , ALABAMA
(Circuit, District or Municipal)    (Name of County or Municipality)

Burg 1°
Tft 1°

☐ STATE OF ALABAMA    _State_
☐ MUNICIPALITY OF    v. _Christopher C. McCullough_
    Defendant

The above-named defendant, charged with the criminal offense(s) of _B ct Burg 1° Attempt Burg 1°_ , at _2:45_ o'clock _p_.m.,
was duly brought before the Court for initial appearance on _3/20/02_ , _Tft 1°_
whereupon the Court did the following, as checked in the appropriate blocks:    _Tft 1°_

*(CHECK AS APPLICABLE):*

☑ 1. Name and address of defendant.
   ☑ (a) Ascertained the true name and address of the defendant to be:
      _604 S. 1st Ave_
      _Lanett, Alabama_
   ___ (b) Amended the formal charges to reflect defendant's true name.
   ___ (c) Instructed the defendant to notify the Court promptly of any change of address.

☑ 2. Informed the defendant of the charges against him/her and ensured that the defendant was served with a copy
   of the charges.

☐ 3. Informed the defendant of the right to be represented by counsel, that he/she would be afforded time and
   opportunity to retain an attorney, and further advised the defendant that, if he/she were indigent and unable to
   obtain counsel, an attorney would be appointed by the Court to represent him/her.
   Defendant ☐ requested    ☐ did not request court-appointed counsel.  If requested counsel, defendant ☐ was
   ☐ was not given a copy of the Affidavit of Substantial Hardship to complete in order for indigency to be determined.

☐ 4. Informed the defendant that he/she had the right to remain silent and that anything that he/she said could be use
   against him/her.

☐ 5. Bail
   ___ (a) Determined that the defendant shall not be released from custody since charged with a non-bailable
      capital offense.
   ___ (b) Determined that the defendant shall be released from custody pending further proceedings, subject to
      the mandatory conditions prescribed in Rule 7.3(a), A.R.Cr.P., and subject to the following additional
      conditions:
      1.) Execution of an appearance bond (recognizance) in the amount of $ _100,000_
      2.) Execution of a secured appearance bond in the amount of $ _100,000_
      3.) Other conditions (specify) _100,000_
                                     _50,000_
                                     _50,000_

☐ 6. If charged with a felony offense, informed the defendant of right to demand a preliminary hearing under Rule 5.1,
   A.R.Cr.P., and of the procedure by which that right may be exercised.

☐ 7. If charged with a felony offense a preliminary hearing was demanded with 30 days of date of arrest by the above
   named defendant, set a preliminary hearing to be held in the District Court of _____ , _____ ,
   an ___    (date) at _____ o'clock ____.m.
   ___ (a) Notified the District Court that such demand was made.
   ___ (b) Defendant made no demand for a preliminary hearing at the initial appearance hearings.

☑ 8. Other: _Is has prior Convictions - Likely to Abscond._

_3/20/02_                                    _____
                                              Judge/Magistrate

025

## ADVICE OF RIGHTS ON INITIAL APPEARANCE
## BEFORE JUDGE OR MAGISTRATE
### (Felony)

State of Alabama
Unified Judicial System

Form C-81    11/91

Case Number *DC~02~200~144  200~147  200~146*

IN THE _District_ COURT OF _Chambers_ ALABAMA
(Circuit, District, or Municipal)    (Name of County or Municipality)

☑ STATE OF ALABAMA
☐ MUNICIPALITY OF _State_    v. _Christopher C. McCullough_
    Defendant

This is a first appearance hearing. You are charged with committing the offense(s) of _Attempted Burglary 1°_ in this court in violation of _Theft 1° / Burglary of Burglary 1° — Theft 1°._ _Code of Al. AMCR — 13A_ _1975 as amended_. The primary purpose of this hearing is to ensure that you know and understand the charge or charges against you. At this hearing, there will be no determination about your guilt or innocence of the crime charged, but only a determination that you know and understand the charge or charges against you. If you are before the court on a complaint following a warrantless arrest, the judge or magistrate will determine whether there is probable cause for the charge against you.

In addition, the purpose of this hearing is to determine whether bail should be set in your case; or, if it has been already set, if it should remain the same, be raised, be lowered, or whether you should be released upon your personal recognizance (that is, your promise to appear for future court proceedings) or released in the custody of some responsible person. In order to make this determination, it will be necessary for the judge or magistrate to ask you some questions concerning your ties with the community.

You are entitled to be represented by an attorney. You have a right to have your own attorney and will be given time and opportunity to retain an attorney. If you are unable to afford an attorney, one will be appointed for you by the court if you qualify for such representation. It will be necessary for you to complete an indigency questionnaire under oath in order for the court to make this determination.

You have a right to talk with your attorney, family, or friends and, if necessary, reasonable means will be provided in order to enable you to do so. You have the right to remain silent. Anything that you say may be used against you.

Because you are charged with a felony, you are entitled to demand a preliminary hearing before a judge or magistrate to determine whether there is sufficient evidence to establish that you probably committed the offense or offenses with which you are charged. You must make this demand with thirty (30) days of the date of arrest. If a hearing is demanded and one is conducted, and if, at the conclusion of the preliminary hearing, the judge finds that sufficient evidence has been shown to establish that you probably committed the offense or offenses with which you are charged, the judge will then bind you over for further action by a grand jury. If, on the other hand, the judge finds that the evidence is insufficient to establish that you probably committed the crime or crimes charged, then the judge will dismiss the charge and discharge you from further custody or pre-trial obligations subject to the right of the prosecution to reinstate the charges against you at a later time.

If you are released from custody (whether personal recognizance or otherwise), you must:
1) Appear to answer and submit to all orders and process of the court having jurisdiction in the case.
2) Refrain from committing any criminal offense.
3) Not depart from the State of Alabama without the leave of the court having jurisdiction of this case.
4) Promptly notify the court of any change of address or the phone number.
5) Other conditions: _# Cannot leave Chambers Cty. w/o written permit of the Court._

The provisions of the Release Order may be revoked or modified by the court for cause. The Release Order and any appearance bond executed in compliance with it will continue in force and effect until the dismissal, acquittal, or conviction on the charges, unless sooner revoked or modified by the court. Upon report of a violation of any of the above conditions, a warrant for your arrest will be issued.

_3/20/02_
Date

_Judge/Magistrate_

I have read or have been advised of the matters herein set forth. I understand the explanation of procedures, rights, and information given to me at the initial court appearance. I understand the conditions of my release and the penalties applicable in the event that I violate any conditions imposed herein. I also understand that failure to appear as required may subject me to additional charges in the revocation of release.

_3/20/02_
Date

_Chris McCullough_
Defendant



**Joel G. Holley**

District Judge
Chambers County
Lafayette, Alabama 36862



026

Chambers County
Courthouse

Lafayette (334) 864-4323
Valley 586-8223

MARCH 28, 2002

HON. FRANK PATTERSON
ATTORNEY AT LAW
POST OFFICE BOX 1001
LANETT, ALABAMA   36863

RE:  CHRISTOPHER MCCULLOUGH

Case No.

DC-02-182    BURG 1ST
DC-02-183    TOP 1ST
DC-02-200146  ATT.BURG1ST
DC-02-200147 TOP 1ST
DC-02-200148 BURG 1ST

Dear:  HON. FRANK PATTERSON;

The criminal defendant referred to is in jail, unable to make bond, and has been declared indigent by the Court.  You are appointed to represent said Defendant in all matters pending before the District Court.  Please complete this enclosed form and return it to my office promptly.  Since the Defendant is in jail unable to make bond, please promptly make contact and proceed with the case.

If you have a conflict, please respond in writing in motion form.  If not you will be entered of record as appointed counsel.

Thank you for accepting this appointment.  This is a service to the Bar and the Court.  It will help keep the dockets moving and make sure all criminal defendants are represented by counsel.

Sincerely,

Joel A. Halley /bt

Joel G. Holley
District Judge

JGH/bt
Enclosure

Cc: Clerk's Office
     Defendant

C27

STATE OF ALABAMA                    )      IN THE DISTRICT COURT OF
PLAINTIFF                           )
                                    )      CHAMBERS COUNTY, ALABAMA
VS.                                 )
                                    )      CASE NO.   DC-02-182
CHRISTOPHER MCCULLOUGH              )                 DC-02-183
DEFENDANT                           )                 DC-02-200146
                                           DC-02-200147
                                           DC-02-200148

O R D E R

UPON CONSIDERATION OF DEFENDANT'S MOTION FOR A PRELIMINARY

HEARING, IT IS ORDERED THAT A PRELIMINARY HEARING BE AND IS

HEREBY SCHEDULED ON THE ___19TH___ DAY OF _____APRIL_____, 2002

AT 10:00 A.M. C.T.

AT LAFAYETTE, THIS THE ___3RD___ DAY OF _____APRIL_____, 2002.


_____
JOEL G. HOLLEY, DISTRICT JUDGE


FILED IN OFFICE THIS

APR 3 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA


CC:  HON. FRANK PATTERSON, DEFENDANT'S ATTORNEY
     HON. BILL LISENBY, ASSISTANT DISTRICT ATTORNEY
     CHAMBERS COUNTY DETENTION FACILITY

C23

## IN THE DISTRICT COURT OF CHAMBERS COUNTY

| | | |
|---|---|---|
| CITY OF LANETT | * | |
| | * | |
| Plaintiff | * | CASE NO. DC-02-146 |
| | * | DC-02-182 |
| | * | DC-02-183 |
| | * | DC-02-147 |
| v. | * | DC-02-148 |
| | * | DC-02-164 |
| CHRISTOPHER MCCULLOUGH | * | DC-02-178 |
| | * | DC-02-179 |
| Defendant | * | |
| | * | |

## <u>ORDER</u>

A Preliminary Hearing was set April 19, 2002 for Mr. Christopher McCullough.

The Hon. Frank Patterson was appointed as council. Because of a conflict with Mr.

Patterson, he has been relieved of his duties and the Hon. Steve Morris is appointed to

represent the Defendant Christopher McCullough.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

Hon. Steve Morris

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

029

IN THE DISTRICT COURT OF CHAMBERS COUNTY

*State of Alabama*

CITY OF LANETT

Plaintiff

v.

CHRISTOPHER MCCULLOUGH

Defendant

|  |  |
|---|---|
| * | CASE NO. DC-02-146 |
| * | DC-02-182 |
| * | DC-02-183 |
| * | DC-02-147 |
| * | DC-02-148 |
| * | DC-02-164 |
| * | DC-02-178 |
| * | DC-02-179 |
| * | |

## ORDER

Preliminary Hearing called. Defendant present and counsel Hon. Steve Morris. The Defendant stated he wanted to waive all Preliminary Hearing in all cases. The Court explained the purpose of said hearing and that his counsel was prepared. Still, Defendant wanted to waive. Counsel appeared.

Cases are bound over to the Grand Jury. Bonds to remain the same.

At LaFayette, this 19th day of April, 2002.

Judge Joel G. Holley, District Court

FILED IN OFFICE THIS

APR 2 4 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

030

```
                      ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: DC 2002 200148.0(
ACR0370                            CASE ACTION SUMMARY          RUN DATE: 03/20/200(
PER: MAF                           DISTRICT  CRIMINAL
GE:  1                                                                    JUDGE: JGH
==============================================================================
IN THE DISTRICT COURT OF  CHAMBERS
                                         VS     MCCULLOUGH CHRISTOPHER C
CITY OF LANETT                                  604 S 1ST AVE

CASE: DC 2002 200148.00                         LANETT, AL  36863 0000

                    SEX: M  RACE: B  HT: 5 11  WT: 155  HR:        EYES:
DOB: 11/27/1972
SSN: 416114328   ALIAS NAMES:
==============================================================================
CHARGE01: BURGLARY 1ST DEGREE   CODE01: BUR1  LIT: BURGLARY 1ST D TYP: F #: 001
OFFENSE DATE:                             AGENCY/OFFICER: AST4300 L WHALE

DATE WAR/CAP ISS:                    DATE ARRESTED: 03/19/2002
DATE     INDICTED:                   DATE    FILED: 03/20/2002
DATE    RELEASED:                    DATE  HEARING:
   BOND AMOUNT:            $.00          SURETIES:

DATE 1:            DESC:              TIME: 0000
DATE 2:            DESC:              TIME: 0000

TRACKING NOS:                    /                        /
                                          TYPE:                      TYPE:
   DEF/ATY:
                                                              00000
                          00000

PROSECUTOR:
                                                         GRAND JURY:
==============================================================================
UTH CSE:   000000000000 CHK/TICKET NO:                            OPER: MAF
COURT REPORTER: _____  SID NO:        000000000
DEF STATUS: JAIL               DEMAND:                                  OPE
==============================================================================
   TRANS DATE    ACTIONS, JUDGEMENTS, AND NOTES
                                                              (AR01)     MAF
| 03/20/2002 | ASSIGNED TO: (JGH) JOEL G. HOLLEY              (AR01)     MAF
|------------|--------------------------------------------------------
| 03/20/2002 | INITIAL STATUS SET TO: "J" - JAIL             (AR01)     MAF
|------------|--------------------------------------------------------
| 03/20/2002 | FILED ON: 03/20/2002                          (AR01)     MAF
|------------|--------------------------------------------------------
| 03/20/2002 | DEFENDANT ARRESTED ON: 03/19/2002             (AR01)     MAF
|------------|--------------------------------------------------------
| 03/20/2002 | CHARGE 01: BURGLARY 1ST DEGREE /#CNTS: 001    (AR01)     MAF
|------------|--------------------------------------------------------
| 03/20/2002 | PARTY ADDED W001  JOHN BURTON                 (AW21)     MAF
|------------|--------------------------------------------------------
| 03/20/2002 | CASE ACTION SUMMARY PRINTED                   (AR08)     MAF
|------------|--------------------------------------------------------
| 03/20/2002 | CAS ATTACHMENT PRINTED                        (AR08)     MAF
|------------|--------------------------------------------------------
| 3/20/02   | Initial appearance - Bond set @ 100,000
|------------|--------------------------------------------------------
| 3/25/02   | Affidavit of Substantial Hardship; Order - Hon F. Patterson
|------------|--------------------------------------------------------
| 4/3/02    | Motion for Pre-Lim
|------------|--------------------------------------------------------
| 4/3/02    | Order - Pre-Lim set for 4/19/02
|------------|--------------------------------------------------------
| 4/19/02   | Order - Hon. Frank Patterson is relieved of duties and Hon.
|           | Steve Morris is hereby appointed as counsel
|------------|--------------------------------------------------------
| 4/19/02   | Order - Pre-Lim waived; case bound over to Grand Jury
```

C31

ACRO369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: DC 2002 200148.0
JUDGE ID:  JGH

CITY OF LANETT                          VS      MCCULLOUGH CHRISTOPHER C

DATE                    ACTION, JUDGMENTS, CASE NOTES

THE STATE OF ALABAMA

_____ COUNTY

Circuit Court. _____ Term, 20___

**To the Sheriff of said County:**
I hereby certify that this is a true and complete copy of the Indictment presented to the Court by the Grand Jury of Said County against

_____

charged with

together with all endorsements on said Indictment, and that the trial is set for _____ , 20___

_____

or

his counsel.

Witness my hand, this _____ , 20___

_____ , Clerk

I hereby certify that I have received above stated copy of Indictment from the Circuit Court Clerk of said County and served same on

at _____ o'clock _____ M., _____ 20___

_____ , Sheriff

_____ , D.S.

---

No. CC02-189

THE STATE OF ALABAMA

CHAMBERS _____ COUNTY

**CIRCUIT COURT**

FALL _____ Term, 2002

THE STATE

vs

CHRISTOPHER MCCULLOUGH, ALIAS

BILLY NORRIS, ALIAS

**INDICTMENT**

BURGLARY FIRST DEGREE

THEFT OF PROPERTY FIRST DEGREE

RECEIVING STOLEN PROPERTY SECOND DEGREE

No Prosecutor

WITNESSES:

JOHN BURTON

RICHARD CARTER

---

Grand Jury No. 272, 275, 273, 276, 274, 2...

A TRUE BILL: ---

Joseph F. _____
Foreman Gr...

Filed in open Court on the _____ 'AUG 22 2002 . 2...

in the presence of the Grand Jury.

Charles W. Story Cl...

Presented to the presiding Judge in open Co...
the Foreman of the Grand Jury, in the presenc...

Grand Jurors, and filed by order of the Court t...

_____ day of _____ 'AUG 22 2002.

Charles W. Story

Bail fixed at $ 150,000 @ total fo...

this _____ day of _____ AUG 22 200...

Judge Pr...

033

## THE STATE OF ALABAMA, CHAMBERS COUNTY

## CIRCUIT COURT, FALL TERM, 2002

1.    The Grand Jury of Said County charges that before the finding of this Indictment, Christopher McCullough alias, and Billy Norris alias, whose names are otherwise unknown to the Grand Jury, did knowingly and unlawfully enter or remain unlawfully in a dwelling of another, to-wit: John Burton, with intent to commit a crime therein, to-wit: theft of property and while effecting entry or while in the dwelling or in immediate flight therefrom, the said Christopher McCullough and/or Billy Norris was armed with an explosive or deadly weapon, to-wit: a pistol or rifle, further descriptions of which are otherwise unknown to the Grand Jury, in violation of Section 13A-7-5 of the Code of Alabama, against the peace and dignity of the State of Alabama.

2.    The Grand Jury of Said County further charges that before the finding of this Indictment, Christopher McCullough alias, and Billy Norris alias, whose names are otherwise unknown to the Grand Jury, did knowingly obtain or exert unauthorized control over the following property, to-wit: two (2) pistols, five (5) knives, and one (1) rifle, further descriptions of which are otherwise unknown to the Grand Jury, and lawful currency of the United States of America, the exact denominations of which are otherwise unknown to the Grand Jury, the property of John Burton, and having a value in excess of $1,000.00 dollars, with the intent to deprive the owner of the said property, in violation of Section 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama.

3.    The Grand Jury of Said County further charges that before the finding of this Indictment, Christopher McCullough alias,  whose name is otherwise unknown to the Grand Jury, did intentionally receive, retain, or dispose of stolen property, to-wit: two (2) pistols, further descriptions of which are otherwise unknown to the Grand Jury, the property of John Burton, and having a value in excess of $100.00 dollars but not in excess of $1,000.00 dollars, knowing that it was stolen or having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation  of Section 13A-8-18 of the Code of Alabama, against the peace and dignity of the State of Alabama.

4.    The Grand Jury of Said County further charges that before the finding of this Indictment, Billy Norris alias,  whose name is otherwise unknown to the Grand Jury, did intentionally receive, retain, or dispose of stolen property, to-wit: two (2) pistols and one (1) rifle, further descriptions of which are otherwise unknown to the Grand Jury, the property of John Burton, and having a value in excess of $100.00 dollars but not in excess of $1,000.00 dollars, knowing that it was stolen or having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation  of Section 13A-8-18 of the Code of Alabama, against the peace and dignity of the State of Alabama.

*Rea S. Clark*

District Attorney of the Fifth Judicial Circuit

034

| State of Alabama Unified Judicial System | PLEA OF NOT GUILTY AND WAIVER OF ARRAIGNMENT | Case Number |
|---|---|---|
| Form CR-9    Rev. 3/95 | | CC 2002 189 CC 2002 304, 3... |

IN THE ___Circuit___ COURT OF ___Chamber___ ALABAMA
(Circuit, District, or Municipal)    (Name of County or Municipality)

☐ STATE OF ALABAMA    v.  ___Chris McCollough___ , Defendant

COMES NOW the Defendant in the above styled matter, and to the offense charged enters a plea of

☑ Not Guilty
☐ Not Guilty by Reason of Mental Disease or Defect
☐ Not Guilty and Not Guilty by Reason of Mental Disease or Defect

Defendant acknowledges receipt of the copy of the charge against him and further waives the right to have an Arraignment at which the Defendant is present in person, or at which the Defendant is represented by an attorney.

But, the Defendant specifically and expressly reserves the right upon the filing hereof to hereafter, but before trial or before such date as may be set by the Court, to interpose any defenses, objections, or motions which the Defendant had the right as a matter of law or rule to interpose in this cause, prior to the filing hereof.

Defendant's date of birth is ___11/27/72___. Defendant's age is ___29___

The Defendant is not eligible for consideration by the Court for Youthful Offender status as provided by law.

Date ___Sept 23, 02___        Defendant ___Chris McCullough___

Date ___Sept 23, 02___        Attorney for Defendant ___Steve R Morris___

This is to certify that I am the Attorney for the Defendant in this matter, and that I have fully explained this form and all matters set forth herein, and pertaining hereto, to the Defendant. I further state to the Court that I have explained to the Defendant his right to be Arraigned in person and his right to have me represent him at Arraignment. I further certify to the Court that my client hereby knowingly, voluntarily, and intelligently waives these rights after a full and complete explanation of each and every one of them to him by me. BOTH MYSELF AND THE DEFENDANT UNDERSTAND THAT I AM RESPONSIBLE FOR ASCERTAINING WHAT DATE, IF ANY, HAS BEEN SET BY THE COURT FOR THE MAKING OR FILING OF ANY DEFENSES, OBJECTIONS, OR MOTIONS. I FURTHER UNDERSTAND THAT I AM RESPONSIBLE FOR NOTIFYING MY CLIENT OF THE DATE HIS CASE IS SET FOR TRIAL, AND THAT I HAVE ADVISED AND INFORMED HIM THAT IN THE EVENT HE FAILS TO APPEAR ON THE DATE HIS CASE IS SET FOR TRIAL, ALL APPROPRIATE LEGAL ACTION WILL BE TAKEN BY THE COURT AGAINST THE DEFENDANT AND HIS BOND. I further certify to the Court that I have advised my client that he is responsible for obtaining the date his case is set for trial in this matter and that in the event he fails to appear on the date his case is set for trial all appropriate legal action will be taken by the Court against the Defendant and his bond, and I hereby certify that the Defendant knows that he is personally responsible for obtaining the date his case is set for trial and for being present in Court on that date.

Date ___Sept 23, 02___        Attorney for Defendant Signature ___Steve R Morris___

Printed or Typed Attorney's Name ___Steve R Morris___

I certify that I served a copy of the foregoing plea and waiver of arraignment on the Prosecutor by mailing/delivering a copy of the same to him on

Address ___P.O. Box 814 Wedowee AL 36278___

_____ (Date)

This is to certify that my Attorney has explained each and every matter and right set forth in this form and I have completely and fully read and do so understand each and every matter set forth in this form. I further state to the Court that I do not wish to be personally present at an Arraignment in this case and that I do not want to have an Attorney represent me at an Arraignment and WITH FULL KNOWLEDGE OF EACH OF THESE RIGHTS, I HEREBY EXPRESSLY WAIVE SUCH RIGHTS. I further state to the Court that I have been informed of the charge against me and have received a copy of the charge.

Date ___9-23-02___        Defendant Signature ___Chris McCullough___

Filed in office this date _____    By: _____

# STATE OF ALABAMA
## OFFICE OF THE DISTRICT ATTORNEY
### FIFTH JUDICIAL CIRCUIT

035

**BILL LISENBY, JR.**
ASSISTANT DISTRICT ATTORNEY
CHAMBERS COUNTY COURTHOUSE
P.O. BOX 609
LAFAYETTE, ALABAMA 36862

TELEPHONE 334/864-4327
334/642-5357

**REA S. CLARK**
DISTRICT ATTORNEY
P.O. BOX 609
LAFAYETTE, ALABAMA 36862



*Sept. 24, 2002*

Honorable *Steve Morris*
Attorney at Law

Re: *Christopher McCullough    CC 02-189*

Dear *Steve* :

    Pursuant to Rule 16.2 Ala. Rules of Crim. Proc., (Discovery by the State), please provide the District Attorney's Office with all material that is discoverable in the above referenced case.

    Thank you for your cooperation and attention to this matter.

Sincerely,

Bill Lisenby, Jr.
Chief Assistant District Attorney

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing motion was served upon Counsel for the defendant, to the Honorable *Steve Morris* by ✓ mail/____ hand delivery, this _24_ day of *September*, 2002.

Bill Lisenby, Jr.
Chief Assistant District Attorney

036

IN THE DISTRICT COURT OF RANDOLPH COUNTY, ALABAMA

STATE OF ALABAMA,

       PLAINTIFF,

VS.,                                 CASE NUMBER: CC-2002-189

CHRISTOPHER MCCULLOUGH,

       DEFENDANT.

## MOTION FOR DISCOVERY

**COMES NOW** the Defendant in the above styled cause and moves this Court under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Rule 16, Alabama Rules of Criminal Procedure, for an Order to compel disclosure and production of the following material which is in the custody and possession of the State:

1.     Specifically any and all evidence regarding fingerprint analysis of the Defendant.

     The pre-trial discovery requested in the foregoing motion is essential to ensure the Defendant his right to a fair hearing, is right to confrontation, his right to prepare a defense in his own behalf, and his right to effective counsel and due process of law and other rights not here enumerated.  See, Brandy v. Maryland 373 U.S. 83 (1968);  United States v. Giglio, 405 U.S. 150 (1972);  Moore v. Illinois, 408 U.S. 786 (1972).

     **THEREFORE,** the Defendant requests:

A.     That the Prosecuting Attorney be ordered to produce all information described directly herein or by implication and allow the Defendant the right to examine, inspect, copy, and photograph such material and information at a specific time and place reasonably in advance of trial.

B.     That the Court enter an order requiring the Prosecuting Attorney's office to make continuing disclosure of all matters requested herein up to and during the trial of the Defendant.

637

Respectfully submitted this _4_ day of _____Nov_____, 2002.

FILED IN OFFICE THIS

NOV - 5 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

Steve R. Morris
Attorney for the Defendant
Post Office Box 814
Wedowee, Alabama 36278
(256) 357-9211 - Telephone
(256) 357-9222 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing **MOTION FOR DISCOVERY** upon the **Office of the District Attorney**, by placing said copy in the United States Mail, postage prepaid, to the respective mailing address on this the _4_ day of _____Nov_____, 2002.

Steve R. Morris

C08

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA,

      PLAINTIFF,

                                       CASE NUMBER: CC-2002-189

VS.,

CHRISTOPHER MCCULLOUGH,

      DEFENDANT.

## MOTION IN LIMINE

COMES NOW the Defendant, by counsel, and, subject to Defendant's right to amend this Motion, moves this Honorable Court for an order in limine excluding the following evidence:

1.    It is the belief of this Defendant that the State of Alabama will try to influence, mislead, sway, or otherwise unfairly prejudice the jury during direct and cross-examination of witnesses by trying to introduce evidence pertaining to charges the Defendant currently has against him. These charges have absolutely nothing to do with this charge. Such evidence would be impermissible character evidence and evidence of other acts not related to the indicted acts.

2.    The Defendant submits that the use of such evidence is irrelevant and therefore inadmissible as evidence in violation of Rule 402 Alabama Rules of Evidence which states "Evidence which is not relevant is inadmissible."

3.    Defendant contends that even if this Court finds that the use of such evidence relevant, then the probative value of the use of such evidence would be substantially outweighed by its prejudicial effect in direct violation of Rule 403 Alabama Rules of Evidence. This rule states that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudices, confusion of the issues, or misleading the jury. "Use of such evidence will serve no purpose to Counsel for the Plaintiff other than those stated above and should therefore be deemed inappropriate and inadmissible as evidence in this cause.

4.    Defendant further contends that the State of Alabama will try to influence, mislead, sway or other wise unfairly prejudice the jury during direct and cross-examination of witnesses by trying to introduce evidence pertaining to prior convictions of the Defendant is in violation of Rule 609 Alabama Rules of Evidence which states "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for the conviction, whichever is the later date, unless the court determines, in the interest of

039

justice; that the probative value of the conviction supported by specific facts and circumstances substantially outweigh its prejudicial effect.

**WHEREFORE THESE PREMISES CONSIDERED,** the Defendant prays that Your Honor will order that all use and allusion to any prior convictions or other charges against this Defendant in this case be deemed irrelevant and thus inadmissible as evidence in this cause pursuant to Rule 402 and 403 Alabama Rules of Evidence. That the prior convictions of this Defendant not be allowed into evidence pursuant to Rule 609(b). Defendant also prays that your Honor will rule that any violation of this order will result in sanctions against the State and a mistrial.

Respectfully submitted this the 4 day of _____Nov_____, 2002.

FILED IN OFFICE THE

NOV - 5 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

Steve R. Morris
Attorney for the Defendant
P.O. Box 814
Wedowee, Alabama 36278
(256)357-9211
(256)357-9222 - Facsimile

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served a copy of the foregoing Motion on the **OFFICE OF THE District Attorney,** by hand delivering the same on this the 4 day of November, 2002.

Steve R. Morris

# YOUR RIGHTS

040

PLACE: _Lanett P.D._

DATE: _3-19-02_

TIME: _1447_

Before we ask you any questions, you must understand your rights.

1) You have the right to remain silent.
2) Anything you say can and will be used against you in a court of law.
3) You have the right to a lawyer and have him present with you while you are being questioned.
4) If you cannot afford to hire a lawyer, one will be appointed to represent you before any question-
   ing if you wish.
5) You can decide at any time to exercise these rights and not answer any questions.

# WAIVER OF RIGHTS

I have read this statement of my rights, or have had them read to me, and I understand what my rights are. I am willing to waive these rights and make a statement. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed: x _Chris McCullough_

Present.

Kenny Vines

Steve Smith

Mike Looser

Jeff Blackstone

STATE'S
EXHIBIT
2

# I  NETT POLICE DEPARTMENT

041

STATEMENT OF : Chris McCullough

ADDRESS: 604 S. 1st Ave Lanett, AL.

PHONE NUMBER: 586-1158

Date: 3-19-02

Time: 1653

Page 1 of 1 Pages

me and Billy parked about 3 miles from the house and walked through the woods to the back of the house. We went to the back door then Billy went around to the front, I followed him. He tried to kick the door in but the lock was too strong. Then we went back to the back door and Billy kicked it open. We went in and searched the house but wasn't nothing there except for the rifles and two pistols. The only things I took was the two pistols. Billy took a rifle, it was a .22 Ruger, a bunch of pocket knives and a jar of change. We were in the house about 5 minutes. It was evening time when we went in. It was before dark. After we left we went to my house and put all the guns there.

MR. McCullough read this statement and advised it was true and correct but would not sign it. Lt. Reckard S. Cent

STATE'S EXHIBIT

10

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA,
Plaintiff,

vs.

CHRISTOPHER McCULLOUGH,
Defendant.

Case No. CC-02-189

## GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Receiving Stolen Property second degree as charged in count three of the indictment.

______________________
Foreperson

## NOT GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Receiving Stolen Property second degree as charged in count three of the indictment.

[signature]
Foreperson

FILED IN OFFICE THIS
NOV 7 2002
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

043

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

| | |
|---|---|
| STATE OF ALABAMA,<br>Plaintiff, | ) )<br>)<br>) |
| vs. | )<br>) |
| CHRISTOPHER McCULLOUGH,<br>Defendant. | )<br>) |

Case No. CC-02-189

## GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Theft of Property first degree as charged in count two of the indictment.

_____
Foreperson

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Theft of Property second degree as embraced in count two of the indictment.

_____
Foreperson

## NOT GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Theft of Property first degree as charged in count two of the indictment.

_____
Foreperson

FILED **IN OFFICE** THIS

NOV 7 2002

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

044

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA,      )
    Plaintiff,          )
                       )
                       )    Case No. CC-02-189
vs.                     )
                       )
CHRISTOPHER McCULLOUGH,   )
    Defendant.        )

## GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Burglary first degree as charged in count one of the indictment.

_____
Foreperson

## NOT GUILTY VERDICT

We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Burglary first degree as charged in count one of the indictment.

_____
Foreperson

FILED IN OFFICE THIS

NOV 7 2002

CHARLES W. STORY
CIRCUIT CLERK

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

045

STATE OF ALABAMA,                      )
     Plaintiff,                             )
                                )
                                )         CASE NO. CC-02-189
vs.                                    )
                                )
CHRISTOPHER McCULLOUGH,                 )
     Defendant.                             )

## VERDICT ORDER

On November 7, 2002, a duly empaneled jury returned the following verdict:

*"We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Burglary in the first degree, as charged in the indictment."*

*Marcus K. Underwood*
*Foreperson*

*"We, the jury, find the defendant, Christopher McCullough, guilty of the offense of Theft of Property in the second degree, as embraced in the indictment."*

*Marcus K. Underwood*
*Foreperson*

*"We, the jury, find the defendant, Christopher McCullough, not guilty of the offense of Receiving Stolen Property in the second degree, as charged in the indictment."*

*Marcus K. Underwood*
*Foreperson*

Based upon the verdict of the jury, it is hereby ORDERED ADJUDGED AND DECREED that the defendant is guilty of the offenses of Burglary in the first degree and Theft of Property in second degree.

The defendant is Ordered to appear before the Court on January 7, 2003, at 9:00 a.m. for Sentencing and Probation Hearing. The Office of Probation and Parole is instructed to prepare a pre-sentence report. Upon oral motion of the State of Alabama, Defendant's bond in this matter is hereby revoked.

Let a copy of this Order issue to the defendant, counsel for the Defendant, the Office of the District Attorney, and the Office of Probation and Parole, and the Chambers County Jail.

Signed this the 7th day of November, 2002.

TOM F. YOUNG, JR.
Circuit Judge

# ALABAMA BOARD OF PARDONS AND PAROLE

## REPORT OF INVESTIGATION

046

Date Dictated  01-03-2003

Type of Investigation  Pre-Sentence Investigation

Name  Christopher McCullough    True name  Christopher Cornelius McCullough

Alias  Christopher McCollough, "Rat"

RSA  BM 30    DOB  11-27-1972    Height and Weight  5'11"  155

Color of Hair  Black    Color of Eyes  Brown

Complexion  Medium

Bodily Marks  Tattoos: playboy bunny on right arm, marijuana plant on left arm.

Drivers License #  AL6975692 - Suspended    SSN  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

AIS#  174909    FBI#  777827MA5    SID#  AL01190292

Phone #  334 756-2687

Address  1075 Chambers Avenue
Valley, AL 36854

Case #  CC-2002-189

County  Chambers

Offense(s)  Burglary 1st Degree/Theft of Property 2nd Degree    15 - 99 yrs + 10 years

Sentence(s)  _____    Date Sentence Began  _____

Date of Sentence  _____    Date of Bond  Not Made    Bond Amount $  150,000

Date of Arrest  03-19-2002    D.A.  Rea S. Clark

Judge  Honorable Tom F. Young, Jr.    Retained  _____    Appointed  X

Attorney  Steven R. Morris

Court Ordered Restitution $  _____    Yes  _____    No  X

Barred From Parole

Date Copies Sent to Central Records  _____

NOTES:  McCullough was found guilty in jury trial of Count 1 and 2 of the indictment. Count 3 was nol prossed upon motion of District Attorney.

PBF 203

047

# PRESENT OFFENSE(S)

**County, Court, and Case Number:**

Chambers County Circuit Court CC-2002-189 (CT1)

**Offense:**

Burglary 1st Degree

**Sentence:**

**Date of Sentence:**

**Details of Offense:**

On 03-19-2002 Christopher McCullough and Billy Norris, Jr. were arrested by Lanett Police Department and charged with Burglary 1st Degree and Theft of Property 1st Degree.

On 03-13-2002, John Burton reported that his house had been broken into while he was at work, and several guns were missing as well as five pocket knives and a cup of assorted change. Detective Lt. Richard Carter investigated the scene and photographed a boot print outside the residence. Entry was made through the back glass door which had apparently been kicked in.

On 03-19-2002, Lanett Police Officer responded to the residence of Mike Cragg on Country Club Road. Lt. Robert Bettis located a silver Ford Mustang backed into the woods in the back of the Hill Crest Cemetery. The officer then saw two black males run from the woods and get into the car. Lt. Bettis stopped them as they drove back into the cemetery. Sgt. Rick Brown arrived and assisted in getting the subjects out of the car. Chris McCullough was the driver, and it was noted that he had a ski mask in his rear pocket. Detective Lt. Carter also noted the mask, and he noticed that Billy Norris was wearing work boots that had a pattern similar to the one photographed at Mr. Burton's residence.

A search was made of the vehicle, and under the front passenger seat were found a blue bandanna, a roll of duct tape, brown work gloves, and Norris' ID Card and credit cards in his name. A further search revealed two handguns hidden behind the rear passenger seat. One was a Colt King Cobra which had been stolen from the Burton's residence and the Smith and Wesson 9mm was also believed to have come from Mr. Burton's home. Other items in the car were suspected

2

048

to have come from burglaries in the county. Investigator Jeff Blackstone was contacted, and he stated that he believed some of the items were from burglaries being worked by LaFayette PD.

Norris and McCullough each gave statement confessing to the burglary of Mr. Burton's home as well as to several others in the county and LaFayette.

Subject's Statement:

McCullough states that he picked up a friend who had two weapons in his possession, and the police stopped the car and said he was looking in someone's window with one of the weapons. McCullough said he was with his friend when these pistols were stolen so he went to jury trial and no evidence was shown, but the District Attorney says the State showed burden of proof. McCullough says he can prove they did not.

Case Status of CoDefendants:

Billy Ralph Norris, Jr. pled guilty in case CC-2002-190, Burglary 1st Degree, and was sentenced to 24 years.

Victim Notification Information:

The victim in this case is Mr. John Burton.

Victim Impact:

The restitution claim form indicates that Mr. Burton suffered loss of $1,475 due to an unrecovered shotgun valued at $675 and the damaged glass door valued at $800.

Location of Offense:

Lanett, Alabama.

Court Ordered Restitution:

RECORD OF ARREST(S)

Prior Arrest Record:

09-08-1989    Chambers Co., AL        Theft of Property 2nd        6 months juvenile probation.
              Juvenile Court

3

049

| Date | Court | Charge | Disposition |
|---|---|---|---|
| 09-08-1989 | Chambers Co., AL Juvenile Court | Unlawful Breaking and Entering of Vehicle (2 cases) | 6 months juvenile probation, $60 restitution. |
| 03-11-1991 | Chambers Co., AL District Court | Resisting Arrest | 2 days county jail. |
| 03-11-1991 | Chambers Co., AL District Court | Criminal Trespass 3rd Degree | 2 days county jail. |
| 11-12-1991 | Chambers Co., AL District Court | Disorderly Conduct | 30 days. |
| 11-12-1991 | Chambers Co., AL District Court | Resisting Arrest | 30 days cc. |
| 12-07-1992 | Chambers Co., AL District Court | RSP 2nd reduced to RSP 3rd Degree | 12 months, serve 60 days, balance suspended. |
| 04-25-1993 | Chambers Co., AL TR-1993-200441 | No Drivers License | Dismissed. |
| 09-01-1993 | Chambers Co., AL TR-1993-300567 | Failure To Yield Right of Way | Guilty, $297.70 COM'S paid. |
| 09-07-1993 | Chambers Co., AL CC-1993-367 | RSP 2nd Degree | 5 years, probation denied. |
| 08-22-2000 | Chambers Co., AL DC-2000-200389 | Domestic Violence 3rd (Harassment) | 30 days, suspended 90 days, $331 COM'S, 03-11-01 arrested for probation violation, paid in full 03-22-2001. |
| 03-10-2001 | Chambers Co., AL TR-2001-300286 | Speeding (64/45) | Guilty, $146 fine and costs. |
| 04-21-2001 | Chambers Co., AL DC-2001-200285 | Resisting Arrest | Guilty, 10 days, 90 days probation, $230 COM'S. |
| 04-21-2001 | Chambers Co., AL TR-2001-200546 | Loud Music | Guilty, $176 fine and costs. |
| 06-09-2001 | Chambers Co., AL TR-2001-200753 | No Seat Belt | Guilty, $10 fine. |

4

050

| Date | Location | Charge | Disposition |
|---|---|---|---|
| 12-15-2001 | Lee Co., AL TR-2001-7311 | FTA/Speeding (102/70) | Pending. |
| 12-27-2001 | Chambers Co., AL TR-2001-301281 | Vehicle Entering From Private Roadway | Guilty, $196 fine and costs. |
| 12-27-2001 | Chambers Co., AL TR-2001-301282 | Operating Vehicle W/O Insurance | Nol Prossed with conditions, $176 costs ordered, 02-13-02 ordered to pay or lay. |
| 12-27-2001 | Chambers Co., AL TR-2001-301283 | Open Container | $25 fine. |
| 12-27-2001 | Chambers Co., AL TR-2001-301284 | Drivers License Not In Possession | Nol Prossed. |
| 03-05-2002 | Phenix City, AL Municipal Court TR-2002-1181 | Speeding (68/50) | Alias warrant issued 05-08-2002. |
| 03-05-2002 | Phenix City, AL Municipal Court TR-2002-1182 | Driving With Suspended License | Alias warrant issued 05-08-2002. |
| 03-05-2002 | Phenix City, AL Municipal Court TR-2002-1183 | Operating Vehicle W/O Insurance | Alias warrant issued 05-08-2002. |

Subsequent Arrest Record:

| Date | Location | Charge | Disposition |
|---|---|---|---|
| 03-20-2002 | Chambers Co., AL CC-2002-325 | Burglary 1st Degree and TOP 1st Degree | Pending. |
| 03-21-2002 | Chambers Co., AL CC-2002-304 | Burglary 1st Degree and TOP 2nd Degree | Pending. |
| 03-26-2002 | Chambers Co., AL CC-2002-312 | Burglary 2nd Degree | Pending. |
| 08-26-2002 | Chambers Co., AL CC-2002-318 | Attempted Burglary 1st | Pending. |

051

## PHYSICAL AND MENTAL HEALTH

McCullough states that he suffers from no physical disabilities or severe illnesses. He denies treatment for mental or emotional problems.

McCullough states that he used marijuana for two or three months prior to his present incarceration. He does not believe that drugs are a problem for him. He advises that he started drinking alcoholic beverages at the age of 16 and was a heavy weekend drinker. He stated he would drink until he was drunk when at clubs. He states that he does not believe that alcohol is a problem for him.

## PROBATION AND PAROLE OFFICER'S REMARKS

No letters of reference were received regarding Mr. McCullough.

When incarcerated, Mr. McCullough presented a management problem. He had an extensive disciplinary record including destroying State property, intentionally creating a security hazard, indecent exposure, and threats. He had well over 30 disciplinaries. He received poor work reports. He never made parole. To his credit, he obtained a GED while incarcerated. McCullough served more of a five year sentence than I have ever seen without a split being involved.

It appears that corrections did work for a little while. McCullough remained crime free for about three years after his release from prison.

McCullough stated that he lost everything due to this incident: he was working at Carter Mill, renting a house and buying a car. In fact, he had lost his job in September 2002 due to write-ups.

McCullough notes that his father was murdered in 1984. Perhaps this is a basis for his anti-social attitude. McCullough has had opportunities along the way to deal with this issue.

In view of McCullough's prior felony conviction, numerous pending felonies, and continued bad attitude, I recommend maximum sentence under Habitual Offender.

## PROBATION PLAN

Home:

McCullough states that he will continue living with his mother and brother at 1075 Chambers Drive, Valley, Alabama.

6

Employment:

McCullough advises that he is eligible for rehire and would plan to work at West Point-Stevens in Lanett.

Signed and dated in LaFayette, Alabama, on this the 3rd day of January 2003.


_Ann W. Gault_

Ann W. Gault
Alabama Probation and Parole Officer

AWG/ph

MCCULLOUGH CHRISTOPHER
GAULT 14

053

```
                                  ALABAMA JUDICIAL INFORMATION SYSTEM        CASE: CC 2002 000189.00
ACR352                                  CASE ACTION SUMMARY                  RUN DATE: 08/28/2002
OPER: RHM                                 CIRCUIT  CRIMINAL
PAGE:   1                                                                    JUDGE: XXX
===================================================================================================
  4 THE CIRCUIT COURT OF CHAMBERS
                                          VS         MCCULLOUGH CHRISTOPHER C
STATE OF ALABAMA                                     604 S 1ST AVE

CASE: CC 2002 000189.00                             LANETT, AL  36863 0000

                                SEX: M  RACE: B  HT: 5 11  WT: 155   HR:        EYES:
DOB: 11/27/1972
SSN: 416114328   ALIAS NAMES:
===================================================================================================
CHARGE01: BURGLARY 1ST DEGREE    CODE01: BUR1  LIT: BURGLARY 1ST D  TYP: F #: 001
CHARGE02: THEFT OF PROP 1ST      CODE02: TOP1                       TYP: F #: 001
CHARGE03: REC STOLEN PROP 2ND    CODE03: RSP2                       TYP: F #: 001
OFFENSE DATE:                                      AGENCY/OFFICER: AST4300 L WHALE

                                                   DATE ARRESTED: 03/19/2002
DATE WAR/CAP ISS:                                    DATE   FILED: 08/26/2002
DATE    INDICTED: 08/05/2002                        DATE HEARING:
DATE    RELEASED:                                       SURETIES:
        BOND AMOUNT:       $150,000.00
                                                   TIME: 0900 A
DATE 1: 09/23/2002  DESC: ARRG                      TIME: 0000
DATE 2:             DESC:
TRACKING NOS: GJ 2002 000272 00  /  DC 2002 200148 00  /  DC 2002 000146 00

DEF/ATY: MORRIS STEVEN ROBERT            TYPE: A                            TYPE:
         696 1ST AVENUE SE
         P. O. BOX 814
         WEDOWEE         AL 36278

PROSECUTOR:

                                                                      GRAND JURY: 272.73
===================================================================================================
   TH CSE: GJ200200027200 CHK/TICKET NO:                                   OPER: RHM
COURT REPORTER: _____     SID NO:          000000000
DEF STATUS: JAIL                     DEMAND:                                            OPE
```

| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | | |
|---|---|---|---|
| 08/26/2002 | ASSIGNED TO: (XXX) | (AR01) | RHM |
| 08/26/2002 | CHARGE 02: THEFT OF PROP 1ST/#CNTS: 001 | (AR01) | RHM |
| 08/26/2002 | DEFENDANT INDICTED ON: 08/05/2002 | (AR01) | RHM |
| 08/26/2002 | CHARGE 03: REC STOLEN PROP 2ND /#CNTS: 001 | (AR01) | RHM |
| 08/26/2002 | SET FOR:  ARRAIGNMENT ON 09/23/2002 AT 0900A | (AR01) | RHM |
| 08/26/2002 | INITIAL STATUS SET TO: "J" - JAIL | (AR01) | RHM |
| 08/26/2002 | ATTORNEY FOR DEFENDANT: MORRIS STEVEN ROBERT | (AR01) | RHM |
| 08/26/2002 | CHARGE 01: BURGLARY 1ST DEGREE /#CNTS: 001 | (AR01) | RHM |
| 08/26/2002 | FILED ON: 08/26/2002 | (AR01) | RHM |
| 08/26/2002 | BOND SET AT: $150000.00 | (AR01) | RHM |
| 08/26/2002 | DEFENDANT ARRESTED ON: 03/19/2002 | (AR01) | RHM |
| 08/26/2002 | FREQUENCY AMOUNT SET TO: $100.00 | (FEE2) | RHM |
| 9/23/02 | Plea of Not Guilty + Waiver of Arrg | | |
| | PTC 10/17/02 | | |
| 10/17/02 | T 11/4/02 | | |
| 11/5/02 | Motion in Limine | | |

054

11/5/02    Motion for Discovery.
11/7/02    Guilty Verdict of Theft of Property 2nd
              + Burg 1st.
11/7/02    Verdict order - Sent 1/7/03 @ 9:00AM

State of Alabama v. Christopher C. McCullough
Case No. CC- 02 - 189    (Count I Burglary 1st degree)

On  1/7/03  , the Defendant appeared in open Court with counsel for sentencing. It is the Court's Order
that (he/she) be and hereby is sentenced to:

[X]    The penitentiary of the State of Alabama for a term of ____15  years____
       _____
       to run (X) concurrently, ( ) consecutively, ( ) as an Habitual Offender.
       The Defendant's sentence shall be split with the Defendant serving _____
       Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of
       _____

[ ]    The _____ County Jail for a term of _____ to run ( ) concurrently
       ( ) consecutively.
[ ]    The Defendant's sentence is hereby suspended for a period of _____.
[ ]    The custody of the Director of the Department of Corrections of this State as an Youthful Offender for a term of
       _____ to run ( ) concurrently, ( ) consecutively.

[X]    Defendant shall receive credit for any time served since the date of arrest in connection with this matter to which
       (he/she) may be legally entitled.
[X]    Defendant shall pay the costs of court, which shall include the cost of (his/her) legally appointed attorney.
[X]    Defendant shall reimburse the County for any medical or dental expenses incurred while an inmate in connection
       with this case.
[X]    Defendant shall pay a Victim's Compensation Fund Award of $___50.00___.
[ ]    Defendant shall pay a fine of $1000.00 pursuant to Section 13A-12-281.
[ ]    Defendant shall pay a fine of $2000.00 pursuant to Section 13A-12-282.
[ ]    Defendant shall pay $100.00 to the Forensic Sciences Drug Trust Fund.
[ ]    Defendant shall pay $250.00 to the Alabama Head Injury Foundation Fund.
[ ]    Defendant shall pay $100.00 to the Alabama Chemical Testing Training and Equipment Trust Fund
[ ]    Defendant shall pay a fine of $_____.
[X]    Defendant shall pay restitution as follows: $1475.00 _____

[ ]    Defendant shall report to the Court Referral Office and successfully complete all programs as directed.
[ ]    Other conditions of sentence are: _____
       _____
[ ]    Any items seized in connection with this case are to be condemned and forfeited to the investigating agency for
       proper disposal or destruction.
[X]    The Defendant was informed in open Court of his/her right to appeal this matter within forty-two (42) days of
       today's date.

ACRO369  A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION                    CASE: CC 2002 000189.00
                                JUDGE ID:   XXX
------------------------------------------------------------------
STATE  OF  ALABAMA            VS   MCCULLOUGH CHRISTOPHER C
------------------------------------------------------------------
  DATE          ACTION, JUDGMENTS, CASE NOTES
------------------------------------------------------------------

[X]  The Defendant made application for probation.
[ ]  Defendant waived (his/her) right to make application for probation.
     The Court considered the application of the Defendant for probation.  The Court took into consideration all
evidence presented, including any report submitted by the Probation Officer.  Based upon the matters presented before the
Court, IT IS ORDERED as follows:
[X]  Defendant's application for probation is denied.
[ ]  Defendant's application for probation is granted.  The Defendant shall be placed on (supervised)(unsupervised)
     probation for a period of _____.
[ ]  The Defendant's sentence shall be split with the Defendant serving _____
     Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of
     _____
[ ]  The Defendant shall attend and successfully complete the Substance Abuse Program through the Department of
     Corrections prior to (his/her) release.
[ ]  The Defendant is specifically Ordered to refrain from any consumption of alcoholic beverages during the duration
     of (his/her) probation period.
[ ]  Other conditions of probation are: _____
     _____

___1/7/03_____                    _____Circuit Judge_____
Date                                         Circuit Judge
------------------------------------------------------------------

State of Alabama v.   Christopher C. McCullough
Case No. CC-  02- 189  (Count II)(theft of Property 2nd degree)

     On  1/7/03 , the Defendant appeared in open Court with counsel for sentencing. It is the Court's Order
that (he/she) be and hereby is sentenced to:
[X]  The penitentiary of the State of Alabama for a term of _____10 years_____

     to run (X) concurrently, ( ) consecutively, ( ) as an Habitual Offender.
[ ]  The Defendant's sentence shall be split with the Defendant serving _____.
     Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of
     _____.
[ ]  The _____County Jail for a term of _____ to run ( ) concurrently
     ( ) consecutively.
[ ]. The Defendant's sentence is hereby suspended for a period of _____
[ ]  The custody of the Director of the Department of Corrections of this State as an Youthful Offender for a term of
     _____ to run ( ) concurrently, ( ) consecutively.

[X]  Defendant shall receive credit for any time served since the date of arrest in connection with this matter to which
     (he/she) may be legally entitled.
[X]  Defendant shall pay the costs of court, which shall include the cost of (his/her) legally appointed attorney.
[X]  Defendant shall reimburse the County for any medical or dental expenses incurred while an inmate in connection
     with this case.
[X]  Defendant shall pay a Victim's Compensation Fund Award of $__50.00_____.
[ ]  Defendant shall pay a fine of $1000.00 pursuant to Section 13A-12-281.
[ ]  Defendant shall pay a fine of $2000.00 pursuant to Section 13A-12-282.
[ ]  Defendant shall pay $100.00 to the Forensic Sciences Drug Trust Fund.
[ ]  Defendant shall pay $250.00 to the Alabama Head Injury Foundation Fund.

056

[ ]   Defendant shall pay $100.00 to the Alabama Chemical Testing Training and Equipment Trust Fund
[ ]   Defendant shall pay a fine of $_____.
[ ]   Defendant shall pay restitution as follows: _____
_____

[ ]   Defendant shall report to the Court Referral Office and successfully complete all programs as directed.
[ ]   Other conditions of sentence are: _____
_____

[ ]   Any items seized in connection with this case are to be condemned and forfeited to the investigating agency for
      proper disposal or destruction.
[X]   The Defendant was informed in open Court of his/her right to appeal this matter within forty-two (42) days of
      today's date.

[X]   The Defendant made application for probation.
[ ]   Defendant waived (his/her) right to make application for probation.
      The Court considered the application of the Defendant for probation. The Court took into consideration all
evidence presented, including any report submitted by the Probation Officer. Based upon the matters presented before the
Court, IT IS ORDERED as follows:
[X]   Defendant's application for probation is denied.
[ ]   Defendant's application for probation is granted. The Defendant shall be placed on (supervised)(unsupervised)
      probation for a period of _____.
[ ]   The Defendant's sentence shall be split with the Defendant serving _____.
      Following release, the Defendant shall be placed on (supervised)(unsupervised) probation for a period of
      _____.

[ ]   The Defendant shall attend and successfully complete the Substance Abuse Program through the Department of
      Corrections prior to (his/her) release.
[ ]   The Defendant is specifically Ordered to refrain from any consumption of alcoholic beverages during the duration
      of (his/her) probation period.
[ ]   Other conditions of probation are: _____

____1/7/03_____                    _____
Date                                       Circuit Judge

**CHAMBERS COUNTY DETENTION FACILITY**
*Inmate Stationery*

FILED IN OFFICE THIS

JAN 1 8 2003

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY ALABAMA

057

I one said Christopher McCullough acknowleges my Notice of Appeal to the Circuit Court of Chamber County, Alabama

My Motion For De Novo Appeal goes as Stated!

(1) Police conducted an unlawful search and seizure of said residence.

(2) Police officer gave false statement to incriminate me the Defendant.

(3) Police gave false testimony on the arresting day of apprehension.

(4) Mainly, my witnesses were not I repeat were not [Subpoena] cause of Assistant District Attorney [Bill Lisenby Jr.] did knowingly conduct willful disobedience by getting my lawyer to deliberately tell me that I was going to Jury Trial for the cemetery incident the morning I was arrested.

But November 3 2002 my lawyer one said [Steve Morris] came to the [County Jail] at 7.00 p.m. Wednesday night telling me that Assistant District Attorney [Bill Lisenby Jr.] told him quote — unquote [3:11] said he changed his mind about [Mike Gragg] case I asked he's going to try [John Burton's] case. Intentional Assault!

(5) There was no physical evidence no substantial evidence, no witness's other than Co-defendant's false testimony. Irrelevant testimony by Mike Looser which had nothing to do with the Trial.

GROUNDS FOR A NEW TRIAL CAUSE OF THE INSUFFICINCY AND MALACIOUS MISTAKES

THIS IS ONE OF THREE COPIES
THIS COPY GOES TO CHARLES STORY CIRCUIT CLERK

```
ACR371                    ALABAMA JUDICIAL DATA CENTER
           NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
                          BY THE TRIAL COURT CLERK                              058
                    IN THE CIRCUIT COURT OF  CHAMBERS COUNTY
STATE OF ALABAMA VS MCCULLOUGH CHRISTOPHER C  JUDGE: TOM. F. YOUNG JR.
-------------------------------------------------------------------------------
|  APPEAL DATE: 00/00/0000                                                    |
-------------------------------------------------------------------------------
|  INDIGENCY STATUS:                                                          |
|     GRANTED INDIGENCY STATUS AT TRIAL COURT:           __X__ YES  __.__ NO   |
|     APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:     __.__ YES  __X__ NO   |
|     INDIGENT STATUS REVOKED ON APPEAL:                 __X__ YES  __.__ NO   |
|     INDIGENT STATUS GRANTED ON APPEAL:                 _____ YES  __X__ NO   |
|                                                                             |
|  DEATH PENALTY: NO                                                          |
|                                                                             |
|  APPEAL TYPE:                                                               |
-------------------------------------------------------------------------------
|  POST-JUDGMENT MOTIONS FILED:    DT FILED      DT DENIED     CON BY AGREE    |
|  ___  MOTION FOR NEW TRIAL                                                  |
|  ___  MOTION FOR JUDG. OF ACQUIT _____    _____    _____      |
|  ___  MOTION TO W/D GUILTY PLEA  _____    _____    _____      |
|  ___  MOTION FOR ATTY TO W/DRAW  _____    _____    _____      |
|  ___  OTHER _____  _____    _____    _____      |
-------------------------------------------------------------------------------
|  COURT REPORTER(S):              GARNER, MELANIE H.                          |
|  ADDRESS:                        C/O HON. PHILLIP O. SEGRE                   |
|                                  ALEXANDER CITY,  AL  35011                  |
|                                                                             |
|  APPELLATE COUNSEL #1:           MORRIS STEVEN ROBERT                        |
|  ADDRESS:                        596 1ST AVENUE SE                          |
|                                  P. O. BOX 814                              |
|                                  WEDOWEE      ,  AL  36278                   |
|  PHONE NUMBER:                   256-357-9211                               |
|                                                                             |
|  APPELLATE COUNSEL #2:                                                       |
|  ADDRESS:                        _____       |
|                                  _____       |
|                                  _____       |
|  PHONE NUMBER:                   _____       |
|                                                                             |
|  APPELLANT (PRO SE):             MCCULLOUGH CHRISTOPHER C                    |
|  ADDRESS:                        604 S 1ST AVE                              |
|                                  LANETT       ,  AL  368630000              |
|  AIS #:                                                                     |
|                                                                             |
|  APPELLEE (IF CITY APPEAL):                                                  |
|  ADDRESS:                        _____       |
|                                  _____       |
|                                  _____       |
-------------------------------------------------------------------------------
I CERTIFY THAT THE INFORMATION PROVIDED                       OPERATOR: CHS
ABOVE IS ACCURATE TO THE BEST OF MY                        PREPARED 01/29/2003
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 29 DAY OF JAn____ 2003    ----CIRCUIT COURT CLERK----
```

URIGINAL ¹

1     IN THE FIFTH JUDICIAL CIRCUIT IN AND FOR CHAMBERS COUNTY

2                   STATE OF ALABAMA

3  STATE OF ALABAMA

4  VS                       Case No. CV-02-189

5  CHRISTOPHER MCCULLOUGH,

6       Defendant.

7  _____/

8

9      COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS

10  BEFORE:  THE HONORABLE TOM F. YOUNG, JR., CIRCUIT JUDGE

11          November 7, 2002 - Chambers County Courthouse

12          Lafayette, Alabama

13

14                 APPEARANCES

15  FOR THE STATE:

16     Bill Lisenby, Esq.

17     Amy Newsome, Esq.

18  FOR THE DEFENDANT:

19     Steve Morris, Esq.

20     Mark Carlton, Esq.

21

22

23

24         MELANIE H. GARNER, CSR, RPR

25          OFFICIAL COURT REPORTER

2

```
 1                        INDEX
 2     FOR THE STATE:          D     X     RD    RC
 3     John Burton            48    54
 4     Robby Bettis           56    66
 5     Billy Norris           70    78
 6     Lincoln Whaley         83
 7     Jeff Blackstone        86
 8     Richard Carter         91   102   109
 9     FOR THE DEFENDANT:
10     Christopher McCullough  113   119
11
12                      EXHIBITS
13     FOR THE STATE:                    ADMITTED
14     1 (8 MM VIDEOTAPE)                   X
15     2 (RIGHTS FORM)                      X
16     3 - 7 (PHOTOS)                       X
17     8 (8 MM VIDEOTAPE)                   X
18     10 (STATEMENT)                       X
19     11 (PHOTO)                           X
20     FOR THE DEFENDANT:
21     1 (WAIVER OF ARRAIGNMENT)
22     2 (PLEA AGREEMENT)
23     3 (CASE ACTION SUMMARY)
24     SENTENCING AND PROBATION                155
25     REPORTER'S CERTIFICATE                  163
```

3

1                          PROCEEDINGS

2                     (NOVEMBER 7, 2002)

3                     (BENCH CONFERENCE)

4          THE COURT:  All right.  State versus Christopher

5     McCullough.  Is there anything in this motion that we

6     need to address that's going to happen in the voir diring

7     process?

8          MR. MORRIS:  No, sir.

9          THE COURT:  Okay.

10         MR. LISENBY:  Do you want to ask about Mr. Gragg or

11    or any of the other victims -- alleged victims?

12         THE COURT:  What is this about?

13         MR. MORRIS:  Judge, he's got some other charges.

14         THE COURT:  You're going to have to speak up where I

15    can hear you.

16         MR. MORRIS:  He's got some other charges, and we

17    don't want anything outside of this case coming in.

18         THE COURT:  Why would we do it?

19         MR. LISENBY:  Well, there's going to be at least one

20    thing that we're going to need to get into, and I told

21    Steve we could address that.  I don't know that we need

22    to address it before voir dire.

23         THE COURT:  Okay.  While he's calling roll, we might

24    as well.

25         MR. LISENBY:  Very quickly, what happened is that

4

1    this burglary involving Mr. Burton's residence occurred

2    on March the 13th.  On March the 19th, the Lanett Police

3    Department got a call on another attempted burglary going

4    on at an individual's house by the name of Mike Gragg.

5    Police responded out there, and they stopped the vehicle

6    coming from the area of this residence and had this

7    defendant, Mr. McCullough, and the co-defendant, Billy

8    Norris, in it.  And they stopped the vehicle, and they

9    also had a mask and masking tape and those sort of

10    things.  And they also had two pistols that came out of

11    John Burton's residence inside the vehicle.  So that's

12    part of the theft count.

13        THE COURT:  Who is the victim on this one right

14    here?

15        MR. LISENBY:  John Burton is the victim in this

16    case.

17        THE COURT:  Burton.  Okay.

18        MR. LISENBY:  So two of the weapons that were stolen

19    in John Burton's burglary six days before the stop of the

20    vehicle were inside the vehicle.  So in some way we're

21    going to have to talk about that.

22        THE COURT:  So what they're going to be talking

23    about -- unless the testimony is going to say we got

24    called out to another burglary or we got another burglary

25    call.  We got out there, and we spotted this car.  We

5

1    stopped this car, at the time we searched the car and

2    found pistols from a burglary that had been previously

3    committed.  Right?

4         MR. MORRIS:  Just for the Record, we would like to

5    not even mention that they were called.  Just that there

6    was a stop and they found these weapons.  Because, if

7    they mention another burglary in the process, that's

8    going to prejudice my client.

9         THE COURT:  I promise you, everything they're going

10    to do in this trial is going to be prejudicial to your

11    client.

12         MR. MORRIS:  I know that.  I know.

13         THE COURT:  It's just that unduly, we don't want to

14    get into that.

15         MR. MORRIS:  Just the fact that they're trying this

16    case, and they was in the --

17         THE COURT:  Right.  So you don't want that

18    mentioned, because the mention of another burglary would

19    unduly prejudice.

20         MR. MORRIS:  I know --

21         THE COURT:  Bill, let the Court ask you this.  Do

22    you see any reason to mention what they were going to do

23    other than there was a stop?  Or do you think we're going

24    to have to have something justifying this stop, do you

25    believe, in the jury's eyes?

6

1       MR. LISENBY:  Well, let me tell you a little bit

2    about the circumstances of the stop.  To say that I think

3    we're going to have to get into a little something -- how

4    far the Court wants us to go, obviously we will follow

5    your instructions.  When they got the call to this

6    burglary at the Gragg residence, which is not this

7    burglary that we're trying, okay?  I will call it the

8    Gragg burglary.  This is the Burton burglary we're

9    doing.  When they got the call to the Gragg burglary,

10    officers, you know, went to the house.  They also went to

11    an area of the cemetery -- of a cemetery that was near

12    where that residence was.  And Officer Bettis went to the

13    area of the cemetery and saw a car coming out from the

14    dirt road into the cemetery.

15       MR. MORRIS:  How far was the cemetery away from the

16    house?

17       MR. LISENBY:  I don't know.  It wasn't that far.

18       MR. MORRIS:  Couple miles?

19       MR. LISENBY:  No, it wasn't near that far.  It was a

20    very short distance.  Now, we can phrase it however you

21    want us to.  But the mark --

22       MR. CARLTON:  What about a suspicious vehicle?

23       MR. LISENBY:  That's what I was going to say.  That

24    he received a call.  He went to the area of the cemetery,

25    observed the vehicle.

7

1      MR. MORRIS:  Okay.  But no mention of --

2      THE COURT:  Can you live with that?

3      MR. LISENBY:  I mean, I would at least like

4    something maybe for the Court to maybe in your charges at

5    the end to say something about -- I'm not -- I'm just

6    talking out loud at this point.

7      THE COURT:  Right.

8      MR. LISENBY:  Something about the jury shouldn't be

9    concerned about what happened at this traffic stop.

10   That's okay and, you know...

11     THE COURT:  Well, certainly if he mentions it like

12   -- if he mentions that I got a call out to an area and

13   while I was out there observed this vehicle and I stopped

14   this vehicle or whatever, certainly there can't be any

15   mention made by the defense about why did they stop him

16   or what caused that.  You know, I don't want any mention

17   of that.  If y'all allude to that, then I'm going to let

18   them go into exactly what they were doing out there.

19     MR. MORRIS:  Yes, sir.

20     THE COURT:  I mean, that's what you're talking

21   about, isn't it, Bill?

22     MR. LISENBY:  Yes, sir.

23     THE COURT:  That you want to make sure there's no

24   question in their mind that they're just riding around

25   and decide to stop the car.

8

MR. LISENBY:  Exactly.

THE COURT:  Well, I think he can say we got a call on an official call, and we went out to this area.  Based on the official call, we observed this vehicle and we stopped this vehicle.  I mean, think that --

MR. LISENBY:  The officer is going to say what I did is I had made a felony stop, you know, felony traffic stop.

THE COURT:  Right.

MR. LISENBY:  Which means he comes out, guns drawn, people lay down on the ground.

THE COURT:  Yes.  Okay.

MR. LISENBY:  I just want to make sure there's not a question in anyone's mind about that.

THE COURT:  You understand, Steve, I mean, I don't mind limiting what information comes out to just that they went out there and not any particulars about why they were out there.  But as long as they're not going to be prejudiced in you mentioning, well, they shouldn't have stopped him, or they didn't have any reason to stop this person, they're just out there wandering around and my guy is an innocent bystander and got caught up in all of this.

MR. LISENBY:  Let me mention this to y'all, too, while we're talking about this.  When we get to Mr.

9

McCullough's statement -- You've seen it, Steve.  This first paragraph is about the Burton burglary.  The second paragraph is the Gragg burglary.  You haven't seen this. Well, you haven't seen it the way I've got it cut down, is what I meant.

THE COURT:  Oh, I see what you did.  Yeah.

MR. LISENBY:  I took out that second paragraph, if the Court wants me to do that.

THE COURT:  Y'all are not going to object to the admission of this document, because I can't imagine y'all would be, as it cuts out any reference to the other burlgary.

MR. MORRIS:  That's fine.

THE COURT:  Okay.  So do we have a --

MR. MORRIS:  Are the police officers going to understand they can't make reference?

MR. LISENBY:  Yes.  I think what we'll need to do is after we get the jury selected, maybe the judge can send them back into jury room and we'll take a couple of minutes and tell the officers about what they can say and can't say.

THE COURT:  All right.  Anything else before we -- so I'm going to go right into this right into voir dire.

MR. MORRIS:  There is a videotape that Whaley made.

THE COURT:  Not your videotape?

10

 1          MR. LISENBY:  It's a videotape of the traffic stop,

 2      I think.

 3          THE COURT:  Oh.

 4          MR. MORRIS:  Lincoln had a videotape and he was

 5      holding it after they stopped him.

 6          MR. LISENBY:  But that's at the Gragg burglary.

 7          MR. MORRIS:  That's at the cemetery, yeah.  Are

 8      y'all not going to --

 9          MR. LISENBY:  I tell you what.  Before we -- I

10      haven't seen it.  I don't think you have either, have

11      you?

12          MR. MORRIS:  No.

13          MR. LISENBY:  I guess before we decide to get into

14      that, we will come up and approach the Court and let

15      everybody watch.

16          THE COURT:  Okay.  Well, let's have no mention -- I

17      don't want any mention in opening statements or anything

18      there, the things that we've got questions about the

19      admissibility of.

20          MR. MORRIS:  When Lincoln gets on the stand, can I

21      question him and say did you videotape?

22          THE COURT:  If you're going to do that, you're going

23      to make them aware of it, though.

24          MR. LISENBY:  If you're going to do that, we'll

25      just go ahead and play it.  I mean, it doesn't make any

11

1    difference to me.

2         MR. MORRIS:  Well, we'll talk about that.

3         THE COURT:  Okay.

4         MR. LISENBY:  When we get to Detective Whaley, we'll

5    just come up and approach the Court.

6         THE COURT:  Okay.  All right?

7              (BENCH CONFERENCE CONCLUDED)

8         THE COURT:  All right.  Good morning, ladies and

9    gentlemen.  I apologize for the delay.  We're trying to

10   get a few other organizational things going on.  You will

11   find that today will be a lot more expedient than

12   Monday.  Monday is our organizational day.  And, as you

13   see, we have all the cases up here.  We've got to go

14   through and identify everybody here.  We've got to do

15   excuses.  This morning won't involve all of that.  We'll

16   go right into the case.  At this time, we're going to

17   call the case of State of Alabama versus Christopher

18   McCullough.  State of Alabama ready?

19        MS. NEWSOME:  Yes, Your Honor.

20        THE COURT:  Okay.  Is the defendant ready in this

21   case?

22        MR. MORRIS:  Yes, sir.

23        THE COURT:  All right, sir.  Defense ready?

24        MR. MORRIS:  Yes, sir.

25        THE COURT:  All right.  Ladies and gentlemen, let me

12

1    introduce you to some of the people that will be involved

2    in this case.  First of all, the defendant in this case

3    is Christopher McCullough.  Mr. McCullough, will you

4    stand up, please, sir?

5                    (DEFENDANT COMPLIES)

6         THE COURT:  All right.  His attorney is Mr. Steve

7    Morris.  And also seated with Mr. Morris is Mr. Mark

8    Carlton.  All right.  Thank you, gentlemen.

9         All right.  State of Alabama will be represented by

10   Ms. Amy Newsome and by Mr. Bill Lisenby.  Mr. Lisenby,

11   have you got anybody else at your table?  Let me also

12   introduce -- I didn't have an opportunity to do this

13   Monday -- your elected district attorney, Mr. Rea Clark.

14        MR. CLARK:  Good morning.

15        THE COURT:  All right.  Do you have anybody else at

16   your table you need to introduce, Mr. Lisenby or Ms.

17   Newsome?

18        MS. NEWSOME:  The victim in this case is John

19   Burton.

20        THE COURT:  All right.  Let me read the indictment

21   in this case.  "The Grand Jury of said county charges

22   that before the finding of this indictment" -- Let me see

23   the parties for just one moment, please, before I go any

24   further.

25                    (BENCH CONFERENCE)

13

1        THE COURT:  Am I just leaving out the name of Billy

2    Norris in the reading of this indictment?

3        MR. LISENBY:  I mean, he's already entered a guilty

4    plea, but he was a co-defendant.  You know, we expect him

5    to testify, so I'm sure they will hear his name, anyway.

6        THE COURT:  All right.   That's what I wanted to

7    make sure of.

8        MR. LISENBY:  I think one of the counts in that is

9    just Mr. Morris.  I don't think you need to read that.

10        THE COURT:  Which one is that?

11        MR. LISENBY:  I think it's Number 3.

12        THE COURT:  No, McCullough is Number 3.  Must be

13    Number 4.

14        MR. LISENBY:  Number 4.

15        THE COURT:  Okay.  I won't read Number 4.  Okay?

16        MR. CARLTON:  Are all of the charges in this same

17    indictment, or are there multiple indictments?

18        THE COURT:  No, they're one indictment.

19        MR. CARLTON:  Are you going to read the counts of

20    the other burglary that involve the other thefts and

21    burglaries or just one count?

22        THE COURT:  This is all the counts in this case.

23        MR. CARLTON:  Okay.  I knew he had multiple.

24            (BENCH CONFERENCE CONCLUDED)

25        THE COURT:  All right.  Sorry, ladies and

14

gentlemen.  Count one of the indictment reads as

follows:  "The Grand Jury of said county charge that

before the finding of this indictment, Christopher

McCullough, alias, and Billy Norris, alias, whose names

are otherwise unknown to the Grand Jury, did knowingly

and unlawfully enter or remain unlawfully in a dwelling

of another, to wit: John Burton, with intent to commit a

crime therein, to wit: theft of property, and while

effecting entry or while in the dwelling or in immediate

flight therefrom, the said Christopher McCullough and/or

Billy Norris was armed with an explosive or deadly

weapon, to wit: A pistol or rifle, a further description

of which is otherwise unknown to the Grand Jury in

violation of Section 13A-7-5 of the Code of Alabama

against the peace and dignity of the State of Alabama.

"Count two.  The Grand Jury of said county charges

that before the finding of this indictment, Christopher

McCullough, alias, and Billy Norris, alias, whose names

are otherwise unknown to the Grand Jury did unknowingly

obtain or exert unauthorized control over the following

property, to wit:  Two pistols, five knives, and one

rifle, a further description of which are otherwise

unknown to the Grand Jury, and lawful currency of the

United States of America, the exact denominations of

which are otherwise unknown to the Grand Jury, the

15

property of John Burton, and having a value in excess of

one thousand dollars with intent to deprive the owner of

said property in violation of Section 13A-8-3 of the Code

of Alabama against the peace and dignity of the State of

Alabama.

"Count three.  The Grand Jury of said county further

charges that before the finding of this indictment,

Christopher McCullough, alias, whose name is otherwise

unknown to the Grand Jury, did intentionally receive,

retain, or dispose of stolen property, to wit:  Two

pistols, a further description of which is otherwise

unknown to the Grand Jury, the property of John Burton,

and having a value in excess of one $100 but not in

excess of one thousand dollars, knowing that it was

stolen or having reasonable grounds to believe it was

stolen and not having the intent to restore it to the

owner in violation of Section 13A-8-18 of the Code of

Alabama against the peace and dignity of the State of

Alabama."

What we're talking about is a burglary first degree

charge, a theft of property first degree charge, and

receiving stolen property second degree charge.

Okay.  Now, I have these questions to you about this

particular case.  Are any of you related by blood or

marriage to the defendant, his attorneys, the prosecutor,

16

1    or the alleged victim?

2        Have each of you been a resident householder or

3    freeholder of Chambers County for the preceding six

4    months?

5        Have any of you been indicted within the last 12

6    months for a felony or for an offense of the same

7    character as that with which the defendant is charged?

8        Do any of you have an interest in the conviction or

9    acquittal of the defendant?

10        Have any of you made any promises or given any

11    assurance that you will convict or acquit the defendant?

12        Do any of you have a fixed opinion as to the guilt

13    or innocence of the defendant which would bias your

14    verdict?

15        Are any of you a witness in this case?

16        Were any of you a member of the Grand Jury that

17    returned this indictment?  And I believe this was in

18    August of 2002.

19        Do any of you have a fixed opinion against

20    imprisonment in the penitentiary?

21        Would each of you convict on circumstantial

22    evidence?

23        Do any of you know anything about the facts of this

24    case which would influence your verdict one way or the

25    other?

17

1    Do any of you have any reason why you, if selected

2    as a juror in this case, could not give both the State of

3    Alabama and the defendant a fair and impartial trial?

4    All right.  At this time the attorneys will have

5    some additional questions.  State of Alabama, Ms.

6    Newsome.

7    MS. NEWSOME:  May it Please the Court.  Good

8    morning.  We're here to select another jury.  First I

9    would like to introduce myself.  My name is Amy Newsome.

10   I live in Valley, Alabama, with my husband and my

11   three-year-old daughter.  I am assistant district

12   attorney for the Fifth Judicial Circuit which includes

13   Chambers County, and my office is located here in

14   Lafayette.

15   First question I would like to ask is whether anyone

16   knows the defendant in this case, Christopher

17   McCullough?  Okay.  Sir, if you would please stand and

18   tell us your name so the court reporter can get that

19   down?

20   PROSPECTIVE JUROR:  George Short.

21   MS. NEWSOME:  Mr. Short, how do you know Christopher

22   McCullough?

23   PROSPECTIVE JUROR:  I used to work with him.

24   MS. NEWSOME:  How long did you work with him?

25   PROSPECTIVE JUROR:  Just a couple of months.

18

1      THE COURT:  Mr. Short, I will ask that you speak up,

2  because my court reporter has to get your answers up

3  here.  Okay?

4      MS. NEWSOME:  You worked with him for a couple of

5  months?

6      PROSPECTIVE JUROR:  Yes.

7      MS. NEWSOME:  Would you say that you're friends?

8      PROSPECTIVE JUROR:  No, I didn't know him that well.

9      MS. NEWSOME:  Would your knowledge or relationship

10  with Mr. McCullough influence your decision in this case

11  at all?

12      PROSPECTIVE JUROR:  No, ma'am.

13      MS. NEWSOME:  Thank you.  Does anyone else know

14  Christopher McCullough?

15      Mr. McCullough is represented today by Steve Morris

16  and Mark Carlton.  Does anyone know Steve Morris who is

17  an attorney whose main office is located in Wedowee?

18  Does anyone know Mark Carlton?  Yes, sir, in the back?

19      PROSPECTIVE JUROR:  He handled my divorce and

20  custody case.

21      MS. NEWSOME:  Could you speak up a little bit, and

22  first tell us your name?

23      PROSPECTIVE JUROR:  James Bassett.

24      MS. NEWSOME:  James Bass?

25      PROSPECTIVE JUROR:  Bassett.

19

1        MS. NEWSOME:  Bassett.  And Mr. Carlton has

2   represented you in the past?

3        PROSPECTIVE JUROR:  Yes.

4        MS. NEWSOME:  Would his representation of you in

5   the past influence your decision in this case at all?

6        PROSPECTIVE JUROR:  No, ma'am.

7        MS. NEWSOME:  Do you still consider him your

8   attorney?

9        PROSPECTIVE JUROR:  I will go back to him.

10       MS. NEWSOME:  Thank you.  Mr. Carlton has a law

11  partner whose name is Nick Wooten.  Does anybody know Mr.

12  Wooten?  Yes, ma'am?  Please stand and tell us your name?

13       PROSPECTIVE JUROR:  My name is Debra --

14       THE COURT:  Please remember -- we have got to

15  know -- it may be an unnatural thing to elevate your

16  voice some.  But, if you would, our court reporter has to

17  get everything that you're saying up here.  All right?

18       PROSPECTIVE JUROR:  Debra Hill, and he handled a

19  case for me.

20       MS. NEWSOME:  How long ago was that?

21       PROSPECTIVE JUROR:  Well, he said it would be like

22  in September before he handled it.

23       MS. NEWSOME:  So it's --

24       PROSPECTIVE JUROR:  An accident case.

25       MS. NEWSOME:  Okay.  That's a civil case?

1    PROSPECTIVE JUROR:  Yes.

2    MS. NEWSOME:  Okay.  He currently represents you?

3    PROSPECTIVE JUROR:  Yes.

4    MS. NEWSOME:  Would Mr. Wooten's representation of

5    you in that other case influence your decision in this

6    case?

7    PROSPECTIVE JUROR:  No, it wouldn't.

8    MS. NEWSOME:  The Lanett Police Department is

9    involved in this particular case, and I would like to

10   know if any of you have ever had any unpleasant

11   experience with the Lanett Police Department?  Had a

12   run-in with particular officers or you dislike them for

13   whatever reason?

14   The alleged victim in this case is Mr. John Burton

15   who is seated near our table.  Does anyone know John

16   Burton?

17   PROSPECTIVE JUROR:  Yes.

18   MS. NEWSOME:  Okay.  Let's start on the front row,

19   and please stand and tell us your name.

20   PROSPECTIVE JUROR:  I'm Julie Bonner, and John's

21   family and my family attended church at the same church

22   when we were children.  So we grew up together and go to

23   the same church.

24   MS. NEWSOME:  Would you consider yourself friends?

25   PROSPECTIVE JUROR:  Yes.  But, as far as contact,

21

1      there hasn't been any since we were teenagers.

2          MS. NEWSOME:  Would your knowledge of Mr. Burton and

3      your past relationship with him influence your decision

4      in this case one way or the other?

5          PROSPECTIVE JUROR:  No.

6          MS. NEWSOME:  Would you be able to be fair and

7      impartial?

8          PROSPECTIVE JUROR:  Yes.

9          MS. NEWSOME:  Thank you.  Is there anybody else on

10     the second row?

11         PROSPECTIVE JUROR:  Yes.  My name is Phillip Smith.

12     I know John through being a member of the Elks Club that

13     he went to.

14         MS. NEWSOME:  Do you still see him on a regular

15     basis?

16         PROSPECTIVE JUROR:  Not now.

17         MS. NEWSOME:  Would your knowledge of Mr. Burton

18     influence your decision in this case at all?

19         PROSPECTIVE JUROR:  No.

20         MS. NEWSOME:  Would you be able to be fair and

21     impartial?

22         PROSPECTIVE JUROR:  Yes.

23         MS. NEWSOME:  Thank you.  Anyone on the third row?

24     Fourth?

25         PROSPECTIVE JUROR:  Tamera Oliver.

22

1          MS. NEWSOME:  How do you know Mr. Burton?

2          PROSPECTIVE JUROR:  I would say we're friends.

3          MS. NEWSOME:  How long have y'all been friends?

4          PROSPECTIVE JUROR:  We've known each other for

5     years, several years.

6          MS. NEWSOME:  Would your friendship with Mr. Burton

7     influence your decision in this case one way or the

8     other?

9          PROSPECTIVE JUROR:  No.

10          MS. NEWSOME:  Would you tend to believe his

11     testimony over any other witness' testimony?

12          PROSPECTIVE JUROR:  No.

13          MS. NEWSOME:  Okay.  Anybody else on that row?  Yes,

14     ma'am?

15          PROSPECTIVE JUROR:  My name is Diane Dinger, and

16     John's mother worked at the school where my children go

17     to school.

18          MS. NEWSOME:  Do you know John personally?

19          PROSPECTIVE JUROR:  I just know who John is.

20          MS. NEWSOME:  Would your knowledge of Mr. Burton

21     influence your decision in this case?

22          PROSPECTIVE JUROR:  No.

23          PROSPECTIVE JUROR:  Glenn Pruitt.

24          MS. NEWSOME:  Glenn Pruitt?  How do you know Mr.

25     Burton?

23

1           PROSPECTIVE JUROR:  I work with him.

2           MS. NEWSOME:  You currently work with him?

3           PROSPECTIVE JUROR:  Yes.

4           MS. NEWSOME:  Would you consider yourself a friend

5      of Mr. Burton's?

6           PROSPECTIVE JUROR:  Well, we actually work in

7      different buildings, but I just know he works there.

8           MS. NEWSOME:  Would your knowledge of Mr. Burton

9      influence your decision in this case one way or the

10     other?

11          PROSPECTIVE JUROR:  No.

12          MS. NEWSOME:  You would be able to be fair and

13     impartial?

14          PROSPECTIVE JUROR:  Yes.

15          MS. NEWSOME:  Thank you.  Anybody else?

16          PROSPECTIVE JUROR:  Ted Sorrell.  I went to Auburn

17     University with John.

18          MS. NEWSOME:  How long ago was that?

19          PROSPECTIVE JUROR:  '88.

20          MS. NEWSOME:  1988?

21          PROSPECTIVE JUROR:  Yeah.

22          MS. NEWSOME:  Have you had any contact with him

23     since 1988?

24          PROSPECTIVE JUROR:  No, ma'am.

25          MS. NEWSOME:  Would your knowledge of Mr. Burton

24

1    influence your decision in this case?

2         PROSPECTIVE JUROR:  No, ma'am.

3         MS. NEWSOME:  Thank you.  Anybody else?

4         Judge Young has read the indictment, and the

5    charges in this case are burglary in the first degree,

6    theft of the property in the first degree, and receiving

7    stolen property.  I would like to know if anyone has been

8    charged with burglary and later found not guilty?  And,

9    if any of these questions are questions that you would

10   rather answer in private before the judge, come form a

11   line over here.  If anyone has been charged with burglary

12   or theft of property or receiving stolen property and

13   later found not guilty, or if you have a relative that

14   has been charged with any of those offenses and found

15   guilty or not guilty.

16        THE COURT:  All right.  How are you doing?  I'm

17   going to have to have your name for the Record.

18        PROSPECTIVE JUROR:  Okay.  My name is Sandra Mapp.

19   My cousin got a bunch of my -- a couple of my checks and

20   cashed them, but she paid them back.

21        THE COURT:  Okay.

22        PROSPECTIVE JUROR:  So I just wanted to let you

23   know.

24        THE COURT:  Sure.  Would the fact that your cousin

25   or that you've been the victim of a theft in essence,

25

1  would that cause you any problems being fair to both the

2  State of Alabama and the defendant in this case?

3       PROSPECTIVE JUROR:  No, it won't.

4       THE COURT:  Okay.  Anything from counsel?

5       MR. MORRIS:  Ma'am, what was your name?

6       PROSPECTIVE JUROR:  Sandra Mapp.

7       THE COURT:  All right.  Thank you.

8       PROSPECTIVE JUROR:  I have an uncle whose supposed

9  to be serving time, but I think he --

10       THE COURT:  Okay.  Give us your name first.

11       PROSPECTIVE JUROR:  Julie Brunner.  I'm sorry.  And

12  he stole from Wendy's and stole a car --

13       THE COURT:  Now, who is this?

14       PROSPECTIVE JUROR:  Joel Wall.

15       THE COURT:  Your uncle?

16       PROSPECTIVE JUROR:  Right.

17       THE COURT:  Let me ask you this.  Would the fact

18  that your uncle has been charged with something along the

19  same lines that this defendant has, would that cause you

20  to be unfair to the State of Alabama or the defendant in

21  this case?

22       PROSPECTIVE JUROR:  No.

23       THE COURT:  Okay.  Counsel, anything further?

24       MR. MORRIS:  No, sir.

25       THE COURT:  Thank you.

26

1    THE CLERK:  Mr. Adams has a felony conviction.  We

2    looked him up a minute ago.

3    THE COURT:  Okay.  You've got a felony conviction?

4    PROSPECTIVE JUROR:  I have been convicted of second

5    degree burglary.

6    THE COURT:  You have?  All right.  Let's go on and

7    excuse him at this time.  All right.  You'll be excused.

8    You're free to leave.

9    PROSPECTIVE JUROR:  David Adams.

10    THE CLERK:  He wasn't on the venire.

11    THE COURT:  He wasn't on there, Steve.  All right.

12    You're excused at this point.

13    PROSPECTIVE JUROR:  Okay.

14    THE COURT:  Anything further?

15    MS. NEWSOME:  I have one last question.

16    THE COURT:  Okay.

17    (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

18    MS. NEWSOME:  My last question is whether any of you

19    know any member of Christopher McCullough's immediate

20    family or extended family?  Do you know his parents?

21    Brothers and sisters?  Any member of Christopher

22    McCullough's family?  Okay.  Thank you very much.

23    THE COURT:  All right.  Thank you, Ms. Newsome.  Mr.

24    Morris.

25    MR. MORRIS:  Ladies and gentlemen, my name is Steve

1    Morris.  And, as Amy has said, I practice mainly in the

2    Wedowee area in Randolph County.  I'm going to be asking

3    just a few more questions this morning.

4         My first question is have I as an attorney ever

5    represented someone that was on the opposite side of the

6    controversy of you or a family member?

7         Okay.  My second question is -- This is not my

8    case.  This is Christopher McCullough's case.  Does

9    anybody not understand that?  Okay.  No response.

10         My third question is do you understand that the

11    defendant is innocent at this time?  Is there anybody

12    that doesn't understand that?  No response.

13         Do you have a problem with the legal system as it is

14    set up now with the jury?  Do you have a problem with

15    that?  No response.

16         I'm going to be asking some questions about some of

17    the police officers involved in this case.  Does anybody

18    personally know Richard Carter or know him on a social

19    basis or maybe attend church?  Okay.  Stand up, sir.

20         PROSPECTIVE JUROR:  I'm employed with the City of

21    Lanett as street superintendent.  I know all of the

22    police officers.

23         MR. MORRIS:  You know Mr. Carter and the other

24    officers?  Would the fact that you know Mr. Carter, would

25    that influence your ability to be fair and impartial in

1    this case?

2        PROSPECTIVE JUROR:  No, it would not, sir.

3        MR.  MORRIS:  State your name, please, sir.

4        PROSPECTIVE JUROR:  My name is Michael Bass.

5        MR. MORRIS:  Is there anybody else that knows

6    Richard Carter?

7        Does anybody know a police officer or law

8    enforcement officer Jeff Blackstone?  Know him from

9    church or social events?  Thank you.

10        Does anybody know a law enforcement officer Kenny

11    Vines?  Stand up, sir.  Okay.  We will take the --

12        PROSPECTIVE JUROR:  Kenny and I are first cousins.

13    Angela Johnson.

14        MR. MORRIS:  How do you know Mr. Vines?

15        PROSPECTIVE JUROR:  Kenny and I are first cousins.

16        MR. MORRIS:  Would the fact that you are related,

17    would that impair your ability to be fair and impartial?

18        PROSPECTIVE JUROR:  No.

19        MR. MORRIS:  Your name?

20        PROSPECTIVE JUROR:  Lavon White.

21        MR. MORRIS:  How do you know Mr. Vines?

22        PROSPECTIVE JUROR:  I just know him.  He's a police

23    officer in Lafayette.

24        MR. MORRIS:  Would the fact that you know him, would

25    that impair your ability to be fair and impartial?

29

1          PROSPECTIVE JUROR:  No.

2          PROSPECTIVE JUROR:  John Burton.

3          MR. MORRIS:  What?

4          PROSPECTIVE JUROR:  Burton.

5          MR. MORRIS:  John Burton?  How do you know Mr.

6     Vines, Mr. Burton?

7          PROSPECTIVE JUROR:  Me and him are a member of the

8     same church.  He's a deacon at the church.

9          MR. MORRIS:  Y'all go to the same church?

10         PROSPECTIVE JUROR:  Yeah, we go to the same church.

11         MR. MORRIS:  Would the fact that you and Mr. Vines

12    go to the same church, would that impair your ability to

13    be fair and impartial?

14         PROSPECTIVE JUROR:  No.

15         MR. MORRIS:  It would not?

16             Okay.  Does anybody here know Steve Smith

17    personally or on a social basis?

18         PROSPECTIVE JUROR:  My name is Debra Hill.

19         MR. MORRIS:  How do you know Mr. Smith?

20         PROSPECTIVE JUROR:  He helped Mr. Wooten with my

21    case.

22         MR. MORRIS:  He what?

23         PROSPECTIVE JUROR:  Helped Mr. Wooten with my case.

24    Nicholas Wooten.

25         MR. MORRIS:  Okay.  Is there anybody else here that

30

1          knows Steve Smith?

2                 Does anybody know Mike Looser on a personal basis or

3          social basis?  No response.

4                 Does anybody know Lincoln Whaley on a personal basis

5          or on a social basis?  Stand up for me.

6                 PROSPECTIVE JUROR:  My dad worked with his dad for

7          years.

8                 MR. MORRIS:  Do what?

9                 PROSPECTIVE JUROR:  My dad worked with his dad for

10         years.

11                MR. MORRIS:  What's your name?

12                PROSPECTIVE JUROR:  Lania Pollard.

13                MR. MORRIS:  Pollard.

14                PROSPECTIVE JUROR:  My name is Jimmy Heard, and I

15         know him through the school system.

16                MR. MORRIS:  You know him through the school system?

17         What's your last name again?

18                PROSPECTIVE JUROR:  Heard.

19                MR. MORRIS:  Heard?  Would the fact that you know

20         Mr. Whaley, would that impair your ability to be fair and

21         impartial?

22                PROSPECTIVE JUROR:  No.

23                MR. MORRIS:  And the lady, let me ask you that.

24         Would that impair your ability to be fair and impartial?

25                PROSPECTIVE JUROR:  No.

31

1        MR. MORRIS:  Does anyone here know Robby Bettis on a

2        personal basis or social basis?  Okay.  Y'all stand up,

3        please.

4        PROSPECTIVE JUROR:  Lania Pollard.  Robby is my

5        neighbor.

6        MR. MORRIS:  He's your neighbor?

7        PROSPECTIVE JUROR:  Um-hum.

8        MR. MORRIS:  Would that impair your ability to be

9        fair and impartial?

10       PROSPECTIVE JUROR:  No, sir.

11       MR. MORRIS:  All right.  Mr. Heard?

12       PROSPECTIVE JUROR:  His son used to attend the

13       school where I work, and he's done some work at the

14       school.

15       MR. MORRIS:  Okay.  Would that impair your ability

16       to be fair and impartial about sitting on the jury?

17       Do any of you know the people that work with the

18       D.A.'s Office, Bill Lisenby, on a personal basis?  Or do

19       you go to church with Mr. Lisenby?  No response.

20       PROSPECTIVE JUROR:  Other than the fact that you

21       just know him, who he is, and the position and that type

22       of thing?

23       MR. MORRIS:  Would that impair your ability to be

24       fair and impartial?  What is your name?

25       PROSPECTIVE JUROR:  Charles Wynn.

32

1          MR. MORRIS:  Are there any of you that know Amy

2    Newsome on a personal basis or on a social basis?

3          Is there anybody here that knows anybody else that

4    works with the D.A.'s Office?  No response.

5          Have you or a family member ever been the victim of

6    a crime?

7          PROSPECTIVE JUROR:  Larry Sharp.

8          MR. MORRIS:  Larry Sharp?  What happened, Larry?

9          PROSPECTIVE JUROR:  I believe it was the last

10   session we had here, I had a break-in at my home.  And

11   they convicted -- a plea bargain or something the guy

12   that broke in my home.

13         MR. MORRIS:  Okay.  Would the fact that you were the

14   victim of a crime, would that impair your ability to sit

15   on the jury and be fair and impartial?

16         PROSPECTIVE JUROR:  Not as long as the evidence is

17   there, it wouldn't be.

18         MR. MORRIS:  Okay.

19         PROSPECTIVE JUROR:  Tamera Oliver.

20         MR. MORRIS:  Who?

21         PROSPECTIVE JUROR:  Tamera Oliver.

22         MR. MORRIS:  You were the victim of a crime?

23         PROSPECTIVE JUROR:  My mother and I were both

24   stalked by the same person.

25         MR. MORRIS:  Do what?

33

1           PROSPECTIVE JUROR:  We were stalked by the same

2      person.

3           MR. MORRIS:  Okay.  Would the fact that you were the

4      victim, would that impair your ability to be fair and

5      impartial?

6           PROSPECTIVE JUROR:  No.

7           MR. MORRIS:  Anybody else?

8           PROSPECTIVE JUROR:  Charles Wynn.  I had a car that

9      was vandalized and spray painted and scratched with a

10     key.  And it was a bunch of kids, and it was settled in

11     Holley's court.

12          MR. MORRIS:  Would that impair your ability to be

13     fair and impartial based on that fact?

14          PROSPECTIVE JUROR:  No.

15          MR. MORRIS:  Have any of you read in the newspaper

16     or heard on the radio any radio reports surrounding this

17     incident that involves John Burton?  Nobody?  Nobody has

18     heard anything about this case?  No response.

19          Is there anyone here that simply does not feel

20     comfortable sitting on the jury?  No response.

21          I think that's all.

22          THE COURT:  All right.  Thank you.  Let me see

23     counsel for a moment.

24                     (BENCH CONFERENCE)

25          THE COURT:  What I have done is to pare -- as I

34

1    understand, y'all pretty much expect this to be a one-day

2    affair?  Is that pretty much it?  I am going to pare this

3    down to 27, okay?  To allow y'all to select from 27.

4    What I'm going to do is I'm going to get a number from

5    you, and I'm going to get a number from Amy from one to

6    five.

7         MR. LISENBY:  I want to mention something real

8    quick.  I don't know if it will have anything to do with

9    your numbering situation, but Mr. Clark just told me that

10   Larry Sharp does know him through Mr. Clark's brother.

11   They used to work together, I think.

12        THE COURT:  Did he respond?

13        MR. LISENBY:  He did not respond about that.

14        THE COURT:  Okay.

15        MR. LISENBY:  It was a general question, "Do you

16   know anybody else that works with the D.A.'s office?" And

17   I don't know if --

18        THE COURT:  That's why I introduced Rea while ago.

19   Okay.

20        MR. LISENBY:  I don't know if he was thinking

21   maybe -- I don't know what he was thinking.

22        THE COURT:  Can I handle this for you?

23        MR. MORRIS:  Yes, sir.

24             (BENCH CONFERENCE CONCLUDED)

25        THE COURT:  All right.  Ladies and gentlemen, one

35

1    thing that when I identified your elected district

2    attorney, Mr. Rea Clark, just a moment ago, I did that

3    for a purpose.  First of all, to let you know that he was

4    here.  And, number two, when the question was asked does

5    anybody know anybody with the District Attorney's Office,

6    I guess that question ought to be expanded.  Does anybody

7    here also know the District Attorney?  Does anybody here

8    know the District Attorney Rea Clark?  Okay.  If you do,

9    stand up, please.

10        PROSPECTIVE JUROR:  Diane Adair.  I just know who

11   Rea is, just when I see him.

12        THE COURT:  All right.  Somebody else?

13        MR. MORRIS:  Would that affect your decision?

14        PROSPECTIVE JUROR:  No.

15        THE COURT:  Okay.

16        PROSPECTIVE JUROR:  Larry Sharp.  We were in school

17   together, and his wife -- excuse me.  My wife and his

18   brother work together.

19        THE COURT:  All right.  Anybody else?  Okay.  Thank

20   you.

21        PROSPECTIVE JUROR:  I don't know how close you're

22   supposed to go on these things, but the way I am, I run

23   into folks everywhere, you know, type thing.  I just know

24   who he is.

25        THE COURT:  All right.  That's fine.  So you know

36

1    him?  You don't have any kind of special relationship

2    with him?

3            PROSPECTIVE JUROR:  Ugh-ugh.

4            THE COURT:  All right.  Thank you very much.

5                        (BENCH CONFERENCE)

6            THE COURT:  All right.  Counsel, Steve, give me a

7    number between one and five.

8            MR. MORRIS:  Three.

9            THE COURT:  Three.

10           MS. NEWSOME:  Two.

11           THE COURT:  Okay.  That's five.  We'll use five.

12   What I'm going to do, Steve and Amy, I'm going to run

13   down -- Amy, I know you were here when I did the one

14   yesterday.  Mr. Story is going to run down the list, and

15   he's going start one, two, three, four, five.  That one

16   will be on the jury venire.  One, two, three, four, five.

17   And he'll go all the way down the list, and he'll come

18   back around and continue to do that until he has 27.

19   Okay.  Are you ready?

20           THE CLERK:  I'll be ready right now.

21           MR. CARLTON:  Judge, we want to ask for removal for

22   cause on Ms. Tamera Oliver.  She said she's known John

23   Burton all her life.  They grew up as friends.  I think

24   that might be prejudicial.

25           THE COURT:  Well, did you ask the question?

37

1        MR. CARLTON:  She said it would not.

2        MS. NEWSOME:  She said that she could set that

3   aside.

4        THE COURT:  Well, I think peremptory is going to

5   have to get her.  Okay.  She may not make the list.

6        MR. CARLTON:  That's true.

7        THE COURT:  Okay.  I think that based on that,

8   you're making a motion to strike for cause on Ms. Oliver?

9        MR. CARLTON:  Right.

10        THE COURT:  Based on her answers, I don't see it

11   gets there.  She knows the victim in this case.

12        MR. CARLTON:  Right.

13        THE COURT:  But she also said, as I recall, that she

14   could be fair to both State of Alabama and the defendant

15   in this case.

16        MR. CARLTON:  I just wanted to put it on the Record.

17        THE COURT:  Sure.  Get with Mr. Story in just a

18   second.

19        (THE CLERK AND COUNSEL STRUCK THE JURY WITHOUT THE

20        PRESENCE OF THE COURT REPORTER)

21        THE COURT:  Ladies and gentlemen, as Mr. Story calls

22   your name, I will ask you to come and have a seat in one

23   of these chairs right in front of me.

24        THE CLERK:  Linda Allison, Travis Baker, Wiley

25   Bishop, Virginia Elliott, Jimmy Heard, Dennis Hughes,

38

1    Sandra Mapp, Judy Overcash, Larry Presley, Angela Shears,

2    Mark Underwood, Lavon White.

3         THE COURT:  All right.  Is the State satisfied we

4    have the proper jury in the box?

5         MS. NEWSOME:  Yes, Your Honor.

6         THE COURT:  Is the defendant satisfied we have the

7    proper jury in the box?

8         MR. MORRIS:  Yes, Your Honor.

9         THE COURT:  All right.  Any motions?

10        MR. MORRIS:  Not at this time.

11        THE COURT:  All right.  Ladies and gentlemen, for

12   those of you who were not chosen for this jury, we're

13   going to reconvene tomorrow morning.  Let me see counsel

14   for one minute to make sure about this.

15             (OFF-THE-RECORD SIDE BAR)

16        THE COURT:  Okay.  All right.  Having conferred

17   with the lawyers, I'm going to ask that everybody else

18   return tomorrow morning at 9:00 a.m.  Be here at 9:00

19   a.m. tomorrow morning.  All right?  The venire is excused

20   at this time.

21   (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

22        THE COURT:  Would y'all like to maybe go on and do

23   opening statements now and then come back and take a

24   break for lunch and come back after lunch and start the

25   trial?

39

1       MR. MORRIS:  I just as soon to go on and take a

2    break now.

3       THE COURT:  Well, it's 11 o'clock.  I know it's

4    12:00 for some, but it's 11 o'clock.  At least we'll get

5    that done and come back.  We'll take about an hour for

6    lunch and come back.  Is that all right?  If y'all want

7    the continuity of it to be a little different, we

8    certainly can do it all at one time.

9       MR. LISENBY:  That will be fine.

10      THE COURT:  Okay.  Well, I've got to do my little

11   precharge and all of that.

12      (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

13      THE COURT:  All right.  I will have Mr. Story hand

14   you these juror buttons.  I will ask you to wear these

15   juror buttons while you're in the courthouse and when you

16   go out to lunch sometime, because you may run into a

17   situation where witnesses are out there and lawyers are

18   out there and they may not know you're there.  You can

19   get in and out of the scanner a little more easily if

20   you've got your juror buttons on.

21      Okay.  Ladies and gentlemen, I'm going to ask that

22   you stand at this time and let me swear you in.  Raise

23   your right hands.

24                    (PROSPECTIVE JURORS SWORN)

25      THE COURT:  Okay.  Have a seat, please.

40

1        Okay.  Members of the jury, it's very important that

2    you observe certain rules of conduct during your service

3    as a juror in this case.  These rules are directed to

4    your conduct when you're outside the jury box, whether

5    it's during a recess or an overnight separation.  Strict

6    compliance with these rules will help ensure a fair trial

7    to all concerned.  Failure to comply with these rules, on

8    the other hand, could result in the case having to be

9    tried again.

10        You shall have no discussion with anyone about this

11    case nor should you allow anyone to discuss this case in

12    your presence or hearing.  If anyone, including a family

13    member, seeks to engage you in a conversation about this

14    case, you should respond that you're under Court order

15    not to discuss the case.  It would be improper for you to

16    discuss this case even with a fellow member of the jury

17    except during deliberations in the jury room after the

18    Court has charged you on the law in the case.  Once a

19    verdict has been returned in this case and your service

20    as a juror is complete, you may discuss this case with

21    whomever you wish and to whatever extent you wish.

22        Do not try to learn anything about this case.  Avoid

23    all contact with family members, both of the victim and

24    the defendant.  Do not talk to any attorney, party, law

25    enforcement official, or any other person who may be a

1    witness in this case.  Avoid news media that may have

2    anything about the case.

3         You should isolate yourself from any circumstance

4    which might influence your verdict in this case, and you

5    should guard against any conduct that would give anyone

6    reason to doubt your fairness and impartiality.

7         Ladies and gentlemen, we're about to get started in

8    the trial of this case, and I want to discuss with you

9    for a moment the procedure that we will follow throughout

10   the trial.

11        This is a criminal trial, and the burden of proof or

12   responsibility to produce evidence falls completely upon

13   the State of Alabama.  Foremost, you must remember that

14   the defendant comes before you cloaked with the

15   presumption of innocence.  He is presumed innocent, and

16   the idea of his innocence is evidence in this trial and

17   even will go to the jury room with you for you to

18   consider at the end of the case.

19        Now, I want to review how this case will progress.

20   The State of Alabama has the burden of proof or

21   responsibility to prove to you certain things in order to

22   convince you that this defendant is guilty as charged.

23   The State must prove all the elements of the crime to a

24   certain degree of proof.  The level of proof falls only

25   within your mind.  They must prove the elements beyond a

42

1    reasonable doubt.

2        Since the State has the burden of proof, they will

3    have the opportunity to address you first in the opening

4    statement and lastly in the closing statements.  The

5    defendant has no burden at all in this case.  They may

6    decide to give an opening statement or examine the

7    State's witnesses, or they may decide to present their

8    own witnesses.  They have no responsibility at all in

9    this case.

10       I have used the term "opening statement."  This is

11   when the parties give you a road map or outline of what

12   they expect the evidence will show during the course of

13   the trial.  What these attorneys tell you in their

14   opening statements is not evidence.  The only evidence

15   that you will hear is what comes from the witness stand,

16   and you may have some exhibits that are admitted into

17   evidence.

18       At the end of all the testimony when the attorneys

19   have no further questions, the attorneys will have an

20   opportunity to give their closing arguments or closing

21   statements.  This will be the time when they will tell

22   you what they believe the evidence has shown you

23   throughout the course of the trial.

24       You are the trier of the facts.  You determine what

25   the facts are from what you have heard and what you have

43

1    seen.  It is my job to see that the trial moves smoothly

2    and that you receive only legal evidence and it is

3    properly presented in order for you to make your

4    decision.  Your job is to sift through the facts, decide

5    what they are, and then to apply the law to the facts as

6    you find them to be.

7         In the event a question is asked and the other side

8    makes an objection, if I sustain the objection, that's

9    the Court saying that the witness cannot give a proper

10   answer to that question or that this is not a proper

11   witness to give an answer to that question.  If I

12   overrule the objection, then you will hear the answer.

13        The same goes for an exhibit.  If there's a document

14   or photograph offered and there's an objection, if I

15   sustain the objection you will not see the exhibit.  This

16   is the Court saying that this witness cannot properly

17   authenticate the exhibit or that this is not the witness

18   to present the document through.  Of course, if I

19   overrule the objection, you will see the exhibit.

20        You must not concern yourself with the reasons for

21   my rulings since they are controlled and required by

22   rules of law.  You are to not speculate as to possible

23   answers to questions which I do not require to be

24   answered.  Additionally, the overruling of objections to

25   evidence is not intended to indicate the weight to be

44

1    given such evidence by you.

2         Occasionally during the course of the proceedings,

3    it may become necessary for me to confer with the

4    attorneys outside your presence or outside your hearing.

5    Should I call counsel to the bench or excuse you from the

6    courtroom, it will be to resolve a legal point or other

7    matter which at that point may not be proper for you to

8    hear and consider.  You should not speculate on the

9    content of any such conference or allow such conference

10   or any inference that you may draw therefrom to affect

11   your verdict.

12        Is the State of Alabama ready to proceed with trial?

13        MS. NEWSOME:  Yes, Your Honor.

14        THE COURT:  Okay.  Is the defendant ready to proceed

15   with trial?

16        MR. MORRIS:  Yes, sir.

17        THE COURT:  Okay.  At this time we'll have opening

18   statements.  I'll call upon the State of Alabama.  Ms.

19   Newsome.

20        MS. NEWSOME:  Thank you, Your Honor.

21   (MS. NEWSOME MADE AN OPENING STATEMENT, AND NO OBJECTIONS

22   WERE MADE)

23        MR. MORRIS:  Judge, at this time we move to invoke

24   The Rule of the witnesses.

25        THE COURT:  All right.  Ladies and gentlemen,

1    anybody who's going to be a witness in this case, The

2    Rule has been invoked.  I'm going to ask that you step

3    outside the courtroom.  We will call you when you're

4    called as a witness.

5        MR. LISENBY:  Judge, of course, we would ask the

6    Court to allow Mr. Burton to remain in as the victim in

7    the case.

8        THE COURT:  Certainly.  All right.  Mr. Burton will

9    be excused from The Rule.

10        MR. MORRIS:  May it please the Court.

11        (MR. MORRIS MADE AN OPENING STATEMENT, AND

12        THE FOLLOWING OBJECTIONS WERE MADE:)

13    ... This indictment was brought by the State of Alabama

14    through the District Attorney's Office of Chambers

15    County, Alabama.  My client was not present at this Grand

16    Jury.

17        MR. LISENBY:  Your Honor, I object to that.

18        THE COURT:  All right.  I'm going to restrict the

19    opening statements to what you expect the evidence to

20    show.

21                    * * * * * * * *

22        THE COURT:  All right.  Thank you.  Ladies and

23    gentlemen, I think because when we get started with the

24    testimony, we may run well into our lunch hour, it may be

25    better that we take our lunch hour right now.  Can

46

1    everybody live with that?  I see some people doing this,

2    and some people probably just got through with breakfast

3    a couple of hours ago.  But what I want to do is ask that

4    you go and have lunch now.  I'm going to ask that you

5    come back at 12:15, and we'll start back with testimony

6    at that time.  12:15 Central time, now.  Okay?  All

7    right.  The jury is excused.

8         Ladies and gentlemen, you have heard certain things

9    in opening statements and when the indictment was read

10    about this case.  I've already told you about juror

11    conduct.  Do not try to investigate this case.  Do not

12    talk to anybody about this case.  Do not allow anybody to

13    talk about this case in your presence.  All right?  Thank

14    you very much.

15                    (JURY NOT PRESENT)

16         MR. LISENBY:  Before we go, I want to tell everybody

17    something.

18         THE COURT:  We're all ears.

19         MR. LISENBY:  You were asking earlier about

20    videotapes.  Let me tell you what I understand so that

21    we'll all be on the same page.  There was a videotape of

22    the traffic stop.  After the traffic stop, there was also

23    a videotape of the interior of the car.  So we won't show

24    the videotape of the traffic stop, but there is a

25    videotape of the car itself.

47

1      Okay.  There was also when they went and recovered

2      the .22 rifle, there was a videotape of that.  Now, we're

3      going to show that, too.  Now, that part of the videotape

4      is on the same tape as the traffic stop.  Okay?  So we

5      won't show that.  We're going to have it cued up to just

6      that point about the recovery of the rifle.

7          THE COURT:  Okay.

8          MR. LISENBY:  But if the jury wants to see it again,

9      we'll have to remember.

10         THE COURT:  Right.  Just like we did with the

11     audiotape yesterday.

12         MR. LISENBY:  Yes, sir.

13         THE COURT:  Okay.

14         MR. MORRIS:  Your witnesses, law enforcement knows

15     not to mention that?

16         MR. LISENBY:  We're going to tell them.

17         THE COURT:  That's why we wanted to take a break now

18     before we got started with it.

19         MR. LISENBY:  And basically what we're going to tell

20     them is that we're going to lead them into, you received

21     a call, you observed a suspicious vehicle, you performed

22     a traffic stop on that.

23         THE COURT:  All right.  So the game plan is we'll

24     start back at 12:15.  That gives you a little bit less

25     than an hour to eat.  And we'll just go on and knock this

48

1      thing out this afternoon.  Okay?  Any other questions?

2      Court will stand in recess until 12:15.

3                          (LUNCH RECESS)

4          THE COURT:  All right.  Ms. Newsome, are we ready

5      for the first witness?

6          MS. NEWSOME:  Yes, sir.  State calls John Burton.

7          THE COURT:  All right.  John Burton.  Mr. Burton, I

8      will have you stand right there, raise your right hand

9      and be sworn.

10                         (WITNESS SWORN)

11         THE COURT:  Mr. Burton, have a seat.  If you would

12     please speak loudly enough so everybody in the courtroom

13     can hear you.  Go ahead, Ms. Newsome.

14                          JOHN BURTON,

15         a witness, after having first been duly sworn to

16     speak the truth, the whole truth, and nothing but the

17     truth, took the stand and testified as follows:

18                       DIRECT EXAMINATION

19     BY MS. NEWSOME:

20     Q.   Mr. Burton, please tell us your full name.

21     A.   John Drew Burton.

22     Q.   Where do you currently reside?

23     A.   7146 Country Club Road in Lanett.

24     Q.   Is that where you were residing in March of this year?

25     A.   Yes, ma'am.

49

1    Q.    I'm going to ask you to direct your attention to that

2          particular date, March 13th, 2002.  Do you recall what

3          time you left home that morning?

4    A.    It was about a quarter till 7:00 in the morning.

5    Q.    Do you remember what time you returned that evening?

6    A.    Probably it was around between 7:00 and 7:30.

7    Q.    When you returned home that evening, did you notice

8          anything unusual?

9    A.    Yes.  The back door to my house was kicked in or busted

10         in.  You know, broke in.

11    Q.    Did you enter the residence at that time?

12    A.    Yes, ma'am.

13    Q.    Did you notice anything unusual about the interior of

14         your residence?

15    A.    Just at that time, you know, one or two things that were

16         missing.  But, you know, I was just looking in the house

17         seeing what else, making sure nothing had been damaged.

18    Q.    At some point, did you do an inventory and locate several

19         missing items?

20    A.    Yes, ma'am.

21    Q.    Please tell us what was missing from your home.

22    A.    Two pistols, a rifle, some pocketknives, some change --

23         pocket change.

24    Q.    What type of rifle was it?

25    A.    It was a 10-22 Ruger target rifle.

50

1   Q.   And what type of pistols were missing from your home?

2   A.   One was a King Cobra, Colt King Cobra, a .357 and a Smith

3       and Wesson nine millimeter.

4   Q.   And you also said there were some pocketknives that were

5       missing?

6   A.   Yes, ma'am.

7   Q.   How many?

8   A.   I think it was around maybe four or five, something like

9       that.

10   Q.   Can you give us a description of those knives?

11   A.   Some small, you know, folding pocketknives up to, you

12       know, a little bit larger, lock-blade pocketknife.

13   Q.   What was the value of each of the pistols that were taken

14       from your home?

15   A.   Separately or combined?

16   Q.   Separately.

17   A.   The King Cobra .357 roughly 375, and the Smith and Wesson

18       nine millimeter was about 550.

19   Q.   $550?

20   A.   Yes, ma'am.

21   Q.   And what is the value of the rifle that was taken from

22       your home?

23   A.   About 550, also.

24   Q.   And do you have a value for the knives that were taken?

25   A.   Probably total combined around $75.

51

1   Q.    The aggregate value of the knives was approximately $75?

2   A.    Yes, ma'am.

3   Q.    Was there also a cup of change that was missing?

4   A.    Yes, ma'am, loose pocket change.

5   Q.    Is this just something that you had collected over a

6        period of time?

7   A.    Yes, ma'am.

8   Q.    Do you have any idea how much change was in the cup?

9   A.    It was probably I would say maybe 30 or $40.

10  Q.    If you would, I would like to go back momentarily.  If

11       you could describe the damage that had been done to your

12       back door.

13  A.    Well, I could tell it was actually there were footprints

14       on it where it was a glass door, and they had just

15       repeatedly kicked it until it, you know, the frame of the

16       door broke.

17  Q.    Was there any damage to the interior of the house?

18  A.    None really to mention.  Just --

19  Q.    Where was the rifle located in your home before it was

20       removed?

21  A.    The rifle was leaning in a corner by a sofa in the living

22       room.  In the same room where the door was kicked in.

23  Q.    Okay.  Where were the pistols?

24  A.    One was actually in the den on the counter, and one was

25       actually in my bedroom.

52

1    THE COURT:  You know, I don't know what to tell you

2    here.  We got machines here, hammering here.

3        MR. MORRIS:  Would she ask that question again?  I

4    didn't hear.

5        THE COURT:  That's what I was going to say.  By the

6    way, if you get to a point -- I know some of you were on

7    the jury earlier -- where you can't hear something, raise

8    your hand and let me know.  I'll have them repeat answers

9    and all.  Okay?  In fact, I can do this, I believe, if

10   you want me to.  Or do you want to ask the question

11   again?

12       MS. NEWSOME:  Judge, I'm just going to ask Mr.

13   Burton to describe where each item was in the home.

14   Q.  Let's start with the rifle again.  Where was the rifle

15       located before it was removed?

16   A.  Actually it was in the den leaning in the corner by the

17       sofa.  The Smith and Wesson nine millimeter was on a

18       counter between the den and the kitchen.  The Colt .357

19       was in my bedroom, and the knives were on my dresser in

20       my bedroom as well.  And the pocket change as well, too,

21       which came from the bedroom.

22   Q.  Was the rifle in the room that was the first room you

23       entered through the door that had been broken into?

24   A.  Yes, ma'am.

25   Q.  Did anyone have permission to enter your home while you

53

1       were away from home that day?

2  A.   No, ma'am.

3  Q.   Did anyone have permission to take the items that were

4       removed from your home?

5  A.   No, ma'am.

6  Q.   Do you know the defendant, Christopher McCullough?

7  A.   No, ma'am.

8  Q.   Have you ever seen him before today?

9  A.   No, ma'am.

10  Q.   Did he have permission to enter your home and take those

11      items?

12  A.   No, ma'am.

13         MR. MORRIS:  Object.

14         MR. CARLTON:  Judge, they haven't elicited any

15     testimony that Mr. McCullough was in the house.  I object

16     to him speculating that Mr. McCullough was even in the

17     house.

18         THE COURT:  I thought the question was did he know

19     Mr. McCullough.

20         MR. CARLTON:  The question was did he have

21     permission to be in the house.

22         THE COURT:  I'm going to overrule.

23  Q.   Did Mr. McCullough have permission to be in your home?

24  A.   Not at all.

25  Q.   Did Mr. McCullough have permission to take any of the

54

```
 1          items that were removed from your home?
 2   A.   No, ma'am.
 3   Q.   Were any of these items ever returned to you?
 4   A.   Yes, ma'am.
 5   Q.   Which ones?
 6   A.   Both pistols, the rifles, and I believe two of the knives
 7          were returned.
 8   Q.   Thank you, Mr. Burton.  That's all the questions I have.
 9          The defense attorney may have some questions.
10              THE COURT:  All right.  Mr. Morris.
11                      CROSS-EXAMINATION
12   BY MR. MORRIS:
13   Q.   Mr. Burton, you were not at home when this incident
14          occurred, were you?
15   A.   No, sir.
16   Q.   You did not see with your own eyes who broke into your
17          house?
18   A.   No, sir.
19   Q.   Mr. Burton, you had a lot of other valuables like guns in
20          your house and things, right?
21   A.   Yes.
22   Q.   How many guns?  Just an estimate, how many guns were in
23          your house?
24   A.   At that time?  Thirteen.
25   Q.   Thirteen guns?  And all you're saying that was stolen was
```

55

1    a .22 rifle, two pistols, and four or five pocketknives

2    and some change?  Isn't it possible that one person could

3    have carried those things off?

4  A.    Sir?

5  Q.    Isn't it possible that one person could have carried a

6    rifle, two pistols, and pocketknives off?

7  A.    Yes, sir.

8  Q.    Thank you.

9         THE COURT:  All right.  Anything else from this

10    witness?

11         MS. NEWSOME:  No, sir.

12         THE COURT:  All right.  You can step down.  Thank

13    you.  Okay.  Ms. Newsome?

14         MR. LISENBY:  State calls Robby Bettis.

15         THE COURT:  Robby Bettis.  All right.  If you would

16    raise your right hand, face the court reporter and be

17    sworn.

18              (WITNESS SWORN)

19         THE COURT:  All right.  I'm going to ask you to

20    speak loudly enough so everybody can hear you.

21         THE WITNESS:  Yes, sir.

22         THE COURT:  Go ahead, Mr. Lisenby.

23              ROBBY BETTIS,

24    a witness, after having first been duly sworn to

25    speak the truth, the whole truth, and nothing but the

56

1       truth, took the stand and testified as follows:

2                       DIRECT EXAMINATION

3   BY MS. NEWSOME:

4   Q.   Would you tell me your name, please, sir?

5   A.   Lieutenant Robby Bettis.

6   Q.   Where are you employed?

7   A.   Lanett Police Department.

8   Q.   Presently a lieutenant there; is that correct?

9   A.   Yes, sir.

10  Q.   How long have you been with the Lanett Police Department?

11  A.   Almost 13 years.

12  Q.   In your present position as lieutenant, what are your

13       duties there?

14  A.   I'm assigned to patrol, and shift commander.

15  Q.   And, as shift commander, that means you take care of the

16       other officers working that same day; is that correct?

17  A.   Yes, sir.

18  Q.   Now, Lieutenant, I want to direct your attention back to

19       March the 19th of 2002 and ask if you had the occasion to

20       receive a call to go to an area around the Hillcrest

21       Cemetery in Lanett?

22  A.   Yes, I did.

23  Q.   While you were in that area, did you have the occasion to

24       observe a vehicle somewhere?

25  A.   Yes, sir, I did.

57

| | | |
|---|---|---|
| 1 | Q. | Where were you and where was that vehicle? |
| 2 | A. | When I went to Hillcrest Cemetery off Country Club Road, |
| 3 | | I observed something shiny caught my eye in the woods |
| 4 | | back in the deepest part of the cemetery. That's when I |
| 5 | | heard doors shut and a vehicle start coming out. |
| 6 | Q. | Is there a road that you're describing in this area? |
| 7 | A. | It's an old dirt path. That's the city's property right |
| 8 | | there in the back of the cemetery, and a lot of the city |
| 9 | | crews used to take carcasses and all back in that area. |
| 10 | | And that's pretty much -- it's just old like an old |
| 11 | | pulpwood road. |
| 12 | Q. | Okay. Now, after you observed this vehicle at that |
| 13 | | location, just tell the members of the jury what you did |
| 14 | | in response to that vehicle. |
| 15 | A. | When I seen the vehicle, I conducted a felony stop on it. |
| 16 | Q. | What do you mean by a "felony stop"? |
| 17 | A. | Well, I was in the area on a call. |
| 18 | Q. | What did you do? What was your response? |
| 19 | A. | A felony stop is where we take people out of a vehicle at |
| 20 | | gunpoint because we have information to believe they're |
| 21 | | armed and dangerous. At that time I waited for my |
| 22 | | back-up, because I felt like they would leave out of the |
| 23 | | car in that wooded area. So, when my back-up got there, |
| 24 | | we got them out and secured them on the ground until I |
| 25 | | could get other officers there. |

58

1    Q.   How many people were in this vehicle?

2    A.   Two.

3    Q.   And do you recall their names?

4    A.   The driver was Chris McCullough and Billy, I think,

5        Norris was the passenger.

6    Q.   All right.  And is Chris McCullough, the person that you

7        described, is he present in the courtroom today?

8    A.   Yes, sir, he is.

9    Q.   Where is he, please?

10   A.   Sitting right there (indicating).

11        MR. LISENBY:  If the Record would reflect that the

12       officer has identified the defendant, Mr. McCullough.

13   Q.   Now, Lieutenant, after you had made this traffic stop and

14       gotten both individuals outside of the vehicle, you

15       mentioned earlier that you had some back-up officers.

16       Did detectives also arrive there?

17   A.   Yes, sir, they did.

18   Q.   Do you recall which detectives came?

19   A.   Lieutenant Richard Carter and Detective Lincoln Whaley

20       were the main two that I was discussing the case with.

21   Q.   All right.  Now, I want to direct your attention to a

22       little bit later on in that same day of March the 19th

23       and ask if you had the occasion to receive some

24       information from one of the detectives -- I believe it

25       was Detective Whaley -- to go to another location to look

59

1      for some items of evidence?

2  A.  Yes, sir.

3  Q.  And where did you go to?

4  A.  It was 1108 East -- I want to say it was First Avenue.

5      I'm not quite sure.  I know the house number was 1108.

6  Q.  Okay.  And we're still talking about inside Lanett?

7  A.  Yes, sir.

8  Q.  Okay.  You went to a residence; is that correct?

9  A.  Yes, sir.

10 Q.  Was this residence occupied?

11 A.  The power was shut off to the house.  And we found an

12     item that give that address inside the vehicle, and then

13     the detective told me that they -- that the gentleman

14     advised him that some stuff was still in the house, that

15     it was recovered.

16 Q.  Did you actually go into the house yourself?

17 A.  Yes, sir, I did.

18 Q.  And, when you went into the house, what if anything did

19     you observe with regard to items reported out of Mr.

20     Burton's burglary?

21 A.  The rifle with a scope, and I believe it was a Buck

22     Knife.

23 Q.  While you were there, did you participate in any

24     videotaping of this area?

25 A.  Yes, sir, I did.

60

1   Q.   And who actually did the videotape?

2   A.   I did.

3   Q.   Okay.

4        MR. MORRIS:  Judge, can we approach?

5        THE COURT:  Yes.

6   (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

7        MR. MORRIS:  Judge, I object to the video.  I filed

8   a motion for discovery, and I haven't got it.  I haven't

9   received it.

10       MR. LISENBY:  We gave notice of that probably in

11  March whenever the arraignment was.

12       THE COURT:  Did you get notice that it was at the

13  police department and you could view it there?

14       MR. MORRIS:  We've asked to look at it.

15       THE COURT:  What, now?

16       MR. MORRIS:  We've asked to look at it, and we

17  haven't gotten the opportunity.

18       THE COURT:  Okay.  Did y'all go down to the Lanett

19  Police Department?

20       MR. MORRIS:  I haven't.

21       THE COURT:  So you haven't seen this?

22       MR. MORRIS:  No.

23       THE COURT:  How long is it?

24       MR. LISENBY:  Five minutes.  It's not that long.

25       THE WITNESS:  It goes right into it.

61

1    THE COURT:  Okay.  I'm going to recess the jury for

2    a minute, and I'll let them look at it right now.

3         (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

4    THE COURT:  All right.  Ladies and gentlemen, I'm

5    going to ask you to step back in the jury room for just

6    one moment.  I'll be right back with you.

7              (JURY NOT PRESENT)

8    MR. LISENBY:  This has audio, but we're not going

9    to do the audio.  We're just going to show the video.

10   THE COURT:  Is that fine, Steve and Mark?

11   MR. LISENBY:  If they want to play it, it's fine

12   with me.

13   MR. CARLTON:  It would probably be better without

14   the audio, I would think.

15         (ATTORNEYS VIEWING VIDEOTAPE)

16   THE COURT:  We have a motion?  I want to note now

17   following our previous discussion that the attorneys now

18   have had an opportunity, as I understand it, to look at

19   the two videos that will be presented by the prosecution;

20   is that correct?

21   MR. LISENBY:  Yes, sir.

22   THE COURT:  All right.  And Mr. Carlton or Mr.

23   Morris had mentioned a motion?

24   MR. CARLTON:  Yes, sir.  We would like to raise a

25   motion to suppress the video and evidence coming from the

62

1     search of the residence.  From what I understand from

2     watching the video and just talking with Officer Bettis

3     here, he received a call from Lincoln Whaley to go to

4     this residence, that there was possibly some of the items

5     from the burglary in that residence.  They didn't have a

6     warrant to search the residence and enter the residence.

7     And, from what I understand from Officer Bettis, he

8     doesn't know who gave permission to go in the house.  So

9     if either the defendant or owner -- the leaseholder or

10    owner did not give Lanett P.D. permission to enter the

11    house, they had no right to conduct the search.  So

12    anything from that search would be fruit of the poisonous

13    tree and would not be admissible.

14         THE COURT:  All right.  Mr. Lisenby?

15         MR. LISENBY:  Well, I think we would have two

16    responses to that.  One, I believe any motions along this

17    line would be required to be filed pre-trial, which was

18    not done in this case.  And, second, I'm not sure that

19    either -- Well, I'm not sure that Mr. McCullough, the

20    defendant in this case, would have standing to challenge

21    the search.

22         THE COURT:  This is not Mr. McCullough's home we're

23    talking about?

24         MR. LISENBY:  According to the information I had in

25    the file was that it was an abandoned house.  That it was

63

1    not Mr. McCullough's home.

2         MR. CARLTON:  There's evidence on the video that --

3    I don't know if it's a check stub or utility bill or

4    something or tax refund receipt that had Mr. McCullough's

5    name on it that was recovered from the house.

6         THE COURT:  Mr. McCullough's?

7         THE WITNESS:  It was a telephone bill.  Once we got

8    in the house --

9         MR. CARLTON:  A telephone bill from the defendant

10   for that residence.  So I'm assuming without talking to

11   anybody that knows, at the time he would have been the

12   leaseholder interest in that house.  And from what I

13   understand from Officer Bettis, the Honorable Greg Ward

14   owns the house.  So, if they didn't get permission from

15   one of the two, they didn't have permission to enter.

16   And my response to what Mr. Lisenby was saying about the

17   pre-trial motion, I know what their position is about the

18   evidence and the defense having access to the evidence.

19   But I think it's -- from what I understand, it's the

20   State's responsibility to provide directly to the defense

21   the evidence, not the defense having to go out and track

22   it down.

23        THE COURT:  Okay.  Anything further?

24        MR. LISENBY:  Just in response to that, there are

25   cases out there that says as long as the State gives

64

1    notice and an opportunity, that's all we have to do.

2    Which is all the rules say, is an opportunity to copy and

3    inspect.  Once we give that -- and actually, I was

4    thinking -- I haven't looked at the file -- but this was

5    even before the arraignment day that we gave this.

6    Because Mr. Morris was involved in this case at a

7    preliminary hearing, and that's when we gave the

8    discovery out at that time.  So it's actually been longer

9    than the March 19th arraignment day that that information

10   has been out there.

11        MS. NEWSOME:  And also there is information to

12   indicate Mr. Norris was living there.  Mr. Norris told

13   the police where the rifle was located and told them

14   basically how to get there and gave them consent to go

15   retrieve the rifle.  That's why he was giving them the

16   information so they could go get that rifle from the

17   residence.

18        THE COURT:  All right.  I'm going to overrule.  I

19   guess I'm going to deny your motion to suppress.  I guess

20   that was kind of in the vain of a motion to suppress,

21   wasn't it?

22        MR. CARLTON:  That's right.

23        THE COURT:  I'll deny your motion to suppress,

24   then.  Are y'all ready to proceed?

25        MR. CARLTON:  Yes, sir.

65

1          THE COURT:  Have we got all the tapes cued back up

2      and all that?

3          MR. LISENBY:  Yes, sir, I think so.

4          THE WITNESS:  Yes, sir.

5          THE COURT:  Mr. Story, let's bring them back out.

6                    (JURY PRESENT)

7          THE COURT:  All right.  Mr. Lisenby.

8                DIRECT EXAMINATION (CONTINUED)

9      BY MR. LISENBY:

10     Q.   Lieutenant, let me show you what is marked as State's

11          Exhibit Number 1 and tell me if you recognize what that

12          is?

13     A.   Yes, sir.

14     Q.   What is that, please?

15     A.   That's the videotape that comes out of our patrol unit.

16          We can also take the camera out and videotape any crime

17          scene.

18     Q.   You mentioned earlier that you, in fact, had done a

19          videotape of the location of where the rifle was

20          recovered?

21     A.   Yes, sir.

22     Q.   That's this videotape?

23     A.   Yes, sir.

24     Q.   You've had an opportunity to review it?

25     A.   Yes, sir, I have.

66

1  Q.    And does it fairly and accurately depict or show the area

2         as you recall it that day?

3  A.    Yes, sir, it does.

4              MR. LISENBY:  We would offer Number 1, Your Honor.

5              THE COURT:  All right.  Any objections?

6              MR. MORRIS:  No.

7              THE COURT:  All right.  State's Exhibit Number 1

8         will be admitted.

9            (STATE'S EXHIBIT NO. 1 WAS ADMITTED INTO EVIDENCE)

10             MR. LISENBY:  May I show this to the jury?

11             THE COURT:  Yes.  Can everybody see it?

12  (STATE'S EXHIBIT NO. 1, A VIDEOTAPE, WAS PLAYED IN OPEN COURT)

13  Q.    All right.  Now, Lieutenant, with regard to that item

14        that you mentioned, a knife or two also that were

15        recovered there?

16  A.    Yes, sir, a Buck Knife.

17  Q.    Were those taken into custody by Detective Lincoln

18        Whaley?

19  A.    Yes, sir, they were.

20  Q.    Thank you, sir.  The defense may have some questions for

21        you.

22             THE COURT:  All right.  Mr. Morris.

23                         CROSS-EXAMINATION

24  BY MR. MORRIS:

25  Q.    Officer, you were the first one on the scene, right?

67

```
1    A.    Yes, sir.

2    Q.    All right.  You are saying that Mr. McCullough was

3          driving, right?

4    A.    Yes, sir.

5    Q.    And did they ever try to escape?  Did he ever try to

6          leave?  Get around you to leave the scene?

7    A.    I didn't really give him a chance.  No, sir, he didn't.

8    Q.    How do you know you didn't really give him a chance?

9    A.    Because the way the front of the vehicle when he come out

10         of the woods, there was another vehicle on the other road

11         coming in also when I came in.

12   Q.    Did he try to run?

13   A.    No, sir, he did not.

14   Q.    He didn't?  He just give up right there?

15   A.    Pretty much, yeah.

16   Q.    Okay.  The video that we just saw was the video that was

17         a vacant house, right?

18   A.    Yes, sir.

19   Q.    Did you do that videotape?

20   A.    Part of it, yes, sir.

21   Q.    And you were told by another officer that he had

22         information -- You were told by another officer to go to

23         this house, that there might be some items in this house?

24   A.    Yes, sir.  He told me that during the interview that to

25         go to the house, that he told one of them that was
```

68

1      supposed to be staying there.  That the house had no

2      power, that there would be some more guns in the house.

3  Q.   So there is no power hooked up at this house?

4  A.   No, sir.

5  Q.   No telephone?

6  A.   No, sir.

7  Q.   Was the door open when you came up?

8  A.   Partially open, yes.  It was ajar.

9  Q.   Partially open.  What time of day was this?

10  A.   I'm not real sure.  Around 2 o'clock, I think.

11  Q.   2 o'clock in the evening?

12  A.   Yes, sir, 2:00 or 3 o'clock.

13  Q.   Officer, is it standard procedure to use a video camera?

14  A.   Yes, sir.

15  Q.   In a situation like this?

16  A.   Yes, sir, it is.

17  Q.   Wouldn't you say the video camera would give the jury a

18      better idea of what the evidence is?  I mean, it gives

19      the jury a better picture than what you could get up here

20      and tell them?

21  A.   Yes, sir.

22  Q.   Why did you videotape that?

23  A.   I don't understand.  What do you mean?  Because we

24      recovered --

25  Q.   Why did you take a video camera over there?

69

1   A.   Because we were going to recover evidence, and I didn't

2        have a still camera.  We used that.

3   Q.   It's standard procedure to use a video camera in a

4        situation like this?

5   A.   Yes, sir.

6   Q.   Another thing, the video was used so the jury could see

7        it with their own eyes, right?

8   A.   Yes, sir.

9             MR. MORRIS:  Nothing further.

10            THE COURT:  All right.  Thank you very much.

11   Anything further for this officer?

12            MR. LISENBY:  Nothing else.  May this witness be

13   excused?

14            THE COURT:  May this witness be excused?

15            MR. MORRIS:  Yes, sir.

16            THE COURT:  All right.  Lieutenant, you're excused.

17   All right.  Mr. Lisenby, Ms. Newsome, next witness.

18            MR. LISENBY:  State calls Billy Norris.

19            THE COURT:  Billy Norris.  Mr. Norris, come on up,

20   please.  Come on up here.  Mr. Norris, I want to you

21   stand right there, raise your right hand.  Okay.  I want

22   you to face the court reporter right here and be sworn

23   in.

24                     (WITNESS SWORN)

25            THE COURT:  All right.  Have a seat, please, sir.

70

1          Mr. Norris, I'm going to ask you to speak loudly enough

2      so everybody can hear you.

3              THE WITNESS:  Yes, sir.

4                      BILLY NORRIS, JR.,

5          a witness, after having first been duly sworn to

6      speak the truth, the whole truth, and nothing but the

7      truth, took the stand and testified as follows:

8                      DIRECT EXAMINATION

9  BY MR. LISENBY:

10 Q.   Can you tell me your name, please, sir?

11 A.   Billy Ralph Norris, Jr.

12 Q.   I can just barely hear you.  If this lady right here on

13      the corner can, I'm sure everybody can.  Okay?  Try that

14      one more time.

15 A.   Billy Ralph Norris, Jr.

16 Q.   Thank you.  I see that you're dressed in an orange jump

17      suit.  Does that mean that you're presently living at the

18      Chambers County jail?

19 A.   Yes, sir.

20 Q.   Where did you live prior to your being incarcerated down

21      at the jail?

22 A.   At 5255 County Road 32, Lafayette, Alabama.

23 Q.   Now, Mr. Norris, you are presently in jail because you

24      have been convicted of a burglary involving Mr. Burton's

25      residence; is that correct?

71

1   A.   Yes, sir.

2   Q.   And you received a 24-year sentence for that; is that

3       right?

4   A.   Yes, sir.

5   Q.   Now, I want to ask you about March of 2002, March the

6       13th, and ask if on that day did you know the defendant

7       in this case, Christopher McCullough?

8   A.   Yes.

9   Q.   How did you know Mr. McCullough?

10   A.   Me and Mr. McCullough, we grew up together.  We was real

11       good friends, always been good friends.  Grew up

12       together, like I said.

13   Q.   You grew up together and were real good friends?

14          THE COURT:  Okay.  I'm going to ask you to keep your

15       voice up, Mr. Norris, so that everybody can hear you.

16       Okay?

17   Q.   If she can hear you on this corner and this lady can

18       hear you on this corner, then we'll all be able to.

19       Okay?

20          Now, the date of March the 13th -- Well, let me

21       just ask it this way.  Was there an occasion when you

22       were somewhere where Mr. Burton lived over in the Lanett

23       area?

24   A.   Yes.

25   Q.   And how did you get there?

72

1   A.   Through Mr. McCullough.

2   Q.   How did he get there?

3   A.   In his car, his vehicle.

4   Q.   In his car?

5   A.   Yeah.

6   Q.   Okay.  And, when you and Mr. McCullough went over to the

7        area where Mr. Burton lived, do you recall about what

8        time of the day or night that would have been?

9   A.   As I recall, it was in the evening of the day.  It wasn't

10       quite dark yet, but it was in the evening time of the

11       day.

12  Q.   Okay.  And did you know Mr. Burton?

13  A.   No, sir.

14  Q.   When you and Mr. McCullough got over to that area, tell

15       me where you parked at and where you went to.

16  A.   We parked in a wooded area and went to his house.

17  Q.   How did you get to the house?

18  A.   Like I say, we parked in a wooded area.  We walked.

19  Q.   You walked from there?

20  A.   Yeah.

21  Q.   Okay.  Do you have a judgment as to about how far you had

22       walked from where you had parked?

23  A.   I don't quite have a judgment how far we walked, but I

24       know it was in a wooded area from his house.  We walked

25       to his house.

73

1    Q.    Okay.  All right.  When you got to his house, tell me

2          what you and Mr. -- was Mr. McCullough with you?

3    A.    Yes.

4    Q.    Tell me what you and Mr. McCullough did.

5    A.    First, like I say, we went around the house and made sure

6          no one was home.  Made sure no one was home.

7    Q.    And how did you go about doing that?

8    A.    We looked in the window and knocked on the door a few

9          times to see would anyone come to the door.

10   Q.    Did anyone ever come to the door?

11   A.    No, no one was home.

12   Q.    Okay.  What happened then?

13   A.    So, after we knew no one was home, I kicked the back door

14         in -- kicked the door in and we went in.

15   Q.    Who went in?

16   A.    Both of us went in.

17   Q.    You and Mr. McCullough?

18   A.    Yes, both of us.

19   Q.    Okay.  What happened then?

20   A.    You know, I took a .22 Ruger rifle that was standing on

21         the corner of the wall.  I took that and a couple of

22         pocketknives.  And Mr. McCullough went to another portion

23         of the house.  And, like I said, it was that quick, he

24         came out and he had two pistols, two pistols.  And then

25         we just left.

74

1  Q.   Let me ask you this.  The rifle that you mentioned, you
2       said it was in a room in a corner?
3  A.   Yes, it was standing in the corner on the wall in the
4       living room looked like, the front room of the house.
5  Q.   Okay.  I was going to ask.  When you came in the door, do
6       you recall which room that rifle would have been in?
7  A.   Like I say, you know, by the looks of the room, it looked
8       like the living room of the house.
9  Q.   Would that have been the room that you came into through
10      the door or another room?
11 A.   No, not exactly.  I don't recall.  But, like I said, like
12      I run around the house.  And it was standing in the
13      corner of the room of the house.  And, by the looks of
14      the stuff in the room, it looked like the living area of
15      the house.
16 Q.   Okay.  You said you got that and a couple of
17      pocketknives?
18 A.   Yes.
19 Q.   Do you recall where the knives were?
20 A.   Like I said, they was really like right there in -- like
21      in the room like on the table and on the wall, floors, on
22      the top of the -- what they call the dresser like, you
23      know.
24 Q.   Okay.
25 A.   Like I said, he looked like he was a real hunting man,

76

1  time.  You know, it was really quick, go in and get it.

2  Like I say, nothing was in the house really but, you

3  know, rifles that we could -- like that I was really

4  finding.  Because we really just wanted to get in and get

5  out, you know.  So we took them and left.  Like I say, it

6  was probably like a span of like 15 or 20 minutes, you

7  know.

8  Q. Okay.  Now, did you see other weapons there other than

9  the ones that you described as being taken?  The rifle

10  and the two pistols?

11  A. Like I said, there was other weapons in the house.  But I

12  really just -- the only one I took was the rifle-like

13  shotgun in the house.  But I hadn't really shot none.  I

14  didn't really want to be getting out -- and really, to

15  tell you the truth, that's really not what I was in there

16  for.

17  Q. Okay.

18  A. But I did go in there.  Like I say, shotguns, I didn't

19  want to get them.  I just took the rifle because it was

20  right there by the wall.  I just got that.

21  Q. Okay.  Now, several days later, I guess about a week

22  later or so, were you and Mr. McCullough in a vehicle

23  when the police stopped you at the cemetery or near a

24  cemetery?

25  A. Yes.

77

1  Q.   And was that the same vehicle that you described earlier

2       that was Mr. McCullough's?

3  A.   Yes.

4  Q.   Do you know where the pistols were that Mr. McCullough --

5       you said Mr. McCullough had taken out of Mr. Burton's

6       house?

7  A.   Like I say, they was in the trunk behind the back seat, I

8       guess.  Behind the back seat like in the trunk area.

9  Q.   Of that car?

10  A.   Of that car.

11  Q.   Okay.  Did you know where the rifle was?

12  A.   The rifle, I told the police where the rifle was.

13  Q.   Where did you tell the police the rifle was?

14  A.   At a house on Kroger block they call it.  Over by Kroger

15       in Lanett in a house over there.

16  Q.   Okay.

17  A.   They really confiscated a few things over there.  I

18       already gave statements on all of that.  I told them

19       where all of it was.

20  Q.   Okay.

21  A.   That's why I'm not going to trial.  I just --

22  Q.   Hold on just a second.

23  A.   That's really not why I'm not going to trial.  I just

24       took a sentence on mine.

25  Q.   Okay.

78

1   A.    I pled guilty to mine.

2   Q.    You've got 24 years on your sentence; is that right?

3   A.    Yes.

4   Q.    All right.  Mr. Norris, the defense may have some

5         questions for you.

6               THE COURT:  All right.  Mr. Morris or Mr. Carlton.

7                           CROSS-EXAMINATION

8   BY MR. MORRIS:

9   Q.    Mr. Norris, how long have you known Chris McCullough?

10  A.    I would say 15 or 16 years.

11  Q.    All right.  He's always been a good friend to you, hasn't

12        he?

13  A.    Yes, he has.

14  Q.    All right.  You don't have a job, do you?  You didn't

15        have a job when you got arrested, did you?

16  A.    At that point I did not.  I had recently.

17  Q.    You didn't have a place to stay either, did you?

18  A.    Not at that point.  I had moved from LaGrange.  I had

19        recently came out of a divorce from my wife, so I didn't.

20  Q.    Okay.  You was living in a vacant house, right?

21  A.    Yes.  It was -- Yes, they said it was vacant.  I was

22        there, though.

23  Q.    Okay.  And you told one of the police officers that there

24        was a rifle in that house, didn't you?

25  A.    Yes.

79

1   Q.   Okay.  Chris would give you -- If Chris would see you on

2       the road, he would pick you up and give you a lift at

3       times, wouldn't he?  Because you didn't have a car at the

4       time, did you?

5   A.   No, I didn't.

6   Q.   As a matter of fact, he let you drive his car, didn't he?

7       Yes or no, Mr. Norris?  Did he let you drive his car?

8   A.   Yes, sir, I drove his car.

9   Q.   Okay.  Mr. Norris, I want to show you what's marked

10      Exhibit 2.  Do you recognize that document?  That's your

11      plea offer, isn't it?

12   A.   Yes, that's my plea offer.

13   Q.   Okay.  Is that your signature at the bottom down there?

14   A.   Yes, that's my signature.

15   Q.   Okay.  Pleading guilty to 24 years, right?

16   A.   Yes.

17   Q.   And part of your plea bargain is to testify against Chris

18      McCullough, wasn't it?

19          MR. LISENBY:  I object to that.  That's not what's

20      on the plea agreement.  If he will read what's on the

21      plea agreement, I will accept that.

22          THE COURT:  All right.

23   Q.   Read what it says on the plea agreement.

24   A.   All the way through?

25   Q.   No, right down here.

80

1  A.  "Defendant agrees to testify truthfully in all cases

2      involving co-defendants."

3  Q.  All right.  On October the 17th, you pled guilty?

4  A.  Yes, I pled guilty after --

5  Q.  After?

6  A.  Like I say, I was --

7  Q.  You was guilty?

8  A.  Yes, I was guilty.  I was guilty.  I told them I was

9      guilty.

10 Q.  I will show you what's Defendant's Exhibit 1.  Do you

11     recognize that document?

12         MR. LISENBY:  May I see that?

13         THE COURT:  You need to let them see that first.

14 A.  Plea of not guilty.

15 Q.  Is that your signature down at the bottom, Mr. Norris?

16 A.  Yeah.

17 Q.  That's the arraignment waiver right there.  Do you

18     recognize it?  The first time you was in court on the

19     23rd of September, do you remember waiving or signing

20     that waiver, that arraignment?  You remember the

21     arraignment, right?

22 A.  Yes, I remember the arraignment.

23 Q.  Okay.  Is that your signature down at the bottom down

24     there?

25 A.  Yes.  Like I said, I was told by my lawyer to sign it.

81

1   Q.   Is that your signature right there?

2   A.   Yes.

3   Q.   What does that say right there?

4   A.   Not guilty.

5   Q.   That's a lie, isn't it, Mr. Norris?  You lied in court?

6           MR. LISENBY:  Your Honor, I'm going to object to

7        that.  He knows that that is a standard process that

8        occurs every time at arraignment.

9           MR. MORRIS:  That's a signed statement.

10          THE COURT:  Hold on.

11          MR. LISENBY:  That's a legal document that's

12       required to be filed.

13          MR. MORRIS:  That's a signed statement by Mr. Norris

14       saying he's not guilty.

15          THE COURT:  I'm going to sustain the objection.

16  Q.   Mr. Norris, you kicked Mr. Burton's back door down,

17       didn't you?

18  A.   Yes, sir.

19  Q.   You stole that .22 rifle, didn't you?

20  A.   Yes, sir.

21  Q.   You stole those pocketknives, didn't you?

22  A.   Yes, sir.

23  Q.   You stole those pistols, didn't you?

24  A.   No, no, no.

25  Q.   You did it by yourself?

82

1   A.   Yes, sir.

2   Q.   You used his car that day, didn't you?

3   A.   No.

4   Q.   You was all by yourself?

5   A.   No, I wasn't.

6   Q.   That rifle ended up in your vacant house, didn't it?

7   A.   Yes.

8   Q.   And you admitted it, right?

9   A.   Yes.

10  Q.   Okay.  Thank you.

11       THE COURT:  All right.  Anything further?

12       MR. LISENBY:  I don't have any other questions for

13  Mr. Norris.  May he be excused?

14       THE COURT:  Yes.  May this witness be excused?

15       MR. MORRIS:  Yes, sir.

16       THE COURT:  All right.  Thank you, Mr. Norris.  You

17  can step down.

18       All right.  Next witness, please.

19       MS. NEWSOME:  Your Honor, the State calls Lincoln

20  Whaley.

21       THE COURT:  Lincoln Whaley.  Mr. Whaley, come on up,

22  please, sir.  If you would stand there, raise your right

23  hand, face the court reporter and be sworn in.

24                    (WITNESS SWORN)

25       THE COURT:  All right.  If you would have a seat.

83

1      If you would speak loudly, please.  We have machines and

2      such going on around here.  We need as much volume out of

3      you as we can get.

4           THE WITNESS:  Yes, sir.

5                     LINCOLN SCOTT WHALEY,

6           a witness, after having first been duly sworn to

7      speak the truth, the whole truth, and nothing but the

8      truth, took the stand and testified as follows:

9                     DIRECT EXAMINATION

10     BY MS. NEWSOME:

11     Q.   Please tell us your full name.

12     A.   I'm Lincoln Scott Whaley.  Work at Lanett P.D.

13     Q.   What is your position at the Lanett Police Department?

14     A.   Detective.

15     Q.   How long have you been employed there?

16     A.   Six and a half years.

17     Q.   Have you always been employed there as a detective?

18     A.   No, ma'am.  I have been in the detective division for two

19          years now.

20     Q.   What are your duties as a detective?

21     A.   Investigate felony crimes that are reported to our

22          department.

23     Q.   Have you had occasion to investigate a case against

24          Christopher McCullough?

25     A.   Yes, ma'am.

84

1   Q.   Do you recognize Christopher McCullough as being here
2        today?
3   A.   Yes, ma'am.
4   Q.   Where is he?
5   A.   He's right there in the light blue shirt.
6   Q.   Are you also familiar with the co-defendant of his, Billy
7        Norris?
8   A.   Yes, I am.
9   Q.   Did you as part of your investigation of this case, did
10       you recover a .22 rifle that was stolen from John
11       Burton's residence?
12   A.   Yes, I did.
13   Q.   Where did you find that .22 rifle?
14   A.   It was located at a residence at 1108 East First Avenue.
15   Q.   How did you know that the rifle was located at that
16       particular residence?
17   A.   Billy Norris gave us the directions to the residence, and
18       we sent someone there to try to find it.
19   Q.   After you took possession of the .22 rifle, what did you
20       do with it?
21   A.   It was -- I give it to Lieutenant Carter, and it was
22       returned to the owner.
23   Q.   Thank you.  That's all the questions I have.  The defense
24       attorney may have some questions for you.
25           THE COURT:  All right.  Mr. Morris.

85

1          MR. MORRIS:  No questions, Judge.

2          THE COURT:  All right.  May this officer be

3     excused?

4          MS. NEWSOME:  Yes, sir.

5          MR. MORRIS:  Yes.

6          THE COURT:  All right.  You're excused.  Thank you

7     very much.

8          THE WITNESS:  Thank you, Judge.

9          THE COURT:  All right.  Next witness, please.

10          MR. LISENBY:  May we approach just a second?

11          THE COURT:  Certainly.

12     (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

13          MR. LISENBY:  We are down to the statement of Mr.

14     McCullough.  I just wanted you to be aware of where we

15     were headed.

16          (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

17          THE COURT:  All right.  Who do we have next?

18          MS. NEWSOME:  State calls Jeff Blackstone.

19          THE COURT:  Jeff Blackstone.  Come on up, Mr.

20     Blackstone.  Stand there, face the court reporter, raise

21     your right hand and be sworn.

22                    (WITNESS SWORN)

23          THE COURT:  All right.  Mr. Blackstone, I'm going to

24     ask that you speak loudly enough so everybody can hear

25     you.

86

1          THE WITNESS:  Yes, sir.

2                    JEFF BLACKSTONE,

3          a witness, after having first been duly sworn to

4      speak the truth, the whole truth, and nothing but the

5      truth, took the stand and testified as follows:

6                    DIRECT EXAMINATION

7   BY MS. NEWSOME:

8   Q.   Investigator Blackstone, would you please tell us your

9        full name?

10  A.   Jeff Blackstone.

11  Q.   Where are you currently employed?

12  A.   Chambers County Sheriff's Department.

13  Q.   And what is your position there?

14  A.   Investigator.

15  Q.   How long have you been employed at the Chambers County

16       Sheriff's Office as an investigator?

17  A.   Approximately four years.

18  Q.   And what is the total length of your employment with the

19       sheriff's office?

20  A.   Approximately nine years.

21  Q.   What are your duties as an investigator?

22  A.   I investigate burglaries, rapes, robberies, stuff like

23       that.

24  Q.   Just investigation of different crimes?

25  A.   General investigation.

87

1    Q.    Do you recognize Christopher McCullough?

2    A.    Yes, I do.

3    Q.    Do you see him in the courtroom today?

4    A.    Yes, I do.

5    Q.    Please point him out.

6    A.    That's Christopher McCullough on the right of Mr.

7          Carlton.

8    Q.    Are you also familiar with the co-defendant of his, Billy

9          Norris?

10   A.    Yes, ma'am.

11   Q.    Did you investigate a case against him, also?

12   A.    Yes, ma'am.

13   Q.    During your investigation of Christopher McCullough, did

14         you have occasion to inform him of his constitutional

15         rights?

16   A.    Yes, I did.

17   Q.    What is your procedure for informing a person under

18         investigation of their constitutional rights?

19   A.    Any time that, you know, we determine that a suspect is

20         in a crime, we'll advise them of the Miranda rights.

21   Q.    Do you read their rights to them?

22   A.    I read them, have him read them back, and initial.

23   Q.    Do you recognize this document?

24   A.    Yes, ma'am.

25              THE COURT:  What are we referring to?

88

```
 1              MS. NEWSOME:  State's 2, Judge.
 2   Q.  Do you recognize that document?
 3   A.  Yes, ma'am.
 4   Q.  What is that document?
 5   A.  It's a copy of the waiver of rights that I read to them.
 6       Actually, the waiver from the Chambers County Sheriff's
 7       Department that I read to a suspect.
 8   Q.  Are those the rights that you read to Christopher
 9       McCullough?
10   A.  Yes, ma'am.
11   Q.  Where were you when you informed him of those rights?
12   A.  Lanett Police Department.
13   Q.  Do you recall what time it was when you did this?
14   A.  2:45 Central time.
15   Q.  Was anyone else present when you informed the defendant
16       of his rights?
17   A.  Yes, ma'am.
18   Q.  Who was present?
19   A.  Kenny Vines with Lafayette P.D., Steve Smith with the
20       Lafayette P.D., Mike Looser with Chambers County
21       Sheriff's Department.  Also, Lincoln Whaley was there,
22       but I didn't write it on here.
23   Q.  Would you please read the rights that are included on
24       that form?
25   A.  Yes, ma'am.  Before I questioned Mr. McCullough, I read
```

1    him these rights.  "You have the right to remain silent.

2    Anything you say can and will be used against you in a

3    court of law.  You have a right to a lawyer and have him

4    present with you while you're being questioned.  If you

5    cannot afford to hire a lawyer, one will be appointed to

6    represent you before any questions if you wish.  You can

7    decide at any time to exercise these rights and not

8    answer any questions."

9         I also read him the waiver of rights.  "I have read

10    this statement of my rights or had them read to me, and I

11    understand what my rights are.  I'm willing to waive

12    these rights and make a statement.  No promises or

13    threats have been made to me, or no pressure or coercion

14    of any kind has been used against me."  And I had him to

15    go over everything I read and initial.

16   Q.   Did the defendant indicate that he understood what his

17        rights were?

18   A.   Yes, ma'am.

19   Q.   How did he indicate that?

20   A.   He initialed every -- I had him read it back, one through

21        five, he initialed that.  And then he signed the waiver

22        of rights as "Chris McCullough."

23   Q.   So he agreed to waive his rights and speak to you?

24   A.   Make a statement, yes, ma'am.

25   Q.   Did anyone in your presence or you yourself threaten,

90

1    coerce, or intimidate Mr. McCullough into making him sign

2    that statement?

3  A.   No, ma'am.

4  Q.   Or sign his waiver of rights?

5  A.   No, ma'am.

6         MS. NEWSOME:  Your Honor, the State asks that

7    State's Exhibit Number 2 be admitted into evidence.

8         THE COURT:  All right.  Any objections?

9         MR. MORRIS:  None.

10        THE COURT:  All right.  State's Exhibit Number 2

11   will be admitted.

12     (STATE'S EXHIBIT NO. 2 WAS ADMITTED INTO EVIDENCE)

13        MS. NEWSOME:  That's all the questions I have.

14        THE COURT:  Okay.  Mr. Morris?

15        MR. MORRIS:  Judge, I have no questions.

16        THE COURT:  All right.  Investigator Blackstone will

17   be excused.

18        MR. LISENBY:  State calls Richard Carter.

19        THE COURT:  Okay.  Richard Carter.  All right.  Come

20   forward, please, sir.  Raise your right hand and be

21   sworn.

22                    (WITNESS SWORN)

23        THE COURT:  All right.  Thank you.  If you would

24   have a seat.  Speak loudly enough so everybody can hear

25   you.

91

```
1              THE WITNESS:  Yes, sir.
2                        RICHARD CARTER,
3         a witness, after having first been duly sworn to
4      speak the truth, the whole truth, and nothing but the
5      truth, took the stand and testified as follows:
6                        DIRECT EXAMINATION
7   BY MR. LISENBY:
8   Q.   Would you tell me your name, please, sir?
9   A.   Richard Carter.
10  Q.   Where are you employed?
11  A.   With the Lanett Police Department.
12  Q.   What is your present position with the Lanett Police
13       Department?
14  A.   I'm a lieutenant there in charge of investigations.
15  Q.   How long have you been with the Lanett Police Department?
16  A.   I've been with Lanett 11 years and three or four months.
17  Q.   How long have you been involved in investigations?
18  A.   Approximately six years and six months.
19  Q.   You said you are the lieutenant in charge of
20       investigations?
21  A.   Yes, sir.
22  Q.   All right.  Lieutenant Carter, I want to direct your
23       attention back to March the 13th of 2002 and ask if you
24       had the occasion to go to a residence identified as
25       belonging to John Burton?
```

92

1   A.   Yes, I did.

2   Q.   Can you tell me where that was, please?

3   A.   Residence on Country Club Road inside the jurisdiction of

4        Lanett.

5   Q.   Is that located here in Chambers County, Alabama?

6   A.   Yes, it is.

7   Q.   When you went to this location, do you recall what time

8        of the day or night it was that you went?

9   A.   It was at night, approximately 9 o'clock.

10  Q.   When you got to this residence, tell me what, if

11       anything, you observed with regard to any damage to the

12       house itself?

13  A.   I arrived and noted the back glass door had been kicked

14       in -- appeared to have been kicked in, glass busted.  On

15       the front door, I noticed a boot print where someone had

16       attempted to kick that door in but had not gained entry

17       there.  Looking through the house, I noticed things in

18       disarray.  One of the bedrooms looked like some drawers

19       had been pulled open.

20  Q.   While you were there, did you take some photographs?

21  A.   Yes, I did.

22       (STATE'S EXHIBIT NOS. 3 THROUGH 11, INCLUSIVE, WERE

23       MARKED FOR IDENTIFICATION)

24  Q.   Lieutenant, I would like you to take a look at these

25       photographs that I have marked as Exhibits 3 through 7

93

1          and Number 11, and tell me if you recognize what those

2          are, please?

3    A.    These are pictures that I took from the residence of Mr.

4          Burton.

5    Q.    And do those photographs fairly and accurately depict or

6          show the areas of the residence as you recall them on

7          that evening?

8    A.    Yes, they do.

9              MR. LISENBY:  We would offer Exhibits 3 through 7

10         and Number 11.

11             THE COURT:  All right.  Any objections?

12             MR. MORRIS:  None.

13             THE COURT:  State's Exhibits 3 through 7 and 11 will

14         be admitted.

15         (STATE'S EXHIBIT NOS. 3 THROUGH 7, INCLUSIVE, AND

16         NUMBER 11 WERE ADMITTED INTO EVIDENCE)

17             THE COURT:  Are you going to publish?

18             MS. NEWSOME:  Yes, sir.  I'm going to ask him to

19         describe some of them for me.

20   Q.    Lieutenant, I'm going to kind of stand here and hold

21         these, and you don't have to write on it but just kind of

22         point out if you could.  This is Exhibit Number 3.  Can

23         you tell the members of the jury what is shown in this

24         photograph?

25   A.    This is a picture of the back glass door that was forced

94

1    open from the inside of the residence looking to the

2    outside.   It was on the -- I don't know if it was a porch

3    that had been enclosed at one time, but this is kind of a

4    pretty big room and the damage to the door.

5    Q.   Number 4?

6    A.   This is a view of the same door looking from the outside

7         toward the inside into that room.   The next door, the

8         kitchen area.   Again, the damage done to the door.

9    Q.   Number 5?

10   A.   That is a picture of the door with some type of shoe

11        print or boot print on it in some mud.

12   Q.   Number 6?

13   A.   That is a picture of the same thing at a different angle

14        where the mud was on the window.

15   Q.   Number 7?

16   A.   It's a picture of one of the bedrooms in the house, the

17        dresser.   It's where the jar of change was that Mr.

18        Burton had reported.

19   Q.   Number 11?

20   A.   It's a picture of the front door with the muddy boot

21        print.   It appeared that someone had tried to kick in the

22        front door but was unsuccessful.

23   Q.   All right.   Now, Lieutenant, I want to direct your

24        attention now to March the 19th of 2002 and ask if you

25        had the occasion to respond to an area where a vehicle

95

1       had been stopped by Lieutenant Robby Bettis in your

2       department?

3  A.   Yes, I did.

4  Q.   And, when you got to this area, can you tell me what you

5       observed about that?

6  A.   When I arrived, I noticed a silver Mustang in the back

7       part of the cemetery.  Lieutenant Bettis was there,

8       Sergeant Rick Brown was there, and I noticed the two

9       subjects laying on the ground out beside the car.

10  Q.   What two subjects was that?

11  A.   Billy Ralph Norris and Chris McCullough.

12  Q.   Now, while you were there, were you involved in looking

13       in this vehicle and observing some pistols that were in

14       there?

15  A.   Yes, sir.

16  Q.   Did you recognize those pistols or were you able to

17       determine whether those pistols were involved in the

18       Burton burglary that you had worked about a week before?

19  A.   Yes, sir.

20  Q.   If you can remember, where were these pistols located at

21       inside the vehicle?

22  A.   They were in a compartment behind the back seat.  Pull

23       the back seat down, and they were stuck in right there.

24  Q.   Okay.  Now, you said this was a Mustang?

25  A.   Yes, sir.

96

1  Q.  All right, sir.  We're talking about bucket seats up

2      front?

3  A.  Yes, sir.

4  Q.  And then a bench back seat?

5  A.  That's correct.

6  Q.  You said it was behind the back seat?

7  A.  Yes, sir.

8  Q.  Was that an area that would go into a trunk or not?

9  A.  Yes, sir, I believe it would.  But there was some type

10     of -- I don't know if it was a speaker or something was

11     obstructing it to go from one compartment to the other.

12 Q.  Okay.  And did you actually recover these pistols?

13 A.  Yes, sir.

14 Q.  What did you later do with those pistols?

15 A.  I returned them back to Mr. Burton.

16 Q.  While you were there at the scene, did you have the

17     occasion to be involved in the videotaping of a location

18     of these pistols?

19 A.  Yes, sir.  I directed one of the officers there to

20     videotape it.

21 Q.  Let me show you what's marked as State's Exhibit Number 8

22     and ask if you recognize that?

23 A.  Yes, sir.

24 Q.  What is that, please?

25 A.  This is one of the eight millimeter tapes that we use in

1  our patrol cars, the videotaping system.  And this was

2  one that was used in the videotaping of the weapons.

3  Q.  Can you take the video camera that's in the patrol car

4     out to someplace else?  Is that what you're talking

5     about?

6  A.  Yes, sir.

7  Q.  Okay.  And this is that videotape?

8  A.  Yes, sir.

9  Q.  Have you had an opportunity to review that tape?

10 A.  Yes, sir.

11 Q.  Does it fairly and accurately show the locations where

12    the pistols were located at inside this vehicle?

13 A.  Yes.

14         MR. LISENBY:  We would offer Number 8, Your Honor.

15         THE COURT:  All right.  Any objections?

16         MR. MORRIS:  No.

17         THE COURT:  All right.  What's the exhibit number on

18    it?

19         MR. LISENBY:  State's 8.

20         THE COURT:  Okay.  State's Exhibit Number 8 will be

21    admitted.

22      (STATE'S EXHIBIT NO. 8 WAS ADMITTED INTO EVIDENCE)

23         MR. LISENBY:  May we show that to the jury?

24         THE COURT:  Yes.

25 Q.  And were those the pistols that you later returned to Mr.

98

1       Burton as having come from this burglary?

2   A.  Yes.

3   Q.  Now, also during the course of this investigation, did

4       you have the occasion to receive a rifle from Detective

5       Whaley that was also involved in Mr. Burton's burglary?

6   A.  Yes, I did.

7   Q.  Did you also return that to Mr. Burton?

8   A.  Yes, sir.

9   Q.  Now, I want to direct your attention to March the 19th of

10      2002 and ask if you had the occasion in connection with

11      this case to speak with the defendant, Christopher

12      McCullough?

13  A.  Yes, I did.

14  Q.  Where was that at, please?

15  A.  At the Lanett Police Department.

16  Q.  And, when you spoke to him, did you have knowledge that

17      Investigator Blackstone with the sheriff's department had

18      already advised him of his constitutional rights?

19  A.  Yes, sir.

20  Q.  When you went to speak with Mr. McCullough, was there

21      anyone else present with you?

22  A.  Investigator Blackstone was at first.  And Detective

23      Whaley, I believe.

24  Q.  Detective Whaley with your office?

25  A.  Yes, sir.

99

```
 1   Q.   Okay.  When you went to speak with Mr. McCullough, did
 2        you or anyone in your presence threaten or coerce him?
 3   A.   No, sir.
 4   Q.   Did you or anyone in your presence offer him anything or
 5        offer him any hope of reward?
 6   A.   No, sir.
 7   Q.   Did you or anyone in your presence tell him it would be
 8        better to make a statement than to not make a statement?
 9   A.   No, sir.
10   Q.   Did you then talk to him about Mr. Burton's burglary?
11   A.   Yes, I did.
12   Q.   Did he give you a statement with regard to that?
13   A.   Yes, he did.
14   Q.   Did you take that down in some manner?
15   A.   Yes, sir, I did.
16   Q.   How was that done?
17   A.   In written form.
18   Q.   Now, when you're talking about in written form, was this
19        in a question and answer type situation?  Or how did you
20        go about taking the statement?
21   A.   He told us about what had happened.  After going over it,
22        and I wrote it down in a narrative form.
23   Q.   And after that did you have the occasion to ask him if
24        that was, in fact, what his statement was?
25   A.   Yes, I did.
```

100

1    Q.    Did you give him an opportunity to read over the

2          statement?

3    A.    Yes, I did.

4    Q.    Did he read over the statement or make any changes or

5          corrections?

6    A.    He read over the statement, but he didn't make any

7          changes.

8    Q.    Did he sign the statement?

9    A.    No, he did not.

10   Q.    Let me show you what is marked as State's Exhibit Number

11         10.  Would you take just a moment and tell me if you

12         recognize that being the statement that you took from Mr.

13         McCullough with regard to Mr. Burton's burglary?

14   A.    I'm sorry.  Repeat your question.

15   Q.    Yes, sir.  Can you tell me if that's the statement that

16         you took from Mr. McCullough with regard to Mr. Burton's

17         burglary?

18   A.    Yes, sir, it's a copy.

19   Q.    It's a copy?  All right.  If you would tell -- I'm

20         sorry.  Do you see any changes, marks, or alterations on

21         that other than the exhibit sticker on there with regard

22         to Mr. Burton's burglary?

23   A.    Oh, no, sir.

24   Q.    All right.

25               MR. LISENBY:  At this time we would offer State's

101

1     Exhibit Number 10.

2         THE COURT:  Any objections?  Any objections to

3     State's Exhibit Number 10?

4         MR. MORRIS:  None.

5         THE COURT:  State's Exhibit Number 10 will be

6     admitted.

7     (STATE'S EXHIBIT NO. 10 WAS ADMITTED INTO EVIDENCE)

8  Q.  If you would, tell us what Mr. McCullough told you on

9     that occasion.

10  A.  "Me and Billy parked about three miles from the house and

11     walked through the woods to the back of the house.  We

12     went to the back door.  Then Billy went around to the

13     front.  I followed him.  He tried to kick the door in,

14     but the lock was too strong.  Then we went back to the

15     back door, and Billy kicked it open.  We went in and

16     searched the house, but wasn't nothing there except for

17     the rifles and two pistols.  The only thing I took was

18     the two pistols.  Billy took a rifle.  It was a .22

19     Ruger, a bunch of pocketknives, and a jar of change.  We

20     were in the house about five minutes.  It was evening

21     time when we went in.  It was before dark.  After we

22     left, we went to my house and put the guns there."

23  Q.  Okay.  And there's a part on there about him not signing

24     the statement; is that right?

25  A.  That's right.

102

1    Q.   What did you write there?

2    A.   "Mr. McCullough read the statement and advised it was

3         true and correct but would not sign it."  And then my

4         signature.

5             MR. LISENBY:  May we publish the photographs to the

6         jury, Your Honor?

7             THE COURT:  Yes.  These are State's Exhibits which

8         ones, Mr. Lisenby?

9             MR. LISENBY:  Those would be 3 through 7 and 11.

10            THE COURT:  All right.

11            MR. LISENBY:  I believe that's all the questions I

12        have for Lieutenant Carter.  The defense may have some

13        questions.

14            THE COURT:  All right.  Mr. Morris.

15                          CROSS-EXAMINATION

16   BY MR. MORRIS:

17   Q.   Mr. Carter, you went to the scene where Mr. McCullough

18        and Billy Norris were arrested, right?

19   A.   Yes, sir.

20   Q.   And how long after they had been arrested did you arrive

21        at the scene?

22   A.   I had gotten to the scene approximately 15 to 20 minutes

23        after the stop.

24   Q.   Okay.  You did the videotaping?

25   A.   No, sir.

103

```
 1   Q.   The videotape we were just shown, who took that
 2        videotape?
 3   A.   I believe it was Officer Steven Wood.
 4   Q.   Okay.  But you were there while the videotaping was going
 5        on, right?
 6   A.   Yes, sir.
 7   Q.   Officer Carter, why did you videotape that?
 8   A.   We wanted to show the location of the weapons before we
 9        started handling them after we found them.
10   Q.   You wanted to show the specific locations of the weapon,
11        right?
12   A.   Yes, sir.
13   Q.   So there wouldn't be no doubt in these jurors' minds
14        exactly where these weapons were?
15   A.   That's correct.
16   Q.   Because a picture -- Well, it's worth a thousand words,
17        isn't it?  I mean, it's better than secondhand somebody
18        telling you?  You see a picture, and you really know
19        exactly what happened, right?
20   A.   Yes, sir.
21   Q.   Mr. Carter, Mr. McCullough signed his waiver of rights,
22        right?
23   A.   Yes, sir.
24   Q.   He didn't sign that statement, did he?
25   A.   No, sir.
```

104

```
 1   Q.   As a matter of fact, that statement is in your
 2        handwriting, isn't it?
 3   A.   It is.
 4   Q.   Why didn't you just take a pencil and pen and hand it
 5        to Mr. McCullough?  He's got a 12th grade education.  He
 6        can read and write.  Why didn't you just let him make his
 7        own statement?
 8   A.   It's always been my habit when I'm taking a statement
 9        from somebody once we talk about the facts, and I put it
10        down.
11   Q.   Did he initial -- put his initials anywhere on that
12        statement that you claim he made?
13   A.   No, sir.
14   Q.   Did he ever adopt -- did he ever adopt that statement
15        officially by any marks or anything?
16   A.   No, sir, not any marks.
17   Q.   Did you tape his conversation with you by audiotape while
18        you were interviewing him?
19   A.   No, sir.
20   Q.   Why not?
21   A.   It's not my procedure.
22   Q.   Not a proper procedure.  You're trying to throw a man in
23        prison, and you videotape the alleged crime scene and you
24        won't videotape an alleged confession that a man won't
25        sign?
```

105

1     MR. LISENBY:  I object to the form of the question.

2     THE COURT:  Sustained.

3  Q.   Mr. Carter, when you were interviewing Mr. McCullough,

4       you had a video camera available, didn't you?  If you

5       wanted to, you had a video camera available?

6  A.   Yes, sir.

7  Q.   And this jury could see exactly what happened, because

8       that video camera would be viewing Mr. McCullough and you

9       at the same time asking questions?

10     MR. LISENBY:  May we approach just a moment?

11     THE COURT:  Yes.

12   (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

13     MR. LISENBY:  I believe Mr. Morris has now opened

14     the door with regard to the remainder of that statement.

15     Because, in fact, while they were interviewing him with

16     regard to this particular burglary, they were

17     interviewing him with regard to all of the burglaries

18     that were involved.

19     MR. MORRIS:  There's two separate statements.

20     MR. LISENBY:  No, there's not.  There's one

21     statement about the Burton/Gragg burglary.

22     THE COURT:  Don't forget he took the one that you

23     may be looking at, was only a paragraph that he Xeroxed.

24     Another thing, too, sentencing is not a matter for the

25     jury.  Sentencing is a matter for the judge.

106

1    I'm going to overrule your objection at this point.

2    Okay?  Don't go into that any further, though.  Because

3    if you refer any further to that statement past the

4    extent of that part that the D.A. has provided for you,

5    then I'm going to let the whole statement go in.

6         MR. MORRIS:  Okay.  I just want to show that they

7    videotaped this, this, and this, but they didn't

8    videotape his statement.

9         THE COURT:  Well, when you talk about that, they

10   were able to see everything that went on and that gets

11   into a lot of other conversations they had with him.

12        MR. LISENBY:  Which is exactly the reason we asked

13   them not to videotape these things, because that's the

14   reason.  Is that you can't do that in front of the jury,

15   you know.  If nothing else, Your Honor, I would like to

16   at least be able to ask Lieutenant Carter something with

17   regard to that.  And, you know, if he was talking to him

18   about other matters, that would be the videotape, too.  I

19   think I ought to be able to have at least some response

20   in kind to that.

21        THE COURT:  Well, how about this, Bill?  How about

22   if the question would be "Did y'all discover other things

23   that aren't relevant to this case?"  Just to that extent?

24        MR. LISENBY:  Yes, sir.

25        THE COURT:  Okay.  I'll let you do that.

107

1          MR. LISENBY:  I will be glad to lead him to it.

2          THE COURT:  Don't go into that any further, though.

3          MR. MORRIS:  I can't mention the videotape or

4     audiotape?

5          THE COURT:  I'll let you mention it.  But when you

6     start challenging it, then the problem is you bring in

7     the rest of the conversation.  So I guess you objected to

8     the question and asked permission to mention what else

9     went on.  I then denied that request, allowing you to ask

10    a limited amount about the procedure that went on at that

11    time or interrogation procedures.

12         MR. LISENBY:  "At that time you discussed other

13    matters other than this particular burglary involving Mr.

14    McCullough"?

15         THE COURT:  "Did you discuss other matters other

16    than this one."

17         MR. LISENBY:  Oh, okay.  Okay.

18         THE COURT:  All right.

19         (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

20    Q.   Mr. Carter, you had interviewed Billy Norris basically

21         30 to 40 minutes before you interviewed Mr. McCullough,

22         right?

23    A.   Yes, sir, I think so.

24    Q.   It was shortly right after that, right?

25    A.   Yes, sir.

108

1   Q.   And basically during this whole interview with Mr.

2        McCullough, you were telling Mr. McCullough what Billy

3        Norris said.  You were saying "That's what Billy Norris

4        said; that's what Billy Norris said."  Isn't that right,

5        Mr. Carter?  Isn't that right?

6   A.   No, sir.

7   Q.   Mr. McCullough said, "I want my attorney; I'm not signing

8        nothing."  Isn't that right, Mr. Carter?

9   A.   No, sir.

10   Q.   And he didn't sign it, did he, Mr. Carter?

11   A.   He didn't sign it.

12   Q.   Mr. Carter, you investigated the scene where John

13        Burton's house got broken into, right?

14   A.   Yes, sir.

15   Q.   Did you find Mr. McCullough's fingerprints inside that

16        house?

17   A.   No, sir.

18   Q.   Did you do any footprint analysis on the crime scene at

19        Mr. Burton's house?

20   A.   No, sir.

21   Q.   Now, there has been mention of a footprint on the door,

22        front door, the back door.  Do you recall that?

23   A.   Yes, sir.

24   Q.   Did you do any kind of analysis to see whose footprint

25        that was?

109

```
1    A.    No, sir.
2              MR. MORRIS:  Nothing further.
3              THE COURT:  All right.  Thank you.  Anything further
4          for this witness?
5              MR. LISENBY:  Just briefly, Your Honor.
6                          REDIRECT EXAMINATION
7    BY MR. LISENBY:
8    Q.    Lieutenant Carter, when you were speaking with Mr.
9          McCullough on this occasion that we were talking about,
10         did you discuss other matters?  Other matters with him,
11         also?
12   A.    Yes.
13             MR. LISENBY:  That's all.
14             THE COURT:  All right.  Is there anything else for
15         this officer?  Is that all for this officer?
16             MR. MORRIS:  Sir?
17             THE COURT:  Is that all for this officer right here?
18             MR. MORRIS:  Yes, sir.
19             THE COURT:  All right.  May this officer be excused?
20             MR. MORRIS:  Yes, sir.
21             THE COURT:  All right.  Thank you very much.  You're
22         excused.  Next witness, Mr. Lisenby or Ms. Newsome.
23             MS. NEWSOME:  State rests.
24             THE COURT:  All right.  Ladies and gentlemen, I need
25         to speak with the attorneys for just a moment.  I'm going
```

110

1    to ask you to step back in the jury room for about five

2    minutes.  All right?  Thank you.

3                    (JURY NOT PRESENT)

4         THE COURT:  Do you have any motions?

5         MR. MORRIS:  Judge, at this time I move for motion

6    of acquittal based on the following separate grounds that

7    the State of Alabama has totally failed to prove a prima

8    facie case against the defendant.  The State of Alabama

9    has failed to prove beyond a reasonable doubt and to a

10   moral certainty the charge of burglary against

11   Christopher McCullough.  The State of Alabama has failed

12   to prove beyond a reasonable doubt and to a moral

13   certainty the charge of theft one against Chris

14   McCullough.  The State of Alabama has failed to prove

15   beyond a reasonable doubt and to a moral certainty the

16   charge of receiving stolen property two.  The State has

17   failed to prove all elements of the charge of burglary

18   against Mr. McCullough.  State has failed to prove all

19   elements of the charge of theft one against Mr.

20   McCullough, and the State has failed to prove all the

21   elements of receiving stolen property two against Mr.

22   McCullough.  And the State has failed to exclude every

23   reasonable hypothetisis except the guilt of the

24   defendant, and the defendant is entitled to be acquitted

25   at the discretion of the Court.

111

1    THE COURT:  All right.  Thank you very much.  I'm

2    going to deny your motions, Mr. Morris, as to the State's

3    failure to prove a prima facie case.  I think the

4    reasonable doubt issue will be in the minds of the

5    jurors.  Obviously, that will be up to them.  So I will

6    deny your motion at this time.  Are y'all ready to move

7    forward?

8        MR. MORRIS:  We need just a few minutes.

9        THE COURT:  I was going to ask, do you plan on

10   putting on any witnesses?

11       MR. MORRIS:  Our only witness will be our client.

12       THE COURT:  So you're going to determine whether

13   you're going to do that or not?  Because if not, we can

14   take care of some other matters before they come in.  All

15   right.  Why don't y'all take a five-minute break?  I'm

16   going to let the jury have about 10 minutes.  What I

17   intend to do if, in fact, Mr. McCullough wants to do

18   his -- wants to testify, then fine.  If not, I'm probably

19   going to get right on into closing and that sort of

20   thing.  So I'm going to give them a break right now.

21                    (RECESS)

22                (JURY NOT PRESENT)

23       THE COURT:  All right.  Back on the record.  Mr.

24   Morris, do you have a --

25       MR. MORRIS:  Judge, just for the Record, we have

112

1     discussed with Mr. McCullough the pros and cons of

2     testifying, and he wants to proceed to testify.

3          THE COURT:  Okay.  Is this against your advice?  Is

4     that what you're telling me?

5          MR. CARLTON:  No, sir.  We just want the Record to

6     reflect that he understands that he can be cross-examined

7     by the State if he testifies, and he would be waiving his

8     right to remain silent at that point.

9          THE COURT:  Mr. McCullough, I think you and I had a

10    discussion about your constitutional rights over at the

11    jail, didn't we?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Okay.  Do you remember me telling you

14    that if you entered a plea of guilty, if you decide to

15    take the stand you will be subjecting yourself to

16    cross-examination.  And you will in essence be waiving

17    any Fifth Amendment privileges that you would have

18    against self-incrimination?  You understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And you're telling us you want to

21    testify?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And you understand the ups and downs of

24    it?

25         THE DEFENDANT:  Yes.

113

```
1          THE COURT:  All right.  Thank you very much.
2                        (JURY PRESENT)
3          THE COURT:  All right.  Ladies and gentlemen, the
4     State has rested its case, as you've heard.  Mr. Morris
5     and Mr. Carlton, do you have any witnesses?
6          MR. CARLTON:  Yes, sir, Your Honor, the defense
7     calls Christopher McCullough.
8          THE COURT:  Mr. McCullough, come on up.  Stand right
9     here, raise your right hand, face Ms. Garner and be
10    sworn.
11                       (WITNESS SWORN)
12         THE COURT:  All right.  Speak loudly enough so that
13    everybody can hear you, Mr. McCullough.  Okay.  Mr.
14    Carlton.
15                    CHRISTOPHER MCCULLOUGH,
16         a witness, after having first been duly sworn to
17    speak the truth, the whole truth, and nothing but the
18    truth, took the stand and testified as follows:
19                      DIRECT EXAMINATION
20    BY MR. MORRIS:
21    Q.   Chris, would you state your name for the Record, please?
22    A.   Christopher Cornelius McCullough.
23    Q.   Where do you live, Chris?
24    A.   1517 North Sixth Avenue.
25    Q.   Where is that?
```

114

| | | |
|---|---|---|
| 1 | A. | Lanett, Alabama. |
| 2 | Q. | Are you currently employed? |
| 3 | A. | No. |
| 4 | Q. | Why is that? |
| 5 | A. | I was laid off. |
| 6 | Q. | You were laid off? |
| 7 | A. | From Carter Mills. |
| 8 | Q. | Laid off from Carter Mills. Why is that? |
| 9 | A. | Sleeping in the bathroom. |
| 10 | Q. | Sleeping in the bathroom? |
| 11 | A. | Yes, sir. |
| 12 | Q. | While you were on the job? |
| 13 | A. | Yes, sir. |
| 14 | Q. | Okay. But, prior to that point, you were gainfully |
| 15 | | employed; is that right? |
| 16 | A. | Yes, unemployment check. |
| 17 | Q. | Are you currently drawing unemployment now? |
| 18 | A. | Yes. |
| 19 | Q. | Do you know a young man that testified earlier by the |
| 20 | | name of Billy Norris? |
| 21 | A. | Yes. |
| 22 | Q. | How do you know him? |
| 23 | A. | We was raised up together. |
| 24 | Q. | How long do you think you've known him? |
| 25 | A. | Ever since the sixth grade. |

115

| | | |
|---|---|---|
| 1 | Q. | Sixth grade. You would say y'all are good friends? |
| 2 | A. | Yeah. Well, almost best friends. |
| 3 | Q. | Okay. What kind of -- At the time this investigation was |
| 4 | | going on, what kind of lifestyle did Mr. Norris lead? |
| 5 | A. | He had a bad lifestyle. He didn't -- |
| 6 | Q. | Did he have a job? |
| 7 | A. | No job. No house. No nothing. |
| 8 | Q. | Did you help take care of him? |
| 9 | A. | Yes. |
| 10 | Q. | Did you let him borrow things of yours? |
| 11 | A. | What I had he had. My car, my house. |
| 12 | Q. | Eat your food? Stay at your house? |
| 13 | A. | Yes. |
| 14 | Q. | Did you ever let him borrow your vehicle from time to |
| 15 | | time? |
| 16 | A. | All the time. |
| 17 | Q. | All the time. He asked to borrow your vehicle and you |
| 18 | | didn't need it, did you let him use it? |
| 19 | A. | Yeah. |
| 20 | Q. | Now, I know there's no possible way you can tell us what |
| 21 | | was going on in your life on March the 13th of this year? |
| 22 | A. | Yes, sir. |
| 23 | Q. | Is it possible that Billy Norris borrowed your car at |
| 24 | | that time? |
| 25 | | MR. LISENBY: I'm going to object to that. |

116

1       THE COURT:  Sustained.

2  Q.   Did you let him borrow your car any time he asked?

3  A.   Yes.

4  Q.   Okay.  Now, did Mr. Norris ever have a conversation with

5      you about John Burton?

6  A.   No.

7  Q.   Did he ever tell you that he broke into John Burton's

8      house?

9  A.   No.

10  Q.   Did Billy Norris ever talk to you about any property he

11      may have taken from Mr. Burton's house?

12  A.   No.

13  Q.   Did you ever see any guns or knives or pocket change or

14      anything that you thought was suspicious?

15  A.   No.

16  Q.   He never showed you any of that?

17  A.   No.

18  Q.   He never said anything to you about any guns being in

19      your car?

20  A.   No.

21  Q.   Did you know there were guns in the trunk of your car?

22  A.   No.

23  Q.   All right.  Do you remember talking with Lieutenant

24      Richard Carter of the Lanett Police Department shortly

25      after you were arrested?

117

1   A.   Yes.

2   Q.   Okay.  Did you voluntarily give Mr. Carter a statement

3       that day?

4   A.   No.  He already had a written statement for me.

5   Q.   You're saying he already had a written statement?  Is

6       that what you said?

7   A.   Yes.

8   Q.   He didn't sit down with you and ask you questions and you

9       sit there and respond to his questions?

10   A.   No.  He told me everything what Billy Norris had said.

11   Q.   He came back to you with a statement from what Billy

12       Norris had said?

13   A.   Yes.

14   Q.   You didn't write that statement that they talked about

15       earlier?

16   A.   No.

17   Q.   You didn't tell him what was written on that statement

18       that you talked about earlier?

19   A.   No.

20   Q.   The first time you saw that piece of paper, it already

21       had writing on it?

22   A.   Yes.

23   Q.   You didn't tell him any of that that was written on

24       there?

25   A.   No.

118

```
 1    Q.   Did you read over that statement?

 2    A.   Yes.

 3    Q.   What did you tell Mr. Carter after you read over it?

 4    A.   I told him he could keep it.

 5    Q.   You could keep it.  Why is that?

 6    A.   Because I didn't do it, and I didn't make no statement.

 7    Q.   Is that why you didn't sign it?

 8    A.   Yes.

 9    Q.   Before today, have you ever seen Mr. Burton before?

10    A.   No.

11    Q.   You don't know him at all?

12    A.   No.

13    Q.   Do you know where he lives?

14    A.   No.

15    Q.   To your knowledge have you ever been to his house?

16    A.   No.

17    Q.   Did you break your way into Mr. Burton's house on March

18         the 13th of this year?

19    A.   No.

20    Q.   Did you take any items from Mr. Burton's house?

21    A.   No.

22    Q.   To your knowledge, did you ever have any items that

23         belonged to Mr. Burton in your possession?

24    A.   No.

25    Q.   All the allegations the State of Alabama has made against
```

119

1    you today is false; is that correct?

2  A.   Yes.

3  Q.   You're not guilty of anything?

4  A.   No.

5         MR. CARLTON:  I don't think I have anything else,

6    Your Honor.

7         THE COURT:  All right.  Mr. Lisenby or Ms. Newsome.

8         MR. LISENBY:  Just one moment, Your Honor.

9                    CROSS-EXAMINATION

10  BY MR. LISENBY:

11  Q.   Mr. McCullough, I believe you indicated that at the very

12       beginning of your testimony that you and Mr. Norris were

13       very good friends; is that right?

14  A.   Yes.

15  Q.   And I think that even in response to one of Mr. Carlton's

16       questions that you said that you were almost best

17       friends?

18  A.   Yes.

19  Q.   Is that right?

20  A.   Yes.

21  Q.   You've known each other for how long?

22  A.   Ever since the sixth grade.

23  Q.   A long time?  Is your birth date November the 27th of

24       '72?

25  A.   Yes.

120

```
 1   Q.   So the sixth grade would have been about, what, '84 or
 2        '85?  Somewhere in there?
 3   A.   '86.
 4   Q.   I'm sorry?
 5   A.   1986.
 6   Q.   '86?  Okay.  So you've known him since at least that
 7        long; is that right?
 8   A.   Yes.
 9   Q.   Now, I'm sorry.  I was trying to take notes.  You
10        indicated to Mr. Carlton that you had been laid off from
11        Carter Mill?
12   A.   Yes.
13   Q.   Were you laid off at the time of March -- in March of
14        2002?
15   A.   Yes.
16   Q.   Okay.  Do you recall the date that you were laid off?
17   A.   It was about February the 16th, somewhere in there.
18   Q.   Okay.  So, on March the 13th, you would have been out of
19        work for about a month?
20   A.   Yes.
21   Q.   Is that a fair statement?
22   A.   Yes.
23   Q.   Okay.  The address that you gave on North Sixth Avenue,
24        were you living there with anyone?
25   A.   Living with who?
```

121

```
 1   Q.   Were you there living with anyone?

 2   A.   Yes.

 3   Q.   Who was that?

 4   A.   My girlfriend.

 5   Q.   Your girlfriend?  What was her name?

 6   A.   Geraldine Dowell.

 7   Q.   Was there anyone else living there?

 8   A.   My little son.

 9   Q.   I'm sorry?

10   A.   My son.

11   Q.   How old was your son?

12   A.   He was seven months.  He's a year now.

13   Q.   Okay.  But back in March of 2002, he was seven months

14        old?

15   A.   Yes.

16   Q.   Was your girlfriend working?

17   A.   Yes.

18   Q.   Where was she working at?

19   A.   Waffle House.

20   Q.   Working at the Waffle House?

21   A.   Yes.

22   Q.   So the only income that was coming in was what she was

23        doing at the Waffle House?

24   A.   No.

25   Q.   I asked who else was living there, you said it was just
```

122

1     you --

2  A.   I was drawing a unemployment check.

3  Q.   You had an unemployment check?  Okay.  How much was that?

4  A.   152 a week.

5  Q.   $52 a week?

6  A.   152.

7  Q.   152.  I'm sorry.  It's kind of hard to hear in this big

8     room.

9         All right.  Now, was Mr. Norris, was he living

10    there in this house with you?

11  A.   No.

12  Q.   Well, you said he had no job and he had no housing, but

13     whatever was yours was his.  But he wasn't living there?

14  A.   He was staying in that vacant house.

15  Q.   So whatever was yours is his is not completely accurate?

16  A.   That's my girlfriend's house.  He can't stay with my

17     girlfriend.

18  Q.   Well, your comment to Mr. Carlton was "whatever I had, he

19     had?"

20  A.   That's right.

21  Q.   All right.  But he wasn't living there with you?

22  A.   It wasn't mine.

23  Q.   Okay.  Is that right?  He wasn't living there with you?

24  A.   Yes.

25  Q.   Okay.  Now, you do recall March the 19th of 2002, do you

123

1    not?

2  A.   Yes.

3  Q.   The date that you and Mr. Norris were together when the

4       police stopped you?

5  A.   Yes.

6  Q.   And that was outside of the Hillcrest Cemetery area; is

7       that correct?

8  A.   Yes.

9  Q.   And that was your car that you were in?

10 A.   Yes.

11 Q.   And the two pistols that you have seen on the videotape,

12      that was in your car?

13 A.   Yes.

14 Q.   And, if I understood what you said, you said that

15      Lieutenant Carter when he walked in to see you already

16      had the statement written out?

17 A.   Yes.

18 Q.   Is that what you're saying?

19 A.   Yes.

20 Q.   So have you seen this before?

21 A.   Yes, sir, two copies of it.

22 Q.   Okay.  And you're saying that he had -- Lieutenant Carter

23      who testified in this case had it written out when he

24      walked in the door to see you?

25 A.   Yes.  That's the wrong address right there.

124

1   Q.   They had the wrong address up there?

2   A.   He even put the wrong address at the top to let you know

3        it was pre-written.

4   Q.   Okay.  So he didn't get that from you?

5   A.   No.

6   Q.   He didn't get that phone number from you?

7   A.   No, he probably got it from Billy.

8   Q.   He just made that up?

9   A.   No.  I don't know.

10  Q.   Well, if you didn't tell him that address or that

11       telephone number, are you saying --

12  A.   That's not my address.

13  Q.   Okay.  So it's your testimony that Lieutenant Carter

14       while investigating this burglary came in, simply showed

15       that to you, and said, here, sign it?

16  A.   Yeah, basically.

17  Q.   Okay.  Well, you also started telling Mr. Carlton

18       something about that he was telling you what Billy Norris

19       had said?

20  A.   That's where the statement come from is Billy Norris.

21  Q.   Okay.  Well, if all he did is walk in and show you that

22       statement to sign, why would he be telling you what Billy

23       Norris said?

24  A.   He wanted to see what I had to say about the idea.

25  Q.   I'm sorry?

125

| | | |
|---|---|---|
| 1 | A. | He wanted to see what I had to say about the idea, the |
| 2 | | situation. |
| 3 | Q. | About the situation? |
| 4 | A. | Yeah. |
| 5 | Q. | Okay.  Even though he had it all printed out for you? |
| 6 | A. | That's right.  He still questioned me about it. |
| 7 | Q. | All right.  Does it say on the statement that he got this |
| 8 | | from Billy Norris? |
| 9 | A. | No. |
| 10 | Q. | It starts out, it says, "Me and Billy," right? |
| 11 | A. | That's what it says. |
| 12 | Q. | Okay.  But he just made all of that up? |
| 13 | A. | I guess so. |
| 14 | Q. | And, when he told you what Mr. Norris had said about this |
| 15 | | burglary involving John Burton, he talked to you about |
| 16 | | when it occurred, did he not? |
| 17 | A. | Yes. |
| 18 | Q. | All right.  So, on March the 19th, which was less than -- |
| 19 | | well, less than a week, six days later, you knew the date |
| 20 | | of March the 13th, correct? |
| 21 | A. | No. |
| 22 | Q. | You didn't?  I just asked you did he tell you that, and |
| 23 | | you said yes? |
| 24 | A. | You said did he remind me of that. |
| 25 | Q. | I'm sorry? |

126

| | | |
|---|---|---|
| 1 | A. | You asked me did he remind me of that, didn't you? |
| 2 | Q. | No.  I said when he came in and started telling you about |
| 3 | | what Billy Norris had said happened regarding Mr. |
| 4 | | Burton's burglary on March the 13th? |
| 5 | A. | Oh. |
| 6 | Q. | And you said, yes, he told me that? |
| 7 | A. | I didn't hear you. |
| 8 | Q. | Okay. |
| 9 | A. | I didn't hear you. |
| 10 | Q. | Okay.  So on March the 19th, which was six days after |
| 11 | | that event, you knew about Mr. Burton's burglary having |
| 12 | | occurred on March the 13th? |
| 13 | A. | I was told of it. |
| 14 | Q. | All right.  And you still don't know, it's your testimony |
| 15 | | to this jury, where you were on March the 13th?  You just |
| 16 | | don't have any idea? |
| 17 | A. | Not really. |
| 18 | Q. | Even though only six days after that, you first learned |
| 19 | | that that's when this burglary occurred? |
| 20 | A. | That's right. |
| 21 | Q. | So you just don't have any idea? |
| 22 | A. | No. |
| 23 | Q. | All right.  Now, Mr. McCullough, are you the same |
| 24 | | Christopher McCullough that on September the 27th of 1993 |
| 25 | | was convicted of receiving stolen property in the second |

127

1   degree and received a sentence of five years here in

2   Chambers County?

3   A.    Yes.

4        MR. LISENBY:  I don't have any other questions.

5   Thank you.

6        THE COURT:  All right.  Anything else for this

7   witness?

8        MR. CARLTON:  Nothing.

9        THE COURT:  All right.  You can step down, sir.

10  Thank you.

11       All right.  Mr. Carlton and Mr. Morris, any further

12  witnesses?

13       MR. CARLTON:  Defense rests, Judge.

14       THE COURT:  All right.  Everybody ready to go

15  forward at this time?

16       Why don't we come up here?

17  (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

18       THE COURT:  Are you renewing your motion for

19  judgment of acquittal?

20       MR. MORRIS:  Yes, sir.

21       THE COURT:  That motion will be denied.

22       MR. MORRIS:  Okay.

23       THE COURT:  Okay.  Are y'all ready to get started?

24       MR. CARLTON:  Yes, sir.

25       THE COURT:  Closing arguments?

128

1          MR. LISENBY:  Yes, sir.

2          THE COURT:  Okay.  Let's get started.

3          (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

4          THE COURT:  Okay.  Ladies and gentlemen, the State

5     has rested.  The defense has rested.  Okay?  I told you

6     when I outlined our procedures that once the testimony

7     concluded, what we would have next would be closing

8     arguments.  I want to remind you that this is an

9     opportunity for the attorneys to tell you what they

10    believe the evidence has been in this case and to draw

11    reasonable inferences from that evidence.

12          I also want to remind you that what the attorneys

13    say is not evidence.  All right?  You should depend on

14    what came from the witness stand and those items that

15    have been admitted as evidence.  All right?  That being

16    said, I will call on the State of Alabama.  Ms. Newsome?

17          MS. NEWSOME:  Yes, sir.  Thank you, Your Honor.

18          (MS. NEWSOME MADE A CLOSING ARGUMENT, AND NO

19          OBJECTIONS WERE MADE)

20                    * * * * * * * *

21          (MR. MORRIS MADE A CLOSING ARGUMENT, AND NO

22          OBJECTIONS WERE MADE)

23                    * * * * * * * *

24          (MR. LISENBY MADE A CLOSING ARGUMENT, AND NO

25          OBJECTIONS WERE MADE)

129

1                    * * * * * * *

2         THE COURT:  All right.  Thank you.

3         Ladies and gentlemen, it's now my turn to give you

4    the instructions or laws that apply to this case.

5         MR. CARLTON:  Judge, can we approach for a second?

6         THE COURT:  Yes.

7    (BENCH CONFERENCE HELD OUTSIDE THE HEARING OF THE JURY)

8         MR. CARLTON:  I just wanted to make sure.  You are

9    going to give the charge that he can't be convicted on

10   all three counts?

11        THE COURT:  Yes.  In fact, what I'm going to tell

12   them is this.  I think Amy touched on it and Bill touched

13   on it.  He can be -- they can find him guilty if they see

14   fit on the burglary charge and theft charge.  But, if

15   they do it on either burglary or theft, on both of them,

16   they can't do it on the receiving stolen property.  I'll

17   tell them that.

18        MR. CARLTON:  That's the only charge we had.

19        THE COURT:  Y'all have heard my charge.  I pretty

20   well cover it.  I don't know of any written charges that

21   you really could have given me.

22        MR. CARLTON:  Right.

23        THE COURT:  And I'm also going to charge on theft of

24   property in the second degree, okay?  As embraced in the

25   indictment -- as embraced in count two.  He's charged

130

1   with theft one.  I'm also going to charge on theft two.

2   That's actually under the provision of taking a firearm,

3   right?

4        MR. LISENBY:  Right.

5        THE COURT:  Yeah.

6        MR. LISENBY:  But that is okay with the defense that

7   that's being given?

8        THE COURT:  Y'all don't have any objection?  It's a

9   lesser-included.

10       MR. CARLTON:  It can't hurt him, I wouldn't say.

11  The lesser the better.

12       THE COURT:  All right.  Thank you.

13       (BENCH CONFERENCE CONCLUDED; JURY PRESENT)

14

15                       JURY CHARGE

16       All right.  As I was saying, this is my opportunity

17  now to give you the instructions on the law as it applies

18  to this case.  Once again, let me read the indictment to

19  you.  "The Grand Jury of said county charge that before

20  the finding of this indictment, Christopher McCullough,

21  alias, and Billy Norris, alias, whose names are otherwise

22  unknown to the Grand Jury, did knowingly and unlawfully

23  enter or remain unlawfully in a dwelling of another, to

24  wit: John Burton, with intent to commit a crime therein,

25  to wit: theft of property, and while effecting entry or

131

1    while in the dwelling or in immediate flight therefrom,

2    the said Christopher McCullough or/or Billy Norris was

3    armed with an explosive or deadly weapon, to wit:  a

4    pistol or rifle, a further description of which is

5    otherwise unknown to the Grand Jury in violation of

6    Section 13A-7-5 of the Code of Alabama against the peace

7    and dignity of the State of Alabama.

8        "Count two.  The Grand Jury of said county further

9    charges that before the finding of this indictment,

10   Christopher McCullough, alias, and Billy Norris, alias,

11   whose names are otherwise unknown to the Grand Jury, did

12   knowingly obtain or exert unauthorized control over the

13   following property, to wit: two pistols, five knives, and

14   one rifle, a further description of which are otherwise

15   unknown to the Grand Jury, and lawful currency of the

16   United States of America, the exact denominations of

17   which are otherwise unknown to the Grand Jury, the

18   property of John Burton, and having a value in excess of

19   one thousand dollars with the intent to deprive the owner

20   of said property in violation of Section 13A-8-3 of the

21   Code of Alabama against the peace and dignity of the

22   State of Alabama.

23       "Count three, the Grand Jury of said county further

24   charges that before the finding of this indictment,

25   Christopher McCullough, alias, whose name is otherwise

132

1    unknown to the Grand Jury did intentionally receive,

2    retain, or dispose of stolen property, to wit: two

3    pistols, further descriptions of which are otherwise

4    unknown to the Grand Jury, the property of John Burton,

5    and having a value in excess of one hundred dollars but

6    not in excess of one thousand dollars, knowing that it

7    was stolen or having reasonable grounds to believe that

8    it had been stolen and not having the intent to restore

9    it to the owner in violation of Section 13A-8-18 of the

10    Code of Alabama against the peace and dignity of the

11    State of Alabama."

12        The indicment in this case is not evidence, and the

13    fact that the defendant has been indicted is not to be

14    considered by you as a circumstance against him, but the

15    indictment is merely the method of placing the defendant

16    on trial.

17        In determining what the true facts are in this case,

18    you are limited to evidence that has been presented from

19    the witness stand as opposed to matters that have been

20    stated by the lawyers in the course of the trial.  What

21    the lawyers have said both for the State and for the

22    defendant is not evidence in this case.  What they have

23    argued to you at various points in this trial is not

24    evidence.  They have the right and a duty at the

25    appropriate time in the trial to comment on the evidence

133

1    and to draw reasonable inferences from the evidence as
2    they argue their respective positions.  What they say is
3    not evidence, and you should put what they say in the
4    proper category in your thinking.  And it should not be
5    in the evidence category, just as the indictment in this
6    case should not be in the evidence category.

7        When a Judge and jury sit together as a Court of
8    law, it is the duty of the Judge to see that the trial
9    progresses in an orderly fashion, to rule upon all legal
10   matters that are presented, to define the issues
11   involved, and to instruct the jury as to the law that
12   applies to that particular case.  It will be your duty as
13   jurors to follow the law as stated to you by the judge.
14   You will therefore render a verdict in accordance with
15   the facts as you determine them from the evidence and the
16   law as given to you by the Court.

17       The Judge is not permitted to expose his opinion or
18   comment on the effect of the evidence presented to you
19   or the credibility of any witness in the case.
20   Therefore, any ruling, statement, or expression which has
21   been made by me during the course of this trial is not to
22   be considered by you as any effort on my part to convey
23   to you my feeling or opinion about the facts in this case
24   or the credibility of any witness.

25       In arriving at your verdict in this case, you should

134

1    not permit sympathy, prejudice, or any emotion to

2    influence you.  Base your verdict on the evidence and the

3    law.  Don't apply any evidence or law other than the

4    evidence presented at trial and the law instructed by the

5    Court.

6        Whatever verdict you reach must be unanimous.  The

7    verdict must be the verdict of each of the 12 jurors.

8        In coming before you, a jury of his peers, upon his

9    plea of not guilty the defendant is presumed to be

10   innocent of the charges against him.  This presumption

11   remains with him throughout every stage of the trial and

12   during your deliberations on the verdict and is not

13   overcome unless from all the evidence in the case you're

14   convinced beyond a reasonable doubt that the defendant is

15   guilty.

16       The State has the burden of proving the guilt of the

17   defendant beyond a reasonable doubt, and this burden

18   remains on the State throughout the trial.  The defendant

19   is not required to prove his innocence.

20       The phrase "reasonable doubt" is self-explanatory,

21   and efforts to define it do not always clarify the term.

22   But it may help you some to say that the doubt which

23   would justify an acquittal must be an actual doubt and

24   not a mere possible doubt.  A reasonable doubt is not a

25   mere guess or surmise.  It is not a forced or captious

135

1    doubt.

2         If after considering all the evidence in the case,

3    you have an abiding conviction of the truth of the

4    charge, then you're convinced beyond a reasonable doubt

5    and it would be your duty to convict the defendant.  The

6    reasonable doubt which entitles the accused to an

7    acquittal is not a mere fanciful, vague, conjectural, or

8    speculative doubt, but a reasonable doubt arising from

9    the evidence or the lack of it and remaining after a

10   careful consideration of the testimony.  This is a doubt

11   that reasonable, fair-minded and conscientious men and

12   women would entertain under all circumstances.

13        Now, you will observe that the State is not required

14   to convince you of the defendant's guilt beyond all

15   doubt, but simply beyond all reasonable doubt.  If after

16   comparing and considering all the evidence in this case,

17   your minds are left in such a condition that you cannot

18   say that you have an abiding conviction of the

19   defendant's guilt, then you're not convinced beyond a

20   reasonable doubt and the defendant would be entitled to

21   an acquittal.  The defendant has no burden of proof

22   whatsoever.

23        All right.  I'm going to give you the definitions of

24   the charges against the defendant at this time.  We will

25   start with burglary in the first degree.  The defendant

136

1     is charged I believe in count one of this indictment with

2     burglary in the first degree.

3          A person commits the crime of burglary in the first

4     degree if he knowingly and unlawfully enters or remains

5     unlawfully in a dwelling and he does so with intent to

6     commit a crime therein, and while effecting entry or

7     while in the dwelling or in the immediate flight

8     therefrom, he or another participant in the crime is

9     armed with an explosive or deadly weapon.

10         To convict, the State must prove beyond a reasonable

11    doubt each of the following elements of burglary in the

12    first degree:  number one, that the defendant,

13    Christopher McCullough, knowingly and unlawfully entered

14    or remained unlawfully in the dwelling of John Burton.

15    Number two, that in doing so, the defendant acted with

16    the intent to commit a crime; namely, theft therein.

17    And, number three, that while in the dwelling or in

18    effecting entry thereto or in the immediate flight

19    therefrom, the defendant or another participant in the

20    crime was armed with an explosive or deadly weapon.

21         A dwelling is defined as a building which is used or

22    normally used by a person for sleeping, living, or

23    lodging therein.

24         An intruder acts knowingly if he is aware of the

25    fact that he has no license or privilege to enter or

137

1    remain.

2       A person acts with intent with respect to a result

3    or to conduct when his purpose is to cause that result or

4    to engage in that conduct.

5       A person enters or remains unlawfully in or upon

6    premises when he is not licensed, invited, or privileged

7    to do so.

8       If you find from the evidence that the State has

9    proved beyond a reasonable doubt -- excuse me.  Let me

10   define a deadly weapon.  I'm sorry.  A deadly weapon is a

11   firearm or anything manifestly designed, made, or adapted

12   for the purpose of inflicting death or serious physical

13   injury.

14       Now, if you find from the evidence that the State

15   has proved beyond a reasonable doubt each of the above

16   elements of the offense of burglary in the first degree,

17   then you shall find the defendant guilty of burglary in

18   the first degree.  If you find that the state has failed

19   to prove beyond a reasonable doubt any one or more of the

20   elements of the offense of burglary in the first degree,

21   then you cannot find the defendant guilty of burglary in

22   the first degree.

23       In count two, he is charged with theft in the first

24   degree.  A person commits the crime of theft if he

25   knowingly obtains or exerts unauthorized control over the

138

property of another with the intent to deprive the owner of his property. The theft of property which exceeds one thousand dollars in value constitutes theft of property in the first degree.

To convict, the State must prove beyond a reasonable doubt each of the following elements of theft of property in the first degree. Number one, that the defendant, Christopher McCullough, knowingly obtained or exerted unauthorized control over the property of John Burton, more specifically -- and I believe from reading the indictment -- property of two pistols, five knives, one rifle, and lawful currency of the United States of America. Number two, that the property exceeded one thousand dollars in value. And, number three, that the defendant acted with the intent to deprive the owner of his property.

One acts with intent to deprive another of his property when he acts with the purpose of causing that result. A person acts knowingly with respect to conduct or to a circumstance when he is aware that his conduct is of that nature or that the circumstance exists.

The term "obtains or exerts unauthorized control over property" includes but is not necessarily limited to the taking, carrying away, or the sale, conveyance, or transfer of title to or interest in or possession of

139

1    property.

2        If you find from the evidence that the State has

3    proved beyond a reasonable doubt each of the above

4    elements of the offense of theft of property in the first

5    degree as charged, then you shall find the defendant

6    guilty of theft of property in the first degree.

7        If you find that the State has failed to prove

8    beyond a reasonable doubt any one or more elements of the

9    offense of theft in the first degree, then you cannot

10   find the defendant guilty of theft of property in the

11   first degree.

12       Now, embraced in count two of the indictment is also

13   what we call a lesser-included offense.  That would be

14   theft of property in the second degree.  I will now

15   define that for you.  A person commits the crime of theft

16   of property if he knowingly obtains or exerts

17   unauthorized control over the property of another with

18   intent to deprive the owner of his property.  Okay.  In

19   this section, the theft of a firearm, rifle, or shotgun

20   constitutes theft of property in the second degree.

21       To convict, the State must prove beyond a reasonable

22   doubt each of the following elements of theft of property

23   in the second degree:  number one, that the defendant,

24   Chris McCullough, knowingly obtained or exerted

25   unauthorized control over the property of John Burton.

140

1       More specifically, two pistols and one rifle in count

2       two.  Number two, that the defendant acted with intent to

3       deprive the owner of his property.

4            Once again, I will define some of the things in this

5       definition or in this description.  One acts with intent

6       to deprive another of his property when he acts with the

7       purpose of causing that result.  A person acts knowingly

8       with respect to conduct or to a circumstance when he is

9       aware that his conduct is of that nature or that the

10      circumstance exists.  The term "obtains or exerts

11      unauthorized control over property" includes but is not

12      necessarily limited to the taking, carrying away, or the

13      sale, conveyance, or transfer of title to or interest in

14      or possession of property.

15           If you find from the evidence that the State has

16      proved beyond a reasonable doubt each of the above

17      elements of the offense of theft of property in the

18      second degree as embraced in the indictment, you shall

19      find the defendant guilty of theft of property in the

20      second degree.  If you find the State has failed to prove

21      beyond a reasonable doubt any one or more of the elements

22      of the offense of theft of property in the second degree,

23      then you cannot find of the defendant guilty of theft of

24      property in the second degree.

25           In count three, the defendant is charged with

Court of Criminal Appeals No. _CR-02-0943_

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
## FROM
# CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

### Circuit Court Case Number: CC 2002-489
### Circuit Judge: Honorable TOM YOUNG

Type of Conviction / Order Appealed From:   State Conviction

Sentence Imposed: 10 YEARS / 15 YEARS CONCURRENTLY

Defendant Indigent: _X_ YES   _ NO

## CHRISTOPHER C. MCCULLOUGH

NAME OF APPELLANT

HON. STEVEN MORRIS

APPELLANT'S ATTORNEY                    (TELEPHONE NO.)

P.O. BOX 814

ADDRESS

WEDOWEE          ALABAMA          36251

CITY             STATE            ZIP CODE

### v.

## STATE OF ALABAMA

NAME OF APPELLEE

(State represented by Attorney General)

NOTE: If municipal appeal, indicate above, and enter
Name and address of municipal attorney below.

(For Court of Criminal Appeals use only)

141

1        receiving stolen property.  I will now define that for

2        you.  A person commits the crime of receiving stolen

3        property if he intentionally receives, retains, or

4        disposes of stolen property knowing that it has been

5        stolen or having reasonable grounds to believe it has

6        been stolen unless the property is received, retained, or

7        disposed of with the intent to restore it to the owner.

8        Receiving stolen property which exceeds one hundred

9        dollars in value but does not exceed one thousand dollars

10       in value constitutes receiving stolen property in the

11       second degree.

12           To convict, the State must prove beyond a reasonable

13       doubt each of the following elements of receiving stolen

14       property in the second degree:  number one, that the

15       defendant, Christopher McCullough, intentionally

16       received, retained, or disposed of stolen property;

17       namely, in the indictment those things we reference in

18       the indictment, two pistols.  Number two, that the

19       defendant acted knowing that the property had been stolen

20       or having reasonable grounds to believe that it had been

21       stolen.  Three, that the defendant acted without the

22       intent to restore the property to the owner.  And, four,

23       that the property exceeded one hundred dollars in value

24       but did not exceed one thousand dollars in value.

25           Okay.  A person acts intentionally with respect to a

1    result in the conduct when his purpose is to cause that

2    result or to engage in that conduct.  A person acts

3    knowingly with respect to conduct or to a circumstance

4    when he is aware that his conduct is of the nature or

5    that the circumstance exists.  Value means the market

6    value of the property at the time and place of the

7    criminal act.

8        If you find from the evidence the State has proved

9    beyond a reasonable doubt each of the above elements of

10   the offense of receiving stolen property in the second

11   degree as charged, then you shall find the defendant

12   guilty of receiving stolen property in the second

13   degree.  If you find the State has failed to prove beyond

14   a reasonable doubt any one or more elements of the

15   offense of receiving stolen property in the second

16   degree, then you cannot find the defendant guilty of

17   receiving stolen property in the second degree.

18       All right.  Ladies and gentlemen, use your common

19   sense that you do in everyday affairs in determining what

20   the truth is based on the testimony.  You will be the

21   sole and exclusive judges of the facts.  It will be your

22   duty to attempt to reconcile the testimony of all the

23   witnesses so as to make them all speak the truth, if this

24   can be done so reasonably.  If you cannot reasonably

25   reconcile all the testimony, then it will be your duty to

143

1    consider the testimony with a view of determining what

2    the true facts are.  In doing so, you may accept or

3    reject part of the testimony of any witness or any part

4    of the testimony of any witness and accept only the part

5    of the testimony that you consider worthy of belief.

6        An attorney is an officer of the Court.  It is his

7    or her duty to present evidence on behalf of their

8    clients and to make objections as they deem proper and to

9    fully argue their client's cause.  An attorney's

10   statements and arguments are intended to help you

11   understand the evidence and apply the law.  However,

12   their statements are not evidence, and you should

13   disregard any remarks, statement, or argument which is

14   not supported by evidence or by the law as given to you

15   by the Court.  Likewise, statements made by the Court are

16   not evidence and are not to be considered by you.

17       In determining what the true facts are from the

18   evidence, you may take into consideration any natural

19   interest or bias a witness may have as a result of any

20   connection with the case.  You may take into

21   consideration the interest or bias a witness may show

22   while testifying.  You may take into consideration the

23   demeanor of any witness as to whether the witness has

24   apparently testified frankly or evasively.  You may take

25   into consideration any matter which you would in your

144

everyday affairs in passing upon the truthfulness and
accuracy of the testimony.  Weigh the testimony in light
of your common observation and experience and reach a
verdict which will be based upon the truth as you
determine it from all of the evidence.

The defendant may testify as a witness on his own
behalf.  And, when he does so, you may consider the
testimony of the defendant along with all other evidence
in light of the fact that he is the defendant and the
interest he has in your verdict.  This is to be taken
into consideration together with all the other evidence
or lack of evidence.

If you believe that any material part of the
evidence of any witness was willfully false, you may
disregard all of the testimony of such witness or that
portion of the testimony that you determine to be
willfully false.

The test of the sufficiency of circumstantial
evidence is, one, whether the circumstances as proved
convince you to the exclusion of all reasonable doubt of
the guilt of the defendant.  And, two, whether the
circumstances are incapable of explanation upon any
reasonable hypothesis consistent with the defendant's
innocence.  There should not be a conviction based upon
circumstantial evidence unless it excludes every

145

1    reasonable hypothesis other than that of the guilt of the

2    accused.  No matter how strong may be the circumstances,

3    if they can be reconciled with the theory that the

4    defendant is innocent, then the guilt of the accused is

5    not shown by that full measure of proof the law requires

6    and the defendant should be acquitted.

7        All right.  I will explain the verdict forms to you

8    now.  There are three counts we have spoken about in this

9    trial.  The first count Mr. McCullough, the defendant, is

10    charged with burglary in the first degree, the first

11    verdict form -- and you will have each one of these

12    verdict forms, okay?  The first verdict form reads as

13    follows --  and take no leave by the way I have these set

14    out on the verdict forms.  I just put them in this order

15    to make sure I got everything included.  Okay?

16        The verdict form on the first one reads, We, the

17    jury, find the defendant, Christopher McCullough, guilty

18    of the offense of burglary in the first degree as charged

19    in count one of the indictment.  There's a line for the

20    foreperson to sign if that is your verdict.  On the other

21    hand, if you find the defendant not guilty of burglary,

22    you will use this verdict form: We, the jury, find the

23    defendant, Christopher McCullough, not guilty of the

24    offense of burglary first degree as charged in count one

25    of the indictment.  And your foreperson would sign that

146

1    verdict form.

2        Number two, in count two the defendant is charged

3    with theft of property in the first degree.  Also,

4    embraced in that is a lesser-included offense of theft of

5    property in the second degree.  If after considering all

6    the evidence you determine that the defendant is guilty

7    of the offense of theft of property in the first degree,

8    you will use this verdict form.  It says, we, the jury,

9    find the defendant, Christopher McCullough, guilty of the

10   offense of theft of property in the first degree as

11   charged in count two of the indictment.  Your foreperson

12   would sign that.  If after examining all the evidence

13   you're not convinced that he is guilty of theft of

14   property in the first degree, then you can go to the

15   lesser-included and look at this.  It says, We, the jury,

16   find the defendant, Christopher McCullough, guilty of the

17   offense of theft of property in the second degree as

18   embraced in count two of the indictment.  If you're not

19   convinced of that, then you can go also to the not guilty

20   portion.  It says, We, the jury, find the defendant,

21   Christopher McCullough, not guilty of the offense of

22   theft of property in the first degree as charged in the

23   indictment.

24        Okay.  The third verdict form that I'm showing you

25   involves count three where he is charged with receiving

1    stolen property in the second degree.  If you find from

2    the evidence that he is guilty of receiving stolen

3    property in the second degree as defined by the Court

4    based on the evidence, you can use this verdict form.

5    We, the jury, find the defendant, Christopher McCullough,

6    guilty of the offense of receiving stolen property in the

7    second degree as charged in count three of the

8    indictment.  If you find that he is not guilty of that

9    offense, then you will have to use a second verdict form

10   that says, We, the jury, find the defendant, Christopher

11   McCullough, not guilty of receiving stolen property in

12   the second degree as charged in count three of the

13   indictment.

14        Now, let me explain one other thing to you.  It's

15   been referenced by both parties.  If you find the

16   defendant guilty of burglary, you cannot find him guilty

17   of receiving stolen property.  You can find the defendant

18   guilty or not guilty of burglary, guilty or not guilty of

19   theft of property first or second degree.  However, if

20   you find from the facts, okay, and based on the law that

21   I've instructed you that he is guilty of burglary, you

22   can find him guilty of burglary, you could find him

23   guilty of theft.  But you can't find him guilty of

24   burglary, theft, and receiving stolen property.  If you

25   find him guilty of burglary, you have to find him not

148

1    guilty of receiving stolen property.  Okay?  Do you

2    understand what I'm saying on that?

3        All right.  So I guess what I'm saying is that you

4    can find for guilt or innocence, of course, you know, in

5    all counts, too.  But if you find him guilty in count one

6    of burglary and then you find him also guilty in count

7    two of theft of property in any degree, then you will

8    have to find him not guilty of receiving stolen

9    property.  On the other hand, if you find from the

10   evidence or lack thereof and based on my instructions to

11   you that he's not guilty of these three offenses, you use

12   the not guilty verdicts.  All right?

13       That being said, all 12 of you must agree on the

14   verdict.  It must be a unanimous verdict.  Now, your

15   verdict must be unanimous.  All 12 of you must agree

16   either for guilty or not guilty, all 12 either way.  It

17   must be your verdict individually.  It must be your

18   verdict collectively.  Each person has an equal vote.

19   When you go back in a minute, you will select a

20   foreperson.  Their job is to make sure that every juror

21   has had an opportunity to state their idea, to have their

22   say, and then to call for a vote, count the vote, and

23   sign the verdict form.  The foreperson is selected by a

24   majority.  Only seven of you must agree on the

25   foreperson.  The foreperson must sign the verdict forms.

1    Before you go, there's always some questions that

2    jurors have.  I want to try to answer them now before you

3    go back for your deliberations.  Number one, I cannot

4    give you a copy of my charge on the law.  The law does

5    not allow me to provide you with the printed word.

6    Number two, there's no transcript of a witness.  It would

7    take weeks to get that printed.  Number three, you must

8    rely on your collective memories.  If you have taken

9    notes, they are permitted to be used by you, but they

10   will not be authoritative of what has gone on in this

11   courtroom during this trial.  And, last, if I give you

12   another charge, I will have to give you the entire charge

13   again.  You're to knock on the door when you've reached a

14   verdict.

15        THE COURT:  Okay.  What says the State?

16        MS. NEWSOME:  State is satisfied, Your Honor.

17        THE COURT:  What says the defense?

18        MR. MORRIS:  Ready.

19        THE COURT:  Are y'all satisfied?

20        MR. MORRIS:  Yes, sir.

21        THE COURT:  All right.  How about the exhibits?  Are

22   y'all satisfied that they're all present and ready to be

23   distributed to the jury?

24        MR. MORRIS:  Yes, sir.

25        THE COURT:  Okay

150

```
 1         MR. LISENBY:  Yes, sir.

 2         THE COURT:  While they're looking at that, ladies

 3    and gentlemen, you will notice there are 13 of you here.

 4    Only 12 of you will deliberate.  So that means somebody

 5    gets released and is what we consider an alternate

 6    juror.  All right.  I will announce that person at this

 7    time.  Ms. Linda Allison.  Ms. Allison, I'm going to

 8    release you at this time and thank you for your service.

 9    I will have you see Mr. Charles Story and have you report

10    back tomorrow morning at 9 o'clock.  All right?  Come

11    back tomorrow morning at 9 o'clock.

12         All right.  Ladies and gentlemen, you may retire and

13    deliberate.  Thank you very much.

14  (THE JURY RETIRED TO COMMENCE DELIBERATIONS AT 3:25 P.M.)

15         THE COURT:  Counsel, I'm just going to have Mr.

16    Story tell them that if they desire to view these films

17    again, that we'll just bring them back out here and run

18    them out here.

19                            VERDICT

20  (THE JURY RETURNED WITH THE FOLLOWING VERDICT AT 4:05 P.M.)

21         THE COURT:  Has the jury reached a verdict?

22         THE FOREMAN:  Yes, sir.

23         THE COURT:  All right.  Give the verdict forms to

24    the clerk, please.  All right.  Hand them back.

25         All right.  Mr. Foreman, if you would stand up and
```

1    read the verdict forms for us, please.

2         THE FOREMAN:  We, the jury, find the defendant,

3    Christopher McCullough, guilty of the offense of burglary

4    first degree as charged in count one of the indictment.

5         THE COURT:  Read your name, please.

6         THE FOREMAN:  Mark Underwood.

7         THE COURT:  Okay.

8         THE FOREMAN:  We, the jury, find the defendant,

9    Christopher McCullough, guilty of the offense of theft of

10   property in the second degree as embraced in count two of

11   the indictment.  Mark Underwood.

12        THE COURT:  All right.  And the third?

13        THE FOREMAN:  We, the jury, find the defendant,

14   Christopher McCullough, not guilty of the offense of

15   receiving stolen property second degree as charged in

16   count three of the indictment.  Mark Underwood.

17        THE COURT:  All right.  Thank you very much.  Would

18   you like to have the jury polled?

19        MR. CARLTON:  Yes, sir.

20        THE COURT:  Ladies and gentlemen, I am going to ask

21   you at this point if this is your verdict, and I will

22   point to you individually to make sure I get everybody

23   included.  All right?  As read by your foreman, is this

24   your verdict?

25        JUROR:  Yes.

152

1  (THE JURY WAS POLLED BY THE COURT AND EACH RESPONDED IN
2  THE AFFIRMATIVE)
3      THE COURT:  All right.  Ladies and gentlemen, I
4  want to thank you for your service.  I am going to ask
5  that before you leave, of course, you give your buttons
6  to Mr. Story.  If you need work permits or anything of
7  that nature, I think Mr. Story has some in his office for
8  you; is that correct?
9      THE CLERK:  Yes, sir, I do, Your Honor.  The ones
10 that we got from yesterday, I have not prepared another
11 one.  But, if you need one, I will.  For the ones that
12 were not on the jury for yesterday, they're in my office.
13     THE COURT:  All right.  I will ask that you return
14 here tomorrow morning at 9 o'clock.  All right?  Thank
15 you very much for your service.
16                  (JURY EXCUSED)
17     THE COURT:  Mr. Morris, if you would bring your
18 client forward, please.
19     Mr. McCullough, a jury has found you guilty of
20 burglary in the first degree.  I find that you are guilty
21 of burglary in the first degree.  I will set your
22 sentencing in that case for January the 7th.  January the
23 7th of 2003 at 9:00 a.m.
24     In count two, the jury has found you guilty of the
25 charge of theft of property in the second degree.  I find

1    that you are guilty of theft of property in the second

2    degree.  I will set your sentencing in that case for

3    January the 7th at 9:00 a.m.

4        The jury found you not guilty of the charge of

5    receiving stolen property in the second degree, and I

6    will discharge you as to that offense.  All right.

7    Anything further for the Court?

8        MR. LISENBY:  Yes, sir, just briefly.  Judge, we

9    will be invoking the Habitual Offender Act based on the

10   conviction that Mr. McCullough admitted during the course

11   of the trial.  We will also be asking at the sentencing

12   hearing for restitution.  It appears to be to me in the

13   amount of $800 for Mr. Burton.

14       THE COURT:  All right.  You will have either

15   affidavits or something to that effect; is that right?

16       MR. LISENBY:  Yes, sir.

17       THE COURT:  So y'all have been put on notice that

18   they intend to invoke the Habitual Offender Act at your

19   sentencing based on the prior conviction that he admitted

20   to on the stand.  All right.  Anything else?

21       MR. LISENBY:  Just at this point based on the

22   conviction and the fact that he has other charges

23   pending, we would ask the Court to revoke his bond that

24   he has outstanding now so that he remains incarcerated

25   until the time of sentencing.

154

1       THE COURT:  All right.  I will grant that motion.  I

2  will revoke any bond that you have at any point pending

3  sentencing on January the 7th at 9 o'clock.  All right?

4  Thank you very much.  I will put you in the custody of

5  the deputy sheriff.

6                          END OF TRIAL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

155

SENTENCING AND PROBATION

(JANUARY 7, 2003)

1

2

3      THE COURT:  State of Alabama versus Christopher

4  McCullough.  Mr. McCullough, have you had an opportunity

5  to go over this report with your attorney?  Do you have

6  anything that you want to add to it, take away from it,

7  or modify in any way?

8      THE DEFENDANT:  No, sir.

9      THE COURT:  Okay.  Have you got anything that you

10  want to say before I pronounce sentence in this case?

11      MR. MORRIS:  Judge, I would like to say a couple

12  things.  Judge, Mr. McCullough has been incarcerated for

13  approximately 10 months now.  If he is placed on

14  probation, he has a place to live with his family.  And

15  he does have a small child to support.  And he would like

16  to say a couple of things.

17      THE DEFENDANT:  Yes, I understand that a crime has

18  been committed.  But, like I told y'all before, I didn't

19  do this and I can prove I didn't do it.  Even though I

20  got found guilty at jury trial.  And the dude testify, I

21  know he told a lie on me.  There ain't nothing to do

22  about it.

23      THE COURT:  Well, the jury has found you guilty.  So

24  the issue of your guilt is kind of a done deal on this

25  point.  What's the range on the burglary first?

156

1     MS. NEWSOME:  Mr. McCullough has -- 15 to 99 or

2    life.  A co-defendant in this case has admitted his role

3    in this and other particular burglaries and received a

4    24-year sentence, and that co-defendant has no priors.

5    So the State is going for at least 35 for Mr. McCullough.

6     THE COURT:  What about on theft second degree?  That

7    was the conviction on theft two; is that correct, Steve?

8    The theft second is a Class B.  With one prior, we are

9    talking about 10; is that right?

10    MS. NEWSOME:  Mr. MORRIS:  Judge, the prior felony is

11    approximately 10 years old.  I would like for you to take

12    that into consideration.

13    THE COURT:  I don't know that that makes any

14    difference with the Habitual Offender Act.  It goes to

15    enhance the sentence.  Burglary first, is that an A?

16    MS. NEWSOME:  Yes, sir.

17    MR. MORRIS:  Burglary first.  That was classified as

18    a first, but that's because there was a gun taken out of

19    the residence.  It wasn't used.

20    THE COURT:  Actually, if you take one in or take one

21    out, you get burglary first.

22    Okay.  Now, Mr. McCullough, you know what your

23    record looks like.  You've got an extensive -- tickets,

24    receiving stolen property, domestic violence, criminal

25    trespass, unlawfully breaking and entering into a

157

1    vehicle.

2        THE DEFENDANT:  I never broke in a vehicle in my

3    life.

4        THE COURT:  Well, you got two cases in juvenile

5    court.

6        THE DEFENDANT:  I know.

7        THE COURT:  You've got -- that is juvenile court, I

8    just noticed.  Then after this case you have been

9    arrested on burglary first degree; is that right?

10       THE DEFENDANT:  No, sir.

11       MS. NEWSOME:  Judge, he still has charges pending.

12   It was a crime spree involving him and his co-defendant.

13   I'm not sure if those were obtained -- some of them were

14   obtained after he was arrested.

15       THE COURT:  What's the case number in this case

16   right here?

17       MS. NEWSOME:  02-189.

18       MR. MORRIS:  After he was arrested, he's got

19   burglary first pending, burglary first pending, another

20   theft second, burglary, a burglary second pending.

21       MS. NEWSOME:  I think he was arrested on all of

22   those at the same time.

23       THE DEFENDANT:  I have been in jail ever since

24   March the 19th.

25       MS. NEWSOME:  Judge, he was arrested on subsequent

158

1    charges while he was incarcerated.

2         THE COURT:  How did you commit those while you were

3    incarcerated?

4         THE DEFENDANT:  I don't know.

5         THE COURT:  Is that something you did before you got

6    put in jail?

7         THE DEFENDANT:  That's what they did.

8         THE COURT:  All right.  So subsequent charges is his

9    interpretation of what -- whether there's a subsequent

10   charge or not.

11        PROBATION OFFICER:  Same bunch of stuff.

12        THE COURT:  I am not going to count that as a

13   subsequent charge.  All right.  Anything that you want to

14   say before I pronounce sentences?

15        THE DEFENDANT:  No, sir.

16        THE COURT:  All right.  As to the burglary first

17   degree charge, Court pronounces sentence of -- sentences

18   you to 15 years in the State of Alabama Department of

19   Corrections.  Court will order you to pay court costs to

20   include the cost of your legally appointed attorney.

21   Also $50 to the Victim's Compensation Fund award.  Any

22   restitution?

23        MS. NEWSOME:  Yes, sir.

24        THE COURT:  The affidavit is in our file?

25        MS. NEWSOME:  I don't have that one.

159

1       THE COURT:  Okay.  Restitution will be determined at

2    a later date, Steve.  Okay?

3       MS. NEWSOME:  Judge, Mr. Pugh had a copy of our

4    file, and the restitution affidavit indicated $1475.

5       THE COURT:  Any issues with that, Steve?

6       THE DEFENDANT:  Can I say something about that?

7       THE COURT:  Sure.

8       THE DEFENDANT:  Billy Norris admitted to doing the

9    damage to that door in court and out of court.  So why am

10   I being charged for it?

11      THE COURT:  Well, if you were involved with him.

12      THE DEFENDANT:  I wasn't involved in it.

13      THE COURT:  Is this the same one that's convicted

14   of --

15      MS. NEWSOME:  Yes, sir.

16      THE COURT:  Well, the jury said you were.  So that

17   issue is a dead issue.  You and Mr. Norris will be

18   jointly and severally responsible for that amount of

19   restitution.  What's the amount again?

20      MS. NEWSOME:  $1475.

21      PROBATION OFFICER:  Due to the unrecovered shotgun

22   and the damage to the front door to the victim's property.

23      THE COURT:  Okay.  All right.  I'll also give you

24   credit for any time served in this matter to which you

25   may be legally entitled.  I will order that you pay any

160

1    medical or dental expenses that you may have incurred

2    while incarcerated in the Chambers County jail.  Did I

3    cover Victims Compensation?

4        All right.  Any applications in that case for

5    probation?

6        MR. MORRIS:  I thought we was applying for probation.

7        THE COURT:  This is sentencing first.  All right,

8    sir.  I will note your application for probation, Mr.

9    McCullough, and that application will be denied.  You

10    have 42 days in which to appeal this conviction.  Do you

11    understand that?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Okay.  I don't necessarily sentence

14    somebody because of their co-defendant.  I do like to

15    keep consistent on some things.  I have to listen to what

16    I heard in this case and make a determination.  Did the

17    co-defendant, was he probated or not probated in this

18    case?

19        MS. NEWSOME:  He was not.  I don't think so.

20        THE COURT:  He got how much?

21        MS. NEWSOME:  24.  But his plea involved all of his

22    pending charges.  This is just these.  Mr. McCullough has

23    just been convicted of these two.

24        THE COURT:  All right.  And count two, theft of

25    property in the second degree conviction.  Do you have

161

1    anything to say before the Court pronounces sentence?

2        THE DEFENDANT:  No, sir.

3        THE COURT:  All right.  Court sentences you to a

4    term of 10 years with the State of Alabama Department of

5    Corrections.  I will run that sentence concurrently with

6    that sentence.  Okay?  The Court will order that you pay

7    court costs to include the cost of your legally appointed

8    attorney.  You will be given credit for any time served

9    in connection with this case that you may be legally

10   entitled.  The Court is going to order that you pay $50

11   to the Victim's Compensation Fund award.  The Court will

12   order that you reimburse the State of Alabama or Chambers

13   County for any medical or dental expense you may have

14   incurred while in jail. All right.  Any application in

15   this case, Mr. Morris?

16       MR. MORRIS:  Apply for probation.

17       THE COURT:  All right.  I will note your application

18   for probation.  I looked at your report.  I will deny

19   that application for probation.  All right?  Anything

20   further in this case?  You have 42 days in which to

21   appeal this case.

22       THE DEFENDANT:  How long if I apply for court

23   docket?  How long have I got to get that?  How long can I

24   receive on my transcripts on the trial?

25       THE COURT:  Well, if they order that and that's

162

1    granted, you know, it depends on what she's doing.  She

2    will have to do the transcript, and it may take awhile to

3    get it, you know.  Anything else?

4         MR. MORRIS:  No, sir.

5         THE COURT:  All right.  Restitution in that one to

6    be announced -- to be determined later.

7         MS. NEWSOME:  It was the same amount.

8         THE COURT:  All right.  Good luck to you.

9                     END OF PROCEEDINGS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

163

1    CERTIFICATE OF COMPLETION OF REPORTER'S TRANSCRIPT

2    IN THE CIRCUIT COURT FOR CHAMBERS COUNTY, ALABAMA

3  STATE OF ALABAMA

4  VS                              Case No. CC-02-189

5  CHRISTOPHER MCCULLOUGH,

6        DEFENDANT.

7        I, MELANIE H. GARNER, OFFICIAL COURT REPORTER FOR

8    THE FIFTH JUDICIAL CIRCUIT OF ALABAMA, HEREBY CERTIFY

9    THAT I HAVE THIS DATE COMLETED AND FILED WITH THE CLERK

10   OF THE TRIAL COURT THE ORIGINAL AND THREE COPIES OF A

11   TRUE AND CORRECT TRANSCRIPT OF ALL THE EVIDENCE AND

12   MATTERS TAKEN IN THE ABOVE-STYLED CAUSE.  ALL PAGES ARE

13   NUMBERED SERIALLY, PREFACED BY AN INDEX AND ENDING WITH

1    THE NUMBER APPEARING AT THE TOP OF THIS CERTIFICATE.

15       I FURTHER CERTIFY THAT A COPY OF THIS CERTIFICATE

16   HAS THIS DATE BEEN SERVED ON THE CLERK OF THE APPELLATE

17   COURT, AND THE ATTORNEY GENERAL, AND COUNSEL FOR THE

18   DEFENDANT.

19       DATED THIS THE 1ST DAY OF MAY, 2003.

20

21

22

23             MELANIE H. GARNER, CSR, RPR

24             OFFICIAL COURT REPORTER

25